1              UNITED STATES BANKRUPTCY COURT
                EASTERN DISTRICT OF NEW YORK
2

3    ---------------------------------X
     In re:                          :    10-46901 (ESS)
4                                     :
       SHAHARA KHAN,                  :    271 Cadman Plaza East
5                                     :    Brooklyn, New York
                       Debtor.  :
6    ---------------------------------X    September 13, 2012
     KRAMER AS TRUSTEE OF THE ESTATE  :
7      OF SHAHARA KHAN,               :
                                      :
8                       Plaintiff,    :
                                      :    11-01520 (ESS)
9              v.                     :
                                      :
10   MAHIA, *et al.*,                 :
                                      :
11                      Defendants.   :
     ---------------------------------X
12
                   TRANSCRIPT OF HEARING RE:
13        [#1] ADJOURNED PRETRIAL CONFERENCE RE: COMPLAINT
          [#15] ADJOURNED MOTION FOR SANCTIONS UNDER U.S.C. 28
14        SECTION 1927 ATTORNEY LIABILITY FOR EXCESSIVE COSTS
              BEFORE THE HONORABLE ELIZABETH S. STONG
15                UNITED STATES BANKRUPTCY JUDGE

16   APPEARANCES:

17   For Trustee Kramer:        AVRUM J. ROSEN, ESQ.
                                The Law Offices of Avrum J.
18                                 Rosen, PLLC
                                38 New Street
19                              Huntington, New York  11743

20   For Karam Vir Dahiya:      WAYNE GREENWALD, ESQ.
                                Cuevas & Greenwald, P.C.
21                              475 Park Avenue South, 26th Floor
                                New York, New York  10016
22
                                CARLOS J. CUEVAS, ESQ.
23                              1250 Central Park Avenue
                                Yonkers, New York  10704
24

25
                         (Appearances continue on next page)


     Proceedings recorded by electronic sound recording, transcript
     produced by transcription service

1                          UNITED STATES BANKRUPTCY COURT
                              EASTERN DISTRICT OF NEW YORK
2

3      APPEARANCES CONTINUED:

4                                      KARAM VIR DAHIYA, ESQ.
                                       Dahiya Law Group LLC
5                                      350 Broadway, Suite 412
                                       New York, New York 10013
6

7
       Court Transcriber:             RUTH ANN HAGER, C.E.T.**D-641
8                                      TypeWrite Word Processing Service
                                       211 N. Milton Road
9                                      Saratoga Springs, New York  12866

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1  (Proceedings began at 2:38 p.m.)

2        THE CLERK:  Numbers 10 and 11 on the calendar, <u>Kramer</u>

3  <u>v. Mahia</u>, adjourned pretrial conference re: complaint,

4  adjourned motion for sanctions.

5        MR. ROSEN:  Good afternoon, Your Honor.  Avrum Rosen

6  for Trustee Debra Kramer.

7        THE COURT:  Thank you, Mr. Rosen.

8        MR. GREENWALD:  Good afternoon, Your Honor.  Wayne

9  Greenwald for Karam Vir Dahiya, respondent.

10        THE COURT:  All right.

11        MR. GREENWALD:  Also with me is Mr. Cuevas.

12        THE COURT:  All right.  Thank you.  I'm glad you're

13  all here.

14        Before move to the sanctions motion, I'd like to just

15  pause for a moment on the adversary proceeding and pretrial

16  conference in which we have scheduled for today.  There has

17  been -- I have focused so much on the issues and the sanctions

18  motion that it would be helpful to me to be reminded of where

19  we are in that adversary proceeding because --

20        MR. ROSEN:  Sure, Your Honor.

21        THE COURT:  -- along with everything else here, there

22  is that.

23        MR. ROSEN:  Well, Your Honor, as you -- as Your Honor

24  may or may not recall, there is new counsel in the adversary

25  proceeding.

1          THE COURT:  Yes.

2          MR. ROSEN:  And we have been engaging in settlement

3    discussions.  They are quite far along.

4          THE COURT:  Good.

5          MR. ROSEN:  We are, I think, close to a resolution.

6    I think we're close to a number and right now we are working on

7    terms, so I am not engaged in -- we have not engaged -- we have

8    engaged in informal discovery.  They gave us some documents.

9    We went through it.  We're trying to -- given all the other

10   expenses in this case we're trying to do this as efficiently as

11   possible.  Not that we don't always try to do that, but in this

12   case we're working through it and we're close.

13          So what I would like to do when we're done, whatever

14   else is going to go on, we'd kick back to a date.  And I think

15   the pretrial kind of got lost because the last time when we

16   were here we didn't talk about it I think at all --

17          THE COURT:  That's why --

18          MR. ROSEN:  -- with everything else that was going on

19   and I --

20          THE COURT:  -- this --

21          MR. ROSEN:  -- I don't think I ever even told -- I

22   don't even think opposing new counsel even knew it was on for

23   today, but we have been in contact and I will make sure when we

24   get an adjourn date to make sure that she is aware of it.

25          THE COURT:  What time frame -- and I see that we have

1    that appearance on the docket and it's a very helpful thing.

2    Sixty days, something like that.  Do you think that makes

3    sense?

4            MR. ROSEN:  Yeah.  You can have -- why don't we see

5    what's going to go on with this, but one way or the other --

6            THE COURT:  I view these as separate matters.

7            MR. ROSEN:  Separate matters?

8            THE COURT:  Yeah.

9            MR. ROSEN:  Okay.  Yeah.  We -- you can pick a date

10   out.  What I would like to do, Your Honor, if I could, I'd like

11   to call in a date when I find out a day when we're here on

12   other --

13           THE COURT:  Exactly.

14           MR. ROSEN:  -- Kramer matters --

15           THE COURT:  That's fine.

16           MR. ROSEN:  -- so for efficiency and we'll schedule

17   it for that.  When I get back to my office I'll ask Mr. Acey

18   [Ph.] or Mr. Cantrel [Ph.] what's the next date we have that's

19   good.  All right?

20           THE COURT:  It sounds like it would be sooner than a

21   month.

22           MR. ROSEN:  No, it would not be sooner than a month.

23           THE COURT:  And I'm --

24           MR. ROSEN:  What I'd like to do is probably go out 45

25   to 60 so if I resolve it, I can put the 9019 on for that day.

1        THE COURT:  We can -- we'll find a date that makes

2  sense from your office's standpoint that's already a time that

3  you're here on matters for the Trustee and we'll just get this

4  on that track.

5        MR. ROSEN:  That's what we try to do, Your Honor.

6  Thank you.

7        THE COURT:  Good.  It makes sense.  All right.

8        With respect to the motion, which I -- involves

9  separate counsel, separate issue, separate record, same

10  adversary proceeding, case number, same bankruptcy case, but

11  otherwise really very little, if any, overlap at all.  I would

12  like to hear from the parties -- first, from the movant -- as

13  to -- I'll try it this way and see if this is productive -- how

14  the parties propose to proceed today.  I appreciate the

15  seriousness of the issues.  They're a great concern to me as

16  well.  There are both legal and factual matters argued in the

17  papers.  There seems to be a great deal still in dispute

18  between the parties including putting on some fundamental legal

19  issues including some legal issues that seem to me perhaps to

20  be fairly straightforward in the law in this district and

21  circuit, but that's -- I'm not deciding them yet.

22        Mr. Rosen, let me hear first from you.

23        MR. ROSEN:  Thank you, Your Honor.  I'd like to start

24  by first dealing with a couple of procedural issues.  Then I'd

25  like to go through what was filed and talk about it and tell

1  you where I think we're at and what's still in controversy and

2  what's not, all right?

3          THE COURT:  Um-hum.

4          MR. ROSEN:  And I know that -- well, I'll just start

5  that.

6          Your Honor, when we were last here certain things

7  were supposed to happen and almost none of them did happen.

8  The Court will recall that Mr. Dahiya was supposed to take

9  certain actions.  A letter was promised to be put up within a

10  week to ten days, I believe, that he had taken certain steps

11  with the Bar Association and the things that had happened.  I

12  have reminded Mr. Greenwald in conversations with him on at

13  least two occasions that that needed to happen and it has not

14  happened and is still out there as a serious issue.

15          I also -- Your Honor, an adjournment was requested.

16  You'll remember that Mr. Greenwald was willing to file what I

17  guess were called a conditional notice of appearance, which

18  was, I'll appear if I get an extension of time to answer up

19  until about a week and a half ago.  And I first objected to it

20  and then with some urging from chambers I agreed to it and then

21  I gave a further extension when that date was up.

22  Mr. Greenwald said there was a press of papers.  He told me the

23  attorney that was working on it had to move out of their

24  offices, so I gave it to him.

25          You can imagine my dismay and my surprise when the

1  papers that were filed were filed, though portions of them were

2  obviously written by Mr. Greenwald, and I don't think that will

3  be denied.  They were neither signed by him, signed by anyone

4  in this firm, nor were they filed by his firm.  Everything was

5  filed by Mr. Dahiya.  Whether that was because he would not

6  sign on to some of the allegations that Mr. Dahiya was making I

7  still think it's a serious issue in and of itself.  I

8  believe --

9              THE COURT:  Separate issue.

10             MR. ROSEN:  Okay.  All right.

11             THE COURT:  I agree.

12             MR. ROSEN:  But --

13             THE COURT:  But an additional and separate issue that

14  could be viewed as raising some questions about whether the

15  underlying issues here have fully been appreciated by the

16  parties and their counsel and I appreciate the point.  I saw

17  the point in your reply.

18             MR. ROSEN:  Okay.

19             THE COURT:  Submissions --

20             MR. ROSEN:  And --

21             THE COURT:  -- that was I think the last of the

22  things that have been filed, Trustee's --

23             MR. ROSEN:  Yes.

24             THE COURT:  -- reply, number 35 on the docket, filed

25  on Tuesday evening.

1          MR. ROSEN:   Yes, Your Honor.   And I raise it not just

2     because of that issue but because, as I understood it and I may

3     be quite wrong, one of the reasons for their rather generous

4     extension of time to obtain counsel after Mr. Dahiya defaulted

5     under every deadline that was set for this Court -- by this

6     Court over a period of probably seven or eight months in this

7     matter was that there would be some objective attorney stepping

8     into this case trying to give some direction to it to -- so it

9     wasn't all over the place.

10          And as part of the example I give, at the last

11     hearing also -- and this will come back when we discuss the

12     evidentiary issues -- this Court I thought made it crystal

13     clear that this case was not about what Ms. Kramer had done or

14     did not do and was not about an indictment of the Trustee's

15     system and was not about any of that.

16          And yet, we have papers that go right back to that.

17     We have papers that even though in one place in the papers --

18     in several places in the papers they say, this court doesn't

19     even have jurisdiction to sanction Mr. Dahiya.   All right.

20     Either -- at the same time then without notice, without

21     anything else, asked for sanctions against myself and against

22     the Trustee for having brought this motion.

23          So my point on this in part of wanting those issues

24     to be clear is that from where we were in July -- all right --

25     or June or whenever we were back here, the point of these

1  papers and what's so bad about them, before I get to the legal

2  issues, is it shows that whatever mental processes have gone on

3  with Mr. Dahiya -- and I don't begin to comprehend them, all

4  right -- he is now resolute in his belief that his actions were

5  proper, that they were a proper exercise of his legal duty to

6  his clients, and that if you read them with any degree of

7  clarity you will see that he believes it would be appropriate

8  to do the same thing again tomorrow.  He is back on the horse

9  and he's tilting at windmills.  And that is the most disturbing

10  part of these papers.

11       Instead of there being some recognition that this is

12  wrong -- you have in these legal papers -- you have a

13  discussion saying, well, it was okay for me to do this after

14  Judge Trust told me I couldn't do it because Judge Trust gave

15  me leave to replead this at the conclusion of the lawsuit.  I

16  mean, that's not something a first year lawyer would say.  Yes,

17  at the conclusion of the lawsuit the predicate for an action

18  for abuse of process, as we've said all along, is that you must

19  be in the original lawsuit.  It cannot be brought as part of

20  that lawsuit.  You must prevail on the merits in that lawsuit

21  and then you can first, if there is -- if there isn't immunity,

22  if you've got the right jurisdiction and everything else, then

23  you can bring that action.  No recognition of that at all.

24  It's okay.  I read the law, and we've got his bibliography of

25  what he read.

1       Now, one of the things that we'll talk about is, how

2   he came to all these conclusions in the five or ten minutes

3   that he spoke to these clients before he stood up and made

4   these positions at the initial pretrial and made all these

5   determinations is an interesting question.

6       Turning to -- so I think what's before us today, Your

7   Honor, are a couple of legal issues.  The legal issues that I

8   see and the only real legal issues, all right, are -- are

9   whether or not the point raised clearly in the portion written

10  by Mr. Greenwald as to whether or not it all -- what the

11  definition is of a proceeding and whether or not it's in one

12  proceeding, which to me is the only real legal issue here that

13  deserves any real discussion.  All right.

14      And the other issue would then be a few factual

15  allegations.  If you go through their pretrial statement that

16  they filed, you will see that they admitted virtually every

17  allegation of what the Trustee said she did in going through

18  including the allegation which said that she properly commenced

19  this adversary proceeding.  They admitted -- I have them here.

20  They admit -- I marked on my pleading while I was waiting so I

21  put the time to good use, Your Honor.  One of the ones that

22  they marked up is, I believe, paragraph 9.  They admit:

23      "On the documentary evidence provided the Trustee

24  determined that the estate had a cause of action against

25  Tozammel H. Mahia to recover the alleged fraudulent conveyance

1   of the debtor's interest in the proceeds of the sale of the

2   property to the benefit of creditors, to-wit, the amount of the

3   debtor's distributive share of the proceeds realized upon the

4   sale of the property."

5           So they've admit -- and they admit the prior.  So

6   they've admitted that what the Trustee did was in the proper

7   exercise of her fiduciary duty and that she made an

8   investigation.  Their factual point is that they say is that

9   the duty -- the Trustee -- and by the way, they do not attach

10  any evidence to their pretrial.  Not a single piece of paper is

11  going into evidence on the -- is an allegation which has no

12  legal citation, no logical citation, that somehow this

13  defendant held only what they call bare legal title, which is

14  something I've had thrown out to me as a trustee's attorney a

15  lot of times and I've yet to see any case law on it, all right,

16  as a defense.  And that the Trustee had a duty -- they sued her

17  because she had a duty to go out determined that this

18  affirmed -- unclad affirmative defense, that might have been

19  raised that may not even exist, that she had to determine

20  whether or not it existed and if she thought it might she had

21  to not bring the action in the first place.  That's what

22  they're saying.  All right.  That is the logic of their

23  argument and that is their -- that -- so that's what they are

24  castigating the Trustee for, that she did not do that, even

25  though they admit that she did everything else right.  Did

1   absolutely everything else right.

2          So in terms of the factual allegations, we've got

3   the -- the issue is whether or not this action was brought in

4   bad faith or not.  And Your Honor will recall and I note that

5   neither side I think has ordered the transcript, though I will.

6   Both in the prior papers and I think three or four times on the

7   record one time Mr. Dahiya has admitted that he brought this

8   action for leverage because he believed that trustees were

9   abusing poor immigrants and that we did not understand family

10  structure and all those other arguments, so he felt justified

11  to bring this action for leverage against trustees, and that

12  brings me to my legal argument.

13         The legal argument is that they raise is that he

14  would have had to sue her within this case multiple times for

15  it to come under 1927 or for this Court to be able to exercise

16  its inherent authority.  Now, that's not what the case law --

17  and they string-cite a bunch of cases.  When you look at

18  them -- and I raise this in my reply -- when you look at those

19  cases they all deal with courts dealing with multiple

20  proceedings and looking at a course of conduct because it makes

21  no sense if you can't look at a course of contact.  It gives

22  carte blanche to defendants to bring multiple lawsuits in

23  multiple venues.

24         What the case law does say, and I agree with them and

25  we did not seek it, is that the court that has it before it can

1    only deal with the legal fees and the damages that arise in

2    this proceeding both on issues of comity, on issues of

3    jurisdiction, and for a whole host of other reasons and we

4    didn't seek those damages.

5         THE COURT:  One is the question arguably of what is

6    the proof and another is a question arguably of what are the

7    damages.

8         MR. ROSEN:  Right.  And you can't -- and we -- so we

9    raise all of those issues as to the proof of what the intent

10   was in doing this and the multiple actions are not the actions

11   within this lawsuit; they are the multiple lawsuits against my

12   client in different cases.  That is the activity complained of

13   against my client and against other trustees.  The other

14   trustees I do not represent, but it is there as proof of intent

15   and it is there as proof of a course of dealing with doing this

16   even though prior judges have said, you can't.  It is not a

17   legal -- it is not legally permissible and even if prior judges

18   didn't say that.  It's black letter law and abusive process.

19   And we've been involved in this for a year.  I still have no

20   idea what the constitutional tort is.  Just alleging a

21   constitutional tort, no basis, no allegations, no nothing.

22        The other issue raised in the papers and, again, I'll

23   lay this one -- this one was also clearly written not by

24   Mr. Dahiya -- was the argument that my client had to go through

25   the process of bringing a 9019 -- bringing a 9011 letter,

1   making the demand, having the motion to dismiss made, and go

2   through all these steps, all of which would have caused her to

3   have her carrier do it because, as you know, if you take

4   actions on your own once you've reported something to your

5   carrier it voids your coverage.  You have to get their okay.

6   You have to do the counsel.  You have to go through the

7   retainer.

8          So what their argument is that she had to suffer the

9   exact harm that they were using as leverage against her in

10  order to be able to have the cause of action against him.  She

11  had to make her situation that much worse where she went

12  through her retainer.  They had to pay out under attorney's

13  fees instead of resolving it the way she did.

14         And interestingly enough, they make much in their

15  papers of talking about the fact that Mr. Dahiya gave

16  adjournments.  Yeah, he gave adjournments but he kept

17  conditioning those adjournments on attempting to try and get a

18  settlement because he knew exactly what her predicament was.

19  He knew exactly what he was doing and the harm it was going to

20  cause.

21         So, Your Honor, in terms of the factual issues that

22  are here now, I think he's already admitted his intent.  If we

23  need to put him through it on the stand, I'd be happy to do

24  that.  In terms of the Trustee other than me -- and probably

25  only at a damages phase putting in what her actual damages were

1    in terms of what her increased premium is and her increased

2    deductible is, they've already admitted to those issues and

3    she's not on trial here.  What her -- you know, and that came

4    out the last time.

5         So I think we've got legal argument.  I think you've

6    got a couple of decisions to make on the law that's been

7    presented before you which is now fully briefed and that if

8    need be if we think we need an evidentiary record on

9    Mr. Dahiya, I'm prepared to call him on adverse direct either

10   today or whenever you want to do it and go forward with it.

11   And that I think I have covered what I wanted to say on this.

12        THE COURT:  The matter before the Court is the

13   Trustee's motion pursuant to 28 U.S.C. §1927.  Questions framed

14   by the record, as I've tried to piece it together, and there's

15   a big picture and then there is my job, which is to focus on

16   the motion -- my precise job to answer the question posed by

17   the motion whether sanctions pursuant to §1927 should be

18   imposed.  These questions seem to me to include, but

19   undoubtedly are not limited to whether or not Bankruptcy Court

20   has the ability to hear and determine the 1927 motions --

21        MR. ROSEN:  Well, that --

22        THE COURT:  -- which I believe I have addressed in my

23   own decisions -- reported decisions in favor of jurisdiction in

24   the Bankruptcy Court --

25        MR. ROSEN:  Your Honor --

1          THE COURT:  -- the ability of the Bankruptcy Court --

2          MR. ROSEN:  And one point on that.  One of the things

3     that is so ludicrous about these papers is that in that section

4     when they are addressing the issue of the -- what's the axe,

5     all of those cases deal with -- both out of this Circuit and

6     out of the Third Circuit deal with the fact that the Bankruptcy

7     Court has jurisdiction to hear the matter.

8          As a matter of fact, the main case they relied upon,

9     the Bankruptcy Court originally ruled that they didn't have

10    jurisdiction for a different reason.  It went up to the Third

11    Circuit.  I gave the cites in the papers.  And the Third

12    Circuit decided, by the way, they didn't talk about whether or

13    not they have jurisdiction to do it in the first place because

14    they turned it down, but we're *sua sponte* telling you, you're a

15    division of the District Court and you've got jurisdiction to

16    do it.

17         THE COURT:  All right.

18         MR. ROSEN:  And --

19         THE COURT:  So there's that question --

20         MR. ROSEN:  And, Judge Peck's --

21         THE COURT:  -- can I even --

22         MR. ROSEN:  -- decision says he has jurisdiction.

23    Judge Morrison's decision says he has jurisdiction, the Second

24    Circuit.  There's definitely a split in the circuits, Your

25    Honor, but we're not one of the circuits that says you can't do

1  it.

2          THE COURT:  No.  It does -- it does seem that within

3  this Circuit that question is rather clear.  But, you know, I'm

4  open to any argument supported by the existing law or a

5  reasonable basis -- a well-founded argument in support of a

6  change in the law, and I have in mind the historical

7  characterization of what the standard under Rule 11 was, Rule

8  9011, but so there's that question.

9          There's another question in the context of 1927 which

10  addresses and has addressed for a long time -- a long time it's

11  been on the books -- the multiplication or vexatious

12  multiplication of proceedings.  And here I find two

13  inconsistent strains in the argument in general:  one seems to

14  be whatever you do, Judge, you can't look at other cases where

15  this counsel's behavior has been called into question or raised

16  issues and to which the Trustee points here on the one hand; on

17  the other, you can't vexatiously multiply proceedings.  This is

18  only one proceeding.

19          I think I can navigate those waters.  I'm comfortable

20  that I understand the meaning of 1927 and based on my

21  experience on the bench I think I can interpret and apply those

22  words.  I think this is one of the jobs that the section gives

23  to judges to hear the record and to determine whether those

24  nouns and adjectives -- and you don't find a lot of sections

25  that use both -- whether they have been met -- whether that

1    standard has been met.

2         So I'm -- you know, I need to understand that better,

3    but I don't yet see in the arguments before me from Mr. Dahiya

4    and his counsel, and I do want to understand better, who is

5    representing Mr. Dahiya here and why I'm still receiving papers

6    filed this week saying, in effect, Mr. Dahiya is *pro se*.   I

7    don't understand that.   There are professionalism issues that

8    now affect more than one counsel, I think.   But I -- if as it

9    at least preliminarily appears to me, the question is simply,

10   how do you apply a difficult standard, then I think I can do

11   that.

12        So another potential legal question, but a legal

13   question that I think may really come down to simply

14   articulating the standard what needs to be established here, I

15   was asking myself, do I have jurisdiction; if yes, what's the

16   cause of action; state it; what are the elements; what's the

17   record.   I don't know why I should be doing different than that

18   here.

19        So moving to the next question arguably raised as a

20   legal or structural matter on how to proceed, it seemed at our

21   prior hearing that there was at least a prospect of disputed

22   issues of fact.   It seems to me that the -- in general, the

23   point in time that consequences attached is not a hindsight

24   inquiry, but a -- it's not clear to me it's a benefit of

25   hindsight so much as an inquiry to maybe looking at what was

1    done at the time it was done.  I appreciate that litigation

2    steps may well be taken in part for strategic reasons, but

3    there is an outer boundary defined by 28 U.S.C. §1927 by

4    standards of practice, by the professionalism rules that all

5    lawyers are under.  And by this Court's inherent authority to

6    oversee the practice of the Court before it that that does set

7    some standards.

8            Not every tactical move can be taken consistent with

9    §1927 and sound practice.  And I think those courts and I

10   expect in this courtroom lawyers feel free and welcome to

11   pursue the zealous advocacy that they are required to pursue as

12   professionals on behalf of their clients, but zealous advocacy

13   is not a license to say or do absolutely anything.  And to the

14   extent that the line is crossed, we're no longer looking at

15   zealous advocacy; we're looking at violation of statutes and

16   professional standards.  It is not persuasive advocacy to

17   advance claims or arguments strategically or tactically that

18   are utterly unfounded in the law and simply presented with --

19   whether with or without the appropriate research for purposes

20   of tipping the balance on inappropriate grounds in favor of the

21   lawyer or the client.  This is the framework within which every

22   lawyer practices in this and every other court and rarely, but

23   occasionally, it's a framework we have to look at closely, make

24   sure it hasn't been undermined.

25           So those are some of the things I'm thinking about.

1   I see from the papers that there may be disputed facts, we may

2   need to make that record.  We will do it.  I remain very

3   interested from a case management standpoint and also from a

4   sense of responsibility to the process to hear from the parties

5   about the kind of remedial steps.  There may be a better word,

6   adjective, that could be taken to address the situation that

7   gave rise first to the concern and then to the motion.  The

8   Trustee and her counsel made clear that this wasn't something

9   that was done the first time or even the second time that these

10  concerns arose and I appreciate that.  I appreciate the

11  forbearance and I also appreciate what became ultimately the

12  decision to make this motion and pursue these issues, so --

13          MR. ROSEN:  Your Honor, I would make one more point

14  and then I'll sit down and let the others have their chance.

15          Judge, one of the cases they cite -- or actually one

16  of the cases that -- Shattof [Ph.] that they cite, the

17  interesting cases again which Judge Peck dealt with with

18  similar issues, albeit he didn't do it under 1927 because the

19  attorney was disbarred so he did it under 105, which it says

20  is -- mirrors the provisions of that.  But then he sent it over

21  and I looked at -- gave the cites to Judge Winfield's decision

22  who did what we -- who provides you with the statute -- well,

23  the case authority at least to do exactly one of the things we

24  asked.

25          THE COURT:  Judge Winfield in the District of New

1    Jersey?

2              MR. ROSEN:  Yes.

3              THE COURT:  Okay.

4              MR. ROSEN:  Yeah.  Where she was dealing with -- I

5    mean, this was a serial file or a disbarred attorney who

6    filed -- he filed in the Eastern District before -- in the

7    District Court, he filed in the Southern District.  He violated

8    her injunctions not to file anywhere and she listed a rather

9    extensive injunction which is actually authority for the type

10   of injunctive relief that we requested in the motion, which is

11   the remedial portion to make sure that, you know, this can't

12   happen without prior consent of the Court, if he's going to sue

13   a trustee that there has to be made a showing.

14             You know, he can do what he has to do to represent

15   his client.  He just has to make the showing that it's required

16   before putting a trustee in that position, as well as the

17   expense.  I mean, the fact of the matter is, the creditors in

18   this particular case should not bear the expense of this.  I

19   mean -- and I do -- and I am leaving that out of my discussions

20   in attempting to resolve the underlying case.  She said they're

21   not connected, but they are.  I'm trying not to make those

22   parties pay for their first choice of counsel for having run up

23   the bills and now have to get paid so that there can be a

24   distribution to creditors.

25             I'll sit down, Your Honor.  I probably had some more,

1   but --

2          THE COURT:  All right.  No.  I'm sure and -- it's --

3   I'm not asking either side to begin, never mind the end of

4   their argument on the merits here.

5          Mr. Greenwald, please, I need you up to the podium.

6   I need to hear from you and I have some questions for you.

7   First of all, good afternoon.  You have a lot of matters going

8   on this afternoon.

9          MR. GREENWALD:  Good afternoon, Your Honor, and --

10          THE COURT:  My goal is to make progress on each and

11  all of them.

12          MR. GREENWALD:  And thank you for your flexibility on

13  the calendar this afternoon.

14          THE COURT:  We're doing our best.

15          MR. GREENWALD:  Thank you.  I guess, let me state

16  preliminarily there are questions about the papers and my

17  involvement.  If Your Honor wants to save that for another day,

18  fine; if Your Honor wants me to do -- to respond to them now,

19  I'm glad to do that.

20          THE COURT:  Did you file the papers that were

21  filed --

22          MR. GREENWALD:  I did not file them.  Mr. Dahiya

23  filed them.

24          THE COURT:  Did you write the papers?

25          MR. GREENWALD:  I edited a portion of them, Your

1  Honor.

2          THE COURT:  Did you write the papers?

3          MR. GREENWALD:  I did not write them.  I did edit

4  them.

5          THE COURT:  Are you counsel for Mr. Dahiya?

6          MR. GREENWALD:  I am now counsel for Mr. Dahiya, yes.

7          THE COURT:  What is your understanding as to the

8  ability of a client to file papers --

9          MR. GREENWALD:  He is --

10          THE COURT:  -- when they're represented by counsel?

11          MR. GREENWALD:  He is still -- he was -- he's still

12  an attorney here and he's still a party in the case and he

13  had --

14          THE COURT:  Answer my question, please.  I apologize

15  for the interruption, but I'm aware of the --

16          MR. GREENWALD:  I understand.

17          THE COURT:  -- record -- facts.

18          MR. GREENWALD:  Mr. Dahiya had access to ECF and I

19  was unable to file them by 4:00 o'clock.

20          THE COURT:  Does that explain why he signed them,

21  too?

22          MR. GREENWALD:  No.  I did not -- I did not fully

23  review the papers, Your Honor.  As a matter of fact, I did

24  not -- I mean, I did not write them, but I did get to review

25  and make some edits on them.  Mr. Dahiya also did not write

1    them, although he did get a chance to edit them as well.

2             Considering --

3             THE COURT:  Did any lawyer write them?

4             MR. GREENWALD:  Oh, yes.  Yes, Your Honor.

5             THE COURT:  What is your role in the case, as you see

6    it?  Is your firm counsel to Mr. Dahiya or are you just going

7    to make editing comments on briefs --

8             MR. GREENWALD:  Your Honor --

9             THE COURT:  -- from time to time written by other

10   people and filed by your client?

11            MR. GREENWALD:  Your Honor, at this point on

12   considering how -- considering how these papers were done we

13   will -- I will do that.  What had happened, Your Honor, if I

14   may --

15            THE COURT:  You will do what?

16            MR. GREENWALD:  I will make sure that I write the

17   papers, that I file the papers, that I'm the one responsible

18   because -- Your Honor, if I may, there are several people who

19   are involved, friends of Mr. Dahiya, who were involved in his

20   defense and they had undertaken to write the papers.  And I

21   agreed to do some research and had done research, had agreed to

22   argue and go to trial if necessary, but I was under the

23   Division of Labor, for lack of a better term.  I was not

24   responsible for writing them, but -- Your Honor, I'm being

25   candid with Your Honor.

1        THE COURT:  I appreciate it.  Are you aware of our

2   court's rule on limited representation --

3        MR. GREENWALD:  I --

4        THE COURT:  -- and retention of counsel?

5        MR. GREENWALD:  Your Honor --

6        THE COURT:  Would you represent any other client this

7   way, Mr. Greenwald?  Or would Cuevas and Greenwald be retained

8   in a situation where your bankruptcy client was going to get a

9   team together to submit papers and file them themselves and

10  maybe you'd --

11       MR. GREENWALD:  Your --

12       THE COURT:  -- edit them if you had time?

13       MR. GREENWALD:  Your Honor --

14       THE COURT:  Is that how you practice, Mr. Greenwald?

15       MR. GREENWALD:  No, I do not, Your Honor.

16       THE COURT:  Understand that you have accepted a

17  retention to defend questions of professionalism, but I must

18  say I'm not sure you're getting off to the best start.

19       MR. GREENWALD:  Your Honor, I'm not --

20       THE COURT:  I say that not trying to be funny, not

21  trying to trivialize the issues here.  I think it is important

22  to get people's attention in a way that we perhaps do not have

23  it yet as to what is expected as a matter of standards of

24  practice.  What is leverage and what is advocacy?

25       MR. GREENWALD:  Your Honor, what I did was not for

1    the purposes of leverage or accuracy.  It was for the purpose

2    of meeting a deadline.

3           In terms of my own practices, Your Honor, I adhere

4    vigorously to Rule 11, which is one of the reasons since I did

5    not get to read the entire document and revise it that I could

6    not in good faith sign it.

7           THE COURT:  Oh, of course, it begins under Dahiya and

8    the Dahiya law offices or when counsel respectfully submits

9    this statement, so it's not written for you to submit either.

10          MR. GREENWALD:  You're right.

11          THE COURT:  I think you need to consider carefully at

12   your firm what exactly you've undertaken --

13          MR. GREENWALD:  Your Honor --

14          THE COURT:  -- and whether this is an appropriate

15   retention for your firm.

16          MR. GREENWALD:  Your Honor, I appreciate the

17   admonition.  I really do.

18          THE COURT:  It's not an admonition.  It's a request.

19          MR. GREENWALD:  Well, I look at it this way.  I

20   believe it is criticism that I'm taking -- I hope Your Honor

21   can see -- very much to heart and making commitments as a

22   result of it.  And I apologize to the extent that I offended

23   anyone.

24          THE COURT:  It's not a question of offense.  It's a

25   question of whether --

1          MR. GREENWALD:  I understand, but I'm saying or

2   offended any rule --

3          THE COURT:  -- you're meeting the standards --

4          MR. GREENWALD:  I understand.  Any --

5          THE COURT:  -- and the standards of practice that --

6          MR. GREENWALD:  Your Honor, I understand what you're

7   saying.  And I think Your Honor would agree that in just about

8   every other situation this has never occurred.

9          THE COURT:  This situation does stand alone in many

10  respects.

11         MR. GREENWALD:  And it will not reoccur in this case.

12  There was a delegation which did not occur and I will take

13  responsibility for it, Your Honor.

14         THE COURT:  Well, I've framed the quest -- I've

15  identified some of the questions.  I don't think I can say that

16  I have yet managed to frame them in the clearest way possible,

17  but do you stand on your argument that I do not have

18  jurisdiction to hear or the ability to hear a motion for relief

19  under 28 U.S.C. §1927?

20         MR. GREENWALD:  Your Honor, I see it as a question.

21         THE COURT:  I need to know -- I need to know what

22  your -- what your argument is.

23         MR. GREENWALD:  There is --

24         THE COURT:  To con --

25         MR. GREENWALD:  There is a division -- I recognize

1    that there is a division in the circuits as to whether or not

2    a Bankruptcy Court is a court of the United States as to

3    whether or not it has jurisdiction and I recognize that there's

4    a division in the circuits.

5            THE COURT:  Is there controlling law in this Circuit?

6            MR. GREENWALD:  The controlling law in this Circuit

7    would say that Your Honor does have jurisdiction.

8            THE COURT:  Would it therefore at least arguably be

9    reversible error for me to find otherwise?  Mr. Greenwald,

10   you're --

11           MR. GREENWALD:  Your Honor --

12           THE COURT:  So you've just told me there's

13   controlling law that I have jurisdiction.

14           MR. GREENWALD:  Your Honor --

15           THE COURT:  Let me move to my next question.  Does

16   Mr. Dahiya continue to argue that I do not because I'll take

17   that issue first.  You know, if I don't have jurisdiction --

18           UNKNOWN SPEAKER:  Your Honor --

19           THE COURT:  I need to hear from one lawyer at a time.

20           MR. GREENWALD:  Thank you.  May I speak with

21   Mr. Dahiya?

22           THE COURT:  Of course you may.  Well, you may confer

23   with your partner and also with your client.  And I'll --

24   whatever you position is, it is.  I'll do whatever is

25   appropriate in response.  And I have some questions for you if

1   I don't have -- if your view is that I don't have the ability

2   to hear it, is it subject matter jurisdiction?  Can I write

3   report and recommendation?  Are you going to withdraw the

4   reference?  Would you like me to send you *sua sponte* to the

5   chief judge of the District Court on this issue?  You want to

6   take this issue up over there?  I need to understand what the

7   consequences are of your position, if that is your position and

8   it's -- you're just having acknowledged that the controlling

9   law in this Circuit --

10              MR. GREENWALD:  That question is just --

11              THE COURT:  -- supports it.

12              MR. GREENWALD:  But I do -- there's no question as to

13  controlling law of the Circuit.  Your Honor had asked does it

14  mean that you'd be reversed on appeal, I don't know.

15              THE COURT:  I did not ask you that nor would I ever

16  ask a lawyer that.

17              MR. GREENWALD:  I'm sorry.

18              THE COURT:  Mr. Greenwald, you may confer.

19              MR. GREENWALD:  I thought I --

20              THE COURT:  You've asked for the opportunity to

21  confer.

22              MR. GREENWALD:  I thought that's what I heard, Your

23  Honor, and the answer is, I don't know.

24                    [Pause in the proceedings.]

25              THE COURT:  Mr. Greenwald, do you think it makes

1    sense to go off the record?  I am happy to go off --

2            MR. GREENWALD:  Your Honor --

3            THE COURT:  -- if it will be productive.  I'm not

4    trying to point in one direction or another.  I just -- as I

5    said, there's a sequence of questions here, and the first is,

6    you've made the argument, your client has made the argument

7    that I don't have the ability to proceed.

8            MR. GREENWALD:  Your Honor, I'm grateful for the

9    opportunity and the considerations.  I have spoken with my

10   client and with Mr. Cuevas and the issue in terms of

11   jurisdiction -- yes, I understand Cahos [Ph.] is Second Circuit

12   law.  However, there's a question of the impact of Stern v.

13   Marshall on the issue of jurisdiction under 19 -- of over 1927

14   proceeding.

15           So Mr. Dahiya -- and you'll correct me if I'm

16   wrong -- believes that --

17           THE COURT:  You're his counsel.

18           MR. GREENWALD:  I'm his counsel.  Mr. Dahiya takes

19   the position that the Court does not have jurisdiction over

20   this motion.

21           THE COURT:  You're counsel.  I need to know what the

22   position is.

23           MR. GREENWALD:  I am saying that as a result of Stern

24   v. Marshall there's a question -- a good-faith question as to

25   what the Second Circuit would do with respect to its decision

1    in Cahos.

2              THE COURT:  Just --

3              MR. ROSEN:  Your Honor, may I make one point?

4              THE COURT:  Sure.  Is that in your papers?

5              MR. GREENWALD:  Is that in our papers?  I believe it

6    is, Your Honor.

7              THE COURT:  Could you tell me where?  Mr. Greenwald,

8    could you tell me where, please?

9              MR. GREENWALD:  I'm getting a copy of the papers,

10   Your Honor --

11             THE COURT:  Thank you.

12             MR. GREENWALD:  -- so I can respond to the question.

13             THE COURT:  All right.

14             MR. GREENWALD:  Thank you.

15             MR. ROSEN:  Your Honor, while he's getting the

16   papers, one minor point.

17             THE COURT:  Yes.

18             MR. ROSEN:  Even if they're right, as I've pointed

19   out in my papers, they've waived it by requesting sanctions.

20   They can't invoke this Court's equitable jurisdiction to award

21   sanctions at the same time they're saying the Court does not

22   have jurisdiction.

23             THE COURT:  That certainly was an issue in the Stern

24   case.

25             MR. GREENWALD:  Okay.  Your Honor.

1              THE COURT:  Yes.

2              MR. GREENWALD:  On page 15 at the bottom.

3              THE COURT:  Of which page -- of which one of your

4    papers?

5              MR. GREENWALD:  On the -- on the last set of papers

6    that we provided to the Court.

7              THE COURT:  Do you know what the number is on the

8    docket?  That's the papers filed by Mr. Dahiya?

9              MR. GREENWALD:  Response of Karam Dahiya and Dahiya

10   Law Offices and that's on the bottom of page 15.

11             THE COURT:  All right.  Doesn't that mean I can issue

12   a report and recommendation?

13             MR. GREENWALD:  I believe that you can, Your Honor.

14             THE COURT:  They wouldn't object to that, that if you

15   believe that I can.  Do you -- so is it -- does it address that

16   issue fully if I say I believe I have the jurisdiction and to

17   the extent I don't following the logic of some of the Local

18   Rule amendments that have been adopted around the Circuit I can

19   explicitly find in the absence of such a Local Rule here that

20   to the extent it is construed by a reviewing court that I did

21   not, then I deem these to be report recommendation?  I don't

22   think you've made a motion to withdraw the reference, have you?

23             MR. GREENWALD:  No, there is no --

24             THE COURT:  Do you want to be in the Dist -- do you

25   want this issue in the District Court, Mr. Greenwald?

1          MR. GREENWALD:  Mr. Dahiya has expressed his desire

2    to have it heard in District Court, Your Honor.

3          THE COURT:  I'm not sure who I'm talking to,

4    Mr. Greenwald.

5          MR. GREENWALD:  Your Honor, I have --

6          THE COURT:  Your position is that you would like to

7    be in the District Court on this issue.

8          MR. GREENWALD:  Yes.

9          THE COURT:  Okay.  Well, that's good for me to know.

10   I'll think about whether there is some sort of direction that

11   should be made simply to transfer it.  It might be appropriate

12   to the extent that that court also supervises our Bar and there

13   are professionalism issues here of many types.  And I would --

14   if I issue some sort of *sua sponte* order if I have the

15   jurisdiction to do that, and I don't know, I would be spelling

16   out all of the issues that I think need to be addressed because

17   I think there are many.

18          But let's step back from that for a moment.  You've

19   indicated that you -- while you dispute that I have

20   jurisdiction, you do not dispute that I would have the ability

21   to issue important recommendation, proposed findings and

22   conclusions.  Is that right?

23          MR. GREENWALD:  I do not dispute that, Your Honor.

24          THE COURT:  All right.  And I take it that to the

25   extent that courts have found that consent that Stern v.

1    <u>Marshall</u> does not modify the consent jurisdiction of the

2    Bankruptcy Court to issue a final judgment as a unit of the

3    District Court would your client consent to this Court entering

4    a final judgment on this motion?

5              MR. GREENWALD:  Forgive me, Your Honor.  Your

6    question was?  I'm sorry.

7              THE COURT:  Do you consent -- to the extent that

8    there is an issue under <u>Stern v. Marshall</u> or under -- of

9    jurisdiction the law as articulated I -- be it not so much as

10   subject matter jurisdiction but its ability to enter a final

11   judgment would your -- do you consent assuming for purposes --

12   assuming that I do not -- and I don't know that I have reached

13   that conclusion -- do you consent to this Court entering a

14   final judgment?

15             MR. GREENWALD:  If I may confer with my client --

16             THE COURT:  Please --

17             MR. GREENWALD:  -- briefly, Your Honor.

18             THE COURT:  Please.

19             MR. GREENWALD:  Thank you very much.  Actually, Your

20   Honor had offered us an off-the-record moment before.  May we

21   have that again?

22             THE COURT:  Okay.  We can go off the record.

23   (Off the record at 3:24 p.m.)

24   (Back on the record at 5:00 p.m.)

25             THE CLERK: Second call on the matters of <u>Kramer v.</u>

1    <u>Mahia</u>.

2         MR. ROSEN: You're batting a thousand today, Your

3    Honor.  We have a proposed settlement that I will briefly put

4    on the record and then we will -- I would ask for a control

5    date and we'll paper it up.  All right.

6         THE COURT: Thank you.

7         MR. ROSEN: The settlement is fairly short and sweet.

8    Mr. Dahiya and the Dahiya Law Offices will agree that they will

9    not bring any action against any standing Chapter 7 Trustee in

10   the Eastern District without getting prior approval of the

11   Court on notice to the party.  He has agreed that, and we have

12   agreed to accept and I'll apportion it between my firm and the

13   Trustee -- we'll put that in the stipulation -- to pay the sum

14   of $10,000.00 for the costs of the motion and that will be

15   payable at the rate of $500.00 a month until it is paid off.

16        There will be a confession of judgment.  I don't want

17   to keep this case open for the two years.  So they'll be a

18   confession of judgment for that for the sum of $20,000.00 in

19   case there is a default in either the injunctive provisions or

20   in the monetary provisions.  There will be appropriate notice

21   in cure periods in that it will work out.  If they want ten

22   days that's fine.  We'll do that matter and that will resolve

23   this motion.

24        I'd just like counsel to acknowledge that those are

25   the basic terms and -- so that we know we have a record on

1    that.  Then if you can give us a date out a couple of weeks so

2    we can -- this don't require a 9019.

3              THE COURT: Tell me the date that --

4              MR. ROSEN: I don't think it's a resolution of a -- if

5    we can just do a stipulation and order.

6              THE COURT: I think that's right.  If you don't -- so

7    you need a date for the pretrial but not a further date on

8    the --

9              MR. ROSEN: Right.  Well, no, the pretrial I'm going

10   to call you.  I'll work that out.  I just want a control date

11   on this motion to make sure that --

12             THE COURT: Just --

13             MR. ROSEN: To make sure it gets done.

14             THE COURT: Okay.  First of all, Mr. Greenwald, can

15   you confirm what Mr. Rosen has said?

16             MR. GREENWALD: Your Honor, I do.  I'm just not quite

17   sure if whether I heard one other point that we had talked

18   before, that in the event there is a default on either there

19   will be a ten day notice and cure period.

20             MR. ROSEN:  Yes, I said that.

21             MR. GREENWALD: I wasn't sure whether you did or you

22   did not.

23             THE COURT: I didn't hear the ten days but I heard the

24   notice and cure and I think the kind of language I look for

25   must very familiar by now that before a self executing

1  provision self executes as I -- it won't be self executing.  It

2  will be a serving and filing of an affidavit, an affidavit of

3  non compliance and proposed final order which may be entered

4  without further notice or opportunity to be heard.  So

5  something like that but we're now far down the road.

6          MR. ROSEN: My only problem on that, Your Honor, on

7  this one -- we can try and work that out.  I don't want to have

8  to spend the money to reopen the case because the case is -- if

9  it happens far enough down the line this case is going to be

10 closed and down, final report will be filed, it will be done.

11         THE COURT: Hopefully there can be a way to reflect

12 that in what would be in the final order -- in the proposed

13 order that would be submitted that will come to me.  Is this --

14 what is the time period?  Is this a forever injunction?

15         MR. ROSEN: Well, it's -- I was planning for it, yes.

16         THE COURT: So there will come a time where I may no

17 longer -- if it's twenty to thirty years down the road it's a

18 question of who retires first I suppose.

19         MR. ROSEN: That's right.

20         MR. DAHIYA: I disagree it's a lifelong -- people,

21 minorities are suffering.

22         THE COURT: Mr. Dahiya, I encourage you to take your

23 lawyer's advice.  Have a seat.

24         MR. DAHIYA: Yes, Your Honor.

25         THE COURT: Any order of a court is subject to further

1    order of the court.  I would not resist agreeing to what may

2    well be required by law in all events as I understand the law

3    in this Circuit.  I know this is not easy but I urge you to

4    not -- to reflect as opposed to react to what you are hearing.

5    All right.

6               MR. DAHIYA: As an officer of  the Court I should be

7    given a chance to voice my concern.

8               THE COURT: Mr. Dahiya, you're a client.  You're a

9    client.

10              MR. DAHIYA: I'm an officer of the Court also, Your

11   Honor.

12              MR. ROSEN: Today you're a client.

13              THE COURT: Mr. Rosen, I'll look for whatever you

14   submit, whatever the parties submit.  We do obviously need a

15   control date in every matter if it's unresolved and the control

16   date I'm going to suggest it will be October 23rd at 9:30.  Does

17   that work?

18              MR. ROSEN: 9/23 --

19              THE COURT: Ten, October.  October.

20              MR. ROSEN: 10/23.  I lost a month there.  Sorry, Your

21   Honor.  At 9:30?

22              THE COURT: 10/23 at 9:30.  All right.

23              MR. ROSEN: Thank you, Your Honor.

24              THE COURT: Thank you very much.

25              MR. DAHIYA: Can I be heard, Your Honor?

1          THE COURT: No, the matter -- we're done.  Mr.

2   Dahiya --

3          MR. DAHIYA: Just one thing, Your Honor.

4          THE COURT: Mr. Dahiya, you have lawyers representing

5   you.

6   (Off the record at 5:06 p.m.)

7                          * * * * *

41

1     I certify that the foregoing is a court transcript from an

2 electronic sound recording of the proceedings in the above-

3 entitled matter.

4

5                        _____

6                        Ruth Ann Hager, C.E.T.**D-641

7 Dated:    October 31, 2012