1    UNITED STATES BANKRUPTCY COURT

2    EASTERN DISTRICT OF NEW YORK

3    Case No. 10-46901(ESS)

4    Adv. No. 11-01520(ESS)

5    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

6    In the Matter of:

7    SHAHARA KHAN,

8              Debtor.

9    - - - - - - - - - - - - - - - - - - - - - - - - - - - x

10   KRAMER AS TRUSTEE OF THE ESTATE OF SHAHARA KHAN,

11                 Plaintiff,

12             v.

13   MAHIA, ET AL,

14                 Defendants.

15   - - - - - - - - - - - - - - - - - - - - - - - - - - - x

16                 U.S. Bankruptcy Court

17                 Conrad B. Duberstein U.S. Courthouse

18                 271 Cadman Plaza East

19                 Brooklyn, New York

20                 November 30, 2012

21                 1:42 PM

22

23   B E F O R E :

24   HON ELIZABETH S. STONG

25   U.S. BANKRUPTCY JUDGE

1

2    Hearing re:  [15] Motion for Sanctions Under USC 28 Section

3    1927 Attorney Liability for Excessive Costs

4

5    Hearing re:  [42] Telephonic Conference (RE: related

6    document(s) 41 Letter filed by Counter-Defendant Debra

7    Kramer as Trustee of the Estate of Shahara Khan, Plaintiff

8    Debra Kramer as Trustee of the Estate of Shahara Khan)

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25    Transcribed by:  Jamie Gallagher

```
 1   A P P E A R A N C E S :

 2   THE LAW OFFICES OF AVRUM J. ROSEN, PLLC

 3        Attorney for Debra Kramer, the Chapter 7 Trustee

 4        38 New Street

 5        Huntington, NY 11743

 6

 7   BY:  AVRUM J. ROSEN, ESQ.

 8

 9   DAHIYA LAW GROUP, LLC

10        Pro Se

11        350 Broadway

12        Suite 412

13        New York, NY 10013

14

15   BY:  KARAM VIR DAHIYA, ESQ.

16

17   ALOMAR & ASSOCIATES, P.C.

18        6089 Myrtle Avenue, #A

19        Ridgewood, NY 11385

20

21   BY:  KARINA ALAMAR, ESQ.

22

23   ALSO APPEARING:

24   DEBRA KRAMER, ESQ.

25
```

1                    P R O C E E D I N G S

2              THE COURT:  Get your appearances on the record,

3     please?

4              THE CLERK:  Number 66 and 67 on the calendar,

5     Kramer versus Mahia, adjourned conference and adjourned

6     motion for sanctions.

7              MR. ROSEN:  Good afternoon, Your Honor.  Avrum

8     Rosen, counsel for Debra Kramer, the Chapter 7 trustee.

9              MS. KRAMER:  Debra Kramer, the Chapter 7 trustee.

10    Good afternoon.

11             MR. DAHIYA:  Good afternoon, Judge.  Karam Dahiya

12    appearing pro se.

13             THE COURT:  All right.  We're here on the

14    trustee's motion to -- for sanctions as indicated in the

15    record.  This has been fixed as the date for the hearing on

16    that motion including, if necessary, in the minds of the

17    parties any evidence.

18             Mr. Rosen, please proceed.

19             MR. ROSEN:  Thank you, Your Honor.

20             Your Honor, I would like to take a moment if I may

21    so we --

22             MR. DAHIYA:  May I get a chance to speak just

23    briefly?

24             THE COURT:  It's Mr. Rosen -- it's the trustee's

25    motion.  I want to hear from the movant first.

1           MR. DAHIYA:  Okay, that's fine.

2           THE COURT:  Thank you.  Thank you, Mr. Dahiya.

3    You'll have the time you need to respond.

4           MR. ROSEN:  Your Honor, I just want to -- there

5    have been a lot of -- in the last couple of days, there have

6    been a lot of papers flying back and forth, and letter

7    motions, and other types of things.

8           I had a letter going out, actually, before you

9    issued the decision yesterday, and -- which I obviously

10   agree with in terms of proceeding today.

11          I just also wanted to supplement the record since

12   I anticipate an appeal in this matter to point out one other

13   point that was not -- that was not raised.  And that is

14   Bankruptcy Rule 5011, which controls proceedings when a

15   notice of removal is filed and expressly says that it has --

16   does not stay any action pending in the bankruptcy, unless a

17   motion, and not a letter, a motion is made in the first

18   instance to the bankruptcy judge requesting that release --

19   relief on certain grounds.  And then if that is denied at

20   that level, then it can be made to the District Court.  But

21   over and above that, the bankruptcy rules require the motion

22   to go forward.

23          So, I just wanted the record -- in addition to the

24   reasons Your Honor put in -- on the decision, I wanted the

25   record to be supplemented that I wasn't going to put up a

1    letter after you had already decided.  I was literally about

2    to file it as your decision hit the screen.

3              THE COURT:  It seemed to me important to give the

4    parties some clarity as to whether it -- how were proceeding

5    the filing at the -- of the November 29th letter by

6    Mr. Dahiya posed at a late stage the question of whether

7    there should be an adjournment.  I assume you mean, there

8    has been more than one order entered of late.

9              MR. ROSEN:  No, I mean the one before that in

10    response to the letter from his special counsel --

11             THE COURT:  Special counsel.

12             MR. ROSEN:  -- who is -- the one a couple of days

13    earlier that --

14             THE COURT:  Yes.  That would --

15             MR. ROSEN:  So that's what I'm speaking to.

16             THE COURT:  Number 56 on the docket.

17             MR. ROSEN:  Yes.  All right.  So, and you issued,

18    I think, a memo endorsed on the letter, a decision --

19             THE COURT:  Yes.

20             MR. ROSEN:  -- saying that it would go forward.

21    And this is just an additional reason why that request was

22    not a proper request, was not in proper form, and why the

23    contents of that letter were incorrect in that the filing of

24    a motion to withdraw the reference, even if it were

25    appropriate in this case, which I don't think it was, does

1    not stay the proceeding absent a court order that says it

2    does.  All right?  So, there was that issue.

3         The second issue, Your Honor, this morning I got

4    the beep on my blackberry and went and looked on the

5    computer, I saw you issued an order on the jury demand.  And

6    in addition on that decision, I would like to supplement the

7    record to point out that the jury demand I had just simply

8    treated, while all of your reasons are also correct, I had

9    treated as a nullity because that would have had to been

10   raised in the first responsive pleading in this motion, and

11   I do not believe that it was either.  It was not --

12        THE COURT:  It's an interesting situation because

13   it's flagging the adversary proceeding, but of course that's

14   a different matter concerning different parties.

15        MR. ROSEN:  Correct, Your Honor.  So, with those

16   two things said, Your Honor, today how I think we should

17   proceed and you are, of course, the one who will tell me.

18   We previously prepared in this matter, when Mr. Dahiya still

19   had counsel, the pre-trial statements were prepared.  They

20   were put in.  We kind of started on all of that.

21        We've put in, in terms of that matter the last

22   time I was on the record, I went through and I'm prepared to

23   do it again.  Mr. Dahiya in his pre-trial statement pretty

24   much admitted, I think, matter of fact, I can go through the

25   paragraphs of ours, admitted all of the relevant allegations

1  that had been set forth in Ms. Kramer's affidavit as part of

2  the motion and that had been put in.

3          And precisely, he admitted paragraphs 1 through

4  14, 16, 17, and 19, which are pretty much all of the

5  operative paragraphs here, and did not deny paragraphs 22 to

6  27, which are the paragraphs that actually lay out what

7  Mr. Dahiya's intent was in terms of bringing these actions,

8  which I think he's been pretty clear in admitting that he

9  did for leverage purposes, which we maintain was not -- were

10  not proper because they were not valid issues of law.

11          So, in terms of how to proceed here, I would like

12  to put in, to the extent that we've got the pretrial

13  statement with all the allegations in, if there's anything

14  there that hasn't been admitted, and put that statement in

15  as a proffer, and if Mr. Dahiya wants to cross-examine

16  Ms. Kramer on anything contained in there, I think that's

17  appropriate.

18          As -- as far as the allegations on damages, I have

19  with me today and will hand up, I ran last night, an updated

20  bill because part of the damages had been my firm's bill for

21  services rendered up through June 1.  I ran the bill from

22  June 2 through today with an anticipation of, I think, two

23  or three hours for this hearing all told, and ran that bill.

24  And I have that bill.

25          And I'm prepared, even though I don't have counsel

1    here, I did not want to bring another attorney from my firm

2    and run up the bill even more.  All right?  I'm prepared to

3    take the stand and be cross-examined without benefit of

4    counsel on any -- if he questions the need, or the amount,

5    or of any of the services.

6              Other than that, Your Honor, I think the legal

7    issues have been briefed and argued many, many times in this

8    case.  I think the -- I don't think there's very much

9    disputed evidence, and that's how I would anticipate

10   proceeding.  Unless you have questions for me, I'll let

11   Mr. Dahiya have his turn.

12             THE COURT:  Well, it's the trustee's motion, you

13   have the burden and what I would foresee proceeding is to

14   invite you to make your record.  And if you'd like to make

15   it by proffer, I think that's generally an acceptable

16   procedure and I think it would be acceptable here if there's

17   an interest in -- if Mr. Dahiya would like to cross-examine,

18   he can do so.  But, I think that's a fine way to proceed.

19             MR. ROSEN:  All right.  I don't know if you want

20   me to make that proffer now or if you want to allow him to

21   be heard with any preliminary matters he wants to raise.

22             THE COURT:  All right.  Well, I -- here's how I'd

23   like to proceed.  You can, understanding that there is no

24   jury, and so you are before a Court who's well familiar with

25   the issues in the case, you can nevertheless make a brief

1    opening statement and Mr. Dahiya the same, and we'll

2    consider whether we need closing argument at the end.

3              So, I'll take your opening statement on the motion

4    and then Mr. Dahiya's.

5              MR. ROSEN:  Thank you, Your Honor.

6              Your Honor, this is a motion that was brought

7    pursuant to Section 19 -- Section 1927, which has been laid

8    out in detail in the papers.  It is based upon the course of

9    dealing of Mr. Dahiya in multiple actions against trustees

10   of bringing actions against those trustees, either without

11   getting Court approval under the Barton doctrine, where

12   appropriate, or basing it upon theories of the law which are

13   completely not supported in well-established case law in

14   these matters under either abuse of process or -- and

15   alleging vague constitutional torts.

16             And in doing it, as we laid out in detail in the

17   papers, in multiple cases, including after a decision was

18   rendered by Judge Trust specifically telling him that such

19   an action does not lie as part of the case in chief when

20   disputing the allegations in an adversary proceeding, he

21   then did it again in an action before Judge Craig.  He did

22   it in -- again in a case before Judge Feller, in which

23   Ms. Kramer was involved.  And he did it again before -- in

24   this Court bringing it -- and admitting in various times

25   before this Court that he does it because of his belief that

1    the Bankruptcy Code should be written other than it is

2    written, and that in terms of his battle for what he

3    perceives, and I don't think it's necessarily based in

4    reality, but in what he perceives as his need to obtain

5    leverage to help people who he believes do not have

6    appropriate leverage.  And the way to do that is to bring

7    lawsuits against trustees, whether they be grounded -- well

8    grounded in law or fact.

9            And, in fact, in the case, in this action, having

10   now sued Ms. Kramer for the second time in a short period of

11   time in an action, he caused -- he caused her damage.  He

12   caused damage in that she was initially dropped by her

13   insurance carrier for having multiple actions, and

14   eventually got coverage but at double the deductible so that

15   each time one of these actions is brought, she now has to

16   lay out, I believe, $5,000 on a deductible instead of $2,500

17   of her own money to defend these actions.

18           He's also brought these actions ignoring the

19   limited quasi-judicial immunity that trustees have.  He's

20   ignored that.  In the performance of their trustee duties,

21   and every single one of these actions has involved a trustee

22   and the exercise of his or her duties.

23           In this action, I think we laid out in sufficient

24   detail that he was given numerous opportunities to withdraw

25   the action.  He knew that if Ms. Kramer made the motion to

1    dismiss the actions, she was going to have to turn it over

2    to her carrier.  She was going to have to incur the expense

3    on the deductible.  And she was going to have -- then have a

4    claim, even if he were -- even, and as it was presumed, I

5    think we all -- everyone one else knew, she was successful

6    on that motion, she would have still been damaged.

7              And I think on various occasions, either the first

8    and perhaps even the second time when we were here, he's

9    admitted as much on the record.  He has said that, you know,

10   he believed that it had to be done for leverage purpose.

11   And that is precisely what the statute is written to

12   prevent.

13             Previously, and I think you ruled on all of those

14   matters, issues were raised as to whether or not it had to

15   be in one proceeding.  Mr. Greenwald (ph) raised that issue

16   and Your Honor, I think, made an oral ruling on that.

17             We went through the issues as to -- well, I take

18   that back.  We -- so in going forward on those issues, it

19   became abundantly clear that Mr. Dahiya both still believed

20   and still intended to go forward with this course of action.

21   Given that circumstance, if this trustee, on her own behalf

22   and to a certain degree on behalf of other trustees, felt

23   the only way she could administer cases if he was one,

24   forced to bear the brunt of the expense for taking these

25   improper actions, and secondly, if he was prohibited,

1    expressly, by a court order from doing that which the law

2    already prevents him from doing, which is, you know,

3    commencing actions against trustees without Court

4    permission.

5              You know, he creates an interesting conundrum in

6    his papers because he says first when he files all of these

7    answers, he immediately in the answer says this Court

8    doesn't have jurisdiction to do anything.  I mean, he

9    doesn't, I don't think, think this Court has jurisdiction to

10    do literally anything anymore after the Supreme Court

11    decisions.  And at the same time, he says it's now a

12    District Court action.

13              But trustees are appointed by this Court, so that

14    would mean that he would have to get permission from the

15    appointing Court.  He tries to get around that, says, well

16    yeah, but you're not really a court, you're just a division

17    of the District Court and -- so that's okay.

18              However, we, in our papers, had pointed out the

19    case, and I can't remember the name right now but it's in

20    our brief, from the District of Connecticut where someone

21    actually sued a trustee in the U.S. District Court and that

22    judge said no, you didn't get permission under the Barton

23    doctrine.  Case is dismissed.  You have to go back to the

24    Bankruptcy Court.

25              So, the District Court, at least, one -- the only

1    Court that's addressed that issue within the Second Circuit

2    has said that argument doesn't fly.

3              And, unfortunately, to make matters worse in this

4    case, the -- the response to a claim under 1927 that he is

5    vexatiously multiplying proceedings, the response to it has

6    been to further vexatiously multiply the proceedings.

7              We have had his own pleadings.  We've had him get

8    counsel, which was the smartest thing he probably did, who

9    put in at least, you know, a pre-trial statement that

10   attempted to deal with the legal issues and do everything.

11   He entered in -- he spent an immense amount of everyone's

12   time.

13             He entered into a settlement agreement on the

14   record.  He then reneged on that settlement agreement.  He

15   then fired his counsel.  He then filed, while claiming that

16   he was destitute and not able to do anything, filed, which

17   Your Honor may not be aware, got expedited transcripts from

18   all of the cases involved, never attached them to his

19   papers, because I assume whoever saw them decided not to use

20   them, but went out and spent the money to get expedited

21   transcripts all over the place.  Got a new attorney to write

22   a -- well, prepared, obviously with someone else helping

23   him, if you know Mr. Dahiya's writing style, prepared a, I

24   think, 96 or 98 page motion to withdraw the reference, filed

25   it.  Filed another affidavit that he wrote.

1           Had an attorney make something called a special

2    appearance in the District Court for that purpose, but file

3    a letter, or a letter motion, in this Court, even though

4    they weren't appearing here to try and stop it.

5           And then after that, attempted to get an

6    adjournment by claiming you can't make me go forward, I'm

7    pro se, even though he's been basically begged by everyone

8    in this Court -- in this courtroom to get an attorney.  And

9    when he did, he simply refuses to listen to that attorney.

10   He's going to keep looking for an attorney, I think, who

11   will take the position he wants him to take, and I think

12   he's probably the only attorney that will do that, who

13   practices before this Court.

14          So, we're not here on a pleasant occasion, but the

15   issue at hand is whether or not trustees are going to be

16   able to do their job without being the victim of these kinds

17   of tactics.  And I think that the answer to that is they

18   can't do their job, and that this Court has to on the record

19   before it, in terms of what's been put in evidence already,

20   or submitted as not disputed evidence in the pretrial.

21          And I note for the pretrial everything that we

22   submitted was put in.  There was no objection.  You have our

23   pretrial statement.  You have all of our documents.  I've

24   got my amended bill, which I will hand up.

25          I think this Court has no option but to find that

1    Mr. Dahiya and his firm have violated 1927, as well as under

2    the law that we set forth under Section 105, and the case

3    law we gave you there, and to fashion a remedy which is

4    along the ones, which is a sizeable fine -- to make sure

5    that the trustee and her counsel are compensated for all of

6    the hoops that he's made us jump through, that a proper

7    order is put in place to stop him from doing this with then

8    having the repercussion of being in contempt of that order

9    as a practicing attorney if he violates it.  And I don't

10   think, based on the record that's before this Court, that

11   there's any other result that could be reached.

12          Thank you.

13          THE COURT:  Are you familiar with cases that have

14   issued relief under Section 1927 that include the kind of

15   prescriptive relief that you've asked for here?

16          I think a customary consequence of a violation of

17   1927 is more in the nature of a monetary sanction, but I --

18          MR. ROSEN:  That may be true, Your Honor.  I am

19   aware of -- I --

20          THE COURT:  And when it's calibrated to correspond

21   to the nature and extent of the consequences of the

22   violation.

23          MR. ROSEN:  If not under there then -- if not

24   under 1927, it's a good question.  If not under 1927, then

25   clearly under 105.

1           There have been numerous orders, and I don't know

2    that they ever get up to the point of being written

3    decisions, but there have been numerous decisions out of

4    this Court at various times that have put all kinds of

5    restrictions on attorney practice.

6           I just -- from course, let's say, you know, you

7    can't come back here until you do this.  You can't do this

8    until you file that.  I mean, I think this Court clearly

9    under its inherent jurisdiction to supervise the matters

10   that go on before it and under 105 have the power to issue

11   that kind of order.

12          I mean, the -- especially in light of the fact

13   that regardless of the veracity of it, and I have no way of

14   knowing it one way or the other, of Mr. Dahiya, who claims

15   that he has judgment proof, than without some kind of

16   prescriptive order, which would have some teeth on it if

17   it's violated, then a mere monetary award that he has no

18   ability to pay other than the usual requirements of an

19   attorney to pay any judgment against him.  But that's a

20   sticky (indiscernible - 2:02:26) to go down.  Then the

21   relief is not meaningful.

22          And I think when you're going to try and give

23   injunction -- injunctive relief in that regard, that -- that

24   that's one of the things that you have to look at.

25          I mean the short answer to that question might be,

1    okay, so every time he does it, he's going to get hit with a

2    large monetary sanction.  If he has no intentions or the

3    ability to necessarily pay any of those monetary sanctions,

4    that's not a lot of a disincentive, other than --

5              THE COURT:  Understood.  It's still a question in

6    my mind and it -- I don't mean to presuppose the outcome of

7    the questions raised under Section 1927, but it's a --

8              MR. ROSEN:  But the short answer to your question

9    as I stand here, Your Honor, I don't think under 1927, no.

10   I know under 105, Courts in this Court and other Courts have

11   prohibited attorneys from practicing law unless they were

12   partnered with someone who knew what they were doing, or if

13   they took courses, or requiring them to show certain special

14   circumstances, which is what we're doing.

15             And in reality, Judge, all that we're requesting

16   for him to do with that injunctive relief is to do that

17   which he should do anyhow under the law.  And it would just

18   be a mechanism by which a Court would review the matter

19   before the trustee was damaged by having to deal with being

20   sued and turning the matter over to their carrier, or risk

21   dealing with it on their own by not.

22             I mean, part of the reason why we had to proceed

23   by 1927 is that the carrier, you know, otherwise, this was

24   the matter that the carrier did not have any say so over,

25   okay?  If we were to proceed within the case, than the

1    carrier has to come in and do it.  Carriers will never,

2    ever, ever seek sanctions or -- they're only worried about

3    that particular case.  They're not --

4              THE COURT:  They have different duties owed to

5    different parties, but of course owed to their insured.  A

6    trustee and an attorney who appears in this Court, as an

7    officer of this Court, has a different set of duties and

8    obligations.  I appreciate that difference.

9              MR. ROSEN:  Okay.  Thank you.  Thank you, Your

10   Honor.

11             I will -- unless you have any other questions for

12   me, I'll --

13             THE COURT:  No, but --

14             MR. ROSEN:  -- let Mr. Dahiya make his statement.

15             THE COURT:  -- the -- your question of procedures

16   and the question of possible remedies are the two questions

17   in my mind for your opening statement.

18             Mr. Dahiya, I'd like to hear your opening

19   statement.

20             MR. ROSEN:  Thank you.

21             MR. DAHIYA:  May it please the Court, Your Honor.

22   I'm here today because you instructed me to be here as an

23   officer of the Court, and as a person who's being impacted,

24   I was supposed to be here.

25             Your Honor has cancelled -- denied my request for

1    an attorney and --

2            THE COURT:  Mr. Dahiya, let's stay with that for a

3    moment.

4            MR. DAHIYA:  Yeah, but it just --

5            THE COURT:  I did not deny your request --

6            MR. DAHIYA:  Okay.

7            THE COURT:  -- for an attorney. I --

8            MR. DAHIYA:  All right, just --

9            THE COURT:  -- have encouraged you at every

10   hearing --

11           MR. DAHIYA:  Sorry, you're right.

12           THE COURT:  -- to retain an attorney.

13           MR. DAHIYA:  Sorry about it.  I --

14           THE COURT:  As recently as --

15           MR. DAHIYA:  Your Honor --

16           THE COURT:  -- the 29th, it appears you filed a

17   new case in this Court.  Is that right, Mr. Dahiya?

18           MR. DAHIYA:  It was a (indiscernible - 2:05:36)?

19           THE COURT:  Did you file a case in this Court as

20   recently as November 29th?  Yesterday?

21           MR. DAHIYA:  This -- I don't think so, did I --

22           THE COURT:  Another bankruptcy case?

23           MR. DAHIYA:  Yes, I filed another bankruptcy case,

24   yes.

25           THE COURT:  All right.  So, you're filing cases in

1    this Court as recently as yesterday.  Please proceed.  I

2    take that as some evidence of your ability to function

3    professionally.

4              MR. DAHIYA:  Yeah, yeah.  That's not the -- the

5    request -- the request was made for an adjournment and you

6    denied it.

7              THE COURT:  I did.

8              MR. DAHIYA:  Yes.  And, respectfully, Your Honor,

9    I'm here and I've filed a motion to withdraw the reference,

10   which is pending.  I do have any attorney there and the

11   paperwork that I prepared for withdrawal of reference is

12   totally my creation.  It's my work.

13             THE COURT:  I've --

14             MR. DAHIYA:  Mr. -- Mr. -- that's my writing.

15             THE COURT:  You signed it pro se.

16             MR. DAHIYA:  Yeah, it's me -- no, with not

17   signing.  There was an issue with signing the paperwork

18   before.

19             THE COURT:  Let's stay with your --

20             MR. DAHIYA:  Okay, that's --

21             THE COURT:  -- opening on the motion before me

22   today.

23             MR. DAHIYA:  I will not participate in this

24   proceeding, Your Honor.  I've invoked my right to be heard

25   by an Article III Judge.  Respectfully, Your Honor, I'm

1    here, and I will not participate without an attorney.  I've

2    contacted the bar.  I've got in touch with people to

3    represent me.

4                THE COURT:  Tell me who you have contacted.

5                MR. DAHIYA:  I contacted Michael Ross.  Michael

6    Ross is an attorney.  I contacted two other attorneys and

7    they -- I contacted -- and counsel who is to be with the

8    disciplinary committee of the appellate division.  And he

9    knows -- Mr. Krishman (ph) had given his number to me.  He

10   wants to charge me $650 an hour.  He says he will hire his

11   junior counsel.  He will hire his junior counsel.

12               So, what happens was with Michael Ross, he says,

13   Mr. Dahiya, this is a very abstruse law.  You will be paying

14   me to teach me -- you'll be paying me to tell me what this

15   law is all about.  So, he didn't know --

16               THE COURT:  Mr. Dahiya.

17               MR. DAHIYA:  Yes.

18               THE COURT:  I'm interrupting you for the following

19   reason.  Your communications with a potential counsel --

20               MR. DAHIYA:  Yeah.  It's privileged.

21               THE COURT:  -- are privileged, unless you waive

22   the privilege, which you are in the process of doing.  So, I

23   urge you not to waive it because it may be important to you

24   down the road, that whatever you said to a lawyer who you

25   are seeking to retain to represent you on a matter as

1      important as this, should remain, if it can remain --

2              MR. DAHIYA:  Yes, Your --

3              THE COURT:  -- confidential and privileged.

4              MR. DAHIYA:  And brief --

5              THE COURT:  I say this with your interest

6      uppermost.

7              MR. DAHIYA:  Yes.  Briefly put, Your Honor, I have

8      tremendous respect for you, and you as a Judge and a

9      compassionate person.  And with the trustee's who's doing

10     their job, there's no personal thing here.  I'm fighting for

11     dignity of law, and I have no -- I mean, I'm fighting for

12     some principals.  And I've invoked the right, because the

13     right to represent people is being impacted.  I invoked the

14     right to be heard by a District Court judge, and I will not,

15     under these circumstances, I don't have an attorney.  I

16     don't feel comfortable representing myself.  I will not

17     proceed on the merits of this case, Your Honor.  That's all.

18              THE COURT:  Mr. Dahiya, did you not represent

19     yourself in the extensive submissions that were made to the

20     District Court as recently as November 19th, signed by you,

21     compiled authored by you, as you've just indicated?

22              MR. DAHIYA:  The page -- the 79 pages, the

23     withdrawal of reference was prepared by me, filed by me.

24              THE COURT:  Has anything changed since

25     November 19th in your ability to function professionally?

1          MR. DAHIYA:  No, but I cannot -- I have invoked

2     the right to be heard by an Article III Judge, and I cannot

3     here, in this Court.  I do have an attorney in the District

4     Court and it is -- and hearing about me and issues related,

5     I don't feel comfortable.  I don't want to get into the

6     merits of the case.

7          And I had requested an adjournment for two

8     reasons, Your Honor.  One, by the time I think the District

9     Court would have done something about it.  Second, I will

10    have time to get an attorney who knows about the subject,

11    and whom I can afford to make payments.  I am not a rich

12    lawyer.  My client had paid me $250 for this case.  I can

13    submit my bank statement if someone wants to see it.  I have

14    no problem with this, but I cannot proceed.

15          That's all, Your Honor.  That's what it --

16          THE COURT:  Mr. Dahiya.

17          MR. DAHIYA:  Yes, Your Honor.

18          THE COURT:  As this Court has previously noted,

19    "the Second Circuit has held that a Bankruptcy Court may

20    impose sanctions pursuant to 28 U.S.C. Section 1927 if it

21    finds that an attorney's actions are so completely without

22    merit as to require the conclusion that they must have been

23    undertaken for some improper purpose such as delay," citing

24    In re Ambotiene, 316 BR 25 at 34, note 2.  A decision over

25    my signature but of this Court, Bankruptcy EDNY 2004,

1   quoting Baker versus Latham Sparrowbush Associates, In re

2   Cohos Industrial Terminal Incorporated, 931 F.2d 222, 230

3   (2nd Cir, 1991), referencing back to my own decision

4   affirmed 2005, U.S. District Lexus 45314 (Eastern District

5   of New York, September 30, 2005).

6          I refer you also to the decision of the Bankruptcy

7   Court of the Southern District of New York, In re Emanuel

8   2010 Bankruptcy Lexus 590 at *3, note 2, stating that,

9   "Bankruptcy Courts may impose sanctions under 28 United

10  States Code Section 1927.

11         I refer you to In re Green, 422 Bankruptcy

12  Reporter 469 at 473.  Again a decision of the Southern

13  District of New York, explaining that a Bankruptcy Court,

14  "has the power to sanction," under 28 United States Code

15  1927.

16         Accordingly, and as previously indicated in my

17  order entered on November 28, 2012, at 8:35 in the morning,

18  I find that I may decide this motion for sections under 28

19  U.S.C. 1927.

20         So, based on that, noting that the motion was made

21  some time ago and has been scheduled for hearing, and

22  hearings have been held on some or all of April 24, 2012,

23  June 16, 2012, July 16th, September 13th, and

24  November 20, 2012, noting that some of those dates may have

25  been adjourned without hearing.  But on more than one of

1    them, a hearing was, in fact, held.  At some of which

2    hearings, you had counsel.  At one of which hearings, there

3    was a settlement put on the record that you have now

4    withdrawn from.

5          Mr. Dahiya, this is not a happy time --

6          MR. DAHIYA:  I did not --

7          THE COURT:  -- for anyone in the courtroom, but I

8    do not see that there's any benefit, including to you, by

9    deferring or putting this off.  I do not see what more time

10   can possibly do, having read when they were filed, and read

11   again on the short break I had from my morning calendar

12   before today.

13         Your submissions in this Court and elsewhere, it

14   seems to me that I can only do my job, my limited but

15   important job, by hearing this matter and marking it

16   submitted today.  If you want to try to resolve it, you

17   always have that opportunity in my courtroom.  I think you

18   know that.

19         I respect the determination that you bring to your

20   matters, but you must temper that determination with

21   judgment.  And the question before me in this 1927 motion is

22   a question as to which there is a legal standard, as to

23   which we are going to make a record, and then I'll do my

24   best to give my best decision.

25         But it's not something I view is a happy occasion.

1           MR. DAHIYA:  I fight --

2           THE COURT:  But it's my job, Mr. Dahiya.

3           MR. DAHIYA:  I respect you, Your Honor.  I --

4   you're a highly calibered (sic) jurist and I also stand for

5   certain principals and dignity of law.  And today, I will

6   not say anything.

7           I have objections to the jurisdiction of this

8   Court.  I have submitted my paperwork regarding that, if you

9   have read the withdrawal of reference.  I don't want to get

10  into the merits of the case.  I've decided.

11          It's up to you, Your Honor.  You decide whatever

12  you want.

13          THE COURT:  Well, and I --

14          MR. DAHIYA:  I have --

15          THE COURT:  -- need to note this, Mr. Dahiya,

16  before you leave the point of jurisdiction.  If I believed I

17  did not have subject matter jurisdiction, I would not need

18  your motion, because I cannot proceed in the absence of it.

19  I'm satisfied from reviewing closely and carefully the

20  cases, including Stern v. Marshall, and --

21          MR. DAHIYA:  No --

22          THE COURT:  -- what comes after it, that the

23  issues raised therein and identified and allocated by the

24  Supreme Court in some detain, do not concern specifically

25  subject matter jurisdiction, but rather the allocation of

1    power to decide between the District Court and the

2    Bankruptcy Court.

3           Having reviewed the decisional authority in this

4    Circuit, under this Section of the judiciary code, I'm

5    satisfied there's a basis to proceed.  It may be that in

6    entering my decision, whichever way it goes, I may in the

7    alternative find that to the extent appropriate, a District

8    Court may treat my work product as proposed findings and

9    conclusions, so that there is a basis, in fact multiple

10   basis, upon which to proceed today.

11          I return to the invitation to complete your

12   invitation with respect to the motion, and then I'm going to

13   ask Mr. Rosen to proceed and make his record.

14          Do you have anything further on the motion?

15          MR. DAHIYA:  No.  I have -- I will not participate

16   in the -- I've told Your Honor.  I have invoked the right

17   for an Article III Judge, and not that I have anything

18   against this Court.  And I don't have an attorney today, so

19   I will not -- I have not been able to find, I found someone

20   I cannot afford, and so it's been a very difficult -- and I

21   know it.  This is a very --

22          THE COURT:  Of that, I have no doubt.

23          MR. DAHIYA:  -- this is a very important thing

24   that you're deciding and I'm just trying to bring the life

25   and the principals at stake, and the job of the trustee, and

1   your job to manage the calendar.

2          THE COURT:  This is more than just managing the

3   calendar, Mr. Dahiya.

4          MR. DAHIYA:  You know, but they -- this is -- and

5   Your Honor has -- I mean, I will not -- don't want to get

6   into jurisdiction or any issues, I made myself clear, I've

7   put in my withdrawal of reference the cases pending, and

8   it's up to Your Honor.

9          I mean, if I have more time, I could get an

10  attorney who's probably more enlightened than me, can brief

11  this Court, tell the issues and I've nothing else to say.

12         THE COURT:  All right.  Thank you, Mr. Dahiya, you

13  may be seated.  Mr. Rosen, could you please make a proffer

14  or call your first witness, if you please.

15         MR. ROSEN:  Your Honor, I would like --

16         THE COURT:  I will ask those who are in attendance

17  -- first of all, thank you for your appearance, whoever you

18  are.  This is a public proceeding and I'm thankful for your

19  presence.

20         If you'd like to put your appearance on the record

21  if you are counsel, I urge you to do so.  If you are here in

22  any other capacity, please be seated and you can observe

23  respectfully as any member of the public is always welcome

24  to do here in our Court.

25         UNIDENTIFIED SPEAKER:  I apologize, Your Honor.

1          MS. ALAMAR:  Your Honor, if the Court please --

2          THE COURT:  You're not at a microphone.  If you're

3    appearing, you need to come up and put appearance on the

4    record.

5          MS. ALAMAR:  Good afternoon, Your Honor, Karina

6    Alamar, 6089 Myrtle Avenue, Ridgewood, New York.

7          THE COURT:  Are you admitted to the bar of this

8    Court?

9          MS. ALAMAR:  Yes, I am, Your Honor.

10         THE COURT:  All right.

11         MS. ALAMAR:  And I would ask --

12         THE COURT:  Do you represent a party?

13         MS. ALAMAR:  Your Honor, I would be asking that

14    the Court please concede five minutes -- a five minute

15    recess so that we could speak to Mr. Dahiya to see --

16         THE COURT:  Who do you represent, ma'am?

17         MS. ALAMAR:  We are trying to represent

18    Mr. Dahiya.

19         THE COURT:  Has he retained you?

20         MS. ALAMAR:  He has not retained us.  We're asking

21    for five minutes to see if he will allow us to appear on his

22    behalf.

23         THE COURT:  Whenever a party requests a five

24    minute recess, I'm inclined to grant it if you think it

25    would be used productively.  I urge you to use the time in a

1    productive way.

2              MS. ALAMAR:  Thank you, Your Honor.

3              THE COURT:  Thank you.

4              THE CLERK:  All rise.

5         (Recess at 2:18 PM)

6              THE COURT:  Good afternoon.  Please be seated.

7    Our break was a little longer than requested.  I understand

8    from my courtroom deputy that the parties had some

9    consultations, but that we're now proceeding.  Is that

10   right?

11             MR. ROSEN:  That's correct, Your Honor.

12             THE COURT:  All right.

13             MR. ROSEN:  We made a couple last ditch attempts,

14   but they were not successful.

15             THE COURT:  All right.  Well, of course the

16   prospect is never foreclosed.

17             Mr. Rosen may -- would you --

18             MR. ROSEN:  Your Honor --

19             THE COURT:  I'd like to receive the record.

20             MR. ROSEN:  Excuse me.

21             THE COURT:  I'd like you to make your record.

22             MR. ROSEN:  Thank you, Your Honor.

23             THE COURT:  Call your first witness, or if it's a

24   proffer, then --

25             MR. ROSEN:  Your Honor, I would like to make a

1    proffer.  I would point out that Debra Kramer, that Chapter

2    7 trustee, is here present in the courtroom, and that if I

3    were to call her to the stand, which she is prepared to

4    take, she would testify in accordance with the statement of

5    material facts in this -- in this case.

6              The basic statement of facts was set forth

7    pursuant to this Court's order in the pretrial -- pre-

8    hearing statements for this motion, and the -- Mr. Dahiya's

9    counsel filed a responsive pleading and admitted virtually

10   all of the facts.

11             I can either read those facts into the record, or

12   I can refer to them by paragraph number, Your Honor, in

13   terms of them -- whichever you think would be more

14   expeditious and you think lead to the better record.

15             THE COURT:  Could you identify by docket number

16   the items that you are referring to?  I have number 34, the

17   pre-hearing statement for response to motion.

18             MR. ROSEN:  I don't have it on my -- I've got a

19   pre-hearing statement for motion to impose monetary

20   sanctions that was prepared on -- the last time we were

21   here, Your Honor, I gave you one of these books.  I can give

22   you another one if you don't have it.  It was all --

23             THE COURT:  I have the binders that were provided.

24             MR. ROSEN:  If you have that binder and go to that

25   statement.  Yes, we gave it to you in a book, I believe.  We

1    got the cheap binders, you got the good loose leaf.  There's

2    probably one for the witness and one for you.  I probably

3    left -- well, I gave you one for you and one for you law

4    clerk.

5              THE COURT:  I think that's right.  The one seems

6    thicker than the other.  All right.  Pre-hearing statement.

7    I have it before me.

8              MR. ROSEN:  Okay, so if -- if you go to that -- I

9    have marked mine up.  You can, of course, check me on it

10   later, but I will let you know which statements were

11   admitted by Mr. Dahiya --

12             THE COURT:  Yeah.

13             MR. ROSEN:  -- in his pretrial, Your Honor.  And I

14   can read -- and, as I said, I can read them out, or I can

15   refer to them by paragraph number.

16             If you go to the second page, the first numbered

17   paragraph just says -- does not assert anything.  It's just

18   the introductory paragraph.

19             Then it's -- then paragraph -- there is no

20   material dispute as to paragraphs 2, 3, 4, 5, 6, 7, 8, 9,

21   10, 11, 12.  And I'd stopped there for a second, Your Honor,

22   just to point that those paragraphs lay out the trustee's

23   due diligence in going through the 341 meeting, the

24   investigation that she engaged into, what she did in

25   determining the basis for the action as part of the due

1   diligence.  All right?

2              THE COURT:  And just to be clear, these are, as

3   identified in the statement, filed by Mr. Dahiya in number

4   34 on the docket, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, and 12?

5              MR. ROSEN:  Yes.

6              THE COURT:  Okay.

7              MR. ROSEN:  All right?  And those were all --

8   those were all --

9              THE COURT:  Those are not -- those are indicated

10  not in dispute according to Mr. Dahiya's filing of

11  September 10th, number 34 on the docket.

12             MR. ROSEN:  Correct, Your Honor.

13             Then, actually, paragraph 13, which relates to

14  Mr. Dahiya's first involvement in the case is also not

15  disputed.

16             THE COURT:  Correct.

17             MR. ROSEN:  As is paragraph 14, paragraph 15, I

18  believe there was no response to it, and that was our

19  statement as to characterizing the answer as a personal

20  attack on the trustee and her counsel.  That is an

21  allegation that we make based upon the other evidence.

22             THE COURT:  Paragraph 15 is identified as in

23  dispute at Paragraph 10 of Mr. Dahiya's submission.

24             MR. ROSEN:  Yes.  All right, so the intent, we

25  believe that can be conferred from all the other

1    circumstances.

2              Paragraph 16 is admitted.  Paragraph 17 is

3    admitted.  And these paragraphs just quote language from the

4    answer and counterclaims filed by Mr. Dahiya.

5              Paragraph 18, I believe, Your Honor, I don't have

6    -- mine's not marked up.  I believe they had no response to

7    it.  But that is Ms. Kramer's testimony as to the affect of

8    her malpractice carrier and if called to the stand, she

9    would so testify.

10             THE COURT:  So far as I can tell, paragraph 18 is

11   -- it is plainly not indicated as a fact that is not

12   disputed.  That is to say, it's not on the list at paragraph

13   2 of Mr. Dahiya's submission.

14             MR. ROSEN:  It's not -- just not responded to.

15             THE COURT:  It's also not on the list at paragraph

16   10.  So --

17             MR. ROSEN:  We go by the old rule that if it's not

18   objected to, it's admitted.  But one way or the other,

19   that's our allegation, Your Honor.  Perhaps they just denied

20   from -- I don't know why it's done that way, but that's how

21   it was done.

22             Paragraph 9 lays out -- or rather paragraph 19 was

23   admitted and lays out the constitutional tort.  They did not

24   -- I do not believe they agreed with paragraph -- you know,

25   paragraphs 20 and 21, she would testify -- lay out, really,

1    the legal theory that there is no such thing as a

2    constitutional tort.  That was laid out in the papers.

3              And then, in paragraph 20 -- in paragraphs 22

4    through 31, Your Honor, my recollection is and my marked

5    pleadings shows this is the recitation by the trustee, the

6    other actions brought by Mr. Dahiya, all of which are part

7    of this Court's record, which were also part of the

8    submissions and are deemed -- have already been deemed in

9    evidence, laying out the course of tactics of suing trustees

10   in the other actions, and what transpired.  And Mr. Dahiya

11   did not respond one way or the other to those allegations in

12   his pretrial, but it's our position that they would be in

13   evidence because they're all part of the Court -- the

14   larger --

15             THE COURT:  The disagreement in the parties'

16   submissions is to the, broadly speaking, is to the point of

17   whether other matters are relevant here, whether things that

18   took place in other cases are relevant here.  That's an

19   interesting question.

20             It's -- there are underlying facts, most of which

21   are record facts, and there's the more general, arguably

22   legal, question as to whether that makes a difference here.

23   That's a question for me, not for the parties to agree or

24   disagree on.

25             MR. ROSEN:  Correct, Your Honor.  And we had --

1    when Mr. Greenwald was here, we had a long discussion about

2    that.  And I -- you didn't -- I may have misspoke earlier

3    when I said you ruled, I think you led -- you said how you

4    were inclined, but I don't think you -- I think you said

5    something very similar to what you just said.  That was for

6    you to decide, and for us to hear.

7            So, paragraph 32 was admitted and that lays forth

8    the trustee's fiduciary duty, and that he sought a temporary

9    and then permanent injunction against her and counsel from

10   commencing any adversary proceedings before this Court.

11           You know, interestingly enough, Your Honor, under

12   this action, I would interject as part of the proffer is

13   that Mr. Dahiya proposed the type of injunction that we're

14   requesting against him against us in the motion practice.

15   So, I don't know if there's an estoppel argument there or

16   not, but it was part of the claim that he raised in the

17   action.

18           He had no response to paragraphs 33, 34.  And the

19   rest of the pretrial statement, I believe, then reverts to

20   mostly the legal arguments through paragraph 39.

21           And then in paragraph 40, Your Honor, we let out

22   -- we set forth what we were seeking in terms of damages,

23   and that was an award of compensation in the amount, at that

24   time, of what my attorney's were through that date of

25   $18,336, Your Honor.  That was, of course, as of the date

1    when this had to be filed, which was June 1.

2              I have prepared and am giving to -- let the record

3    reflect I'm giving Mr. Dahiya a copy of an updated bill as

4    of last night.

5              Your Honor, may I approach?

6              THE COURT:  You may pass it to Ms. Jackson (ph).

7              MR. ROSEN:  The additional time spent in this

8    matter, including you know preparing the settlement

9    documents, and everything else, including allocating, I

10   think, three hours for today, which might have been a little

11   light, of an additional $10,308.15 in time and additional

12   disbursements of $131.87, which makes the total amount of

13   compensatory damages in terms of the legal fees incurred of

14   $28,776.02.

15             That does not include -- the trustee, if called to

16   testify, would say that she was required, so far, I think,

17   to only on the -- because we managed to get the counter-

18   claims dismissed in the other two actions.  In the second

19   one, I think she only had an outlay of $60 that she actually

20   had to pay on the first deductibles.

21             But, as she would testify, her deductible, if any

22   subsequent actions were filed, which comes back to the

23   argument about the injunction, she would be -- now have a

24   deductible of $5,000 per occurrence, as opposed to $2,500

25   per occurrence that she would be responsible for if she were

1    sued again in this matter, or in any other matter as a

2    result of these claims having been filed.

3              I'm not quite sure how you monetize that future

4    event, and maybe the inability to do it -- that is part of

5    the basis for injunctive relief.

6              Your Honor, I think under the legal standard, we

7    then laid out the legal arguments.  Those, I think, are the

8    operative facts.  I think what flows from them has been the

9    subject of a lot of debate.

10             With that proffer, Your Honor, and I also, after

11   she's done, if Mr. Dahiya wants, I'll be happy to take the

12   stand, and he can question me about anything on my legal

13   fees.

14             I would -- I would rest, and if Mr. Dahiya wishes

15   to cross-examine the trustee, he may.

16             THE COURT:  All right.  Thank you.

17             Ms. Kramer, you have heard your counsel's

18   recitation as to what your testimony would be if you were

19   called to stand, and put under oath, and asked questions.

20   Does that follow the statements in the statement of material

21   facts not in dispute and otherwise your record as referenced

22   by Mr. Rosen?  If you were called to the stand and sworn to

23   tell the truth and were asked questions those areas, would

24   your testimony be the same as that which has been identified

25   by your counsel?

1          MS. KRAMER:  My deductible has been increased from

2     the time -- the policy runs from year to year.  So, the

3     deductible has been increased as indicated by Mr. Rosen.

4          I had received an invoice of approximately $60 for

5     work that was done by the law firm that the carrier

6     selected.  I have not yet paid that invoice, but will be

7     paying that invoice.  And that -- my understanding is that

8     that's the only amount that's outstanding with respect to

9     these claims because they were withdrawn before any other

10    work was done by the law firm.

11         THE COURT:  With respect to all of the other

12    matters, including the record of this case, would your

13    testimony be the same as that described by Mr. Rosen with

14    reference to the pre-hearing statement that was filed at --

15    that was filed by your counsel?

16         MS. KRAMER:  Yes.

17         THE COURT:  All right.

18         Mr. Dahiya, would you like to cross-examine the

19    trustee?

20         MR. DAHIYA:  No, I don't.  I explained previously.

21    I don't have a lawyer.  I'm not participating in the

22    proceeding.  So, it's up to you to let them --

23         THE COURT:  Mr. Dahiya, it's not up to me whether

24    you would like to cross-examine.

25         MR. DAHIYA:  I will not -- I don't have an

1    attorney, and I don't consent to the jurisdiction of this

2    Court, Your Honor, respectfully.  So, I have -- this

3    dispute, I raise the issue that it should be heard by an

4    Article III Judge and this is my opinion.

5              And for this Court, I don't have an attorney, so I

6    don't want to say anything.  I'm not participating in any

7    fashion.

8              THE COURT:  Mr. Dahiya, I note your appearance

9    here.  I note that you are an officer of this Court.  And I

10   note that you have filed cases in this Court, and filed

11   documents in this Court this week.  So, at least to that

12   extent, you are functioning as an officer of this Court in

13   other matters.  And I recognize that your role as the

14   subject of this motion is different than your role as

15   counsel to your clients in those cases.

16             I will ask you one more time to indicate

17   affirmatively if you wish to cross-examine the trustee.

18             MR. DAHIYA:  I will not -- I'm not participating

19   in the proceeding.  So, I will not.

20             THE COURT:  Mr. Dahiya, I don't understand that

21   response.

22             MR. DAHIYA:  I'm not participating.  I cannot say

23   yes or no.  I just -- I'm not -- I don't have a counsel.  I

24   wish I could have had a counsel here in this case, and I

25   made it very clear, Your Honor, so please don't ask me if I

1    want to examine and cross-examine, treat as if I'm not here

2    for this purpose, I'm here --

3              THE COURT:  Mr. Dahiya, with the greatest respect,

4    this is my courtroom, not yours.  And I will determine what

5    questions I will ask.  And I respectfully encourage you as

6    an officer of the Court to do your best to be responsive to

7    my questions.

8              MR. DAHIYA:  As an officer of the Court, I'm aware

9    of the -- that I'm the target of this motion, Your Honor,

10   and I'm here because I have respect for you.  I have

11   tremendous respect for you.  There's no doubt about it.  And

12   my -- I made myself very clear in my pleadings.  It's up to

13   you how you treat this.

14             THE COURT:  Well, that's true.

15             MR. DAHIYA:  I'll leave it to your discretion,

16   Your Honor, and --

17             THE COURT:  All right.  Well, you have not

18   indicated that you would like to cross-examine the trustee,

19   so I will take -- I will accept the proffer.

20             Do you have anything further to put into the

21   record, Mr. Rosen?

22             MR. ROSEN:  Your Honor, the only other matter I

23   have into the record, not to have a repeat of prior

24   conversation, but for the purposes of a complete record, I

25   also offer myself if he wishes to cross-examine me as to any

1    of the elements in the bill.  I offer my own -- as an

2    officer of the Court, I have put in my time.  I have

3    reviewed it thoroughly.  I believe -- I have only put in

4    those items that relate to this proceeding and not to

5    anything else.

6            And if he wishes to cross-examine me on my bill,

7    or if the Court wishes to ask any questions about my bill,

8    I'm prepared to take the stand.

9            THE COURT:  All right.  The record will indicate

10   that you have provided to Mr. Dahiya and to the Court a

11   three page document that begins with the reference "law

12   offices of Avrum J. Rosen, PLLC," and with time entries

13   beginning on June 8, 2012 --

14           MR. ROSEN:  Your Honor, yes.  The --

15           THE COURT:  -- through November 14, 2012.

16   Disbursement charges.  It also includes an estimated time

17   entry of -- on November 29th of three hours.  And, of

18   course, many other indications are made, but --

19           MR. ROSEN:  And, Your Honor, and the --

20           THE COURT:  So, I take it you're offering this as

21   further evidence on the record in support of your damages

22   application?

23           MR. ROSEN:  Yes, and I would ask that it be marked

24   as probably exhibit K -- K1, actually, because the other

25   bill is K.  And I would also ask that all of the other

1    marked exhibits, which were A through K, attached to the

2    pretrial which were not objected to, be placed into

3    evidence.

4              THE COURT:  All right.  And the -- and,

5    Mr. Dahiya, any objection?

6              MR. DAHIYA:  Same thing, Your Honor.

7              THE COURT:  All right.  In the absence of an

8    objection, the -- and noting that the Court's pretrial order

9    and prior directions to the parties requested the submission

10   of exhibits and that has been done, and no written objection

11   has been interposed, so I will receive in evidence the

12   exhibits that have been identified for the parties.

13       (Plaintiff's Exhibits A through K were marked and

14   admitted)

15       (Plaintiff's Exhibit K-1 was marked and admitted)

16             THE COURT:  Anything further, Mr. Rosen?

17             MR. ROSEN:  Your Honor, under these circumstances,

18   I think enough has been said in the papers and in the

19   preliminary statements.  It's been a long day.  I will waive

20   any closing statement.  I have nothing further, Your Honor.

21             THE COURT:  All right.  Mr. Dahiya, you can -- the

22   trustee rests, you can put in a case if you wish.

23             MR. DAHIYA:  I have nothing to say.

24             THE COURT:  All right.  Thank you, Mr. Dahiya.

25             MR. DAHIYA:  Yes, Your Honor.

1          THE COURT:  Mr. Rosen -- well, Mr. Dahiya, you can

2     make a closing argument if you'd like.  Waive argument?

3          Mr. Rosen, would you like to make a closing

4     argument or do you waive closing?

5          MR. ROSEN:  No, Your Honor, I waive that also.  I

6     think -- as I said, I think -- I don't think there's

7     anything about this that you haven't been made aware of at

8     least a couple of times and been through it.  I see no

9     reason to belabor this any further.

10          THE COURT:  All right.

11          MR. ROSEN:  You have everything in front of you.

12     And good luck.

13          THE COURT:  All right.  There are two matters

14     before me today.  The first is the adjourned telephonic

15     conference on the letter.  I'm going to mark that off the

16     calendar and that will be so ordered.

17          The next is the adjourned hearing on the motion

18     for sanctions under 28 U.S.C. 1927 and I'm going to mark

19     that submitted.  This is the fifth, or sixth calendar

20     hearing, at least the third hearing held, in fact.  At this

21     point, I would no longer be doing my job if I simply

22     continued to exhort Mr. Dahiya to get counsel and the

23     parties to determine if there was a productive,

24     professional, and consensual way to resolve the issues that

25     are framed by the motion.

1            I've indicated, perhaps by my questions and

2    comments, that I have the greatest respect and the gravest

3    concerns about the issues -- for the participants and about

4    the issues that are presented here.  And I would continue to

5    make the processes of this Court available for any

6    productive disposition.  But at this point, having done that

7    so many times, noting that we have settled once and that's

8    not come to fruition, I think there really is no course left

9    but to mark it submitted and do my best to get you a

10   thoughtful and an appropriate determination, aware of all of

11   the motions that are pending, and the concerns that have

12   been expressed about this Court's authority and

13   jurisdiction.  And I take those as two different things.

14           And mindful of the prospect that when an order is

15   entered, it may also be -- it may also be described, and may

16   well be described as to the extent necessary, proposed

17   findings and conclusions following the framework established

18   by local rules or procedures adopted in other Courts in this

19   Circuit, including the Southern District of New York and the

20   District of Vermont, and Courts in other Circuits, including

21   the District of Delaware and, I believe, the District of

22   Maryland.

23           So, thank you.  Thank you very much.

24           MR. ROSEN:  Your Honor, I have two other matters

25   on.

1          THE COURT:  All right.  And we'll call them very

2    shortly.  I want to take a very short break.

3          MR. ROSEN:  Okay.

4          THE COURT:  We need to do some rearranging here.

5    All right?

6          MR. ROSEN:  Thank you.

7       (Whereupon these proceedings were concluded at 3:13 PM)

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1

2                            I N D E X

3

4    OPENING STATEMENTS:                                    PAGE

5    BY MR. ROSEN                                            10

6    BY MR. DAHIYA                                           19

7

8

9                         E X H I B I T S

10

11   PARTY       NO    DESCRIPTION                    ID./EVID.

12   Plaintiff  A-K   Attachments to pretrial submission   44

13              K-1   Rosen bill, June-November 2012        44

14

15

16

17

18

19

20

21

22

23

24

25

1                          I N D E X

2

3                          RULINGS

4                                          Page        Line

5  Telephonic Conference (RE: related       45          16

6  document(s) 41 Letter filed by

7  Counter-Defendant Debra Kramer as

8  Trustee of the Estate of Shahara Khan,

9  Plaintiff Debra Kramer as Trustee of

10  the Estate of Shahara Khan)

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

1                    C E R T I F I C A T I O N

2

3    I, Jamie Gallagher, certify that the foregoing transcript is

4    a true and accurate record of the proceedings.

5

6

7

     Veritext

8

     200 Old Country Road

9

     Suite 580

10

     Mineola, NY 11501

11

12

     Date:  December 4, 2012

13

14

15

16

17

18

19

20

21

22

23

24

25