UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK

-------------------------------------------------------------------x

In re:

       SHAHARA KHAN,

              Debtor.

Chapter 7
Case No. 10-46901-ess

-------------------------------------------------------------------x

DEBRA KRAMER, AS TRUSTEE OF THE
ESTATE OF SHAHARA KHAN,

              Plaintiff,

    - against -

Adv. Pro. No. 11-01520-ess

TOZAMMEL H. MAHIA,

              Defendant.

-------------------------------------------------------------------x

TOZAMMEL H. MAHIA,

              Counterclaim Plaintiff,

    - against -

DEBRA KRAMER, AS TRUSTEE OF THE
ESTATE OF SHAHARA KHAN,

              Counterclaim Defendant.

-------------------------------------------------------------------x

## **MEMORANDUM DECISION ON TRUSTEE'S MOTION FOR SANCTIONS**

Appearances:

Avrum J. Rosen, Esq.
The Law Offices of Avrum J. Rosen, PLLC
38 New Street
Huntington, NY 11743
  *Attorney for Debra Kramer as*
  *Chapter 7 Trustee*

Debra Kramer, Esq. as Chapter 7 Trustee
Debra Kramer, PLLC
98 Cutter Mill Road
Suite 466 South
Great Neck, NY 11021

Karamvir Dahiya, Esq.
Dahiya Law Group, LLC
350 Broadway
Suite 412
New York, NY 10013
  *Pro Se*

**HONORABLE ELIZABETH S. STONG**
**UNITED STATES BANKRUPTCY JUDGE**

## Introduction

Before the Court is the motion of the Chapter 7 Trustee Debra Kramer, for sanctions against Karamvir Dahiya, Esq. and Dahiya Law Offices, LLC (together, "Dahiya"), in an adversary proceeding brought in connection with the bankruptcy case of Shahara Khan. The Trustee brought the adversary proceeding against Tozammel H. Mahia, the Debtor's son, to recover an allegedly fraudulent transfer arising from the sale of real property that was owned jointly by the Debtor, the Defendant, and Shawsum N. Rimi. The Trustee brings this Motion for Sanctions in response to counterclaims asserted against her by the Defendant, by counsel, in his answer to the complaint.

The prospect of imposing sanctions against a professional is never pleasant for the parties or the court. Some of the most important precepts of the legal profession are in the background, and occasionally the foreground, of a request for this relief. As Chief Judge Irving Kaufman noted some thirty years ago, "advocacy is an art in which the unrelenting pursuit of truth and the most thorough self-control must be delicately balanced," and "zealous advocacy in behalf of a client can never excuse contumacious or disrespectful conduct." *Van Iderstine Co. v. RGJ Contracting Co.*, 480 F.2d 454, 459 (2d Cir. 1973).

At the same time, those same precepts sometimes call upon attorneys to take on difficult cases, to advocate unpopular positions, or to challenge existing legal authorities through impact litigation. As one scholar has observed, "as challengers to perceived injustice, as catalysts of social change, lawyers may have a special role advantage. . . . [T]his is one of the lawyer's roles in a modern democratic society, be it a well-established one or an emerging one." James E.

Moliterno, *The Lawyer as Catalyst of Social Change*, 77 Fordham L. Rev. 1559, 1559 (2009). But a lawyer may be limited in the amount of social change that he or she can effect in the context of representing a client, because "[a] lawyer's role is to advance the lawful interests of her client, without regard for . . . whether those interests are at odds with more general notions of the public's interest." Moliterno, *Catalyst*, *supra*, at 1564.

Here, the Trustee's motion calls for this Court first to address whether the bankruptcy court has the authority to issue sanctions under 28 U.S.C. § 1927. If so, then this Court next must consider whether the Trustee has established that Mr. Dahiya and his law firm acted in bad faith to multiply these proceedings unreasonably and vexatiously. And finally, if an award of sanctions is warranted, the Court must determine what amount is appropriate, guided by considerations of compensation, deterrence, and ability to pay.

Based on the entire record and for the reasons stated below, this Court concludes that it may impose sanctions under Section 1927, and under its inherent authority. The Court also concludes that the Trustee has shown that sanctions are justified, and that an award of sanctions against Mr. Dahiya and his law firm in the amount of $15,000 is warranted.

### Jurisdiction

The Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157(a). This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (E), (H), and (O).

### Procedural History

*The Debtor's Bankruptcy Case and the Commencement of this Adversary Proceeding*

The Debtor filed this Chapter 7 bankruptcy case on July 22, 2010, and received a discharge five months later, on December 23, 2010. On that same day, the Trustee filed a notice

of discovery of assets. About sixteen months into the administration of the Debtor's estate, the Trustee sought the Court's approval to retain counsel to assist in the investigation of the Debtor's financial affairs and assets, and on December 8, 2011, the Court approved the Trustee's retention of the Law Offices of Avrum J. Rosen, PLLC, as her counsel.

The Trustee retained counsel particularly to investigate the Debtor's interest in a home located at 87-27 110th Street in Richmond Hill, New York (the "Property"), which was sold on April 5, 2007. The deed for that transfer showed that the Debtor was a titled owner of the Property, but disbursement checks from closing did not indicate that the Debtor received any proceeds from the sale.

On December 3, 2011, the Trustee commenced this adversary proceeding against Tozammel H. Mahia, the Debtor's son, for claims related to the sale of the Property, specifically, turnover of property of the estate and recovery of fraudulent conveyances under Bankruptcy Code Sections 542, 544, 550, and 551, New York's Debtor and Creditor Law, and common law principles of fraud and unjust enrichment.

At first, the Defendant was not represented by counsel, and did not respond to the Complaint. But at the initial pre-trial conference on January 24, 2012, Mr. Dahiya and his law firm appeared for the Defendant. The Court directed Mr. Dahiya to file a notice of appearance and to respond to the Complaint by January 31, 2012.

*The Answer and Counterclaims Against the Trustee*

One week after the deadline to respond to the Complaint, on February 7, 2012, Dahiya filed an Answer and Counterclaims against the Trustee, and demanded a jury trial. The Counterclaims seek, among other relief, a permanent injunction against the Trustee to bar her

from bringing actions against similarly situated defendants without first showing that there is "probable cause" for the allegations and claims. Answer p. 6. The Counterclaims also seek the amendment of this Court's Local Rules to impose a similar requirement on all trustees.

In particular, in the first counterclaim, for abuse of process, Dahiya alleges that the Trustee brings this adversary proceeding without a basis in fact or law. Dahiya claims that the Trustee did not "make inquiries into the finances of the debtor" or look for "the realities of [the] transaction and [the] family as a unit." Answer ¶ 23. Dahiya accuses the Trustee of bringing this action in order to "intimidate the family to extract a settlement from the helpless family[,]" and claims that the Trustee simply "wants money." *Id*. Dahiya asserts that if the Trustee had performed adequate "due diligence," she would have discovered that there was no basis for the Complaint. *Id*. Dahiya characterizes the conduct of the Trustee and her counsel as "contemptible from all aspects" and claims that they "acted deliberately, maliciously, oppressively and with callous and intentional disregard of their duties . . . ." Answer ¶¶ 23, 27. Dahiya seeks an award of punitive damages, attorneys' fees, and costs.

In the second counterclaim, for "constitutional torts," Dahiya charges that the Trustee has "deliberately hurt[] the family composition here" by "su[ing] the son defendant on behalf of mother debtor." Answer ¶ 29. Noting that the "defendant-son is under religious duty to support his mother," Dahiya claims that the Defendant's "spiritual duty to maintain his family has been negatively impacted" by this adversary proceeding. *Id*. Dahiya again claims that the Trustee did not "do her homework," and asserts that if she had, she would not have brought this action. *Id*. Dahiya also asserts that the Trustee abused her powers, and seeks an award of punitive damages and attorney's fees.

4

Dahiya also seeks an injunction barring the Trustee from bringing actions against a debtor's family members, unless she demonstrates that there is probable cause for the allegations. Specifically, the Counterclaims seek:

> An Order preliminar[il]y and permanently enjoining the plaintiff and their representative and agents, and each of them, from instituting and [sic] proceedings against defendants or similarly situated defendants (intra-family) in this district, unless the Trustee has filed an independent sheet along with the summons and complaint delineating the steps the trustee has undertaken to ascertain the facts alleged in the complaint and a minimum one page summary of arguments as to why there is a probable cause action for allegation in the complaint.

Answer p. 6.  Dahiya alleges that there has been a "cry for help" in these family situations, and asserts that this relief would "check the abuse perpetrated by the trustees in this district" that arises when family members are "pitted against each other" and "have no financial capacity to engage legal help." *Id.*  Finally, Dahiya asks that this Court direct the United States Trustee to investigate the assertion of intra-family claims by Chapter 7 trustees.

*The Trustee's Motion for Sanctions*

The Trustee responds to the Counterclaims with this motion for sanctions against Mr. Dahiya and Dahiya Law Offices, LLC under Section 1927 and Bankruptcy Code Section 105.[1]

In her motion, the Trustee describes the investigation that she conducted before bringing the adversary proceeding.  That process included examining the Debtor at the meeting of creditors pursuant to Bankruptcy Code Section 341(a), as well as examining and researching documents including a closing statement for the Property, checks disbursed at the closing, the

---

[1] The Second Circuit has confirmed that sanctions under Section 1927 and the court's inherent power may be imposed upon a law firm.  *Enmon v. Prospect Capital Corp.*, 675 F.3d 138, 147 (2d Cir. 2012) (holding that "[t]here is no serious dispute that a court may sanction a law firm pursuant to its inherent power.  We see no reason that a different rule should apply to § 1927 sanctions . . . .").

Property deed, and the Debtor's tax returns.  Based on the deed, which lists Shawsum N. Rimi, the Defendant Tozammel H. Mahia, and the Debtor as titled owners of the Property, and the disbursement checks, which disburse the sale proceeds solely to the Defendant, the Trustee retained counsel to pursue the estate's interest in these funds.

The Trustee argues that Dahiya brings these Counterclaims in bad faith and makes meritless allegations in order to harass, intimidate, and disparage the Trustee and her counsel and to frustrate the purposes of the bankruptcy process and prevent the Court from reaching the merits of this adversary proceeding.  She states that the Counterclaims are "baseless," and that they are designed to multiply these proceedings unreasonably and vexatiously and to delay the administration of the Debtor's bankruptcy case.  Tr. Sanctions Motion ¶ 37.  The Trustee also asserts that the Counterclaims are designed to cause her to incur substantial legal fees and increased malpractice insurance premiums, in order to force the settlement of legitimate claims against the Defendant that she brings in her fiduciary capacity as a Chapter 7 trustee.

As to the abuse of process counterclaim, the Trustee argues that sanctions against Dahiya are appropriate because Dahiya could not have brought this claim in good faith, for several reasons.  She argues that it is black letter law that an action for abuse of process cannot be brought until the matter at issue has been decided in the claimant's favor, and here, the Trustee's claims against the Defendant have not been determined.  The Trustee also observes that Dahiya has brought similar abuse of process counterclaims against trustees in response to actions to recover preferences and fraudulent conveyances on at least five occasions, which the Trustee alleges were all without legal basis.  And the Trustee notes that Dahiya does not plead special damages, which is an essential element of a civil abuse of process claim.

The Trustee also argues that Dahiya's bad faith is shown by the assertion of an abuse of process claim in response to her performance of her statutory duties under Bankruptcy Code Section 704, including the duty to investigate a debtor's financial affairs and to collect the property of the estate.  And the Trustee argues that Dahiya brings this claim without complying with the *Barton* doctrine which prohibits, under certain circumstances, suit against a trustee without leave of the appointing court.

As to the counterclaim for constitutional torts, the Trustee argues that sanctions against Dahiya are appropriate because this cause of action does not exist, and the allegations do not state a colorable claim.  The Trustee notes that the Debtor filed for bankruptcy voluntarily, thereby subjecting herself and her property to the jurisdiction of this Court.

The Trustee argues that the Counterclaims have caused her to incur legal fees in responding to the Counterclaims and increased malpractice and liability insurance premiums that she is now obliged to pay.

*The Defendant's Withdrawal of the Counterclaims*

One month after the Trustee made this Motion for Sanctions, the Defendant terminated Dahiya and hired new counsel.  On April 23, 2012, Christine T. Castiglia-Rubinstein, Esq., on behalf of the Defendant, filed a Letter Terminating Prior Counsel, and the next day, on April 24, 2012, Ms. Castiglia-Rubinstein withdrew the Counterclaims on behalf of the Defendant.  Some seven months later, on December 3, 2012, the Defendant discharged Ms. Castiglia-Rubenstein as his counsel and two days later, Dahiya filed a notice of appearance as counsel for the Defendant. Neither the temporary termination of Dahiya nor the withdrawal of the Counterclaims by the Defendant's substitute counsel affects the disposition of the Motion for Sanctions.

7

*Dahiya's Response to the Motion for Sanctions*

Dahiya's response to the Trustee's Motion for Sanctions has been marked by requests for adjournments, missed deadlines, and delay.

At the same time that Dahiya was terminated as the Defendant's counsel, and on the eve of the hearing on this motion, on April 23, 2012, Dahiya filed an Affirmation in Opposition to the Motion for Sanctions. Dahiya opposes the Motion for Sanctions on two principal grounds. As a preliminary matter, Dahiya argues that bankruptcy judges do not have the authority to impose sanctions under Section 1927. And separately, Dahiya argues that sanctions under Section 1927 are not appropriate because the Counterclaims against the Trustee are colorable, and Dahiya did not act in bad faith in asserting them.

The next day, on April 24, 2012, the Court held a hearing on the Motion for Sanctions, at which the Trustee and Dahiya appeared and were heard. By order dated April 26, 2012, the Court directed the parties to file prehearing statements by June 1, 2012, and to appear for an evidentiary hearing on June 13, 2012.

On June 1, 2012, the Trustee filed a prehearing statement, but Dahiya did not. One week later, on June 8, 2012, Dahiya requested an adjournment of the June 13 evidentiary hearing. The Trustee opposed the request. The Court held a hearing on June 13, 2012, at which the Trustee and Dahiya appeared. A new schedule was set at that hearing, and on June 14, 2012, the Court directed Dahiya's counsel, if any, to file a notice of appearance by June 20, 2012, and a prehearing statement by June 27, 2012. By order dated June 14, 2012, the Court also directed Dahiya and the Trustee to appear for an evidentiary hearing on July 16, 2012.

On June 20, 2012, Wayne Greenwald, Esq. filed a notice of appearance and requested an

8

adjournment of all of the dates set by the Court at the June 13 hearing. The Trustee opposed these requests for extensions and adjournments. Ultimately, the parties reached an agreement on a new schedule. By order dated June 28, 2012, this Court directed Dahiya to file a prehearing statement by September 6, 2012, and adjourned the evidentiary hearing on consent to September 13, 2012.

But these deadlines, too, were missed. On September 7, 2012, Mr. Greenwald requested a further extension of time to file Dahiya's prehearing statement, and the Court extended the deadline to September 10, 2012.

On September 10, 2012, Dahiya filed a prehearing statement and a second response and a declaration, sworn to by Mr. Dahiya, in opposition to the Motion for Sanctions. Dahiya advances several arguments in opposition to the Motion for Sanctions, including that this motion should have been brought under Bankruptcy Rule 9011, that Section 1927 sanctions are not warranted because there have not been multiple proceedings, that Bankruptcy Code Section 105 is inapplicable because the Trustee cannot establish that a violation of any provision of the Bankruptcy Code or Rules or any abuse of process has occurred, and that the Trustee's assertions of bad faith are misplaced or premature. Dahiya also acknowledges that certain facts are not in dispute and identifies certain disputed material facts.

One day later, on September 11, 2012, the Trustee responded to Dahiya's submissions, and stated, among other arguments, that Dahiya's submissions were neither signed nor filed by Mr. Greenwald, and that the submissions were contradictory and troublesome.

On September 13, 2012, the Court held a hearing on the Motion for Sanctions at which the Trustee and Dahiya, represented by Mr. Greenwald, appeared. Over the course of that

hearing, the parties met and conferred and reached a tentative settlement of these issues. The terms of that settlement were placed on the record, and the parties agreed promptly to submit an appropriate stipulation for the Court's review.

But the settlement agreement did not last, and neither did Mr. Greenwald's representation of Dahiya. Several weeks later, Dahiya terminated Mr. Greenwald and on October 18, 2012, Mr. Greenwald advised the Court that Dahiya had discharged his firm and no longer wished to proceed with the settlement with the Trustee. He also advised the Court that Dahiya would seek a withdrawal of the reference as to the Motion for Sanctions.

One week later, and more than six months after this motion was brought, on October 25, 2012, the Trustee requested a new date for the evidentiary hearing on the Motion for Sanctions. In response, Dahiya reiterated an intention to seek a withdrawal of the reference. The Court held a conference with the Trustee and Dahiya on October 31, 2012, and scheduled an evidentiary hearing on the Motion for Sanctions for November 30, 2012. And by order dated November 7, 2012, the Court approved a stipulation relieving Mr. Greenwald as counsel to Dahiya.

As the November 30, 2012 date for the evidentiary hearing on the Motion for Sanctions drew near, Dahiya raised additional issues. On November 12, 2012, Dahiya filed a Motion for Jury Trial, and on November 19, 2012, Dahiya filed a Motion for Withdrawal of the Reference. On November 26, 2012, Krishnan S. Chittur appeared as new counsel for Dahiya and requested an adjournment of the November 30 evidentiary hearing until after the question of this Court's authority to hear the matter was resolved.

On November 28, 2012, this Court denied Dahiya's request for an adjournment on grounds, among others, that settled law in the Second Circuit plainly authorizes this Court to hear

10

and determine the Motion for Sanctions.  The next day, Dahiya filed a letter stating that Mr.

Dahiya would be present for the hearing but would not participate in the proceedings.  And

finally, on November 30, 2012, this Court denied Dahiya's motion for a jury trial and held an

evidentiary hearing at which the Trustee and Mr. Dahiya, representing himself and his law firm,

appeared, and the Court reserved decision.

## Discussion

### *Whether a Bankruptcy Court May Impose Sanctions Under Section 1927*

The first question that this Court must address is whether it may impose sanctions under

Section 1927.  Section 1927 states:

> Any attorney or other person admitted to conduct cases in any court of the United
> States or any Territory thereof who so multiplies the proceedings in any case
> unreasonably and vexatiously may be required by the court to satisfy personally
> the excess costs, expenses, and attorneys' fees reasonably incurred because of
> such conduct.

28 U.S.C. § 1927.  Dahiya argues that this Court lacks the authority to impose sanctions under

Section 1927, because a bankruptcy court, as a non-Article III court, is not a "court of the United

States" within the meaning of the statutory language of Section 1927.

At the outset, a request for sanctions arising out of an attorney's conduct in a core

proceeding is itself a core proceeding.  *See, e.g., In re French Bourekas, Inc.*, 183 B.R. 695, 696

(Bankr. S.D.N.Y. 1995) (citing *In re Emergency Beacon Corp.*, 52 B.R. 979, 987 (S.D.N.Y.

1985)), *aff'd, Zwirn v. United Capital Corp. (In re French Bourekas, Inc.)*, 195 B.R. 19

(S.D.N.Y. 1995).  As one court found, the bankruptcy court may decide a sanctions motion

because it "directly affect[s] the integrity of [the debtor's] bankruptcy proceedings."  *Kalikow v.*

*Kalikow (In re Kalikow)*, 602 F.3d 82, 91 (2d Cir. 2010).  This authority is a necessary corollary

11

to a bankruptcy court's ability – and duty – to oversee and maintain the integrity of the

bankruptcy process.  As another court observed, "a bankruptcy court is a federal court . . . [and]

has the inherent power to control admission to its bar and to discipline attorneys who appear

before it."  *In re MPM Enters.*, 231 B.R. 500, 504 (E.D.N.Y. 1999).

Here, the Trustee initiated this adversary proceeding to avoid and recover an allegedly

fraudulent transfer for the benefit of the bankruptcy estate.  As courts have concluded, a

bankruptcy court may enter a final judgment with respect to this type of claim.  As this Court

recently held:

> [A trustee's claims for the avoidance of fraudulent transfers are] plainly outside
> the scope of [actions in which a bankruptcy court may not enter a final judgment],
> because they are neither counterclaims, nor based solely on state common law.
> Rather, they are claims that apply state law in a manner contemplated by
> Bankruptcy Code Section 544(b).

*Silverman v. A-Z RX LLC (In re Allou Distribs.)*, 2012 WL 6012149, at *11 (Bankr. E.D.N.Y.

Dec. 3, 2012).  *See, e.g., Kirschner v. Agoglia (In re Refco Inc.)*, 461 B.R. 181, 187 (Bankr.

S.D.N.Y. 2001) (noting that a fraudulent transfer claim under Bankruptcy Code Section

544(b)(1) "'flows from a federal statutory scheme,' and is 'completely dependent upon

adjudication of a claim created by federal law,'" and thus several of the bases in *Stern* for

preventing a court from entering a final judgment do not apply (quoting *Stern v. Marshall*, 131 S.

Ct. 2594, 2614 (2011))).

And even in those situations where the bankruptcy court may not enter a final judgment

in a core matter, the court has subject matter jurisdiction to hear the claims.  As this Court found,

"not having the power to enter final judgment is different than not having subject matter

jurisdiction under Section 1334."  *A-Z RX LLC*, 2012 WL 6012149, at *7 (citing *Ace Am. Ins.*

*Co. v. DPH Holdings Corp. (In re DPH Holdings Corp.)*, 448 F. App'x 134, 136 (2d Cir. 2011) (stating that "[s]o long as a proceeding is" core or non-core, "the Bankruptcy Court possesse[s] subject-matter jurisdiction"). *See* Bankr. E.D.N.Y. Admin. Order 601 (stating that "the district court may treat any order or judgment of the bankruptcy court as proposed findings of fact and conclusions of law in the event that the district court concludes that a bankruptcy judge could not enter that order or judgment consistent with Article III of the United States Constitution").

It is axiomatic that where this Court has the authority finally to determine the underlying adversary proceeding, then it may also consider a motion for sanctions arising in the same matter. It is similarly plain that where this Court has subject matter jurisdiction to hear a matter, it also has the ability to protect the integrity of the bankruptcy process by an award of sanctions under Section 1927 and the Court's inherent authority.

This is consistent with decisions within this Circuit that are both controlling and persuasive. As the Second Circuit has held, "[a] bankruptcy court may impose sanctions pursuant to 28 U.S.C. § 1927 . . . ." *Baker v. Latham Sparrowbush Assocs. (In re Cohoes Indus. Terminal, Inc.)*, 931 F.2d 222, 230 (2d Cir. 1991). *See, e.g.*, *French Bourekas, Inc.*, 175 B.R. at 523-24 (citing *Cohoes* and finding that sanctions were appropriate for excess litigation costs); *In re Ambotiene*, 316 B.R. 25, 34 (Bankr. E.D.N.Y. 2004) (noting that "[t]he Second Circuit has held that 'a bankruptcy court may impose sanctions pursuant to 28 U.S.C. § 1927.'"), *aff'd*, *Grand St. Realty, LLC v. McCord*, 2005 WL 2436214 (E.D.N.Y. Sept. 30, 2005); *In re Emanuel*, 2010 WL 935498, at *1 n.2 (Bankr. S.D.N.Y. Mar. 12, 2010) (noting that bankruptcy courts enjoy the same inherent power as district courts to sanction parties for improper conduct and holding that "bankruptcy courts may impose sanctions under 28 U.S.C. § 1927"); *In re Green*,

13

422 B.R. 469, 473 (Bankr. S.D.N.Y. 2010) (finding that "the court has the power to sanction [an attorney] for conduct pursuant to . . . its inherent power [and] 28 U.S.C. § 1927").

Finally, it is worth noting that it has long been recognized that a bankruptcy court, like all federal courts, has the inherent authority to supervise the proceedings that take place before it. This authority includes the ability to impose sanctions on parties and professionals that appear before it. As one court observed, "'Bankruptcy courts, like Article III courts, enjoy inherent power to sanction parties for improper conduct.'" *Green*, 422 B.R. at 473-74 (quoting *Mapother & Mapother, P.S.C. v. Cooper (In re Downs)*, 103 F.3d 472, 477 (6th Cir. 1996)). *See Wilder v. GL Bus Lines*, 258 F.3d 126, 130 (2d Cir. 2001) (recognizing that "a district court has discretion under . . . 28 U.S.C. § 1927[] and its inherent equitable powers to impose costs against an attorney as a sanction"); *Revson v. Cinque & Cinque*, 221 F.3d 71, 78 (2d Cir. 2000) (holding that "[t]he court has inherent power to sanction parties and their attorneys, a power born of the practical necessity that courts be able 'to manage their own affairs so as to achieve the orderly and expeditious disposition of cases.'" (quoting *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991))). *See also* 3 James Wm. Moore et al., Moore's Federal Practice § 16.90 (3d ed. 1997) (noting that "this inherent authority is essential to the administration of justice, and exists in addition to sanctions available under specific statutes or Rules"); 1 Collier on Bankruptcy ¶ 8.07[1] (Alan N. Resnick & Henry J. Sommer eds., 16th ed. 2012) (stating that "[i]n addition to the numerous statutory provisions, professionals are subject to the court's inherent power to maintain order in their courts, punish improper behavior, control admission to the bar and discipline attorneys").

Accordingly, this Court concludes that it may impose sanctions under Section 1927 and

14

additionally under its inherent authority.

<u>*The Legal Standard for the Imposition of Sanctions*</u>

Sanctions, under any authority, should not be imposed lightly.  They are the exception, not the norm, even in the face of aggressive litigation tactics and strategy.  They should issue "'narrowly and with great caution, so as not to stifle the enthusiasm or chill the creativity that is the very lifeblood of the law.'"  *Palagonia v. Sachem Cent. Sch. Dist.*, 2010 WL 811301, at *2 (E.D.N.Y. Mar. 1, 2010) (quoting *Romeo v. Sherry*, 308 F. Supp. 2d 128, 148 (E.D.N.Y. 2004)).  *See Mone v. Comm'r.*, 774 F.2d 570, 574 (2d Cir. 1985) (stating that a court should take into account these considerations, noting that the power to sanction "carries with it the potential for abuse").

<u>Sanctions Under Section 1927</u>   As one leading treatise notes, sanctions under Section 1927 are "designed primarily to punish the offending attorney and to deter the repetition of the sanctionable conduct."  James Wm. Moore et al., Moore's Federal Practice, Judicial Code Title 28 U.S.C. § 1927.2[3] (2012).  In addition, sanctions may include "an award of the attorney's fees and expenses 'incurred' by the party, so that a sanction clearly has a compensatory element as well."  *Id.*  (quoting *Hamilton v. Boise Cascade Express*, 519 F.3d 1197, 1205-06 (10th Cir. 2008)).

Sanctions are appropriate under Section 1927 where "'[an] attorney's actions are so completely without merit as to require the conclusion that they must have been undertaken for some improper purpose such as delay.'"  *Cohoes*, 931 F.2d at 230 (quoting *Oliveri v. Thompson*, 803 F.2d 1265, 1273 (2d Cir. 1986), *cert. denied sub nom. Cnty. of Suffolk v. Graseck*, 480 U.S. 918 (1987)).  *See Best Payphones, Inc. v. Manhattan Telecomms. Corp. (In re Best Payphones,*

*Inc.)*, 450 F. App'x 8, at *14 (2d Cir. 2011).  In a sanctions motion under Section 1927, the

burden of proof is on the moving party.  *Intelli-Check, Inc. v. Tricom Card Techs.*, *Inc.*, 2005 WL

3533153, at *11 (E.D.N.Y. Dec. 22, 2005).

Section 1927 applies where an attorney has multiplied proceedings unreasonably and

vexatiously, and increased the costs of the proceedings, with bad faith or intentional misconduct.

*Venziano v. Long Island Pipe Fabrication & Supply Corp.*, 238 F. Supp. 2d 683, 693 (D.N.J.

2002), *aff'd in part, appeal dismissed in part*, 79 F. App'x 506 (3d Cir. 2003).  "Unreasonably

and vexatiously" sets a high bar for relief, and has been interpreted to mean that the offending

conduct must have been *both* unreasonable *and* for an improper purpose.  *See Ball v. A.O. Smith

Corp.*, 451 F.3d 66, 70 (2d Cir. 2006) (considering whether Section 1927 sanctions may be

discharged in a bankruptcy case).  This, in turn, implicates both objective and subjective

considerations.

One measure of whether sanctions are warranted is whether the claim at issue is

colorable.  A claim is "colorable" where it "'has some legal and factual support, considered in

light of the reasonable beliefs of the individual making the claim.'"  *Green*, 422 B.R. at 475

(quoting *Energy Brands Inc. v. Spiritual Brands, Inc.*, 571 F. Supp. 2d 458, 472-73 (S.D.N.Y.

2008)).  The inquiry is "whether a reasonable attorney . . . could have concluded that facts

supporting the claim *might be established*, not whether such facts actually *had been established*."

*Schlaifer Nance & Co. v. Estate of Warhol*, 194 F.3d 323, 337 (2d Cir. 1999) (internal quotation

omitted).  The ability to make a judgment as a matter of law on the claim at issue is "a necessary,

but not a sufficient, condition for a finding of a total lack of a colorable basis."  *Id.*

Another measure of whether sanctions are warranted is whether the challenged actions

were undertaken in bad faith.  The requirement of bad faith is applied strictly in this Circuit, and

a clear showing with respect to the necessary facts must be made.  *Palagonia*, 2010 WL 811301,

at *2 (contrasting the objective standard of Rule 11 sanctions with Section 1927's requirement of

a clear showing of bad faith).  It is a "prerequisite" to imposing sanctions under Section 1927.

*Intelli-Check, Inc.*, 2005 WL 3533153, at *10 (citing *United States v. Int'l Bhd. of Teamsters*,

948 F.2d 1338, 1345 (2d Cir. 1991)).  Bad faith may be present where a party acted for

"improper purposes."  *Intelli-Check, Inc.*, 2005 WL 3533153, at *10 (citing *Revson*, 221 F.3d at

78).  Bad faith may be inferred where the conduct at issue "is completely without merit."  *In re*

*60 E. 80th St. Equities, Inc.*, 218 F.3d 109, 116 (2d Cir. 2000).

These considerations have particular resonance in the bankruptcy matters.  A key purpose

of Section 1927 is to deter unnecessary delays in litigation.  As the Second Circuit observed in

*Oliveri*, this purpose is clear from the legislative history and should inform the court's inquiry.

*Oliveri*, 803 F.2d at 1273.  *See French Bourekas, Inc.*, 183 B.R. at 697 (framing a Section 1927

sanctions award "in accordance with the deterrence which is central to the legislative intent").  In

a bankruptcy case, the prompt and efficient progress of cases can be critical to a debtor's

prospects of reorganization and ability to obtain a "fresh start," and to a creditor's prospects of

receiving a distribution.  To this same end, Section 1927 is also intended to deter "dilatory

tactics" and "bad faith conduct by attorneys."  *Palagonia*, 2010 WL 811301, at *2.

In balancing the goals of Section 1927 and the promotion of creative and zealous

professional advocacy, courts have found that the interests of justice sometimes require the

balance to tip in favor of issuing sanctions.  For example, in *Veneziano*, the court found that

Section 1927 sanctions were warranted where an attorney filed meritless claims against an

insurer and sought relief that had already been granted before the action was commenced.  The court noted the "utter lack of factual or legal support for the claims [that the attorney] filed and continued to prosecute" and noted that the attorney had ignored guidance from the court to narrow her discovery requests, made unsupported assertions that she had been threatened and intimidated, and filed for appeal prematurely.  *Veneziano*, 238 F. Supp. 2d at 694.

The court found that this conduct significantly exceeded "mere misunderstanding, bad judgment, or well-intentioned zeal," and that the attorney had brought the claims solely to "harass" another attorney with whom the attorney "had been in conflict" prior to the action.  *Id.* Under these circumstances, the court found that the risk of chilling the attorney's zealous representation of her client was outweighed by her bad faith, and imposed sanctions under Section 1927.  *Id.*

But contentious and acrimonious litigation does not necessarily lead to the imposition of sanctions.  As one court found, sanctions under Section 1927 were not warranted where there was a basis for a party's claim and the parties' misunderstanding arose in the context of two years of contentious litigation.  *Intelli-Check, Inc.*, 2005 WL 3533153, at *11.  A party's response to a request for sanctions may also tip the balance in favor of restraint.  As another court concluded, where a party clarifies statements that might otherwise have been sanctionable, sanctions would not be imposed.  *Palagonia*, 2010 WL 811301, at *3.

<u>Sanctions Under the Court's Inherent Authority</u>   Section 1927 is not the only basis upon which this Court may supervise the conduct of the professionals and parties that appear before it. As the Supreme Court has noted, courts are "vested, by their very creation, with power to impose silence, respect, and decorum, in their presence, and submission to their lawful mandates."

*Chambers v. NASCO, Inc.*, 501 U.S. 32, 43 (1991) (internal quotations omitted). *See In re Truong*, 2008 WL 1776227, at *6 (Bankr. S.D.N.Y. Apr. 14, 2008) (citing this standard); *Schlaifer Nance & Co.*, 194 F.3d at 336 (same). And as a respected commentator has observed, "[t]his inherent authority is essential to the administration of justice, and exists in addition to sanctions available under specific statutes or Rules." 3 James Wm. Moore et al., Moore's Federal Practice § 1690 (3d ed. 1997).

This inherent power complements, rather than displaces, a court's ability to impose sanctions under Section 1927. As the Supreme Court further explained, there is "no basis for holding that the sanctioning scheme of the statute and the rules displaces the inherent power to impose sanctions for . . . bad-faith conduct." *Chambers*, 501 U.S. at 46.

Whether this Court should exercise its inherent power to sanction calls for an inquiry that is similar to that required under Section 1927. That is, as the Second Circuit has stated, sanctions are appropriate under a court's inherent power "where the attorney has acted in bad faith in the actions that led to the lawsuit or in the conduct of the litigation." *Wilder*, 258 F.3d at 130. An attorney's bad faith is the central question to be addressed. *See, e.g., Oliveri*, 803 F.2d at 1273 (holding that "an award made under § 1927 must be supported by a finding of bad faith similar to that necessary to invoke the court's inherent power").

The inquiry is the same when it is the bankruptcy court that imposes sanctions on the basis of the court's inherent authority. As one bankruptcy court observed, "[c]ourts may use their inherent power to sanction attorneys for actions taken on behalf of a client in the course of litigation, so long as those actions were taken in bad faith." *Green*, 422 B.R. at 474. And bankruptcy courts have likewise concluded that "[t]here is no meaningful difference between the

type of conduct that is sanctionable under the Court's inherent power and under 28 U.S.C. § 1927 because both require a similar finding of bad faith." *Truong*, 2008 WL 1776227, at *5.  As a consequence, requests for sanctions under Section 1927 and pursuant to the court's inherent authority may be decided in a single inquiry, because that "[t]he same standard applies to both theories." *Green*, 422 B.R. at 474.

Applying these standards, one bankruptcy court imposed sanctions on an attorney under both Section 1927 and the Court's inherent authority where the attorney knowingly failed to disclose in the debtor's petition that the debtor's landlord had obtained a judgment of possession, and failed to move promptly to correct the omission.  There, the court concluded that the attorney acted in bad faith and with intent to delay the bankruptcy process where there was "no colorable reason for [the attorney] to omit disclosure of the judgment of possession" from the petition and "no reason, other than delay, why [the attorney] failed to list the . . . judgment of possession in the bankruptcy petition." *Green*, 422 B.R. at 474.  The court also found intent to delay from the attorney's failure to amend the petition once the landlord filed a motion for relief from the automatic stay.  *Green*, 422 B.R. at 475.

And other remedies may meet the need for a response to sanctionable conduct.  For example, where a party may not have been on sufficient notice that he could be subject to bankruptcy court sanctions, and the harm caused by his actions was minimized by a prompt dismissal of the case, a request to impose sanctions based upon the court's inherent authority was denied.  *Truong*, 2008 WL 1776227, at *6-8.

*Whether Sanctions Against Dahiya Are Warranted*

An award of sanctions under Section 1927 and this Court's inherent authority requires the

assessment of two questions:  first, whether Dahiya had a colorable basis to bring the Counterclaims; and second, whether Dahiya acted in bad faith in asserting those claims.  The Court will consider these questions in turn.

<u>Whether Dahiya Had a Colorable Basis To Bring the Counterclaims</u>    Dahiya asserts two counterclaims against the Trustee, for abuse of process and for unspecified "constitutional torts." Each of the counterclaims is premised on Dahiya's argument that the Trustee's adversary proceeding against the Defendant, asserting claims related to the sale of the Property, should not have been brought – and indeed, that by bringing this action, the Trustee committed actionable abuse of process and "constitutional torts."  And the Counterclaims are also premised on Dahiya's argument that the Trustee has abused her powers, disregarded the family relationship of parent and child between the Debtor and the Defendant, and "acted deliberately, willfully, maliciously, oppressively and with callous and intentional disregard of [her] duties."  Answer ¶ 27.

In particular, Dahiya argues that the Debtor held only "bare legal title" to the Property and that the Trustee should have known that the Debtor has no "equity interest in the Property." Dahiya Opp. Aff. ¶ 11, ECF No. 33, Ex. 1.  Dahiya asserts that at the Section 341 meeting, the Debtor stated that she did not contribute to the down payment to purchase the Property or pay the mortgage or property taxes on the Property, and that her children, not she, resided there.

Dahiya also claims that the Trustee did not "do her homework" before bringing the adversary proceeding.  Answer ¶ 29, ECF No. 8.  Dahiya states:

> [The Counterclaims are] premised on the factual allegations that the Trustee failed
> to adequately investigate the Debtor's interest in the Property despite having
> knowledge of facts that raised questions about whether the Debtor was a

> beneficial owner of the property, and that the Trustee filed [the adversary proceeding] in an attempt to obtain additional funds for the Debtor's estate without regard to whether the claims . . . had any basis in fact or law.

Dahiya Opp. Aff. p. 9, ECF No. 33.

The Trustee responds that Dahiya "knew that the Trustee had conducted a reasonable inquiry in connection with her investigation of the alleged transfer by the Debtor to the Defendant" and nevertheless made contrary allegations and brought the Counterclaims against her.  Tr. Prehr'g Stmt. ¶ 36.

Dahiya replies that some fifteen hours were spent in researching the legal issues raised by the adversary proceeding and Counterclaims before deciding to proceed.  Dahiya notes that this research included the review of articles on constitutional law and jurisprudence on abuse of process and malicious prosecution claims.

The first counterclaim, for abuse of process, has three elements.  These are:

> [i] regularly issued process, either civil or criminal; [ii] intent to do harm without excuse or justification; and [iii] use of the process in a perverted manner to obtain a collateral objective.  The gist of the action for abuse of process lies in the improper use of process after it is issued.

*Klass v. Frazer*, 290 F. Supp. 2d 425, 426 (S.D.N.Y. 2003) (internal quotations omitted).

The filing and service of a summons and complaint, without more, "is not a sufficient basis for meeting the first element," because an abuse of process claim must be rooted in "the unlawful pursuit of a collateral objective . . . after the process is issued."  *O'Bradovich v. Vill. of Tuckahoe*, 325 F. Supp. 2d 413, 434 (S.D.N.Y. 2004).  In addition, to state a cause of action for abuse of process, a party must allege special damages.  *Jaroslawicz v. Cohen*, 783 N.Y.S.2d 467, 467, 12 A.D.3d 160, 160 (N.Y. App. Div. 1st Dep't 2004) (finding that a plaintiff's "three causes

of action for abuse of process were properly dismissed because he failed to plead special damages with sufficient particularity or a cognizable actual damage claim and because he failed to plead lack of justification) (internal citations omitted).

Here, the record shows that Dahiya could not have had a reasonable belief that the abuse of process counterclaim has some legal and factual support, for several reasons. *See Green*, 422 B.R. at 474-75. At the outset, Dahiya bases this counterclaim on the argument that the Trustee should not have commenced the adversary proceeding in the first place. But an abuse of process claim requires more than commencing an action.

In addition, the record shows that Dahiya acknowledges that the Trustee took several steps in order to investigate the basis for the claims asserted in the adversary proceeding. These include conducting the Section 341 meeting, discovering that the Debtor's name appears on the deed for the Property, and asking the Debtor specific questions about the acquisition and sale of the Property. Dahiya Opp. Aff. p. 2, ECF No. 33. The record also shows that the Property was listed on the Debtor's bankruptcy schedules. *Id.*

And the record shows that Dahiya does not dispute several significant facts concerning the Trustee's inquiry. These include that "copies of the disbursement checks received by the Trustee with a letter from the Debtor's attorney provided clear documentary evidence that despite having an ownership interest in the Property, the Debtor failed to receive any disbursement of proceeds at the closing" and that "[f]rom the documentary evidence provided, the Trustee determined that the estate had a cause of action against [the Defendant] to recover the alleged fraudulent conveyance of the Debtor's interest in the proceeds of sale of the Property for the benefit of creditors." Dahiya Prehr'g Stmt. ¶ 2; Tr. Prehr'g Stmt. ¶¶ 8, 9.

The record further shows that Dahiya acknowledges that "the Trustee has a fiduciary duty under the Bankruptcy Code to recover preferences to insiders and fraudulent conveyances for the benefit of creditors of a debtor's estate."  Dahiya Prehr'g Stmt. ¶ 2; Tr. Preh'rg Stmt. ¶ 32.  That is, the record shows that the Trustee acted pursuant to her statutory duty to conduct a reasonable investigation before filing the Complaint against the Defendant.

For these same reasons, the record does not show that Dahiya can plead or prove that the Trustee had the "intent to do harm without excuse or justification," or that she used legal process "in a perverted manner to obtain a collateral objective."  *Klass*, 290 F. Supp. 2d at 426.

For all of these reasons, and based on the entire record, the Court finds that Dahiya could not have had a reasonable belief that the facts supporting the first counterclaim, for abuse of process, "*might* be established."  *See Schlaifer Nance & Co.*, 194 F.3d at 337.  For the same reasons, the record shows that the abuse of process counterclaim is not colorable.

The second counterclaim, for unspecified "constitutional torts," is harder to define. Dahiya has not shown that a general claim for "constitutional torts" under the circumstances present here, without more, is recognized in this or any other Circuit.  Dahiya does not identify the constitutional article or amendment, or other constitutional grounds, upon which this claim is based.  Nor does Dahiya point to case law that sets forth persuasive grounds to conclude that such a claim exists.  And while Dahiya argues that many hours of legal research were undertaken before bringing this counterclaim, that does not change the fact that the claim asserted against the Trustee appears to lack a sound basis in the law or the record of this case.

Rather, this counterclaim appears to embody Dahiya's view that, as a matter of policy, a Chapter 7 trustee should not seek relief against the family member of a debtor under the

24

circumstances present here.  Dahiya urges that the Trustee's actions interfered with the

Defendant's family relationships, and showed a lack of respect for the Defendant's personal,

religious, and spiritual obligations and duties.  No matter how genuine these concerns may be,

they are not a substitute for a colorable claim.

      For all of these reasons, and based on the entire record, the Court finds that Dahiya could

not have had a reasonable view under these circumstances that the second counterclaim, for

"constitutional torts," "*might* be established."  *See Schlaifer Nance & Co.*, 194 F.3d at 337.  For

the same reasons, the record shows that the "constitutional torts" counterclaim is not colorable.

      <u>Whether Dahiya Acted in Bad Faith in Asserting the Counterclaims</u>    A finding of bad

faith is a necessary precondition to an award of sanctions under Section 1927 and the Court's

inherent authority.  This determination is challenging, and requires careful attention to the law

and the facts, in light of both objective and subjective considerations.  If the conclusion of bad

faith is reached too easily, then the "'enthusiasm'" and "creativity that is the very lifeblood of the

law'" may be jeopardized.  *Palagonia*, 2010 WL 811301, at *2 (quoting *Romeo v. Sherry*, 308 F.

Supp. 2d at 148).  But if a court hesitates too much, then the integrity of the process will suffer.

      A professional owes a duty to clients, colleagues at the bar, and the courts not to let

passion or policy concerns overwhelm professional judgment.  It is one thing to advocate for a

cause outside the courtroom.  Attorneys can have an important role in public discourse and in the

development of public policy in areas of their professional expertise and interest.  But it can be

quite another to carry passion for a cause into the pleadings and documents that are filed in court

on behalf of a client at the expense of professional standards and the client's interests.  When the

attorney's conduct crosses the line that divides creative and zealous advocacy from the assertion

of claims that are plainly without merit in order to pursue a personal agenda, the question of bad faith must be addressed.

This Court has already concluded that the Counterclaims for abuse of process and "constitutional torts" are not colorable. The Trustee argues that Dahiya's bad faith can be inferred from the legal and factual infirmities in the Counterclaims, and also notes that Dahiya has brought similar claims against other trustees in various contexts. *See, e.g., Kramer v. TGS Taxi LLC (In re Stogianos)*, Adv. Pro. No. 11-01466; *Barnard v. Mohamed Arif and Lailun N. Shaikh (In re Shaikh)*, Adv. Pro. No. 09-08315; *Pryor v. Santangelo (In re Pupo Santangelo)*, Adv. Pro. No. 11-09096; and *Geltzer v. Dahiya (In re Chatkhan)*, Adv. Pro. No. 11-01017. The Trustee states that Mr. Dahiya asserted the Counterclaims as part of a broader "personal crusade" against perceived misconduct by Chapter 7 trustees against debtors and their families. Reply ¶ 2.

Mr. Dahiya responds that he was motivated to bring the Counterclaims against the Trustee because "[m]inority [i]mmigrants are [a] very vulnerable class and I as a member of the bar feel that it is my utmost duty and moral obligation that they be represented zealously and [with] dignity." Dahiya Opp. Aff. ¶ 31, ECF No. 33. He describes the decision to pursue the Counterclaims as "a question of how properly to preserve his client's [interests]" and states that "[w]ith the benefit of hindsight, other courses of action perhaps should have been undertaken." Dahiya Opp. Aff. 10, ECF No. 33, Ex. 1. Dahiya also states that "with the trustee's [sic] who's doing their job, there's no personal thing here. I'm fighting for dignity of law, and . . . I'm fighting for some principles." Tr. Nov. 30, 2012 23: 7-12.

Here, the record shows that the Trustee acted pursuant to her duties as a Chapter 7 trustee, which include the duty to marshal the assets of the Debtor's estate. *See* Bankruptcy Code

Section 704 (setting forth a trustee's obligation to "collect and reduce to money the property of the estate for which such trustee serves, and close such estate as expeditiously as is compatible with the best interests of parties in interest"). A trustee is obligated to undertake these activities in this and every bankruptcy case. And "[i]n the Second Circuit, a bankruptcy trustee is a quasi-judicial official 'immune from suit for personal liability for acts taken as a matter of business judgment in acting in accordance with statutory or other duty or pursuant to court order.'" *Picard v. Chais (In re Bernard L. Madoff Inv. Secs. LLC)*, 440 B.R. 282, 290 (Bankr. S.D.N.Y. 2010) (quoting *In re Smith*, 400 B.R. 370, 377 (Bankr. E.D.N.Y. 2009)). Marshaling estate assets is a mandated responsibility of a Chapter 7 trustee under the Bankruptcy Code and related law – law of which Dahiya is aware, as shown by the papers and statements throughout these proceedings. Thus, Dahiya's dispute with the Trustee appears to be not with the Trustee herself or her actions in this case, but with the requirements of Chapter 7 relief under the Bankruptcy Code and the statutory role ascribed to trustees.

And while the Counterclaims against the Trustee may well arise from Mr. Dahiya's personal convictions concerning fairness and equity under the Bankruptcy Code, where there is no colorable basis to bring those claims against the Trustee, even the most laudable of motivations cannot provide a proper purpose for having done so, or infuse merit into a groundless claim.

Finally, the record shows that Dahiya's assertion of the Counterclaims has caused significant and unnecessary delay in this adversary proceeding and in the administration of the Debtor's bankruptcy case, and has increased the costs of these proceedings. This is burdensome to all of the parties to these proceedings, and poses a threat to the integrity and efficiency of the

bankruptcy process.

For all of these reasons, and based on the entire record, the Court finds that Dahiya acted for an improper purpose, and that the Counterclaims are without merit. For the same reasons, the record shows that Dahiya acted in bad faith in advancing these Counterclaims. Taken together with the Court's findings that Dahiya did not have a colorable basis to bring these claims, the Court finds that an award of sanctions under Section 1927 and the Court's inherent authority is warranted.

### *Determining the Appropriate Amount of Sanctions*

Under both Section 1927 and the Court's inherent power, a sanctions award serves many objectives, including compensation and deterrence. Ability to pay is also a consideration. The sanctions award should not exceed the amount that represents "the excess costs, expenses, and attorneys' fees reasonably incurred because of [the sanctionable] conduct." 28 U.S.C. § 1927. *See In re Spectee Grp.*, 185 B.R. 146, 160 (Bankr. S.D.N.Y. 1995) (holding that "[t]he same standards of compensation and reimbursement apply whether sanctions are awarded under . . . 28 U.S.C. § 1927 or the Court's inherent power").

A sanctions award that corresponds to the movant's attorneys fees and costs serves the objective of compensation, and should be limited to those fees and costs that are directly attributable to the sanctionable conduct. *Green*, 422 B.R. at 477 (noting that "[o]nly fees that are directly caused by the sanctionable conduct may be awarded"). An award may include both those fees "'attributable to investigating, researching and fighting'" the meritless claims and those fees "incurred 'to research, prepare and prosecute'" the sanctions motion. *Emanuel*, 422 B.R. at 467 (quoting *PaineWebber, Inc. v. Can Am Fin. Grp., Ltd.*, 121 F.R.D. 324, 334 (N.D. Ill.

28

1988)), *aff'd*, 885 F.2d 873 (7th Cir. 1989).  *Accord Spectee Grp.*, 185 B.R. at 160 (noting that the movant can recover "those attorney's fees incurred attributable to investigating, researching and fighting the debtor's meritless petition as well as the fees incurred to research, prepare and prosecute its sanctions motion") (internal quotation omitted).  Costs otherwise associated with litigation are not compensable.  *French Bourekas, Inc.*, 183 B.R. at 697 (stating that "[a] party who incurs expense by virtue of an attorney's violation may be reimbursed only for the excess costs occasioned by the violation, not for the ordinary costs of litigation").

The amount of sanctions awarded is committed to the court's sound discretion.  *Grand St. Realty LLC*, 2005 WL 243621, at *11.  The starting point for determining this amount is the fees and expenses that were reasonably and necessarily incurred in connection with the sanctionable conduct, and the burden to establish this lies with the moving party.  As a result, "the party seeking the sanction must provide the Court with contemporaneous time and expense records that specify, for each attorney, the date, amount of time, and nature of the work performed, and must also show that the fees and expenses were reasonable and necessary."  *Spectee Grp.*, 185 B.R. at 160.  This lodestar amount may then be increased or decreased as the record warrants. *See, e.g.*, *Emanuel*, 422 B.R. at 467 (explaining that "[t]he Court normally begins with the lodestar amount, which it may then adjust upwards or downwards").

The court may also consider the objective of deterrence in determining the appropriate amount of an award.  In some circumstances, an enhancement may be appropriate in order to deter future misconduct.  In others, the court may award less than "the full amount of the excess expenses, for there is always discretion on the part of the judge to assess what is necessary to deter rather than to compensate."  *French Bourekas, Inc.*, 183 B.R. at 697.

A court may also consider the attorney's ability to pay, as that ability will necessarily have an impact on the extent to which an award of sanctions will serve the objective of deterrence. As the Second Circuit has noted:

> [G]iven the underlying purpose of sanctions – to punish deviations from proper standards of conduct with a view toward encouraging future compliance and deterring further violations – it lies well within the district court's discretion to temper the amount to be awarded against an offending attorney by a balancing consideration of his ability to pay.

*Olivieri*, 803 F.2d at 1281.

Here, the Trustee seeks an award of sanctions that will compensate her for her attorney's fees and costs in a minimum amount of $18,336, corresponding to the fees and costs that she incurred in connection with responding to the Counterclaims and researching, preparing, and pursuing this Motion for Sanctions. The Trustee supports this request with her attorney's time records for the period November 14, 2011 through June 1, 2012, and an estimate of the charges to be incurred thereafter. A review of those time records confirms that they show actual and estimated charges for fees and costs that are reasonable and necessary in connection with responding to the Counterclaims and pursuing this Motion for Sanctions.

But that is not the end of the inquiry, as the Court may adjust this lodestar amount for any of several purposes. In particular, the Court may enhance or reduce this lodestar amount to arrive at the sanctions award that is appropriate under the circumstances, based on the objectives of compensation and deterrence, with due regard to ability to pay. Here, the relevant considerations include compensating the Trustee for the excess fees and costs associated with the Counterclaims and the Motion for Sanctions. They also include deterring Dahiya from future conduct that violates the standards reflected in Section 1927 and a court's inherent authority to maintain the

30

integrity of the bankruptcy process.

Based on the entire record, the Court concludes that the objectives of compensation and deterrence are appropriately balanced and reflected in an award of sanctions against Mr. Dahiya and his law firm in the amount of $15,000, to be paid to the Trustee in three installments of $5,000, to be received by April 15, 2013, May 15, 2013, and June 17, 2013.

<u>**Conclusion**</u>

Based on the entire record, and for the reasons stated herein, the Court concludes that the Trustee has met her burden to show that an award of sanctions in the amount of $15,000 against Mr. Dahiya and Dahiya Law Offices, LLC, under Section 1927 and the Court's inherent authority, is warranted. The Court further concludes that this sanctions award may be paid to the Trustee in three installments of $5,000, to be received by April 15, 2013, May 15, 2013, and June 17, 2013. An order in conformity with this Memorandum Decision shall be entered simultaneously herewith.



**Dated: Brooklyn, New York**
**March 11, 2013**

**Elizabeth S. Stong**
**United States Bankruptcy Judge**