**UNITED STATES BANKRUPTCY COURT**
**EASTRERN DISTRICT OF NEW YORK**
-----------------------------------------------------------X   Case No. 10-46901-ESS
IN RE:

      SAHARA KHAN
           Debtor
-----------------------------------------------------------X   Adversary No. 10-1520-ESS
Debra Kramer, Chapter 7 Trustee, estate of
Ch. Debtor  7 Debtor  Shahara A. Khan,

           Plaintiff,
v.

Tozammel H. Miah,
           Defendant.
-----------------------------------------------------------X

## AFFFIRMATION IN  OPPOSITION TO THE MOTION

      Tozammel H. Miah, the defendant herein, son of  Debtor, through his counsel Karamvir Dahiya of Dahiya Law Offices LLC, respectfully submit the following affirmation in opposition to the trustee's motion for summary judgment.

**Brief Note**: This is a very painful and an undesirable situation that the mother and her son find themselves in; which, in essence, militates against their Islamic religious beliefs--to ask for accounting from parents or parents demanding same from their children as to what they have done for each other. The issue is more sensitive, not because there is a clear lack of understanding on behalf of the trustee, but because there is an adamant opposition to such understanding. The trustee and her legal team wants money even if the same violates very fundamental values of a family and their strong religious practices and beliefs. The trustee, as an agent for the government in this case has brought a conflict in a religious family, a conflict which never had existed before, she and her legal team has pitted Mother against Son and Son against the Mother. Son is being compelled to show what he has done and contributed to the mother, not because of a *Koranic* injunction, but because of Chapter 7 trustee's command failing which the family will become homeless. This command violates religious values and faith of both Son and the Mother. To make it more insensitive is--Trustee claims the position of mother, as her estate representative and does not consult with the mother and take into consideration the realities of the family and its practices. The family of the defendant along with his mother, the debtor, has gone through severe trauma owing to this lawsuit.   This lawsuit defense is about the rights of the families to thrive as one unit, practice their own faith with freedom as guaranteed under the constitution and to take care of their parents and accord them full respect.  Debtor was pushed through the bankruptcy process by the trustee to take over the claims, without affording full due process to this debtor. By seeking sanctions against the undersigned counsel to silence the truth and create fear in the family of the debtor and her son, the trustee and her legal team has adopted every possible means to deny the

defendant justice and thus the entire process beginning with the examination of the debtor to prosecuting this unfounded, mis-created lawsuit has been driven by ulterior motives. There is a cry for justice. The undersigned as counsel for the victims takes pride and resolve to fight to uphold the dignity of law, dignity of a family as a unit, respect for parents and ones religious belief.[1]

We are not submitting to the jurisdiction of the bankruptcy court. We are entitled to have our matter heard by an article III court. Responding to Kramer's motion for summary judgment is not a consent to this bankruptcy court in any form. We have constitutional values at stake which demands an article III intervention.

**This motion for summary judgment by trustee Debra Kramer (Kramer) suffers from several infirmities: it is jurisdictionally defective, factual incorrect, merit less and legally untenable. It violates the constitution, statutes and values.**

**1.    Kramer lacks standing to prosecute the alleged claim**

Kramer lacks standing to pursue this Complaint.  Bankruptcy Code might permit such a prosecution, however article III does not. Also, if at all a prosecution is permitted, it must go to state court and does not belong here article III is a limit to such prosecution, as federal courts are courts of limited jurisdiction.

Congress, of course, provides the power to regulate the power of adjudication, and also the substantive law which the courts are to enforce. However, the limitation imposed by Article III on the extent of permissible congressional jurisdictional regulation operate as a corollary of the separation of powers. Hence article III limits the congressional power.

---

[1]Let the first act of every morning be to make the following resolve for the day:
- I shall not fear anyone on Earth.
- I shall fear only God.
- I shall not bear ill will toward anyone.
- I shall not submit to injustice from anyone.
- I shall conquer untruth by truth. And in resisting untruth, I shall put up with all suffering."
— Mahatma Gandhi

Article III, Section 2 of the U.S. Constitution provides that "[t]he judicial Power shall extend to all Cases, in Law and Equity, arising under * * * the Laws of the United States * * *." Article III grants of subject-matter jurisdiction extend only to 'cases' and "controversies." This dual limitation of 'cases' and "controversies" provides the platform for "justiciablility" of an issue or dispute. Flast v. Cohen, 392 U.S. 83, 94-95 (1968); see also *Lujan v. Defendners of Wildlife*, 504 U.S. 555, 559-62 (1992). Kramer uses New York State fraudulent conveyance laws, pursuant to 11 U.S.C. § 544 (b), riding the standing belonging to an unsecured creditor. As we see that Kramer lacks standing to prosecute this action, though statute might seem to provide such a standing, article III does not. Standing is a constitutional and jurisdictional question, thus open to challenge at any stage of the pleadings of the case---Miah challenge the standing now.

**COMPLAINT**

Complaint  is grounded in New York State laws, especially N.Y. Debt. & Cred. Law §§ 270 et seq. ("Debtor  &Creditor Law" or "NYDCL") and also common law principles of fraud and unjust enrichment.  Kramer claims authority to use to N.Y. Debt. & Cred. Law §§ 270 et seq., derivatively through Bankruptcy Code section 544, which *inter-alia* states,

3

> (b)(1) . . . the trustee may avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim that is allowable under section 502 of this title or that is not allowable only under section 502(e) of this title.

11 U.S.C. § 544 (b).

Statute, section 544 of the Bankruptcy Code provides the trustee the power of an unsecured creditor to void any transfer voidable under the state law.  However it does not comport with article III.  The trustee represent Chapter 7 estate. Chapter 7 estate is a defined by § 541 of the Code which brings into estate, "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541.  The property of the estate is only that which is "of the debtor."  It is clear that to the extent a debtor's interest in property is limited, so also limited is the estate. See *In re Nejberger,* 934, F.2d 1300 (3rd Cir. 1991).  This "estate" is the federal ingredient placing any legal action within Osborn's "original ingredient" [addressed in detail herein] theory of constitutional federal question.

The Congress provided this right to prosecute—§ 544 (b) giving the trustee standing of an unsecured creditor [there must be a **creditor of this genre]--that in itself is not enough to provide the standing.** Standing is constitutional question. Even if the statute permits, it must comport with the constitution.  The doctrine of standing derives from Article III's case or

controversy requirement. See *Allen Wright* 468 U.S 737, 750-51, (1984) (holding that core elements of standing—injury, causation, and redressibility—were "derived from directly from the constitution"). Thestanding inquiry focuses on the party seeking to get her complaintbefore federal court and not on the issues she wishes to have adjudicated *Flast v. Cohen*, 392 U.S 83, 99 (1968). The question for the court iswhether the Kramer as plaintiff is the proper party to have brought suit. *Raines v.Byrd* 521 U.S 811, 818 (1997). It is clear that, "[a]lthough 'Congress may grant an express right of action [11 U.S.C. 544 for instance], who otherwise be barred by prudential standing rules, Art. III's requirement remains: the plaintiff still must allege a distinct palpable injury to himself.'" *Gollust v. Mendell*, 501 U.S. 115, 126 (1991) (quoting W*arth v. Seldin*, 422 U.S. 490, 501 (1975) (emphasis added). See also *Simon v. Eastern Kentucky Welfare Rights Organization*, 426 U.S. at 38-41. Just because section 544 provides a basis is not enough it to be justiciable under article III standing doctrine. See *Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)(Court rejecting the view that the injury-in-fact requirement could be "satisfied by congressional conferral upon all persons of an abstract, self contained, non instrumental 'right' to have the Executive observe the procedures required by law"). Thus, Article III is a constraint upon congressionally conferred, as well as

judicially inferred, standing, and that Congress may not bestow standing to sue except where the courts would otherwise find that the basic requirements of "injury in fact" are already met. Lujan. See also *Raines at* 117—"[i]t is settled that Congress cannot erase article III standing requirements by statutorily granting the right to sue to a plaintiff who would not otherwise have standing."    The injury under section 544 belongs to an identifiable unsecured creditor and not an estate. An estate is all whatever the debtor had at the time of the commencement of the case. Further it is clear that the federal jurisdiction 'may not be invoked where the right asserted is non-federal, merely because the plaintiff's right to sue is derived from federal law, or because the property involved was obtained under federal statute. The federal nature of the right to be established is decisive—not the source of the authority to establish it.' *People of Puerto Rico v. Russell & Co.*, 288 U.S. 476, 483, 53 S.Ct. 447, 450, 77 L.Ed. 903, citing *Shoshone Mining Co. v. Rutter*, 177 U.S. 505, 20 S.Ct. 726, 44 L.Ed. 864; *Blackburn v. Portland Gold Mining Co.*, 175 U.S. 571, 20 S.Ct. 222, 44 L.Ed. 276; *Little York Gold Washing & Water Co. v. Keyes*, 96 U.S. 199, 203, 24 L.Ed. 656. Thus, Kramer has no personal stake here—no injury is found—thus no article standing can be accorded.

2.    **Standing is not forfeitable or waivable**

Article III standing like subject matter jurisdiction is threshold jurisdictional requirement that can be neither forfeited nor waived. See *Lewis v. Casey* 518 U.S 343, 349 n.1 (1996); United States v. *Hays, 515 U.S.*737, 742 (1995); *National Org. for Women*, Inc. (NOW) v. Scheidler, *510 U.S.* 249, 255 (1994). The federal courts are under an independent obligation to examine their own jurisdiction and standing is perhaps the most important of the jurisdictional doctrines. *Hays*, 515U.S at 742. If plaintiff lacks standing the courts are prohibited from resolving the merits of the complaint. See *Steel Co.* v. Citizens *for Better Environment, 523 U.S.* 83 (1998). Party invoking federal jurisdiction bears the burden of proving the three elements making up the irreducible constitutional minimum necessary to demonstrate standing. *Lujan*, 560-611 accord *Bennett* v. *Spear* (95-813), *520 U.S. 154 (1997). First* and foremost there must be alleged and ultimately proved an injury in fact harm suffered by the plaintiff that is concrete and actual or imminent not conjectural or hypothetical. *Second*, there must be causation fairly traceable connection between the plaintiffs injury and the complained-of conduct of the defendant. And *third* there must be redressability likelihood that the requested reliefwill redress the alleged injury *Steel Co.* 523 U.S at 103. See also *Daimler Chrysler* Corp. v. Cuno, *126 S. Ct.* 1854, 1860—*1861*, (2006). Failure to establish any one of these

elements deprives the federal courts of jurisdiction to hear the suit. *Steel Co.* 523 U.S at 103-04. The elements of standing are not mere pleading requirements but rather an indispensable part of the plaintiffs case. *Lujan* at 561.Therefore each element must be supported in the same way as any other matter on which the plaintiff bears the burden of proof i.e. with the manner and degree of evidence required at the successive stages of the litigation. Id. Hence it is clear that Congress may not grant standing to an individual who would not otherwise have a standing.

To answer this question of standing the court must look to whether the plaintiff has alleged such personal stake in the outcome of the controversy as to assure that concrete adverseness which sharpens the presentation of issues upon which the court so largely depends for illumination of difficult legal questions. *Baker* v.*Carr*, 369 U.S 186, 204 (1962). This requisite stake in the outcome ensures that the suit is one that is amenable to judicial resolution in that the legal questions presented will be resolved not in the rarified atmosphere of debating society but in concrete factual context conducive to realistic appreciation of the consequences of judicial action. *Valley Forge Christian College v. Americans United for Separation of Church State Inc.*, 454 U.S 464, 472 (1982).

**3.      This Court lacks subject matter Jurisdiction as article III's "arising under" is not satisfied.**

Article III provides that the federal judicial power shall extend to all cases "arising under" the Constitution, laws, or treaties of the United States. Congress has provided for federal court jurisdiction over federal questions in 28 United States Code, Section 1331. Bankruptcy cases and disputes therein, of all civil proceedings arising under title 11, or arising in or related to cases under title 11 are also given to the district court. 28 U.S.C. § 1334. § 1334 is not read in exclusion, it is tied to section 1331 which in turn must be read subject to Article III,'s "arising under." Implicit in the "arising under" concept is that the mere existence of federal issues is not enough--plaintiff's claim must arise under the federal law. Thus, "[a]s regards all courts of the United States inferior to this tribunal, two things are necessary to create jurisdiction, whether original or appellate. The Constitution must have given to the court the capacity to take it, and an act of Congress must have supplied it . . . To the extent that such action is not taken, the power lies dormant.'" *Finley v. United States,* 490 U.S. 545, 548 (1989) (quoting *Mayor v. Cooper*, 73 U.S. (6 Wall) 247, 252 (1868).

Section 544 based action, allowing trustee to use the state power of a present unsecured creditor, in addition "to sue and be sued," 11 U.S.C. § 323 cannot in itself satisfy the "arising under" test. *United States Dept. of*

9

*Energy v. Ohio*, 503 U.S. 607, 625 (1992) ("we have read the phrasing 'arising under' federal law to exclude cases in which the plaintiff relies on state, even when the State's exercise of power in the particular circumstances is expressly permitted by federal law").

Subject matter jurisdiction, a central and defining concept in federal jurisprudence encompasses the Article III and statutory prescriptions delineating the classes of cases that federal courts are authorized to hear. Statutorily present, however constitutionally absent is the category of case/charges invoked herein. *Kontrick v. Ryan* 540 U.S 443, 455 (2004). It cannot be waived or consented to, as it serves "institutional interests . . . keep[ing] the federal courts within the bounds the Constitution and Congress have prescribed and therefore cannot be waived and must be raised by the courts including the Supreme Court, on their own initiative. *Ruhrgas AG* v. *Marathon Oil Co.,* 526 U. S. 574, 583 (1999). Thus, "subject-matter jurisdiction, because it involves the court's power to hear a case, can never be forfeited or waived." *Arbaugh v. Y & H Corp.* 546 U.S. 500, (February 22, 2006) citing *United States* v. *Cotton,* 535 U. S. 625, 630 (2002).

No doubt that, the Constitution "authorizes Congress . . . to determine the scope of federal courts' jurisdiction within constitutional limits." *Hertz Corp. v. Friend,* 130 S. Ct. 1181 (2010)(reversing district court's finding

that jurisdiction was lacking). However, both, the Constitution and the Congress must have authorized before a federal judicial power is exercised over a subject matter.

Further, article III alone is both the source and limits of federal judicial power. *National Mut. Ins. Co. v. Tidewater Transfer Co.*, 337 U.S. 582 (1949). Thus it is not amenable or subjected to article I Congressional power arising under Bankruptcy Clause.

Federal Bankruptcy jurisdiction has extended to all civil actions "arising in" or "related to" the bankruptcy case, regardless of the citizenship of the parties or the substantive law underlying the claim. 28 U.S.C. § 1334 . Also the jurisdiction assumed by the bankruptcy courts, as auxiliary units is derivative. It is premised in referral from the district court. 28 U.S.C. § 157.

Congress indeed has plenary legislative power "on subject of Bankruptcies." U.S. Const. art. 1, § 8, cl. 4.  28 U.S.C. § 1334 confers on a district court in which a bankruptcy is proceeding is filed broad power to entertain claims arising under the federal bankruptcy laws "or arising in or related to cases under Title 11."  In the past, without a cogent rationale, the Supreme Court had summarily recognized bankruptcy jurisdiction conferred by bankruptcy Acts, as those within the scope of article III's arising under jurisdiction.    See *Schumacher v. Beeler*, 293 U.S. 367, 374   (1934)

(upholding the Bankruptcy Act of 1898 narrow grant of jurisdiction other that established in 1867--both trustee and third party claiming interest in the estate property--enjoining of sale of property arose under the federal law-- defendant had consented to be sued in that court); also, *Williams v. Austrian*, 331 U.S. 642 (1947) (upholding similar jurisdiction over actions by the trustee in reorganization under the Chandler Act of 1938, 52 Stat. 840).

In *Schumacher* case the Court held that: "Congress, by virtue of its constitutional authority over bankruptcies, could confer or withhold jurisdiction to entertain such suits and could prescribe the conditions upon which the federal courts should have jurisdiction." Schumacher at 374. "Such suits" herein referred to the suits triggered by federal law provisions, cause of action premised in the federal laws wherein two parties, one trustee and another claiming to be owner of the property of estate.   The trustee's suit in *Schumacher* to enjoin the sale of certain property allegedly belonging to the estate arose under federal laws.

In *Williams* Like *Schumacher, trustee  was* involved in a suit by a bankruptcy trustee against certain third parties however,  *Williams* was a reorganization proceeding under Chapter X of the Bankruptcy Act of 1898. Certain portions of the jurisdictional provisions of the Act were inapplicable to proceedings under Chapter X. The primary provision governing the

jurisdiction of the bankruptcy courts under the 1898 Act was § 2. That section gave federal courts in bankruptcy the expansive power to "[c]ause the estates of bankrupts to be collected, reduced to money and distributed, and determine controversies in relation thereto." *Williams.* at 644 (quoting Bankruptcy Act of 1898 § 2, 30 Stat. at 546). That broad jurisdiction, however, was limited by § 23(b). Unless the defendant consented, suits by a receiver or the bankruptcy trustee could be maintained only in those courts in which the debtor could have maintained a suit against the defendant prior to bankruptcy.   Here Miah has not consented to the jurisdiction of the court and moreover the sections used are not from the federal code, but state courts. New York State Creditor & Debtor laws, invoked by the trustee under section 544 are not federally originated provisions. Mere reference or allowance to be used does not morph this into a federal provision for jurisdictional purposes. Once again as opined by Justice Stone, that federal jurisdiction 'may not be invoked where the right asserted is non-federal, merely because the plaintiff's right to sue is derived from federal law, or because the property involved was obtained under federal statute. The federal nature of the right to be established is decisive—not the source of the authority to establish it,' still holds true. *Puerto Rico v. Russell & Co.*, 288 U.S. 476 (1933)

Further, in these cases, *Schumacher* and *Williams*, the constitutional implications of article III covenant was not considered and the Court dwelt primarily on the federal laws.

## 4.    Even Statutory Grant provisions does not confer jurisdiction on this Court.

The scope of the federal question statute if narrower than that of article III constitutional provision regarding jurisdiction, thus the enabling statute section 544 must not be construed as granting jurisdiction to the bankruptcy court on its own. First, it is not a jurisdiction granting statute, as is 28 U.S.C. § 1334 and secondly it only tells about the ability to use powers of unsecured creditors and does not provided any independent basis to use federal forum.

Even the controversy presented to the bankruptcy court premised under section 544 does not present a federal question--it is the state law that created this cause of action i.e. New York Creditor & Debtor law. *American Well Works Co. v. Layne & Bowler Co.* 241 U.S. 257, 258–259 (1916) (A suit arises under the law that creates the cause of action). Whether a fraudulent transfer, in fact took place is not dependent on federal law but

New York state law. Also a few years prior to American Well Works, the Court had stated:

> Inasmuch ... as the "adverse suit" to determine the right of possession may not involve any question as to the construction or effect of the Constitution or laws of the United States, but may present simply a question of fact as to the time of the discovery of mineral, the location of the claim on the ground, or a determination of the meaning and effect of certain local rules and customs prescribed by the miners of the district, or the effect of state statutes, it would seem to follow that it is not one which necessarily arises under the Constitution and laws of the United States.

*Shoshone Mining Co. v Rutter*, 177 U.S. 505, 508 (1900). See, e.g. *Gully v. First Nat'l Bank*, 299 U.S. 109 (1936) (for case to arise under Constitution or laws of United States, federal right must be *essential element* of plaintiff's cause of action, not merely conjectural one). Also, *Oneida Indian Nation v. County of Oneida*, 414 U.S. 661, 683–684 (1974) (Rehnquist, J., concurring) (suit to enforce right that takes its origin in federal law is not necessarily one arising under Constitution or laws of United States, citing *Shoshone Mining*). It is also clear that even where "a complaint alleging violation of a federal statute as an element of a state cause of action, when Congress has determined that there should be no private, federal cause of action for the violation, does not state a claim 'arising under the Constitution, laws, or treatise of the United States." 33 *Merrell Dow Pharmaceuticals, Inc. v. Thompson*, 478 U.S. 804 (1986) (majority acknowledging that "a case may

arise under federal law "where the vindication of a right under state law necessarily turned on some construction of federal law"). The presented controversy is not close to any federal elements as per the complaint--it is a pure case of state law fraudulent transfer.  While invoking the New York state cause of actions, fraudulent conveyance, Kramer averments makes no reference to "any controversy respecting the [the] validity, construction, or effect" of federal statutes. *See Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.* 545 U.S. 308 (2005).

Even if we stretch the meaning of "cause of action" test of *American Works Co.*, as remarked by Judge Friendly in *T.B. Harms Co., v. Eliscu*, 339 F. 2d 823, 827 (2nd Cir. 1964), "Justice Holmes's formula is more useful for inclusion than for the exclusion for which it was intended,"--section 544 triggered New York laws cannot be one of inclusion.  Trustee, Kramer could have brought this action in the federal court/or bankruptcy court only if that unsecured creditor which provided the basis for section 544 (b) action had the basis to invoke federal jurisdiction.  Here the New York state law charging provisions of fraudulent conveyance does not "raise a state federal issues, actually disputed  and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." *Grable & Sons Metal Products, Inc. v.*

*Darue Engineering & Mfg.* 545 U.S. 308 (2005) (finding jurisdiction, "essential element" based on federal statute interpretation as it entailed federal tax laws--finding--- "dispositive and contested federal issue at the heart of the state-law title claim."). Clearly endorsed positively--and as said by Justice Ginsburg--"In sum, *Grable* emphasized that it takes more than a federal element 'to open the "arising under" door.' This case cannot be squeezed into the slim category *Grable* exemplifies." *Empire Health choice Assurance, Inc. McVeigh*, 126 S. Ct. 2121 (2006). As clearly stated in the past:

> "[A] suit does not so arise [under the laws of the United States] unless it really and substantially involves a dispute or controversy respecting the validity, construction or effect of such a law, upon the determination of which the result depends."

*Shultis v. McDougal,* 225 U. S. 561 (1911)

Jurisdiction here is not exclusive. State court door is open to Kramer, however she did not utilize that. Also it is true here that the defendant and debtor together as a family, as one unit, religious adherents to Islamic religion defends this action also by raising a federal claims of religious freedom as envisioned under The **Religious Freedom Restoration Act of 1993**, Pub. L. No. 103-141, 107 Stat. 1488 (November 16, 1993), codified at 42 U.S.C. § 2000bb through 42 U.S.C. § 2000bb-4 (also known as **RFRA**)

17

as well as Free Exercise Clause of the First Amendment.   However a federal defense alone without a well pleaded federal cause of action cannot create a federal jurisdiction. The well-pleaded-complaint rule does not allow a counterclaim to serve as the basis for a district court's "arising under" jurisdiction. *Holmes Group,* Inc. v. *Vornado Air Circulation Systems, Inc.,* 535 U.S. 826 (2002) (holding that the well-pleaded-complaint rule provides that whether a case "arises under" must be determined from what necessarily appears in the plaintiff's statement of his own claim). "[I]t is the character of the threatened action, and not the defense, which will determine whether there is federal-question jurisdiction in the District Court." *Public Service Commission of Utah v. Wycoff Co., Inc.,* 344 U.S. 237, 248, 73 S. Ct. 236, 97 L. Ed. 291, 99 Pub. Util. Rep. (NS) 346 (1952).

Thus this fraudulent conveyance action premised in New York State fraudulent conveyance laws does not and cannot provided the requisite either article III or federal statutory basis for jurisdiction in this court.

## 5.    "Sue and Be Sued" clause of the Bankruptcy Code is not satisfactory to grant jurisdiction.

It is clear that to "Sue and be Sued alone" does not create federal court matter jurisdiction. Statute does not grant bankruptcy court power to decide

the underlying issues. The complaint presents only state laws as charging document. See the Complaint. Bankruptcy Code § 323 undoubtedly states:

> (a) The trustee in a case under this title is the representative of the estate. (b) The trustee in a case under this title has capacity to sue and be sued.

11 U.S.C. § 323.

No doubt that aforesaid statutory text is from the bankruptcy code, however, that alone is not enough to confer federal question jurisdiction, even if we stretch these words as more than grant of juridical entity. See, *American Nat'l Red Cross v. S.G.* 505 U.S. 247 (1992) (Court qualifying or rather viewing *Bank of the United States v. Deveaux*, 9 U.S. 5 Cranch 61 61 (1809), *Osborn v. Bank of the United States*, 9 Wheat. (22 U.S.) 738 (1824) as supporting, "the rule that a congressional charter's 'sue and be sued' provision may be read to confer federal court jurisdiction if , *but only if, it specifically mentions the federal courts*."). That specific mentioning of the federal courts is missing here. Court in *American Nat'l Red Cross*, distinguished *Deveaux* principally on the ground that there, the act of incorporation did not mention the federal courts but simply referred to all "courts of record." Also it must be noted that the bankruptcy trustee appointment and work under 11 U.S.C. § 704 is not perennial entity as those federal entities in *Osborn* or in *The Bank of United States v. The Planters*

*bank of Georgia*, 22 U.S. 904 (1924) which provided the federal ingredient to confer jurisdiction on the federal court. The trustee's appointment or as she appears is on an ad hoc basis and eclipses upon the completion of the estate. Further, there is no independent claims of the trustee as those of the governmental entities in *Osborn* and *Planters*. Federal question component of federal subject matter is more than a federal entity which is clearly missing here. Chapter 7 Trustee is a deemed federal agent, however that alone cannot be a ground for bankruptcy federal question subject matter jurisdiction. See *Lebron v. National R.R. Passenger Corp.*, 513 U.S. 374, 398-99 (1995). Even in *Osborn*, which is wrongly premised as 'federal entity means federal question' the major issues were the rights under the Constitution and United States laws to be free from state taxation.

The grant of jurisdiction over underlying claims, based on state laws between the bankruptcy estate and the non-diverse party, Miah cannot be justified even on supplemental proceeding. It is a more acute, "NO" when jurisdictional reach under 28 U.S.C. § 1334 over a proceeding i.e. "related to cases under the [the Bankruptcy Code]" when the bankrupt's estate is not a party to the proceeding. Here Kramer is not vouching a claim belonging to the estate, but that of an unsecured creditor, 11 U.S.C. § 544 (b).

In the past, Supreme Court had permitted exercise of jurisdiction over a state law suit brought by the trustee even absent a showing of diversity. *Lathrop v. Drake* 91 U.S. 516 (1875). However, the Court had done so without directly considering its constitutionality, with a protective urge stressing that, " a uniform system of bankruptcy, national its character, ought to be capable of execution in the national tribunals, without dependence upon those of the States in which it is possible that embarrassment might arise." The same concerns actually echoes in the decision of *Osborn* and *Planter*, Court was confronted with important issue of National Banks and the states, and the Court had to find ways to grant basis in the federal court without having to wait for the case trajectory to Supreme Court via appellate route. *Lathrop* decision was premised in a jurisdictional statue rather than the constitution.

## 6. **Bankruptcy Court cannot award declaratory relief**

Rosen/Kramer demands declaratory relief: On the Second Cause of Action, a declaratory judgment setting aside the transfer of the Sales Proceeds made as a fraudulent conveyance under Debtor and Creditor Law §273; (E) On the Fifth Cause of Action, a declaratory judgment setting aside the transfer of the Sales Proceeds made as a fraudulent conveyance under Debtor and Creditor Law §278; (G) On the Seventh Cause of Action, a

declaratory judgment setting aside the transfer of the Sales Proceeds made as a fraudulent conveyance under Debtor and Creditor Law §276; (I) On the Ninth Cause of Action, Plaintiff is entitled to a declaratory judgment setting aside the transfer of the Mortgage Proceeds made as a fraudulent conveyance under Debtor and Creditor Law §273; (L) On the Twelfth Cause of Action, Plaintiff is entitled to a declaratory judgment setting aside the transfer of the Mortgage Proceeds made as a fraudulent conveyance under Debtor and Creditor Law §278; (N) On the Fourteenth Cause of Action, Plaintiff is entitled to a declaratory judgment setting aside the transfer of the Mortgage Proceeds made as a fraudulent conveyance under Debtor and Creditor Law §276.

Regarding Judgment, Kramer/Rosen seeks: (B) On the Second Cause of Action, a declaratory judgment setting aside the transfer of the Sales Proceeds made as a fraudulent conveyance under Debtor and Creditor Law §273; (E) On the Fifth Cause of Action, a declaratory judgment setting aside the transfer of the Sales Proceeds made as a fraudulent conveyance under Debtor and Creditor Law §278;    (G) On the Seventh Cause of Action, a declaratory judgment setting aside the transfer of the Sales Proceeds made as a fraudulent conveyance under Debtor and Creditor Law §276; (I) On the Ninth Cause of Action, Plaintiff is entitled to a declaratory judgment setting

aside the transfer of the Mortgage Proceeds made as a fraudulent conveyance under Debtor and Creditor Law §273;   (L) On the Twelfth Cause of Action, Plaintiff is entitled to a declaratory judgmentsetting aside the transfer of the Mortgage Proceeds made as a fraudulent conveyance under Debtor and Creditor Law §278;   (N) On the Fourteenth Cause of Action, Plaintiff is entitled to a declaratory judgment setting aside the transfer of the Mortgage Proceeds made as a fraudulent conveyance under Debtor and Creditor Law §27

The causes of action, as said before, and demanded judgment speaks in unequivocal terms that they are really seeking a declaratory judgment. Congress enacted the Federal Declaratory Judgment Act, 28 U.S.C.§§2201-02 authorizing a federal court to issue a declaratory judgment "in a case of actual controversy within its jurisdiction" (emphasis added).    The Declaratory Judgment Act applies, by its terms, to "any court of the United States." 28 U.S.C.A. § 451.   Bankruptcy courts have been held not to be "courts of the United States" in other statutory contexts. See, e.g., *In re Perroton*, 958 F.2d 889 (9th Cir. 1992) (28 U.S.C. §1915; *In re Courtesy Inns,* 40 F.3d 1084, 1086 (10th Cir. 1994) (bankruptcy courts are not "courts of the United States" because bankruptcy judges do not enjoy life tenure)

**7.    Bankruptcy Court jurisdiction on pure state law cannot accord jurisdiction under 28 U.S.C. 2201.**

It is clear that Kramer can establish § 1331/1334 jurisdiction only if the federal issue on which she wants the court to rule would equally be properly pleaded in a suit for a traditional (coercive) form of relief, such as compensatory damages or an injunction. There is no federal issue here. As properly stated by Justice Franfurter, declaratory judgment does not enhance the subject matter jurisdiction of the court:

> The operation of the Declaratory Judgment Act is procedural only. *Aetna Life Ins. Co. of Hartford, Conn. v. Haworth,* 300 U.S. 227, 240, 57 S.Ct. 461, 463, 81 L.Ed. 617, 108 A.L.R. 1000. Congress enlarged the range of remedies available in the federal courts but did not extend their jurisdiction. When concerned as we are with the power of the inferior federal courts to entertain litigation within the restricted area to which the Constitution and Acts of Congress confine them, 'jurisdiction' means the kinds of issues which give right of entrance to federal courts. Jurisdiction in this sense was not altered by the Declaratory Judgment Act

*Skelly Oil Co. et al v. Phillips Petroleum Co.* **339 U.S. 667 (1950)**

**8.    Article I cannot override Article III**

The Constitution "authorizes Congress . . . to determine the scope of federal courts' jurisdiction within constitutional limits." *Hertz Corp. v. Friend,* 130 S. Ct. 1181 (2010) (reversing district court's finding that jurisdiction was lacking).The Bankruptcy Clause of Article I § 8 authorizes Congress to establish "uniform laws on the subject of

Bankruptcies throughout the United States." However the Constitution in granting congressional powers, also limits it: an Act of Congress is invalid unless it is affirmatively authorized under the Constitution. Absence of an enumerated powers does not mean Congress has that power, power has to be affirmatively provided by the Constitution.

Besides listing the primary powers of Congress, Article 1 § 8 also empowers Congress to "make all laws which shall be necessary and proper for carrying into Execution" both the specific legislative powers granted to Congress by Article I. § 8, itself and "all other Powers vested by this Constitution in the Government of the United States, or an any Department or Officer thereof." This reach of implied power is clearly recognized,

> Congress must possess the choice of means,
> and must be empowered to use any means
> which are in fact conducive to the exercise of
> a power granted by the Constitution.

*United States v. Fisher*, 6 U.S. (2 Cranch ) 358, 396 (1805) (upholding a law giving debts owed to the United States priority in insolvency cases). See also *McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316 (1819) ("Let the end be legitimate, let it is within the scope of constitution, and all means which are appropriate, which are plainly adapted to that end, which are not prohibited, but consistent with the letter and spirit of the constitution, are constitutional.").

**9.    Bankruptcy tribunal as a Court--Auxiliary or Unit or Plenary--just does not have jurisdiction--Constitution prohibits from exercising such power.**

**Summarily put:** *First,* the provision that allows the district court to transfer "any or all cases" does not fall within one of the categories identified by the *Northern Pipeline* plurality -territorial courts, military tribunals, and public rights exceptions. *N.Pipeline Const. Co. v. Marathon Pipe Line Co.,* 458 U.S. 50 (1982).

*Second,* bankruptcy judges do not fall within *N. Pipeline's* "adjuncts" theory: bankruptcyjudges are not adjuncts to the district courts. Unlike magistrate judges that sit in thedistrict court and are supervised by district courts, bankruptcy judges do not sit in the district court and are not so supervised. *See, Stern v. Marshall,* 131 S.Ct. 2594, 2611 (2011) (stating that bankruptcy courts cannot "be dismissed as mere adjuncts of Article III any more than could the bankruptcy courts under the 1978 Act. The judicial powers the courts exercise in cases such as this remain the same, and a court exercising such broad powers is no mere adjunct of anyone.").

*Third,* 28 U.S.C. § 157 cannot be justified under the balancing test used by the Supreme Court, nor has Mahia consented to the bankruptcy court's jurisdiction. *Commd'y Futures Trading Comm 'n v. Schor,* 478 U.S. 833 (1986).

*Fourth*, the district court is bound by *stare decisis* and could not have denied Mahia the right to be heard by an Article III court, by transferring his by way of reference. Bankruptcy Court continued assumption of jurisdiction violates the established precedents.

*Fifth*, the Supreme Court recognizes, as an exception, that bankruptcy courts may adjudicate issues related to public rights; however, the causes of action in the adversary complaint and the previously asserted counterclaims do not relate to an integrated regulatory scheme and are not covered by the public rights doctrine. *Thomas v. Union Carbide Agric. Prods. Co.,* 473 U.S. 568, 589-90, 593-94 (1985)("Congress, acting for a valid legislative purpose pursuant to its constitutional powers under Article I, may create a seemingly 'private' right that is so closely integrated into a public regulatory scheme as to be a matter appropriate for agency resolution").

*Sixth*, Article III does not allow Congress to delegate inherently judicial matters, and specifically matters of private rights, away from Article III courts. Article III limits the extent of permissible congressional jurisdictional regulation through the separation of powers. *Martin v. Hunter's Lessee,* 14 U.S. 304, 330 (1816) (finding that the language of Article III is mandatory and that Congress is required to vest "the whole judicial power" in the federal courts).

*Seventh*, when a defendant invokes the Seventh Amendment right to a jury trial or the right to be heard by an Article III tribunal, the case is not

subject to transfer to a non-Article III court. Article III and the Seventh Amendment are coextensive. *Granfinanciera, SA. v. Nordberg,* 492 U.S. 33 (1989).

*Eight,* a party, having invoked the right to be heard by an independent judge under Article III, cannot be subjected to the bankruptcy judge, as that would violate Due Process.The role of the independent judiciary within the constitutional scheme of tripartite government is to assure impartial adjudication in federal court. *United States v.Will,* 449 U.S. 200,217-18 (1980); *Buckley v. Valeo,* 424 U.S. 1, 122 (1976) (per curiam).

*Ninth,* adjudicating liability of one individual to another being innate to private rights cannot be assigned to non-Article III judge in a federal proceeding context. See *Marathon, Schor, Granfinanciera and Stern.*

*Tenth,* a litigant is entitled to adjudication in a constitutionally proper forum. The method of appointment of bankruptcy judges - vested with judicial powers pursuant to Section 157- violates the Appointment Clause of the United States Constitution. *Glidden Co. v. Zdanok,* 370 U.S. 530, 370 U.S. 533 (1962).

*Eleventh,* the constitutional structural protections are also implicated where, as here, a defendant cannot withdraw a referral to a non-Article III tribunal: the Bankruptcy Code allows only discretionary withdrawal and limits mandatory withdrawal to certain circumstances. *See generally* 28 U.S.C. § 157.

*Twelfth,* the district judge could not have delegated core judicial functions to a bankruptcy judge and deciding the motion for summary judgment is a core judicial function.

*Thirteenth,* this bankruptcy court sits improperly on the case, without our consent, without article III subject matter jurisdiction, without according due process (for instance improperly denying discovery request), without fairness as the bankruptcy openly exhorted the trustee to bring a motion for summary judgment which the court stated would grant.

## 10. What was declared unconstitutional cannot be circumvented by doing the same as discretionary or procedural referral under section 157.

On June 28, 1982, the Supreme Court found The Bankruptcy Reform Act of 1978 (Pub. L. 95-598,92 Stat. 2549, November 6, 1978 hereinafter referred to as the "Bankruptcy Act") unconstitutional. *N. Pipeline,* 458 U. S. at 88. In *Northern Pipeline,* the Supreme Court held that Congress, in enacting § 14 71 of the Bankruptcy Act, had impermissibly removed the essential attributes of an Article III court and had vested them in a non-Article III adjunct. *id.* Thus, the Supreme Court declared the broad grant of jurisdiction in§ 1471 unconstitutional. *Id.* Shortly after the *Northern Pipeline* decision, Congress amended the jurisdictional statute to comply with the Supreme Court's edict. Bankruptcy Amendments and Federal Judgeship Act of 1984, Pub. L. No. 98-353, 98 Stat. 333 (the "1984 Act"or "BAFJA"). The

jurisdictional grant under BAFJA is codified in 28 U.S.C. § 1334(a) and (b). The language used in these subsections is nearly identical to the language employed in Bankruptcy Act, 28 U.S.C.§ 147l(a) and (b). BAFJA returned thepower to adjudicate bankruptcy issues to the district courts. Therefore, whileBAFJA remained similar to Sections 147l(a) and (b) of the Bankruptcy Act of1978, it omitted Section 1471 (c) which had, prior to BAFT A, conferred upon the bankruptcy court to power to exercise jurisdiction over all bankruptcy issues. Therefore, with BAFJA, Congress merely provides that the district courts may refer bankruptcy cases to the bankruptcy courts. Each district court may refer all, some, or no cases and proceedings or parts thereof to the bankruptcy judges of the district. The authority to refer cases and proceedings under section 157(a) has been exercised by local rule or order in all federal judicial districts. The Eastern District of New York has utilized this provision; and, in pursuance thereof, it has made an un-individuated blanket referral of all Title 11 issues. The result of this blanket referral is that cases and proceedings are filed in a distinct separate court, the United States Bankruptcy Court, which is presided over by a chief bankruptcy judge and other additional bankruptcy judges. BAFJA did not create the bankruptcy court as an entity, nor as a court of record, and the Bankruptcy Act refers to an aggregation of bankruptcy judges as forming a court. See generally, 28 U.S.C. 151 ("In each judicial

district, the bankruptcy judges in regular active service shall constitute a unit of the district court to be known as the bankruptcy court for that district.").

Section 157(a), as added in 1984 by BAFJA is a reproduction of section 1471(c), which was added in 1978 by Bankruptcy Act and held invalid in 1982. In invalidating section 1471(c), Congress delegated jurisdiction to a non-Article III court. In section 157(a), both Congress and the district courts delegated jurisdiction to a non-Article III court. However, even if the referral comes from another branch such as the Judiciary, it does not change the Supreme Court's reasoning in *Northern Pipeline.* It is clear if Congress was found to have been prohibited from assigning private rights issues to non-article III courts, the article III Judges or Courts are equally prohibited from doing the same. The past instructions by the Supreme Court was not on the referring authority but it is on the referred matter and the person it is referred to. What is good for the goose is good for the gander.

## 11. Bankruptcy Judges are not adjuncts to Article III courts.

Further, an attempt to characterize the pool of bankruptcy judges as adjunct, auxiliary, judicial officers assisting the district court in its judicial business like judges in the magistrate does not pass constitutional muster, for the duties and powers of bankruptcy judges are far different than a magistrate judge's duties and powers. A bankruptcy judge, under the Bankruptcy Code, is functionally and substantively performing distinct legal tasks on an

independent basis unlike a magistrate judge who is under direct control and close supervision of the district court. *Compare N. Pipeline,* 48 U.S. 50 with *United States v. Raddatz,* 447 U.S. 667 (1980). The reference of judicial bankruptcy matters related to state law to the bankruptcy judges is not constitutionally permissible as they are not adjuncts to the district courts and further their appointment is fallible under the Appointments Clause. Mahia's right to be judged in accordance with a constitutionally valid rule of law is unquestionable. Also, Mahia has continuously insisted on the right to an Article III court, hence, subjecting him to the bankruptcy court jurisdiction is a denial of due process.

**12.  Facts Findings is clearly a core judicial function, thus cannot be delegated to a non-delegable entity.**

Here, the bankruptcy court cannot even in indulge in "finding of facts and conclusion of law."  The local orders, referral ones overlook one fatal mistake in their references, i.e. bankruptcy judges are not adjuncts to the district court.  Also, even if we designate them as adjuncts, a bankruptcy judge cannot suggest conclusions of law to the district court with respect to any rights not created by Congress. *See N Pipeline,* 458 U.S. at 79. The Court in *Northern Pipeline* admitted that Congress possessed broad discretion to assign fact-finding functions to an adjunct of the district court

to aid in adjudicating congressionally-created statutory rights, however, *not* regarding rights not created by Congress. *Id.* In nullifying the Bankruptcy Act of 1978, the Court was explicit that because the Bankruptcy Reform Act of 1978 did not retain the essential attributes of judicial power in an Article III court, but instead vested such judicial power in the an adjunct to the district court, it was unconstitutional. *I d.* at 87. Adjuncts are permissible only if "essential attributes of the judicial power" are retained by an Article III court. *Crowell v. Benson,* 285 U.S. at 51, 52.However, here, the bankruptcy judge's power to adjudicate the underlying controversy, including deciding dispositive motions without the entry of a final decision is indeed a transgression of that permission. At current, bankruptcy judges have returned to yielding the same power held unconstitutional in *Northern Pipeline.* The only difference is that now bankruptcy judges are appointed by the judiciary itself; however, that does not resolve the issue. Thus clearly the powers not allowed to the Congress are equally not allowed to the judiciary; the shield and protection provided by the separation of powers is applied universally. The Supreme Court has recognized "factfinding by an administrative agency, ... as an adjunct to the Art. III court, [is] analogizing the agency to a jury or a special master and permitting it in admiralty cases to perform the function of the special master *Crowell,* 285 U.S. 22,51-65

(1932). However, *"Crowell* involved the adjudication of congressionally created rights." *I d.* Further, the functions of the bankruptcy judge as an adjunct are not limited "in such a way that 'the essential attributes' of judicial power are retained in the Art. III court." *I d.* Nonetheless, "the bankruptcy court is not an 'adjunct' of either the district court or the court of appeals." *I d.* at 91 (Rehnquist, J., concurring in the judgment); *Stern,* 131 S. Ct. at 2611 ("Nor can the bankruptcy courts under the 1984 Act be dismissed as mere adjuncts of Article III courts ....").

Summary motion judgment power is clearly not vested with the bankruptcy judge under the precedents and reasoning of several cases. When the Supreme Court decided that the grant of powers to the bankruptcy judge was unconstitutional in *Northern Pipeline,* it not only denied the bankruptcy judges of the power to enter final decision, it also barred them from adjudicatingthe proceeding including those of conducting a trial. The power to supervise pretrial discovery, make ruling on dispositive motion, making finding of facts and conclusion of law are integral parts of adjudication barred by Northern Pipeline ("Our precedents make it clear that the constitutional requirements for the exercise of the judicial power must be met at all stages of adjudication . . . ")The Court has subsequently recognized this holding: Congress may not vest in a non-Article III court the

power to adjudicate, render final judgment, and issuebinding orders in a

traditional contract action arising under state law, withoutconsent of the

litigants, and subject only to ordinary appellate review. *Thomas v. Union

Carbide,* 473 U.S. at 584.

**13. There is no special expertise or policy reason justifying continued authority of the bankruptcy judge on this matter.**

It is the state matter that is being agitated, i.e. New York Creditors and

Debtor Law. What is a special expertise to be found in a bankruptcy judge

for this matter? If at all there is a desideratum for special expertise, the

trustee should be knocking at the state court door, they are experts in state

laws. Further, the Supreme Court has allowed assertion of judicial authority by

non-Article III tribunals where the agency had to have special or "obvious

expertise" in a "particularized area of law. Further, assertion of judicial

authority has been allowed only when the area of law was governed by a

"specific and limited federal regulatory scheme." *Schor,* 478 U. S. at 836.

**14. Bankruptcy Court is not within historical exception to Article III, thus bankruptcy court cannot continue to preside over the matter.**

Allowing bankruptcy judges, through bankruptcy courts, to adjudicate

the underlying dispute in this instance does not comport with Article III or with

Article III's historical exceptions. Article III is a structural limit on Congress'

authority to assign cases to non-Article III courts. Congress cannot assign private rights issues to such a non-Article III tribunal. The Supreme Court recognizes only three narrow categories of "exceptional" grants of power to the executive and legislative branches as exceptions to Article III: the non-Article III courts of the territories and the District of Columbia; the establishment of courts-martial; and the creation of legislative courts and administrative agencies that adjudicate matters of "public" rather than "private" rights. *N. Pipeline,* 458 U.S. at 64-70 (1982) (arguing that so called "private rights" cases could not be removed from Article III courts and delegated to legislative courts or administrative agencies, even if judicial review in an Article III court were provided thereafter). *See also, Stern,* 131 S.Ct. 2594, 2611 (J. Scalia, concurring):

> Leaving aside certain adjudications by federal administrative agencies, which are governed (for better or worse) by our landmark decision in *Crowell* v. *Benson,* 285 U.S. 22 (1932), in my view an Article III judge is required in *all* federal adjudications, unless there is a firmly established historical practice to the contrary. For that reason-and not because of some intuitive balancing of benefits and harms-1 agree that Article III judges are not required in the context of territorial courts, courts-martial, or true "public rights" cases. See *Northern Pipeline Constr. Co.* v. *marathon Pipe Line Co.,* 458 U. S. 50, 71 (1982) (plurality opinion).

*Stern,* 131 S.Ct. 2594, 2611

## 15.  Bankruptcy court cannot just assume power on the dispute thinking it is assisting the district court in expeditious disposition of the case.

Efficiency and expeditiousness cannot become a reason to overlook the

separation of power requirements. See *Granfinanciera* citing *Bowsher v. Synar*, 478 U.S. 714, 736 (1986) (" '[T]he fact that a given law or procedure is efficient, convenient, and useful in facilitating functions of government, standing alone, will not save it if it is contrary to the Constitution'"). Once it is established that it is an essential judicial function, then the Constitution forbids it being placed out of the Article III judicial domain. Thus, "where the Constitution by explicit text commits the power at issue to the exclusive control" of a given branch; in such a circumstances the Court has "refused to tolerate any intrusion" by the other branches. *Public Citizen v. United States Department of Justice*, 491 U.S. 440, 484, 485, 487 (1989); *Plaut v. Spendthrift Farm, Inc.*, 514 U.S. 211 , 239-40 (1995) (holding legislative reopening, or other invalidation, of final judicial judgment to be categorically unconstitutional); *see also, Bowsher*, 478 U.S. at 736 (declining to subject principle of separation of powers to a balancing test); *INS v Chadha*, 462 U.S. 919, 944-46 (1983).

**16. Defendant has not/does not consent to the bankruptcy court regarding this dispute.**

Mahia did not consent to the jurisdiction of the bankruptcy court, rather opposed it in pleadings, in the bankruptcy court and to the district court. In absence of a consent, one cannot force Mahia to a non-Article III bankruptcy court, thus bankruptcy court jurisdiction is void. *See Pretez v. United States,*

50I U.S. 923 (1991) (consent rendering the assignment of jury selection to a magistrate constitutional, also finding right to an Article III judge waiveable ). The *Pretez* court also did not find any structural protection issues implicated in such a waiver, for it found that magistrates are appointed and subject to removal by Article III judges and also "the entire process takes place under the district court's total control and jurisdiction," *I d.* Bankruptcy judges do not operate within the "total control and jurisdiction" of the district court. *id.* The bankruptcy court is a court within an Article III court, thus violating separation of power, as it chips judicial power from Article III institution. Miah's adversary proceeding adjudication by a bankruptcy judge, even if the judge does not have final authority to enter a decision and would be confined to finding of facts and conclusion of law, cannot be justified, on any past approach: the balancing test, Article III jurisdiction or structural implications. Considering the Supreme Court's *Schor* balancing analysis, the question is premised on waiver of any personal rights to an Article III court. Mahia demanded his constitutional right to an Article III court. There is no balancing test or sharing of work between the bankruptcy judges and article III judges. First there is no judicial parity between the district and bankruptcy court judges, district court judges are article III judges and bankruptcy judges not. Secondly, weighing the balancing test does not comport with the constitutionally-mandated separation of powers adopted in *Chadha*, 462 U.S. at 924 (holding

legislative veto provisions constitutionally invalid), and *Bowsher v. Synar,* 478 U.S. 714 (1986) (invalidating a statute designed to trigger federal budget cuts on the ground that it vested executive functions in an employee potentially subject to congressional influence). Using a balancing approach here to justify the transfer of judicial business under section 157 of Title 28 undermines the role of the Article III judiciary because it deprives the courts of their fundamental role in the constitutional scheme

**17.  Bankruptcy Judge assumed role on summary judgment is more than a procedural one**.

Congress with BAFJA rerouted *pre-Marathon* old Bankruptcy Act jurisprudence, particularly, Section 1471(c) powers, through a new devise labeled as "procedures" under 28 U.S.C. 157, re-granting unconstitutional power to the bankruptcy judges.It is clear that Congress, consistent with the constitutional limitations, has the authority to fix the rules of procedures, including rules of evidence, which Article III must apply. See *Hanna v. Plumer,*

380 U.S. 460, 471-472 (1965) ("The constitutional provision for a federal court system (augmented by the Necessary Also, Congress could define, by statute, the substantive law which such courts should enforce. The Bankruptcy Clause of Article I § 8which authorizes Congress to establish "uniform laws on the subject of Bankruptcies throughout the United States"

has been broadly construed. Clearly, Congress has authority to alter the jurisdiction of the lower federal courts and to prescribe procedural rules governing those tribunals. *See, e.g., Melkonyan v. Sullivan,* 501 U.S. 89,94-96 (1991) (holding that a "final judgment" for purposes of 28 U.S.C. § 2412(d)(1)(B), which permits an award of fees and expenses to a party prevailing against the United States in any civil action upon application within 30 days of "final judgment" means a judgment rendered by a court that terminates the civil action for which fees may be received); *Fed. Sav. and Loan Ins. Corp. v. Ticktin,* 490 U.S. 82, 85-88 (1989)(interpreting provisions governing federal-court jurisdiction over suits commenced by the Federal Savings and Loan Insurance Corporation). However with section 157's "Procedure," Congress, rather than controlling or regulating, is withdrawing the jurisdiction of Article III court, for juridical business is being transferred to non-Article III courts, not to individuals under the direct control and supervision of Article III judges. Such "procedure," where Mahia finds himself, as a defendant in a lawsuit, not before an Article III judge but a bankruptcy judge and where he has to establish a cause [withdrawal of reference] to be heard by an Article III judge and has to pay a penalty for the value to be heard before an Article III court, indeed violates due process.

**18.   The underlying dispute requisitions article III adjudication.**

The district court cannot force adjudication of Mahia's private rights/claims before a non-article III court. The underlying controversy deals with "private" right as fraudulent conveyance actions are deemed private rather than public right. *Granfinanciera,* 492 U.S. at 56. ("There can be little doubt that fraudulent conveyance actions by bankruptcy trustees-suits which, we said in *Schoenthal v. Irving Trust Co.,* 287 U.S., at 94-95, 53 S.Ct., at 51 (citation omitted), constitute no part of the proceedings in bankruptcy but concern controversies arising out of it' -are quintessentially suits at common law that more nearly resemble state-law contract claims brought by a bankrupt corporation to augment the bankruptcy estate than they do creditors' hierarchically ordered claims to a pro rata share of the bankruptcy res."). Since Mahia is confronting a private right issue, "then it must be **adjudicated** by an Article III court." *Granfinanciera,* 492 U.S. at 55. "For if a statutory cause of action, such as respondent's right to recover a fraudulent conveyance under II U.S.C. § 548(a)(2), is not a 'public right' for Article III purposes, then Congress may not assign its adjudication to a specialized non-Article III court lacking "the essential attributes of the judicial power." *Crowell,* 285 U.S. at 51.

**19.  Continued adjudication of this matter in the bankruptcy court
violates Separation of Power**

Subsection (a) of§ 157 authorizes the reference of"any or all" bankruptcy

cases and proceeding from the district court to the bankruptcy judges. Though

this reference is perceived as permissive ("may"), it is in reality a binding

instruction, as any litigant, be it a debtor or a third party summoned in a

bankruptcy proceeding  finds himself, first not in a district court, but in a

bankruptcy court. Further, there is no escape out of this predicament, for escape

route found in withdrawal of reference burdens the non-consenting party to

show a "cause,"-non-debtors seldom establish that cause. Thus the default rule

is that all bankruptcy cases and proceedings are filed and heard in the

bankruptcy court, in substance, it is still hooked on to the letters of old and

unconstitutional section 1471 (c). The Court in *Stern v. Marshall* rightly

observed:

> The new bankruptcy courts, like the old, do not
> "ma[k]e only specialized, narrowly confined factual
> determinations regarding a particularized area of
> law" or engage in "statutorily channeled factfinding
> functions." *Northern Pipeline,* 458 U. S., at 85
> (plurality opinion). Instead, bankruptcy courts under
> the 1984 Act resolve "[a]ll matters of fact and law in
> whatever domains of the law to which" the parties'
> counterclaims might lead. Id.,at 91 (Rehnquist, J.,
> concurring in judgment).

131 S. Ct. at 2599.

In order to salvage this from a Constitutional attack, Congress furtherdivided the bankruptcy proceedings into core and non-core proceedings, [though "purely taxonomic" for Article III jurisdictional purposes] with the district court having authority to enter final decision. However where parties consent, thus granting subject matter jurisdiction [though unconstitutionally], the bankruptcy judges can enter final decision in a non-core proceeding. In core proceeding, the bankruptcy judges by themselves conclude a proceeding to finality. Mahia, is a non-debtor, who is not seeking relief from the bankruptcy court, not consenting to the bankruptcy court's jurisdiction, or defending causes of action premised in non-bankruptcy New York state fraudulent conveyance law. Ironically, Mahia finds himself before a bankruptcy judge in a proceeding labeled as a "core proceeding."[2] Despite the label, fraudulent conveyance actions retain their essential character as "suits at common law," thus based on reasoning provided in *Northern Pipeline,* the untenured bankruptcy judge cannot adjudicate this adversary proceeding.   This jurisdiction allocation, emanating from the interrex Emergency Rule, codified by BAFJA, of bankruptcy related proceedings between the bankruptcy judges and district court violates separation of powers. It is clear that emergency is not a ticket to cut corners or compromise constitutional concerns.  "Pragmatism" and

---

[2] The "core proceedings" phrase borrowed from Justice Brennan pluarality opinion in Northern Pipeline Case. Justice Brennan lamented about inclusion of fraudulent conveyances in core proceeding and was concerned that Congress might not have "considered the constitutional implications of its designation of all fraudulent conveyance actions as core proceedings." *Granfinanciera, S.A. v. Nordberg,* 492 U.S. 33, 88 (1989).

practicality" cannot override constitutional mandate. As Justice Jackson put it, "the unarticulated assumptions" of such pleas for "power to deal with a crisis or an emergency according to the necessities of the case" is that "necessity knows law." *Youngstown Sheet &Tube Co. v. Sawyer,* 343 U.S. 579, 646 (1952) (Jackson, J. concurring). No doubt that even "necessity" must bow to the law when the Constitution's structural principles are at stake, because "the Framers ranked other values higher than efficiency." *INS v. Chadha,* 462 U.S. at 919, 959 (1983).

Congress is clearly barred from assigning private rights issues to non-Article III tribunals. If that is a mandate against the Congress it equally applies against the judiciary, the district court. The Supreme Court has repeatedly affirmed its decision from *Northern Pipeline* by holding that the Bankruptcy Act of 1978, as invalid and a violation of separation of powers. *See Granfinanciera,* 492 U.S. at 33. It also found that the separation of power ultimately deals with protection of individual rights. If an act of the Congress is deemed to violate the separation of powers and thus threatens individual liberty, then that act is equally unacceptable if performed by the district court's un-individuated blanket referral and shifting the burden to the non-debtor litigant to establish a "cause" to be heard by an Article III judge.

The Constitution provides that Congress is given "all legislative powers

herein granted," [Art. I, § 1 ], that "the Executive Power" is vested in the President [Art. II, § 1] and that "the Judicial Power of the United States" is vested in the Supreme Court and lowers courts created by Congress [Art. III, § 1]. However there are no rigid walls between these three branches. The Court has taken a "pragmatic, flexible view of differentiated governmental power"- one that seeks "not [to implement] ... a hermetic division between the Branches" but rather to avoid "'encroachment or aggrandizement [by] one branch against the others.'" *Mistretta v. United States,* 488 U.S. 361, 381 (1989) (quoting *Buckley v. Valeo,* 424 U.S. 1, 122 (1976). Encroachment or aggrandizement, unknowingly or delegably is subject to a constitutional challenge. For instance, "[Congress] may not 'invest itself or its Members with either executive power or judicial power." *Metro. Washington Airports Auth. v. Citizens for the Abatement of Aircraft No ices, Inc.,* 501 U.S. 252, 274 (1991)

(quoting *J. W Hampton, Jr. &Co. v. United States,* 276 **U.S.** 394, 406 (1928))

Further, what law the courts are to follow is a legislative domain. Grant of jurisdiction, for example, is a core and integral legislative function and it cannot be delegated or abandoned. Granting referral to the bankruptcy court under 157 by the district could not have been based on a discretionary referral for that is deemed to be legislative function. Congress granted this parallel right to district courts to avoid constitutionality issues as declared in *Northern Pipeline,*

and for the same it shifted this responsibility to the district courts. The separation of power doctrine fi.mctions not only to protect the judiciary from intrusion by the executive and legislative branches; it also protects the executive and legislative branch from intrusion by the judiciary. The structural protection provided by Article III cannot be overlooked when judicial business is shared with auxiliary judicial officer such as bankruptcy judges, for reference under section 157 does not maintain the same "district court's total control and jurisdiction" as are found in regards to magistrates assistance. *See United States v.Raddatz,* 447 U.S. 667 (1980).

**20. Bankruptcy Court is bound by Stare decisis,thus Court cannot continue with the underlying controversy.**

It has been declared in unequivocal terms that the bankruptcy courts cannot decide  private rights issues entailing fraudulent conveyances.  See *N. Pipeline* (bankruptcy court cannot try fraudulent conveyance actions), *Granfinanciera* (Congress cannot assign fraudulent conveyance action disputes to bankruptcy court) and Stern (bankruptcy courts does not have constitutional right to adjudicate independent private issues). What would it take for this Court to understand that it is bound by the precedents, observations and instructions from the highest court of the land? "State decisis is the preferred course because it promotes the evenhanded, predicable, and consistent development of legal principles, fosters reliance on judicial decision,  and

contributes to the actual and perceived integrity of the judicial process." *Payne v. Tennessee*, 501 U.S. 808, 827 (1991); see also *Hilton v. South Carolina Public Railways Comm'n*, 502 U.S. 197, 202 (1991) (Time and time again, this Court has recognized that the doctrine of stare decisis is of fundamental importance to the rule of law. Adherence to precedent promotes stability, predictability, and respect for judicial authority."); *Patterson v. McLean Credit Union*, 491 U.S. 164, 172 (1989) ("stare decisis is a basic self governing principle within the Judicial Branch, which is entrusted with the sensitive and difficult task of fashioning and preserving a jurisprudential system that is not based upon 'an arbitrary discretion'") (quoting The Federalist No. 78 p. 490 (H. Lodge ed. 1888) (A. Hamilton). See also Lewis F. Powell, Jr. , "*Stare Decisis and Judicial Restraint*," 47 Wash. & Lee L. Rev. 281, 286-287 (1990) ("**The respect given the Court by the public** and by the other branches of government rests in large part on the knowledge that the **Court is not composed of unelected  judges free to write their policy views into law**. Rather, the Court is a body of  vested with the duty to exercise the judicial power prescribed by the Constitution. An important aspect of this is the respect that the Court shows for it own previous opinions.") (emphasis in original) .

Kramer and her legal team has not provided any compelling reason to this Court to ignore the settled principles of law. Further, it is only the Supreme Court that which could change this, or unless there is drastic alteration by the

47

Congress, which just cannot be, as these limits on the bankruptcy court subject matter have been derived from article III, as interpreted by the highest court of the land. Hence, this court cannot and "will not depart from the doctrine of state decisis without some compelling justification." See *Hilton* at 202 (1991); R.A.V. v. City of St. Paul, 505 U.S. 377, 398-399 (1992); *Allied-Signal, Inc. v. Director, Division of Taxation,* 504 U.S. 768, 784-785 (1992); *Quill Corp. v. North Dakota*, 504 U.S. 298, 310-318 (1992).

**21.    Miah right to a properly constituted court and constitutionally recognized judge is missing here.**

A bankruptcy judge, taking into the consideration the immense federal powers exercised on a continuing basis and not personal, "transient," or "incidental." makes him or her an "Officer of the United States," and then must satisfies the standard laid out by the Supreme Court:

> We think that the term "Officers of the United States" as used in Art. II, defined to include "all persons who can be said to hold an office under the government," is a term intended to have substantive meaning. We think its fair import is that any appointee exercising significant authority pursuant to the laws of the United States is an "Officer of the United States," and must, therefore, be appointed inthe manner prescribed by § 2, cl. 2, of that Article.

*Buckley* v. Valeo, *424 U.S.* 1 (1976)

The powers of the bankruptcy judge as delineated in Title 11 and Title 28 binds third parties for the benefit of the public, as administering, executing,

or authoritatively interpreting the laws. For instance, under 28 U.S.C. § 151, in each judicial district, the bankruptcy judges in regular active service shall constitute a unit of the district court to be known as the bankruptcy court for that district. Each bankruptcy judge, as **a judicial officer of the district court, may exercise the authority conferred under this chapter with respect to any action, suit, or proceeding and may preside alone and hold a regular or special session of the court,** except as otherwise provided by law or by rule or order of the district court. Also, 28 U.S.C. § 157 confers power on Bankruptcy judges to hear and determine all cases under Title 11 and all core proceedings arising under Title 11, or arising in a case under Title 11, referred under subsection (a) of this section, and authority to enter appropriate orders and judgments, conduct jury trial.

Thus a bankruptcy court/judge is a federal office involving a position to which is delegated by legal authority a portion of the sovereign powers of the federal Government. Such authority primarily involves the authority to administer, execute, or interpret the law. *See also Printz v. United States,* 521 U.S. 898, 922-23 (1997)(Constitution provides that President and the officers he appoints are the ones who are "to administer the laws enacted by Congress" and "execute its laws"); *Bowsher v. Synar,* 478 U.S. 714, 733 (1986) ("Interpreting a law enacted by Congress to implement the legislative mandate is the very essence of 'execution' of the law.").

The Appointment Clause specifies that the proper way to appoint "Officers of the United States," whenever Congress significantly changes the nature of an officer's duties and creates a new office, reappointment in accordance with the Constitutions is requisited. Congress cannot take short cuts regarding appointment of" Officers of United States," for the Appointment Clause embodies a concern for political accountability in the exercise of executive power. Thus the Court held in *Buckley v. Valeo,* "Congress could not, merely because it concluded that such a measure was 'necessary and proper' to the discharge of its substantive legislative authority ... vest in itself, or its officers, the authority to appoint officers of the United States" any more than it could "pass a bill of attainder or ex post facto law contrary to the prohibition contained in§ 9 of Art. 1." 424 U.S. 1, 135 (1976).

"We think that one who makes a timely challenge to the constitutional validity of the appointment of an officer who adjudicates his case is entitled to a decision on the merits of the question and whatever relief may be appropriate if a violation indeed occurred. Any other rule would create a disincentive to raise Appointments Clause challenges with respect to questionable judicial appointments." *Ryder v. United States,* 515 U.S. 177 (1995). Such concerns were raised, however neither the bankruptcy court or the district court addressed this situation.

Appointment Clause importance cannot be underestimated: "In *Buckley v.Valeo,* the Supreme Court said "[t]he Appointments Clause could, of course, beread as merely dealing with etiquette or protocol in describing 'Officers of the United States' but the drafters had a less frivolous purpose in mind." The Clause is a bulwark against one branch aggrandizing its power at the expense of another branch, but it is more: it "preserves another aspect of the constitution's structural integrity by preventing the diffusion of the appointment power." *Freytag v. Commn'r,* 501 U.S. 868,878 (1991).

A bankruptcy judge is not a "Principle Officer" as contemplated under Article II of the Constitution, as her appointment is not by the President of the United States with the advice and consent of the Senate. As a result a bankruptcy judge is an "Inferior Officer." However, assumed jurisdiction by the bankruptcy judge on the underlying Adversary Complaint to decide cases of state common law causes of action would catapult the functioning and power of such judicial officer from an inferior to a principal officer. But a principal officer must be appointed by the President with the Senate consent. Based on the case law and guidance provided, a bankruptcy judge might not be an inferior officer based on the four factors laid out by the Supreme Court: (1) the officer's removability by a superior executive branch official; (2) the scope of the officer's duties; (3) the scope of the officer's jurisdiction; and (4) the tenure of the office at issue. *Morrison v. Olson,*487 U.S. 654, 665-68 (1988).

*First*, the bankruptcy judge is not removable at will but only for a cause. 28 U.S.C. § 152. *Second*, the bankruptcy judge, instead of being provided with "only certain, limited duties," has a huge panoply of powers and duties. See 28 U.S.C.§ § 157 and 1334. *Third*, the tenure of bankruptcy judge is minimum for 14 years and is not ad hoc or temporary in nature. 28 U.S.C. § 152. *Fourth*, the bankruptcy judge has ongoing responsibilities. Thus the bankruptcy judge wields complete powers of an independent judges as found under 28 U.S. C. § 1334 after the matter has been referred under section 157 of title 28-such referral is pre-established there is no discretionary or individuated consideration given before such reference. The tenure of the bankruptcy judge is not on an ad-hoc basis but spans over a period of 14 years with re-appointment which is rarely denied. According to *Morrison* test, the bankruptcy judges cannot be equated to "Inferior Officer." Further, applying the subsequent test as proposed by Justice Scalia in Edmond rejecting *Morrison:* "Morrison did not purport to set forth a definitive test for whether an office is 'inferior' under the Appointments Clause,"--""inferior officers" are officers whose work is directed and supervised at some level by others who were appointed by Presidential nomination with the advice and consent of the Senate,"~the bankruptcy judge role transgress judicial limits of an inferior officer. *Edmond v. United States,* 520 U.S. 651, 663 (1997). Applying *Edmond* test i.e. equating the bankruptcy judge as an adjunct, akin to

52

magistrate to Article III has been dismissed. *See Stern v. Marshall,* 131 S. Ct. 2594.

The requirements of the Appointments Clause are "among the significant structural safeguards of the constitutional scheme" and are "designed to preserve political accountability relative to important government assignments." *Edmond,* 520 U.S. at 659, 663.

Thus, Mahia is being improperly forced to have his issue decided by an unconstitutionally improper forum despite the fact that Mahia has an independent *right* to adjudication in a constitutionally *proper* forum, *Glidden,* 370 U.S. at 533,671.

## 22.   Kramer fails to show the reasons to abrogate religious rights of the debtor, defendant and the family.

Kramer in zeal for prosecuting claims and concerned about the credit card companies pitted a family against each other. This violated the religious practice of the family. Kramer ignore the family as a religious unit and when family was willing to offer explanation, it was refused.  Kramer brought this action deliberately, so that the family could be forced to settle their demands. Kramer interferes with the religious rights of the mother and son and other family members who are living as one unit. Congress has yet to pass any law exempting section 544 and New York State Law as applied to federal bankruptcy program from RFRA's reach. RFRA is The Religious Freedom

Restoration Act of 1993, Pub. L. No. 103-141, 107 Stat. 1488 (November 16, 1993), codified at 42 U.S.C. § 2000bb through 42 U.S.C. § 2000bb-4. Bankruptcy Court cannot carve out any exemption to RFRA's coverage, even though this court has claimed and declared itself as an independent court with "inherent powers." It is the Congress alone that could carve out such exemptions(future statutes could be excluded from RFRA's scope if "such law explicitly excludes such application by reference to [RFRA]"). Kramer must show/satisfy a compelling interest test in prosecuting the state fraudulent conveyance action on behalf of unsecured creditor. However, Kramer does not and cannot show a compelling interest, but there are other least restrictive ways of achieving this governmental aim, if it is so, of maximizing returns to the creditors. Mother and son, as a practicing religious family demands an exemptions from section 544 and fraudulent conveyance, generally applicable laws that *substantially burden* their practice, which Kramer cannot ignore unless she can show that applying the laws is the *least restrictive means* of serving a *compelling government interest*.

The preceding italicized terms--substantially burden, least restrictive means and compelling government interest are to be interpreted as the precedence established by the Supreme Court in *Sherbert v. Verner*, 374 U. S. 398 (*1963*)(1963) and *Wisconsin v. Yoder*406 U.S. 205

54

(*1972*)(collectively sherbert/yoder). The "findings" section of RFRA states that "the compelling interest test as set forth in prior Federal court rulings is a workable test for striking sensible balances between religious liberty and competing prior governmental interests" (emphasis added), and cites *Sherbert* and *Yoder* favorably. And the whole point of RFRA was to "restor[e]" a body of rulings that were overturned by *Employment Division v. Smith* 494 U.S. 872 (1990)— rulings that recognized a constitutional right to presumptive exemptions from generally applicable laws.

It is against the religious practice of the family to place mother or son as creditor and debtor of each other.  It is the religious belief and practice of the family that family is one unit and transfer of an asset from individual to the other does not transfer real ownership. Asking for religious accounting of what the Son has done for the mother or what the mother has done for the son, family violates basic Islamic tenet.  The defendant son and his sister bought a house with their own money and put their mother on the deed of the property--they fulfilled their duty to the mother as exhorted by Prophet- "(Then) stay with her, for Paradise is at her feet." (Al-Tirmidhi).  The Quran, Islam's revealed text, states: "And revere the wombs that bore you, for God is ever watchful over you." (4:1). Defendant had a religious call to respect

his mother. "Show gratitude to Me and to thy parents; to Me is thy final Goal." (31:14).

RFRA begins with the findings that, "the framers of the Constitution, recognizing free exercise of religion as an unalienable right, secured its protection in the First Amendment to the Constitution," and "laws 'neutral' toward religion may burden religious exercise as surely as laws intended to interfere with religious exercise."

There is no doubt that religious exemption claims are always subject to override by "compelling government interest[s]." "[G]overnments should not substantially burden religious exercise without compelling justification." "[T]he compelling interest test as set forth in prior Federal court rulings is a workable test for striking sensible balances between religious liberty and competing prior governmental interests." "Government may substantially burden a person's exercise of religion only if it demonstrates that application of the burden to the person ... is the least restrictive means of furthering [a] compelling governmental interest." Clearly a government agent, a trustee, involved in securing interest of an unsecured creditor, when these creditors can do it on their own, by filing a state based claim cannot be a least restrictive means, nor is it a compelling governmental interest. Here deep religious convictions of the family have been offended and with impunity.

Further, for purposes of RFRA, the question isn't whether a judge or Kramer agrees with a person's claim that a law requires him to engage in behavior is sinful — it is whether the person sincerely believes that the behavior is sinful. Miah and his mother, pursuant to Islamic laws cannot be creditor or debtor of each other, nor can furnish accounting for what they have done to each other. A compelled examination of the accounting of what each has contributed to other violates religious rights, burden their religious rights, nor has the trustee shown any compelling reason for disrupting the religious life of the debtor/defendant family.

## A. Trustee laws suit causes "Substantial Burden."

Kramer and her counsel, clearly knowing that the family was a religious unit and that they practiced Islamic faith, have put the family in a horrible position—turning family members against each other. It is against the religious belief of the family to ask for accounting from each other. No civilized religion, nation or law has ever demanded that the mother be accountable to the son or vice versa for what they have done to each other. At least in Islam it is forbidden to ask the mother to render accounting of what she or her son has done for each other in terms of support, material providing of food and shelter etc., this is essentially what the trustee is asking here. It is clear, requiring people to do something that " is forbidden

by [their] faith" qualifies as a substantial burden on religious practice. See, e.g. *United States v. Lee* (1982); *Hernandez v. Commissioner* (1989). Also the trustee imposes her subjective standards **here, that the mother could not have left** her interest for the purposes of practicing her faith of keeping one family as a unit. Thus, even requiring people to not to do something forbidden by their faith in order to get important benefits (for instance ......) is also a substantial burden. *Thomas v. Reviw Bd.* 450 U.S. 767 (1981). Requirement that mother does not quit her interest [in this case she did not even know that she had any ownership interest], under the religious belief, family is one unit,  in order to not to be target of a fraudulent conveyance is indeed a burden. Even "[w]hile the compulsion may be indirect, the infringement upon free exercise is nonetheless substantial." *Thomas.* And that is so even where the relevant "conduct proscribed by a religious faith" is indirect complicity in other conduct, and the complicity line that the religious claimant draws appears inconsistent or unsound to the reviewing court. *Id..* "It is not for [secular courts] to say that the line [the claimant] drew was an unreasonable one." *Id*Thus, while reviewing a claim by the Muslim prisoners to have conditions suitable for observance of Ramadan, Judge Posner wrote,

> We hold . . . . that a substantial burden . . . . is one that forces adherents of a religion to refrain from religiously motivated conduct, inhibits or constrains conduct or expression that manifests a central tenant of a person's religious beliefs, or compels conduct or expression that is contrary to these beliefs.

*Mack v. O'Leary*, 80 F.3d 1175 (7th Cir. 1996), vacated and remanded, 522 U.S. 801 (1997)

## B.  Trustee does not have a "Compelling Interest."

US trustee will lack a compelling interest, if it has a alternative, less restrictive means available to achieve its purpose. It is also clear that when a burden on religious exercise is heavy, the government's interest will seem weaker that it might otherwise. Trustee must show a compelling government interest in impairing the claimed religious exemption under RFRA. That the law of fraudulent conveyance has a general application is not strong enough to be a compelling interest in itself. See *Gonzales v. O Centro* (We had "no cause to believe" that the compelling interest test " would not be applied in an appropriately balanced way" to specific claims for exemptions as they arose. Nothing in our opinions suggested that courts were not up to the task....). The creditors can have their own recourse to the courts to seek their remedies, the government does not have to. "Least restrictive means" clearly puts the emphasis on

how the US trustee deals with the claimant and those like him, and it focuses attention on other possible alternative approaches to a problem.

**23.    Mother, debtor was a bare legal title holder, hence no suit is maintainable.**

Under the "mere conduit theory," which derives from Judge Cardozo's opinion in *Carson v. Federal Reserve Bank of New York*, 254 N.Y. 218, 235-36, 172 N.E. 475, (1930), a debtor that has mere possession of the funds, without more, does not necessarily possess sufficient control so as to warrant a finding that the funds were the debtor's property.

Burden is on the trustee to prove that the debtor was more than the legal title holder, however she can never prove that. She has knowledge and evidence to show that the debtor did not make the mortgage payment on any of the house, the old or the new. Debtor did not make monies ever, in her best days, she made $75a week. She did not take mortgage tax deductions. She was dependent on the defendant, since the time defendant as 18 year old. Out of a religious duty, defendant and his sister put her name on the deed and nothing more. Only if the property had been property of the estate, then only could there be a fraudulent conveyance. What is there to convey when one never had ownership? Under section 541 of the Bankruptcy Code , a debtor's legal and equitable interests in property, "as of the

commencementof the case," constitute "[p]roperty of the estate," 11 U.S.C.
§ 541(a)(1) . Property in which the debtor holds only legal title and not an
equitable interest, however, becomes property of the estate "only to the
extent of a debtor's legal title to such property, but not to the extent of any
equitable interest in such property that the debtor does not hold," id. §
541(d) . That is, the bankruptcy estate does not include "property of others in
which the debtor ha[s] some minor interest such as a lien or bare legal title,"
United States v. Whiting Pools, Inc., 462 U.S. 198, 204 n. 8, 103 S.Ct. 2309,
2313 n. 8, 76 L.Ed.2d 515 (1983) ; see 4 Collier on Bankruptcy ¶ 541.13, at
541-75 (15th  ed.1989) (estate succeeds only to the title and rights that the
debtor possessed); *In re Quality Holstein Leasing*, 752 F.2d 1009, 1012 (5th
Cir.1985)  (same).*In re Howard's Appliance Corp.,* 874 F.2d 88, 93 (2d
Cir.1989) (citing 11 U.S.C. § 541(a) [1].). Bankruptcy estate does not
include property of others in which debtor has only some minor interest,
such as a lien or bare legal title .In re Swift, 496 B.R. 89 (Bankr. E.D. N.Y.
2013). **See Exhibits.**

## 24.  Lack of necessary party as per the state law requires dismissal of the Complaint

The debtor is not a party to the proceeding. She should have been
named. Also Abu Taher, the transferor of 55% ownership of present
residence to Miah. Both the transferor and the transferee are necessary

parties to a fraudulent transfer action. See *Hamilton Nat'l Bank v. Halsted* , 9 N.Y.S. 852 (App. Div. 1st. Dept 1890), aff'd in relevant part , 134 N.Y. 520, 31 N.E. 900 (1892).

We know that debtor is not estate and vice versa even if the all claims of the debtor are merged to be property of the estate. Here it is not the claim of the debtor, it is the creditors claim that is being invoked. 11 U.S.C. § 544(b).

No doubt that this is a proceeding under the federal forum, thus a pure procedural front, it is the forum law that would apply even if applying the State substantive law. *Hanna v. Plumer,* 380 U.S. 460 (1965). However, when where the procedural law of the forum state is "inseparably interwoven with substantive rights," then it is the State law that which shall apply. Debtor's property rights includes the right to dispose of her property, also included is her right to exempt property or dispose the same. How can a property be subject to fraudulent conveyance when it is subject to exemptions--"assets" of a debtor means property not exempt from liability for his debts. N.Y. Debt. & Cred. Law § 270 (McKinney). Debtors then and now property rights are getting impacted and the trustee proceeds with impunity to deprive her of home which has been given to her by her son. See, *In re Caplan's Estate,* 1949, 196 Misc. 631, 92 N.Y.S.2d 369 (since earnings of deceased,

debtor for personal services which were shown to be necessary to satisfy reasonable needs of debtor and his dependents, would have been exempt from appropriation by judgment creditor, the transfer of such funds to debtor's wife for support did not constitute a transfer of "assets" by deceased in fraud of creditors and executor could not enjoin further use of such assets); *Commodity Futures Trading Commission v. Probber Intern. Equities Corp.*, 1981, 504 F.Supp. 1154 (for purposes of determining whether individual was entitled to recover possession of property which he had loaned to commodities futures trading house, purposes of this article would not be served if individual would lose his property to receiver for benefit of creditors of trading house where there was no creditor which had extended credit relying in any way on belief that individual's property was part of trading house's asset pool). Here what is happening is not including the debtor as a party and deciding the fraudulent conveyance is in essence deciding whether the debtor would have had an exemption, certainly this lawsuit impacts those very rights. Exemptions is also something that does not become a property for distribution to creditors or to satisfy trustee's fees. *Law v. Siegel Chapter 7 Trustee* No. 12-5196, 2014 BL 57926 (Decided March 4, 2014) ("But whatever other sanctions a bankruptcy court may impose on a dishonest debtor, it may not contravene express provisions of

the Bankruptcy Code by ordering that the debtor's exempt property be used to pay debts and expenses for which that property is not liable under the Code."). The debtor in the complained transaction sale of the house might have had exemptions or other rights integrated with the family. She has not been impleaded and that is fatal to this suit.

Indeed, the judgment that that rolls out of this lawsuit works as a claim preclusion for the parties. Claim preclusion is a substantive law and thus inseparably interwoven with substantive rights, hence New York state law should have been followed here. Debtor was and is an essential party.

Exemption is a state created right. Just because a federal forum is adjudicating it, does not change the assumptions and impacts of state law. In essence, it is the unsecured creditor asserting, albeit through a chapter 7 trustee. Change of venue through a federalized process of section 544 does not morph the character and essence dispute. It "certainly does not justify the rather startling conclusion that one might 'get a change of law as a bonus for a change of venue.'" *Van Dusen v. Barrack*, 376 U.S. 612 (1964). See also *Ferens v. John Deere Co.*, 494 U.S. 516 (1990) (holding that the transferor state's law governs in all cases transferred under § 1404 of title 28, whether the transfer is initiated by the plaintiff, the defendants, or the court). Also, *Griffin v. McCoach*, 313 U.S. 498 (1941) (holding that the

64

forum state's choice of law rules must be applied in a statutory interpleader

case).

Not to be forgotten is the advise of Justice Frankfurter:

> Here we are dealing with a right to recover derived not from the United States but from one of the States. When, because the plaintiff happens to be a nonresident, such a right is enforceable in a federal as well as in a State court, the forms and mode of enforcing the right may at times, naturally enough, vary because the two judicial systems are not identic. But since a federal court adjudicating a state-created right solely because of the diversity of citizenship of the parties is for that purpose, in effect, only another court of the State, it cannot afford recovery if the right to recover is made unavailable by the State nor can it substantially affect the enforcement of the right as given by the State.

*Guaranty Trust Co. of New York v. York*, 326 U.S. 99.

He further opined:

> Plainly enough, a statute that would completely bar recovery in a suit if brought in a State court bears on a State-created right vitally and not merely formally or negligibly. As to consequences that so intimately affect recovery or non-recovery a federal court in a diversity case should follow State law. See Morgan, Choice of Law Governing Proof (1944) 58 Harv.L.Rev. 153, 155—158. The fact that under New York law a statute of limitations might be lengthened or shortened, that a security may be foreclosed though the debt be barred, that a barred debt may be used as a set-off, are all matters of local law properly to be respected by federal courts sitting in New York when their incidence comes into play there. Such particular rules of local law, however, do not in the slightest change the crucial consideration that if a plea of the statute of limitations would bar recovery in a State court, a federal court ought not to afford recovery.

*York*

Purely procedural matters, no doubt, are governed by Federal

Bankruptcy Rules of Civil Procedure, even if the matter pertains to

adjudication of a state granted or created remedies. See *Plumer*. State

courts of New York indicates that the transferor be joined as a party. Following an unsecured creditor invoked right in the bankruptcy forum does not result denial or defiance of state created defenses and logics. "If the federal court allows arbitration where the state court would disallow it, the outcome of litigation might depend on the courthouse where suit is brought. For the remedy by arbitration, whatever its merits or shortcomings, substantially affects the cause of action created by the State. The nature of the tribunal where suits are tried is an important of the parcel of rights behind a cause of action." *Bernhardt v. Polygraphic Co.*, 350 U.S. 198 (1956).

The proceeding of state law as invoked under section 544 are statutory and not equitable, despite bankruptcy forum claim to court of equity [district court and not bankruptcy court is a court of equity, as bankruptcy court as here are purely statuary]. *HBE Leasing Corp. v. Frank,* C.A.2 (N.Y.)1995, 48 F.3d 623, rehearing denied. (New York Uniform Fraudulent Conveyance Act (UFCA) is **set of legal rather than equitable doctrines**, whose purpose is not to provide equal distribution of debtor's estate among creditors, but to aid specific creditors who have been defrauded by transfer of debtor's property); also, In re *Old CarCo LLC,* 2010, 435 B.R. 169 ("New

York state law is not concerned with the structure of the Bankruptcy Code or with ensuring that the Bankruptcy Code's principles not be undermined." Purpose of the Bankruptcy Code is to provide equal distribution of a debtor's estate to the debtor's creditors, while the purpose of the New York's fraudulent conveyance law is to aid specific creditors who have been defrauded by the transfer of a debtor's property).

Now since they are pure statutory creatures, NY debtor creditor laws     § 270, et seq., the question that arise is if they become an equitable proceeding under the bankruptcy forum. They do not. Justice Brandeis aptly applies this to a bankruptcy context in a flip fashion:

> That a remedial right to proceed in a federal court sitting in equity cannot be enlarged by a state statute is likewise clear. *Scott v. Neely*, 140 U.S. 106 , 11 Sup. Ct. 712; *Cates v. Allen,* [261 U.S. 491, 498]  149 U.S. 451 , 13 Sup. Ct. 883, 977. Nor can it be so narrowed. *Mississippi Mills v. Cohn,* 150 U.S. 202 , 14 Sup. Ct. 75; *Guffey v. Smith,* 237 U.S. 101, 114 , 35 S. Sup. Ct. 526. The federal court may therefore be obliged to deny an equitable remedy which the plaintiff might have secured in a state court. Hanssen's contention is that the statute does not enlarge the equitable jurisdiction or remedies, and that it confers upon creditors of a Delaware corporation, if the company is insolvent, a substantive equitable right to have a receiver appointed. If this were true the right conferred could be enforced in the federal courts (*Scott v. Neely,* 140 U.S. 106, 109 , 11 S. Sup. Ct. 712),4 since the proceeding is in pleading and practice conformable to those commonly entertained by a court of equity. But it is not true that this statute confers upon the creditor a substantive right. * * * The Delaware statute does not confer upon creditors the right to have a

67

receiver appointed, although the insolvency of the corporation may be palpable, hopeless and attended by indisputable fraud or mismanagement. Insolvency is made a condition of the Chancellor's jurisdiction; but it does not give rise to any substantive right in the creditor. *Jones v. Maxwell Motor Co.* (Del. Ch.) 115 Atl. 312, 314, 315. It makes possible a new remedy, because it confers upon the Chancellor a new power. Whether that power is visitorial (as the appellant insists), or whether it is strictly judicial, need not be determined in this case. Whatever its exact nature, the power enables the Chancellor to afford a remedy which theretofore would not have been open to an unsecured simple contract creditor. But because that which the statute confers is merely a remedy, the statute cannot affect proceedings in the federal courts sitting in equity.

*Pusey & Jones Co. v. Hanssen,* 261 U.S. 491 (1923).

Bankruptcy court deciding [improperly though] an issue of fraudulent conveyance cannot override state logic and aim of NYDCL or in other words, it cannot be used to leverage state law in such a way as to ensure, " a recovery in federal court significantly larger than the recovery that would have been tolerated in state court." *Gasperini v. Center for Humanities, Inc.*, 518 U.S. 415 (1996) (Justice Ginsburg emphasizing the aim of Erie doctrine [similar to Butner concept: property issues be settled looking at state laws]).

Also there is no preemption issue, preemption comes into play whenever there is a conflict, here the Congress incorporating state law, thus there cannot be a preemption.

**25.    Even federal joinder law has not been following thus making this case amenable to dismissal.**

Rosen/Kramer asserts relief under the Declaratory Judgment Act and claims that they are " entitled to a declaratory judgment setting aside the transfer of the Mortgage Proceeds made as a fraudulent conveyance," and similar plea regarding alleged," the transfer of the Sales Proceeds made as a fraudulent conveyance." See "Second," "Fifth," "Seventh," "Ninth," "Twelth" and "Fourteenth" Causes of action of the Amended Complaint. Also, Judgment plea regarding said cause of actions. Perhaps the Kramer is saying that the property has to be brought back to estate or that present ownership of title holder is defective. It is unclear. But whatever clarity, I could glean from this opaque attack with transparent motive, one thing is clear that the present ownership of the property is being questioned.

Thus, Rosen/Kramer asking for declaratory judgment regarding a property impacting title, ownership etc. and does not include the other owner of the property renders the suit infructuous. Abu Taher was the purchaser of the present property owned by the family and is still the part owner. Abu Taher is the owner of the property who transferred his 55% interest to Defendant and is still holding another 45%. To the extent the complaint seeks relief regarding the said property or the vesting of any proceeds from the sale of the old home to the purchase of new one, Abu Taher is an indispensable party. **Case must be dismissed for lack of a necessary**

**party.** Disputes over the transfer of an interest in land requires joinder of all parties to the document of conveyance. *Scoggins v. Fredrick*, C.A.5th, 1980, 629 F.2d 426. (An individual who, while defendant in a personal-injury action, conveyed certain land to another, retaining a life estate, was an indispensable party in an action brought to set aside the conveyance). Abu is a necessary party thus when an absentee is regarded as indispensable under Rule 19(b), dismissal will be necessary. *Paper Container Mfg. Co. v. Dixie Cup Co.*, D.C.Del.1947, 74 F.Supp. 389, (Although misjoinder of parties is not a ground for dismissal, failure to include an indispensable party plaintiff does constitute a ground). Kramer does not have an autonomy to structure the parties to be impleaded, rules requires it. There is no privity here between the debtor and the defendant as far as present ownership of the house is concerned. It is Abu who bought the house and it is him who has transferred the house to his name. The lack of indispensable party could be raised any time, even on appeal, thus the case must be dismissed for not having the right party and for non-joinder. *MasterCard Int'l, Inc. v. Visa Int'l Serv. Ass'n, Inc.*, 471 F.3d 377, 382–383 (2d Cir. 2006) (appellate courts have duty to consider compulsory joinder issues sua sponte and ensure that absent parties are adequately protected).

## 26.    Trustee doe not identify the creditor entitled to bring a lawsuit.

There is no doubt, that a Kramer and her team must rise above the boiler plate one for all template and give individuated thoughts to each dispute as a distinct one. See attached Adversary Complaint, *Kramer v. Chin*, Case 12-01231-jf EDNY and decision by Judge (retd) Jerome Feller dated June 4, 2013 (*In re Chin*, 492 B.R. 117 (2013). The instant complaint is an exact copy of the same. See even cause of action dealing with section 278 of NYDCL and Section 550 of the Code, how it is underlined. It is all cut and paste. Perhaps they are too busy with lot of paperwork, but how does that justify such filings.

Section 544(b) speaks about the power of the trustee to use an unsecured creditor power under the state law, here New York. However, trustee does not recognize that particular creditor. Trustee does not even state in his complaint what Trustees commonly include a general statement that there existed one or more creditors who held allowable unsecured claims against the debtor and that the allegedly avoidable transfers are avoidable by a creditor holding an unsecured claim. Rather, throwing away all norms, Rosen state: To the extent that the claims herein arise under Bankruptcy Code § 544(b), the Trustee is asserting the rights of a creditor with an unsecured claim allowable in the bankruptcy case. We don't' know if the claim is arising herein under. Rosen is the master of his complaint.

He must assert and not make a gaunt statement. There is no link of any factual assertions with any claim, it is all is a each sentence of the complaint seems to be on its own. *In re Petters Co.*, 2013 Bankr. LEXIS 2838 (Bankr. Minn. July 12, 2013). "It goes beyond saying, that it is not to be taken for granted that such a creditor exists." *Id.* at *28. Further,

> To plead his standing to sue to set aside a transfer to any defendant as fraudulent under Minnesota law, the Trustee must identify by name, in his complaint, at least one unsecured creditor with a claim allowable against the estate whose standing he uses to sue that defendant, which creditor would have had the right to sue to avoid that transfer on the date that that Debtor filed for bankruptcy relief. The Trustee's generic pleading as to the existence of a predicate creditor does not satisfy Rule 8(a). To maintain his claims against the defendants beyond the stage of these motions, he must remedy this defect.

*Id.* at *31-2.

There is no doubt that this complaint is a complete failure under Rule 8(a). Even pro se litigants are must state sufficient facts. See *Pieczenik v. Bayer Corp.,* 2012 U.S. App. LEXIS 5986 (Fed. Cir. Mar. 22, 2012) (RICO / copyright infringement action): In general, pro se litigants are held to a lesser standard than pleadings drafted by lawyers when determining whether a complaint should be dismissed for failure to state a claim. *Hughes v. Rowe*, 449 U.S. 5, 9-10 (1980). However, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Iqbal*, 129 S.Ct. at 1949 (internal quotation marks omitted). Rule

8(a), which with "limited exceptions" applies to all civil action, *Swierkiewicz v. Sorema*NA, 534 US 506 (2002), requires that a complaint include "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2). The "limited exceptions" to Rule 8's liberal pleading requirements is Rule 9(b), which "provides for greater particularity in all averments of fraud or mistake," *Swierkiecz,* 534 U.S. at 513. See also *Conley v. Gibson*, 355 U.S. 41 (1957). Supreme Court recalibrated the federal pleading requirements. The Court, retired Conley's broad "no set of facts" standard and announced a new, more exacting standard for pleading "plausibility."*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007) and *Iqbal*, 556 U.S. 662 (2009).

As beautifully put just very recently by a dissenting Circuit Judge: **As a lower court in a system of absolute vertical stare decisis headed by one Supreme Court, it is essential that we follow both the words and the music of Supreme Court opinions.** *United States v. Martinez-Cruz, 2013 U.S. App. LEXIS 24084 (D.C. Cir. Dec. 3, 2013) (*Kavanaugh, *Circuit Judge,* dissenting).Passing it through the pleading filter, what we have here is a nullity. This complaint does not recognize the creditor or even assert descriptively [not prescriptively] a presence of such a creditor for the purposes of proper exercise of jurisdiction under section 544 (b). *Palnik v.*

*Westlake Entertainment, Inc.*, 344 Fed. App'x 249 (6th Cir. 2009) ("a court decides a motion to dismiss for lack of personal jurisdiction . . . the complaint must have established with reasonable particularity those specific facts that support jurisdiction." Id. at 251 (citing *Twombly,* 550 U.S. at 567); *Dudnikov v. Chalk & Vermilion Fine Arts, Inc.*, 514 F.3d 1063 (10th Cir. 2008) (in reviewing a district court's dismissal for lack of personal jurisdiction, it must take as true "all well-pled (that is, plausible, non-conclusory, and non-speculative, see [*Twombly*, 550 U.S. at 554]) facts alleged in plaintiffs' complaint." Id. at 1070.) Even in our own district, District Court , has, albeit without citing to *Twombly or Iqbal*, essentially applied those standards in holding that on a motion to dismiss for lack of personal jurisdiction "the court is not bound by conclusory statements, without supporting facts." *Schmidt v. Martec Indus. Corp.*, No. 07-5020, 2009 WL 2883071, at *2 (E.D.N.Y. Sept. 03, 2009). *Haley Paint Co. v. E.I. DuPont de Nemours & Co.,* 2011 U.S. Dist. LEXIS 34925 (D. Md. Mar. 31, 2011) ("**As** such, this Court concludes that the pleading standards articulated in Twombly and Iqbal apply to Rule 8(a)(1) which requires "a short and plain statement of the grounds for the court's jurisdiction.")

The complaint is nothing other than ipse dixit. Facts are stated without any link to what each fact is related to. *Willey v. J.P. Morgan Chase, N.A.,*

2009 U.S. Dist. LEXIS 57826 (S.D.N.Y. July 7, 2009) ([I]pse dixit pleading is insufficient. *** *Iqbal* unequivocally rejects the notion that conclusory statements unsupported by factual allegations can subject a defendant to the burdens of discovery.)*See also Harris v. Mills*, 572 F.3d 66, 75 (2d Cir. 2009) (affirming dismissal because "there is no allegation (beyond ipse dixit) that Harris was denied the opportunity to read from a written statement 'by reason' of his disability, let alone 'solely by reason' of his disability, as the Rehabilitation Act requires."). Thus under *Twombly,* merely pleading a possibility of recovery  is not enough. The duty is to furnish factual "allegation plausibly suggesting (not merely consistent with))" an "entitlement to relief." 35o U.S. at 557. *Twombly* calls this the "Rule 8 (a)(2) entitlement requirement"--the threshold requirement of Rule 8 (a)(2) that the "plain statement' possess enough heft to 'show that the pleader is entitled to relief." Id.

There are some many alternatives that are presentable in the given scenario that the trustee does not even suggest a remote possibility of the same, which are very much evidently presently from the given facts. For instance, the trustee does not say if the debtor was or had an exemption in the property which was sold and thus it would or could never been property of the estate. Trustee does not have to debacle all possible alternative

inferences to strengthen his claims, but at least, he must address the most obvious.

**27.    Debtor was denied due process rights and trustee obtained jurisdiction based on hiding material information before the debtor thus committing a fraud on the debtor. Since the jurisdiction was obtained in violation of due process rights of the debtor, this suit is not maintainable.** Law suit should have been preceded with different options explained to the debtor, it was not deliberately done to obtain jurisdiction over debtor's property by trickery.

Debtor was deliberately not told about her procedural right--option of filing bankruptcy under chapters of the bankruptcy code. Kramer had a duty to tell this honest debtor that she has a property issue and that she should be in a chapter 13  etc. See 11 U.S.C. 341.   Kramer acted deliberately, ambushed a poor, immigrant family to her control, so that she could seek extortionist payment.

A "law is a law is a law."And when codified, couched in unambiguous terminology, easy to understand, bereft of any confusion, instructive and clear in content and command: That law must be followed. Its disregard is impunity. Its avoidance leads to one inescapable conclusion, its omission was not an improvident omission but a deliberate scheme

mischievously calculated to bring such a precarious predicament for the debtor and his family that, one has nothing but a Hobson choice—pay that trustee and her complicit team what she demands otherwise suffer loss of legal process, only home for the family. What remains after that is a family rendered destitute with sickness and old age, a situation that State and society abhors. Also, the suffering however is not confined to a loss of legal process, it subverts the panel trustee's powers, inflate it without meaningful check and we have statutorily created entities within the system that are unaccountable and flourish at the cost of a family tragedy.

At the very start of the trustee first meeting with the debtor is at the First meeting of creditors envisioned under section 341 of the bankruptcy code. Section 341 of the code lays out in very simple language the duty what a trustee is suppose to do at this meeting. However, this section language command were not followed and are deliberately not followed, for the trustee develops her case from this first encounter. This is a crucial meeting, law as such has provided a level playing field for all participants, debtor, debtor's counsel, trustee, creditors etc. However, this panel trustee violated this level field. She did not have an informed debtor [that made debtor-mother vulnerable to the trap] did not declare the statutory options

to the debtor, did not apprise of the issues and consequences of seeking

discharge under this chapter.

### A.    Law must be followed

The law, the first moral duty, rather the legal obligation is

emblazoned in the bankruptcy code which has no surprise element, but a

linear commencement to a conclusion of the examination of the debtor.  It

says

> (d) **Prior to the conclusion** of the meeting of creditors or
> equity security holders, the **trustee shall orally** examine the
> debtor to **ensure** that the **debtor in a case under chapter 7**
> of this title is **aware of**—
> (1) the potential consequences of seeking a discharge in
> bankruptcy, including the effects on credit history;
> (2**) the debtor's ability to file a petition under a different
> chapter of this title;**
> (3)**theeffectofreceivingadischargeofdebtsunderthistitle;**
> and
> (4) the effect of reaffirming a debt, including the debtor's
> knowledge of the provisions of section 524 (d) of this
> title.

**11 U.S.C. 341**

This did not happen here with this debtor, Mrs. Khan. defendant's

mother did not get the benefit of the statute and thus its protection.  This was

a calculated move on this trustee part, for her interest lies in the keeping the

case and debtor in Chapter 7 to reap financial rewards.  This important

structural protection of the debtor was eliminated. This law "objective and

policy" is to have an informed debtor.  We did not have an informed a

debtor, but a very informed, manipulating trustee.  Not enforcing the

statutory command is rendering the statute a "mere surplusage," and with fatal consequences. Section 341 language is not a surplusage and not a discretionary approach of the trustee, it is mandatory. *Astoria Federal Savings & Loan Ass'n v. Solimino*, 501 U.S. 104, 112 (1991), Bailey v. United States, 516 U.S. 137, 146 (1995) ("we assume that Congress used two terms because it intended each term to have a particular, non-superfluous meaning").

**B.    "Shall orally examine the debtor to ensure"**

The trustee"shall orally examine the debtor to ensure" of different options of filing bankruptcy "under a different chapter" is a mandatory duty of the trustee. The mandatory 'shall' . . . normally creates an obligation impervious to judicial discretion." Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26, 35(1998). "The use of a permissive verb — 'may review' instead of 'shall review' — suggests a discretionary rather than mandatory review process." Rastelli v. Warden, Metro. Correctional Center, 782 F.2d 17, 23 (2d Cir. 1986). It is clear Kramer avoided this duty and as she has done in other cases.

**C.    No alternatives allowed "to ensure"**

"[S]hall orally examine the debtor to ensure" does not provide the option to use some alternative means like giving a pamphlet to the debtor about the contents of section 341 or asking the debtors' attorney. A trustee gestures or calculated subjective satisfaction of this command cannot be upheld that the trustee has used alternative routes to reach the same results etc. Lamie v. United StatesTrustee, 540 U.S. 526, 537 (2004) (courts should not add an "absent word" to a statute;"there is a basic difference between filling a gap left by Congress' silence and rewriting rules that Congress has affirmatively and specifically enacted").

**D.     US Trustee or Panel Trustee cannot alter this mandatory duty**

Congress has spoken and it spoke clearly: "Prior to the conclusion . . . the trustee shall orally examine the debtor to ensure that the debtor in a case under chapter 7 of this title is aware of . . . the debtor's ability to file a petition under a different chapter of this title. . . ." 11 U.S.C. 341. US Trustee office engages the services of these auxiliary attorneys on the rolls as panel members and guides them through its Title 58 Code for Federal Regulations  to execute the congressionally granted statute i.e. Title 11. Despite an agency power to engage the services of these panelists to help them, it cannot ask these stalwarts to alter the statutory provided services

and means of performing. Franklin Nat'l Bank v.New York, 347 U.S. 373, 378 (1954) (finding "no indication that Congress intended to make this phase of national banking subject to local restrictions, as it has done by express language in several other instances"); Meghrig v. KFC Western, Inc.,516 U.S. 479, 485 (1996) ("Congress . . . demonstrated in CERCLA that it knew how to provide for the recovery of cleanup costs, and . . . the language used to define the remedies under RCRA does not provide that remedy"); FCC v. NextWave Personal Communications,Inc., 537 U.S. 293, 302 (2003) (when Congress has intended to create exceptions to bankruptcy law requirements, "it has done soclearly and expressly"); Dole Food Co. v. Patrickson, 538 U.S. 468, 476 (2003) (Congress knows how to refer to an "owner" "in other than the formal sense," and did not do so in the Foreign Sovereign Immunities Act's definition of foreign state "instrumentality"); Whitfield v. United States, 543 U.S. 209, 216(2005) (Congress has imposed an explicit overt act requirement in 22 conspiracy statutes, yet has not done so in the provision governing conspiracy to commit money laundering). Congress command was simple, panel trustee or U.S. trustee is not given the power to alter that code provided obligation of these  panel trustees to have an  informed   debtor, aware of obligations and options under the code.

Uninformed debtor does not satisfy the command of Fifth Amendment of the Constitution here.

### E.    "To ensure" is not a trivia

Debtors' rights and choices within the system which demands an informed debtor cannot be dismissed as a trivia. De minimisnon curatlex ('the law cares not for trifles') is not proper here, for it is clear that the civil forfeiture kicks in and where panel trustee do not mind to have these debtors arrested invoking bankruptcy Rule 9001. See for example  in this very court, this trustee and her team has filed such motions to get the debtor arrested.    Indeed, this initial meeting is a very important guardian of rights of the debtors. Panel trustee invokes Rule 9001 for arrest the debtors so that they could be produced and trustee could do her job. If they are so particulars about having the debtor and his property included in the estate with the threats of arrest warrants, why can't she show the same force in giving those very 341 options of different chapters to the debtor. However, she would not do that, for that means, she could lose an opportunity.  It cannot be that one moves to deprive the debtors family of their home and thrive under the shadows of unsecured creditors, but the very entitlement of that debtor are not provided for. There is nothing in the bankruptcy code that provides one sided powers to abuse. Trustee must

read the Code and do her job to show the paths to the debtor. That was not done here, serious right was compromised. Rights do not lose their value even if they are indirectly provided for, for they act as a shield at minimum.

### F.    Due Process

United States is a land of law and the law of the land is as enacted by the Congress. An innate aspect of the law is "due process." Murray's Lessee v. Hoboken Land & Improvement Co., 59 U.S. (18 How.) 272, 276 (1856) ("The words, 'due process of law,' were undoubtedly intended to convey the same meaning as the words, 'by the law of the land,' in Magna Charta.").The law of the land or due process of law provisions guarantee not just any process but a process of law. This obliges the  government to act in a lawful manner. The fifth amendment commands the federal government [subsuming agents including panel trustees]: "No person shall . . . be deprived of life, liberty, or property, without due process of law . . . ." Procedural check guarantees freedom from arbitrary action of government and its agent. See Hurtado v. California, 110 U.S. 516, 531 (1884) (due process as guarantee against oppressions and usurpations); Murray's Lessee v. Hoboken Land & Improvement Co., 59 U.S.  (18 How.) 272, 276 (1885) ( holding due process as a restraint the al organs of government and congress not free to make any process "due process of law,' by its mere

will")Procedural due process is a constitutional limit on an administrative action owing to which individual could suffer grievous loss due to an officer acts or omissions.    Kramer's conduct thus the resulting due process deprivation cannot be dismissed as a mere negligence, for her conduct in eschewing simple questioning and maneuvering questioning to trap the debtor; not disclosing the knowledge of papers she had from Acris; not performing her duty in providing options of different bankruptcy chapters; and the family threatening them with criminal charges and brining a lawsuit to take away property went only to show an extremely schematic individual improperly vested with judicial powers of United States.

Kramer did not due her job in telling the debtor as to what was at stake and what options the debtor had, she could have exercised.  Debtors backgrounds and education and sense of process and justice is not uniform and thus a trustee role has to be poignant and understanding--trustee must know about it.

Due process is not a mechanical process, it is an highly individuated approach to an individual and his individuated issues.  Kramer focus, as made out clearly from the 341 meeting and tone of questioning, manipulative sequence of questions was to not meet her obligation as a

neutral trustee, but to look at her financial interest in twisting the dynamics of meeting of creditors to put the debtor in precarious predicament and not listening to the husband of the debtor. As so aptly captured by Supreme Court, when Justice Frankfurter wrote that the

> Validity and moral authority of a conclusion largely depend on the mode by which it has reached. . . . No better instrument has been devised for arriving at truth than to give a person in jeopardy of serious loss notice of the case against him and opportunity to meet it. Nor has a better way been found for generating the feeling, so important to a popular government, that justice has been done.

*Joint Anti-Fascist Refugee Committee v. McGrath*, 341 U.S. 123, 171-172 (1951) (Frankfurter, J., concurring).

It is not enough that process is going to be supervised by a bankruptcy judge now, it is the very that thing that which happened at the inchoate stage of proceeding that which being wrought at this forum needs a check. A determined checks of the abuse must occur at the lowest level. It is not what happens ultimately that which govern or that paperwork is being filed etc. to show much acclaimed appearance of justice, it is very process that is what is significant for the due process which was missing here. See Marshall v. Jerrico Inc., 446 U.S. 238 (1980).

Due Process is means to check, "substantially unfair or mistaken deprivation"—it ensures that the challenged action accurately reflects the

85

substantive rules applicable to such action; its point is less to assure participation than to use participation to assure accuracy. Fuentes v. Shevin, 407 U.S. 67, 97 (1972); See also Boddie v. Connecticut, 401 U.S. 371, 374 (1971); "Perhaps no characteristic of an organized and cohesive society is more fundamental than its erection and enforcement of a system of rules defining the various rights and duties of its members, enabling them to govern their affairs and definitely settle their difference in an orderly, predicable manner."

Kramer asking questions of her choice at the 341 meeting and willfully keeping the debtor ignorant of his options; this premise standing alone cannot sustain any proceeding against the debtor, however it does trigger an important concern that the trustee acted with malafied intention of depriving a debtor of her home and her personal rights under the bankruptcy code. Kramer cannot dispense away with her obligation by showing that she dealt with the debtor rather than talked to him. Hearings or procedure which is engineered to achieve a pre-meditated result is not a hearing and is not due process—it is a scheme. It is denial not on accord with due process.

**G.    What process was due under the bankruptcy code, especially 11 U.S.C. § 341?**

Section 341 is self explanatory, it provides, mandatory language. Further, time and again Supreme Court has stressed that the procedure needed to minimize error and to reduce the dangers of arbitrary action to an acceptable level vary "according to specific factual contexts," Hannah v. Larche, 363 U.S. 420, 442 (1960),since "not all situations calling for procedural safeguards call for the same kind of procedure." Morrissey v. Brewer, 408 U.s.471, 481 (1972). Court in Mathews v. Eldridge laid out the formula for the determination of what process is due:

> [O]ur prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: first, the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and, finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

*Mathews v. Eldridge*, 424 U.S. 319, 334-35 (1976).

However the last factor, the government's interest is subservient if, "property deprivation is not de minimis." Goss v. Lopez, 419 U.S. 565, 576 (1975), See also Ingraham v. Wright, 430 U.s. 651, 674 (1977); Board of Regents v. Roth, 408 U.S. 564, 570-71 (1972). Here the debtor, an infirm old woman with her critically sick cancer afflicted husband, entirely dependent

on their son for support --its gravity does not fade, however overpowering might be the feeling of trustee for credit card companies. Court is concerned about the procedure which might seriously impair the purpose of the statute from which the entitlements are derived--a concern both instrumental and intrinsic in character. See e.g. Goss (requiring an informal give-and-take between student and administrator prior to suspension would not jeopardize state objective of providing education); Morrissey v. Brewer, 408 U.S. 471, 483 (1972)(allowing hearing prior to revocation of parole would not impede purpose of deterring misbehavior). Kramer, a lawyer ignored all this, for it did not serve her purpose. She has financial stakes, she should have been more concerned that no sense of impropriety comes in.

Trustee is not free to avoid procedural burden to raise fees for herself. She must follow the guidelines and that is in the bankruptcy code. Congress when it makes laws, just does not unload, it has reached consensus and an understanding on the nature and language of law.

This law is codified and duties mandatorily casted upon the panel trustee to perform, 11 U.S.C. 701 et seq., and such task must not be manipulable with malafide  intention. A panel trustee with personal financial stakes, have an exra-moral

obligation to show there is no lack of good faith. The Panel Trustee Ms. Debra Kramer deliberately avoided her obligations, entrapped an honest debtor, triggered a judicial process to deprive the debtor and her family of property and personal rights as protected by the United States Constitution. The debtor was denied Due Process rights of Fifth Amendment, equal protection clause. For reasons that Ms. Kramer conduct went beyond laxity to schematic deprivation [in collusion with  the "counsel"] a individual rights, access to courts and deprivation of property rights, the debtor and his family begs for justice. Panel trustee would have to be changed, even if discharge is granted, for the debtor was not accorded the shield of 341 meeting, was not given her statutory information.

We are not challenging Congress given bankruptcy system, we are rather asking for enforcement of the system in place. We have no complaint against the system, we have complaints against anyone corrupting the system. Morals or immoralities of a conduct is not the issue, it is the lack of compliance with the rules in place. We are, asking not for mercy and or compassion here, we are asking for strict enforcement of law. For us lawyers,

we do feel however that we are social engineers and we have a moral obligation towards the society to help the society in all possible ways. Poor and infirm must not be deprived of legal process.

Rights readily inferable from the text and structure of the bankruptcy code from Congress well drafted different chapters, ability to move from chapter to the other and an option declared at the threshold at the 341 meeting are there to ensure that no unfairness results.

The debtor asserts that the conduct of Kramer's and her counsel is  unconstitutional. And the underlying assault with lawsuit against the supporting son, a  complaint is bad faith devise to extort monies out a hard working struggling immigrant family. If the panel trustees self-serving moves cannot be checked, consider or see the realities of situations, then one cannot but blame oneself. As a great man once said, "injustice tolerated is injustice perpetrated."

For clarity, it is important to mention, the panel trustee, though a private person is involved in a governmental function— the Bankruptcy Code endorse it, thus making her act amenable to

the constitutional protection. The plaintiff action is primarily enforcement of governmental laws and it is indeed an government agent acting purporting to act in that capacity, irrespective of the fact of its recklessness. The Constitution and the Bill of Rights only limit the actions of the government, and to some private parties under some circumstances. Chapter 7 Trustee is a private person, but enforcing federal laws creates a governmental action. Lugar v. Edmondson Oil Co., 457 U.S. 922 (1982) (private party authorized by statute to attach and sequester disputed property acts under color of law, and is thus suables as a state actor under 42 U.S.C. L 1983, provided the state both permits the party to resolve the dispute without judicial supervision and provides a state official to assist the party in the attachment). Clearly here, government acquiescence in or its authorization of private action amounts to ratification of that action and is therefore subject to constitutional challenge, as it is deemed to be, "under the color of law." Here the ultra-vires act of the panel trustee amounts to an unconstitutional state [federal govt.] action. As stated by the Supreme Court: The theory of the [F]ourteenth Amendment is that where an officer or

other representative of a State in the exercise of the authority with which he is clothed misuse the power possessed to do a wrong forbidden by the Amendment, inquiry concerning whether the State has authorized is irrelevant...."*Home Tel. &Tel. Co.* v. *Los Angeles,* 227 U.S. 278, 287 (1913).The concept that applies to States through Fourteenth Amendment applies to federal entities and their agents or performing a role on their behalf.

This section 341 is not only a command for the panel trustee to observe, it is also a protection accorded to the debtor, if they find themselves in situation owing to their attorney's incompetence or own mistakes. Office of United States Trustee might have flexibility in formulating their own inner rules etc., like code for federal regulations, however they cannot sideline the Congressional directions. There is an abysmal failure on part of the trustee regarding this task. It was schematically ignored to obtain an "ambushed jurisdiction."

The choices of above mentioned section 341 should have been provided to the debtor. It is indeed a part of the procedural due process. The elements of due process characterized as "procedural due process" delineates the constitutional limits on judicial, executive and administrative enforcement of legislative or other governmental dictates or decisions.

92

These procedural safeguard are designed to accord to the debtor like individuals "the very right to be heard before being condemned to suffer grievous loss of any kind," as a result of governmental choices— which can take the form of a acts or, less commonly, of omissions. *Joint Anti-Fascist Refugee Committee v. McGrath, 341 123, 168(1951) rannis v. Ordean,234U.S.385,394(1914)*("The fundamental requisite of due process of law is the opportunity to be heard"). In *Marshall v. Jerrico, Inc.446 U.S. 238(1980)*,citing *Carey v. Piphus*, Justice Marshall writing for the majority stated in explicit terms that there are "two central concerns of procedural due process ,the prevention of unjustified or mistaken deprivations and the promotion of participation and dialogue by affected individual in the decision making process." I*d.At242(citingCareyv.Piphus,435U.S.247,259-262,266-67(1978).*Here in the aforesaid case, *Marshall,* the Court further held that both, "the appearance and reality of fairness "were involved in preserving the feeling that "no person will be deprived of his interest in the absence of a proceeding in which he may present his case with assurance that the arbiter is no predisposed against." *446 U.S.at 242.See also Aetna Life Ins.Co. at*1587("to perform its high function in the best way,„ justice must satisfy the appearance of  justice") (citing *in re Murchinson,* 349 U.S. 133,136 (1955).

The debtor did not receive due process as a result the defendant did not. The Supreme Court has stressed that "the very nature of due process negates any concept of inflexible procedures applicable to every imaginable situation." *Cafeteria and Restaurant Workers Union, Local 473 v. McElroy*, 367 U.S. 886, 895 (1961).The Supreme Court has continually insisted that the procedures needed to minimize error and to reduce the dangers of arbitrary action to an acceptable level vary "according to specific factual contexts," *Hannahv . Larche*, 363, U.S. 420, 442 (1960), since "not all situations calling for procedural safeguards call for the same kind of procedure*." Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).

Just because the debtor has sought bankruptcy protection, it does not mean that everything by a trustee works, at least not the neglect of "due process." There is no waiver of autonomy and other property rights. There is "every reasonable presumption against waiver." *Aetna Insurance Co., Kennedy*, 301 U.S. 389, 393(1937). The Supreme Court has rightly presumed that the standard for waiver in noncriminal proceedings "is the same standard applicable to waivers of constitutional rights in a criminal proceeding"—namely, that it "not only must be voluntary, but must be knowing, intelligent [and] done with sufficient

awareness of there relevant circumstances and likely consequences. *Brady v. United States*, 397 U.S.742, 748 (1970)."Life, liberty   and property," are not phrases, but principles that are deeply innate to any individual in our society. Due Process Clause of the Fifth Amendment acts as a check to   both   the substance of the governmental regulation and procedures applied when it impinges in any form—"life, liberty and property."

**28.    Half of the Amended Complaint is time barred, thus not justiciable.**

Statute of limitation for New York fraudulent conveyance actions is six years.     N.Y. C.P.L.R. § 213(8); See also *Island Holding, LLC v. O'Brien* , 6 A.D.3d 498, 775 N.Y.S.2d 72 (2d Dep't 2004*); Roccanova v. Commissioner of Dep't of Social Servs.* , 5 Misc. 3d 909, 787 N.Y.S.2d 631 (N.Y. Sup. Ct. 2004).

The trustee complains about the "granting of mortgage, secured by an interest in the Real Property, in the approximate amount of $150,000 (the "Mortgage Proceeds")", "by the debtor, along with the Defendant and the third party, Shamsum N. Rimi" (sister of defendant, debtor's daughter. This transaction pursuant to the complaint and motion occurred on January 5, 2007.   This suit complaining of this transaction was filed by Kramer via an

Amended Complaint on March 25, 2013. The lawsuit is untimely, it misses the six years deadline. The allegation complaining of this "mortgage proceeds" transaction must be dismissed. There is no backdoor entry to come within the purview of statute of limitation. The transactions complained is distinct. The trustee amended the complaint and brought in new cause of action, which is barred by statute of limitation. What trustee did here exceeded supplementing the pleadings. Trustee himself in the Amended Complaint treats this as an independent cause of action, however ignore the statutory statute of limitation.

Rules regarding whether the amended complaint will relate back to the original complaint for purposes of determining, for instance, whether the statute of limitations has run are set forth in Rule 15(c). Rule 15(c) states:

(c) Relation Back of Amendments.

(1) *When an Amendment Relates Back.* An amendment to a pleading relates back to the date of the original pleading when:

(A) the law that provides the applicable statute of limitations allows relation back; (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading; or (C) the amendment changes the party

96

or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment: (i) received such notice of the action that it will not be prejudiced in defending on the merits; and (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

Rule 15(c) of Federal Rules of Civil Procedure (FRCP) provides that an amendment relates back either when allowed by the statute of limitations law governing the underlying action  or when the above three requirements are met.  The Advisory Committee Note to the original Rule 15(c), adopted in 1937, states that "'[r]elation back is a well recognized doctrine of recent and now more frequent application." FED. R. Civ. P. 15 advisory committee's note to subdivision (c) (1937). At common law, courts applied a "traditional rule," which limited relation back to amendments providing more information about an existing claim. Relation back was not allowed for amendments adding or changing the cause of action. Here, there is no relation back reprieve for the trustee. As very well articulated by Chief

Judge, Carla E. Craig:

> Under Rule 15(c)(1), "[a]n amendment to a pleading relates back to the date of an original pleading when ... the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out—or attempted to be set out—in the original pleading." Fed.R.Civ.P. 15(c)(1). "An amended complaint is deemed to arise out of the same conduct, transaction or occurrence as the original complaint when both are linked by a common core of operative facts." *Ainbinder v. Kelleher,* 1997 WL 420279, at 9, 1997 U.S. Dist. LEXIS 10832, No. 92 Civ. 7315(SS), at *21–22 (S.D.N.Y. July 25, 1997) *(quoting Oliner v. McBride's Indus., Inc.,* 106 F.R.D. 9, 12 (S.D.N.Y.1985)). Even where an amended claim seeks relief under an entirely new cause of action, it will relate back so long as additional facts are not alleged. See *CIT Group/Factoring Manufacturers Hanover, Inc. v. Srour (In re Srour),* 138 B.R. 413, 418 (Bankr.S.D.N.Y.1992) (noting that the focus of the Federal Rules is on " 'the specified conduct of the defendant upon which the plaintiff' " bases his new claim) *(quoting* James Moore et al., *Moore's Manual Federal Practice and Procedure,* § 909.09[9], 9–153 (2d ed.1991)). On the other hand, an amended complaint that "sets forth a separate set of operative facts" does not relate back under Rule 15(c). *Ainbinder,* 1997 WL 420279 at *9, 1997 U.S. Dist. LEXIS 10832 at *22. "The essential inquiry ... 'is whether the defendant was given adequate notice that such claims might be made upon examining *335 the facts alleged in the original pleading.' " *Ainbinder,* 1997 WL 420279 at *9, 1997 U.S. Dist. LEXIS 10832 at *22 (quoting *Marine Midland Bank v. Keplinger & Assocs., Inc.,* 94 F.R.D. 101, 104 (S.D.N.Y.1982)).

In re Khafaga, 431 B.R. 329, 334 (Bankr. E.D.N.Y. 2010).

As the Amended Complaint, speaks for itself its cause of action related to "mortgage proceeds", Eighth to Sixteenth Cause of Actions are barred as "based on new factual allegations, thus a "factual discrepancies between the original and amended claims—different time frames, different alleged conduct, and different operative facts—preclude a finding that the

amended claim relates back. Id. quoting *Flexi–Van Leasing, Inc. v. Perez (In re Perez),* 173 B.R. 284, 292 (Bankr.E.D.N.Y.1994).

There is no equitable reason for allowing a pleading to have a new cause of action that which had expired under the statute of limitation. This is the same trustee who held the entire case in abeyance to focus on getting sanctions under the undersigned to be used as a leverage to extort a settlement from a family. However, he was no doubt successful in cornering the family through the past counselor for the family, Ms. Christina Rubenstein who threatened the family to settle otherwise see jail referral by the trustee. The adversary proceeding were held in abeyance and very improperly so. The excuse used by Mr. Rosen was some ongoing negotiation for settlement--it was nothing other than an Emperor's New Clothes. (Emphasis Added). In reality there was never an settlement talks [neither the defendant or his mother was ever consulted]. Mr. Rosen misled this court stating that, he is "this close"/"So Close" to the settlement. It was a deliberate incorrect statement. Transcripts reveal that so clearly. Ms. Rubenstein was also a party to this horrible situation of the debtor's family. She did not even show up a single time in the court and kept telling the family that she is going to the court regularly to fight for the family. None of the emails or phone calls [sent by the undersigned] asking for the work done

or negotiation reached were responded to by Ms. Rubenstein. Wherefore these cause of actions asserted regarding mortgage proceeds must be dismissed forthwith.

## 29. The Court should not have advised the trustee to bring this motion.

Painfully, I must submit the Court should not have made a statement, to the effect that trustee should file a motion for summary judgment and the Court will grant it even before seeing the evidence. We are not asking for the disqualification for the bankruptcy judge at this juncture, however where court jumps ahead itself without seeing entire evidence leads to one inescapable conclusion that the court could be biased or the court is advising from the bench improperly. We have seen similar situation with our district court Judge Hon. Shira Scheindlin, wherein she was accused of "improper application of the Court's 'related case rule'" in accepting new case as related after having invited the party to mark a case as related. The Second Circuit did not hesitate to comment that

> Upon review of the record in these cases, we conclude that the District Judge ran afoul of the Code of Conduct for United States Judges, Canon 2 ("A judge should avoid impropriety and the appearance of impropriety in all activities."); *see also* Canon 3(C)(1) ("A judge shall disqualify himself or herself in a proceeding in which the judge's impartiality might reasonably be questioned . . . ."), and that the appearance of impartiality surrounding this litigation was compromised by the District

100

Judge's improper application of the Court's "related case rule," *see* Transfer of Related Cases, S.D.N.Y. & E.D.N.Y. Local Rule 13(a) . . . .

Ligon, et al. v. City of New York, et al.; Floyd, et al. v. City of New York, et al. Case No. 13-3123; 13-3088, Second Circuit (October 31, 2013)

The undersigned and his client has not consented to the jurisdiction of the bankruptcy court, however we are involuntarily present despite serious objections to this court continuing jurisdiction over this issue.  However, even if the defendant is involuntarily present he is still entitled to an unbiased judge. Fairness is not only to be done, it should seen to be so done. The undersigned fear was confirmed that from the date the comment was made to bring a motion for summary judgment that she would do her best to go in favor of the trustee. It is acceptable to have a judge favor a party on facts and merits, however to show that before considering the entire evidence and trial and to say that she will "grant it " does not comport with fairness. see also Liteky v. United States, 510 U.S. 540, 555 (U.S.1994) (the ultimate inquiry is whether circumstances create an objectively reasonable basis for questioning a judge's impartiality, by showing "a deep-seated favoritism or antagonism that would make fair judgment impossible."); In re Murchison, 349  U.S. 133, 136 (1955) ("A fair trial in a fair tribunal is a basic requirement of due

process. Fairness of course requires an absence of actual bias in the trial of cases. But our system of law has always endeavored to prevent even the probability of unfairness.").

This case could not and cannot be tried on summary decision with contentions on both sides. However despite such a fact, a motion has been filed, and we are afraid, it is but because of that call which the bankruptcy judge gave.

**30.    Cause of actions are not maintainable on the facts.**

First and Eighth  Cause of action relief is not tenable here. Kramer asserts section 542(a) recovery of sum of $26,690.25 for one transaction and $37,500 for the another, despite knowledge that the underlying action is a proceeding premised on New York state fraudulent conveyance laws. Section 542 adheres to recovery of the property of estate. Where is the property of the estate here being marked for recovery?  Property which is alleged to have been fraudulently transferred is not property of the estate and thus is not amenable to recovery as property of the estate under 11 U.S.C. § 542.

Bankruptcy Judge Bernstein statement citing Second Circuit is proper here:

> Section 542 contains two substantive provisions.
> Under § 542 (a), the trustee may compel the turnover of

property of the estate that the trustee can use, sell or lease. Section 542(a) does not provide a basis for relief because the plaintiff has not identified property of the estate that is subject to turnover. In this regard, property that has been fraudulently or preferentially transferred does not become property of the estate until it has been recovered. FDIC v. Hirsch (In re Colonial Realty Co.), 980 F.2d 125, 131 (2d Cir. 1992); Savage & Assocs., P.C. v. BLR Servs. SAS (In re Teligent, Inc.), 307 B.R. 744, 751 (Bankr. S.D.N.Y. 2004);11 U.S.C. § 541(a)(3) (property of the estate includes "any interest in property that the trustee recovers under section . . . 550 . . . of this title").

*Savage & Assocs., P.C. v. Mandl (In re Teligent, Inc.), 325 B.R. 134*

Thus this first and eighth cause of action must be dismissed. It has no basis under equity or law to be here.

31.    The Second and Ninth cause of action under NY CDL § 273, is a blunt assertion of a bald fact without any basis, but a conjectural throw in of a wishful thinking. "Upon information and belief, at the time the Defendant received the Debtor's interest in the Sale Proceeds, she was insolvent or the transfer rendered the Debtor insolvent." This cannot be on the basis of "upon information and belief" and how can this cause of action can be a subject to summary judgment. Mere allegation is not enough. Trustee needs to identify which particular transaction here rendered her insolvent and what was the basis of the trustee knowledge that the debtor was rendered insolvent. The creditor has no claim on the debtor disposition of exempted

property, hence it can't even be a factor for insolvency.    The New York

Debtor and Creditor Law provision relating to conveyances by an insolvent

is limited to unsecured creditors whose claim was in existence at the time of

the allegedly fraudulent transfer.    Official Committee of Asbestos

Claimants of G-I Holding, Inc. v. Heyman, 2002, 277 B.R. 20. Analysis as

to whether debtor received "reasonably equivalent value" for alleged

fraudulent transfer should be directed both at what debtor surrendered and

what it received. *In re NextWave Personal Communications, Inc.*, 1999,

235 B.R. 277, affirmed 241 B.R. 311, reversed 200 F.3d 43, on remand 244

B.R. 253, mandate enforced 217 F.3d 125, certiorari denied 121 S.Ct. 606,

531 U.S. 1029, 148 L.Ed.2d 518, certiorari denied 121 S.Ct. 298, 531 U.S.

924, 148 L.Ed.2d 240, rehearing denied 121 S.Ct. 609, 531 U.S. 1030, 148

L.Ed.2d 519.    Whether the subject conveyance has rendered the debtor

insolvent, and whether fair consideration was paid, for purpose of

determining whether conveyance is fraudulent are generally questions of

fact which must be determined under the circumstances of the particular

case. *Joslin v. Lopez* (2 Dept. 2003) 309 A.D.2d 837, 765 N.Y.S.2d 895.

Fact-specific inquiries, such as whether "fair consideration" was paid for

property, for purposes of establishing constructive fraud under New York

law, are generally inappropriate for summary judgment. In re Corcoran, 2000, 246 B.R. 152

If the claim of constructive fraudulent conveyance is based on the insolvency of the debtor, it is a fraud only against existing creditors. Under the UFCA, "[a] person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured." U.F.C.A. § 2(1) (1918). The pleading states absolutely nothing about timing of insolvency, the "present fair salable value of his assets," and his liability at the time of the transfer of the house to the Trust. It is paradigmatic that if the debtor"s assets could be sold for a sum that is sufficient to pay its debts when due, the debtor is solvent. See Moody v. Security Pacific Business Credit Inc.971 F.2d at 1066. Complaint is dead silent on material information and is infirm and unfit for response. Further, even if the trustee proves the insolvency of the debtor at the time of the transfer, he must also show that the debtor intended to incur, or believed that he would incur, debts beyond his ability to pay as they mature, hence the transfer would not be avoidable by any creditors whose claims arose after the date of the making of the gift. None of the dates and timings have been identified here. Also important to note is that creditors who have been

fully paid for all debts incurred prior to a transfer lack standing to avoid the transfer based on the debtor"s insolvency. As this section allegation is based on constructive fraudulent conveyance, based on insolvency, it is a fraud only against the existing creditor--none has been spotted by the trustee. A future creditor does not have the right to bring a fraudulent conveyance claim based on the allegation that the debtor received less than reasonably equivalent value in connection with the transfer a and was insolvent or rendered insolvent by the transfer and the present one has yet to be identified. it is clear that  if the basis for the fraudulent conveyance claim is that the debtor was insolvent when it transferred property for less than reasonably equivalent value, and the transfer occurred more than two years before the bankruptcy filing, in order to avoid the transfer under § 544(b) and state law, the trustee would have to identify a "present" unsecured creditor whose claim existed at the time of the transfer and whose claim is also in existence and allowable at the time of the bankruptcy filing. Insolvency is not presumed here, as it is not an preference action, 11 U.S.C. 547 and the complaint does not put forward any factual support for that conclusory statement.   Trustee own pleadings state that even after a mortgage of $150,000 was taken out, the property was still sold after a few months for a net sum/profit  of $106,761.00 (the "Sale Proceeds."). See Complaint

Paragraph 17 of the Complaint. If it is so then how could the debtor be

insolvent when the first mortgage transaction happened. Second transactions

would not have yielded a sum of $106,761.00, as per the trustee pleading, if

the entire debt on the property was not paid for. And if that is so then the

debtor was not insolvent at the time of the transactions. The test is not if the

debtor was not making payments on her debt at the time of the transaction

but it is as Judge Feller so well articulated:

> "A person is insolvent when the present fair salable value of his
> assets is less than the amount that will be required to pay his
> probable liability on his existing debts as they become absolute and
> matured." DCL § 271(1). "Assets" is defined to mean property that
> is "not exempt from liability for [ ] debts." DCL § 270. To
> determine insolvency, courts apply a "balance sheet" test —*i.e.*,
> whether the debtor's debt exceeds his salable assets. *See,          e.g.,*
> *O'Toole v. Karnani (In re Trinsum Group, Inc.),* 460 B.R. 379, 392
> (Bankr.S.D.N.Y.2011). Accordingly, a party is not insolvent just
> because he cannot pay his debts as they become due. *McCarty v.*
> *Nostrand Lumber Co.,* 232 A.D. 63, 65, 248 N.Y.S. 606, 607 (2d
> Dep't 1931). Further, "[t]he operative reference point for
> etermining insolvency is the time at which the transfer took place"
> and "insolvency of the  transferor ... cannot be presumed from
> subsequent insolvency  at a later point in time." *Trinsum Group,*
> 460 B.R. at 392; *Durland v. Crawford,* 172 A.D. 283, 285, 158
> N.Y.S. 692, 693 (3d Dep't 1916) ("[T]he validity of a conveyance
> does not depend upon subsequent events").

See Kramer v. Chin,  in In re Chin, 492 B.R. 117 (Judge Feller 2013)

32.    The Third and Tenth Causes of Action under section 278 is

equally very inapposite here as asserted in the complaint with the bare

minimum facts to show what she is intending to provide a notice for.

Kramer asserts: Under Debtor and Creditor Law § 278 and Bankruptcy Code § 550(a), the Plaintiff may recover the transfer that was made and/or the value thereof. 38. The Defendant benefitted from the Debtor's transfer to him of the Sale Proceeds in the amount of $26,690.25. Complaint Paragraph # 37 & 38. Also: 73. Under Debtor and Creditor Law § 278 and Bankruptcy Code § 550(a), the Plaintiff may recover the transfer that was made and/or the value thereof. 74. The Defendant benefitted from the Debtor's transfer to him of the Mortgage Proceeds in the amount of $37,500.00. Complaint Paragraph # 73 & 74

Indeed, it is a very gaunt allegation, which is hard to address. The complaint does not identify the creditor to whom the transfer was fraudulent, information about the maturity of the claim of that creditor, knowledge regarding the fraudulent conveyance of the transferee etc.

Further unclear is how Kramer is entitled to the entire [imputed/alleged] value of the property $ $26,690.25 or $37,500.00, if the non debtor owned the property and was the real buyer of the property and had paid the mortgage payments and supported the debtor. The complaint does nothing to dismantle the good faith bonafide purchaser status of the defendants. The complaint does not come up with non-neutral facts. Kramer cannot maintain a claim against the defendants on section 278 as there is no

allegation that defendant was unaware of the fraudulent conveyance.

Section 278 of New York Debtor and Creditor Law provides in pertinent part:

> Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person **except a purchaser for fair consideration without knowledge of the fraud at the time of** the purchase, or one who has derived title immediately or immediately from such a purchaser.

Have the conveyance to set aside or obligation annulled to the extent necessary to satisfy his claim, or disregard the conveyance and attach or levy execution upon the property conveyed. N.Y. Debt. & Cred. Law Sec. 278 (McKinney 1945 & Supp.1986) (emphasis added). Here, the trustee alleges, "Defendant benefitted from the Debtor's transfer to him of the Sale Proceeds in the amount of $26,690.25"and in the sum of $37,500and that is it. No tenable allegation of the knowledge of fraud has been made against the defendants. Further, where defendant was supporting the debtor for everything medicine to food to shelter, then issue fraudulent conveyance fails and so does section 278 allegation. Section 278, the focus is on the good faith of the transferee as opposed to the transferor.  See. Federal Deposit Insurance Co., v. Malin 802 F.2d 12 (2nd Cir. 1986): Thus, in Epstein v. Goldstein, 107 F.2d 755 (2d Cir.1939) (applying New York law), we upheld a conveyance from a husband to his wife even if it had been made

with the actual intent to defraud his creditors. This result was compelled by the wife's ignorance of her husband's insolvency or indebtedness to the plaintiff. Epstein remains an accurate statement of New York law. There is nothing that syncs the facts with the elements of this cause of action, thus the complaint falls short of any plausibility and is confined to a conjectural gasps and summary decision is possible here. As the other cause of actions fails for various reasons, seeking recovery of the monetary value of the alleged transfer under NYDCL § 278 and 11 U.S.C. § 550 also fails.

**32.**     The Fourth and Eleventh cause of action is equally inapt. It shows that no individuated thinking went in while this complaint was being drafted. Asserting a cause of action under section 274 Kramer asserts: Upon information and belief, the transfer of the Sale Proceeds was made without fair consideration and the property remaining with the Debtor after the transfer was an unreasonably small capital.   And second time, she asserts: Upon information and belief, the transfer of the Mortgage Proceeds was made without fair consideration and the property remaining with the Debtor after the transfer was an unreasonably small capital. See Complaint.

Section 274 states:

> Every conveyance made without fair consideration when the person making it is engaged or is about to engage in a business or transaction for which the property remaining in his hands after the conveyance is an unreasonably small capital, is fraudulent as to

creditors *and as to other persons who become creditors during the continuance of such business or transaction* without regard to his actual intent

But the debtor was never in business, she had worked prior to 2002 as a helper in cutting vegetables, that too for not more than 75 dollars a week. This cause of action must be dismissed for that reason. There was never any business accusation or its failure owing to any transfer, however yet the cause of action is asserted in the complaint.

**33.    The Fifth and Twelfth Causes of Action** issues have been addressed in the Third Cause of action response.

**31.    The Sixth  and Thirteenth Cause of Action pertains to section 275** which primarily deals with the people in business, as it deals with future creditors. It has been used, and improperly so, against the consumer.

section 275 of the New York Debtor & Creditor Law, provides as follows:

> [*Section*] *275.Conveyances by a person about to incur debts*. Every conveyance made and every obligation incurred without fair consideration when the person making the conveyance or entering into the obligation intends or believes that he will incur debts beyond his ability to pay as they mature, is fraudulent as to *both present and future creditors.*

N.Y. DEBT. & CRED. LAW § 275

It is clear from the plain meaning of the state statute that a constructive fraudulent conveyance under section 275 can be based on the presence of a future creditor—i.e., one who does not have a claim against

the Debtor at the time of the transfer, but who has a claim subsequently. However there is nothing in the complaint which suggest or insinuate, "intended and believed," other than a bland averment to that effect. Such recitation formulaic recitation of the cause of action is not an enough pleading. It must be more to entitle Kramer to relief. There is no information on the debt that might mature. Kramer does not allege any plausible basis for believing that debtor made transfers with subjective belief that they would leave it unable to pay its debts at maturity, and did not state plausible claim to avoid transfers as constructively fraudulent on "ability to pay" theory. In re Operations NY LLC., 2013, 490 B.R. 84. It is the not the trustee belief, it is the debtor's belief that is important and marks as an ingredient as properly articulated by Judge Jerome Feller in his Decision:

> To establish a claim under DCL § 275, plaintiff must prove the transferor intended or believed he would "incur debts beyond his ability to pay as they mature...." DCL § 275. "Courts have interpreted 'intends or believes' as 'awareness by the transferor that, as result of the conveyance, he will not be able to pay present and future debts.' " *Ostashko v. Ostashko,* 2002 WL 32068357, at *26 (E.D.N.Y.Dec. 12, 2002) (quoting *The Cadle Co. v. Lieberman,* 1998WL 1674549, at *10 (E.D.N.Y. Sept. 11, 1998)), *aff'd sub nom. Ostashko v. Zuritta–Teks, Ltd.,* 79 Fed.Appx. 492 (2d Cir.2003). Although actual intent need not be proven, DCL § 275 "requires proof of the debtor's subjective intent or belief that it will incur debts beyond its ability to pay as they mature." *Silverman v. Paul's Landmark, Inc. (In re Nirvana Rest. Inc.),* 337 B.R. 495, 509 (Bankr.S.D.N.Y.2006) (citing *MFS/Sun Life,* 910 F.Supp. at 943).

*Kramer v. Chin, In re Chin,* 492 B.R. 117 (Judge Feller 2013)

Trustee does not show any evidence for his contention that the debtor had the belief that she would incur debts beyond her ability to repay them. Trustee's failure to produce probative evidence to support her claim, the result being that the evidence "is so one-sided that [Defendant] must prevail as a matter of law." Chin citing Anderson, 477 U.S. at 252, 106 S.Ct. 2505.

**32.    Kramer's Seventh and Fourteenth Cause of Action is premised on section 276 of NY Creditor Debtor law.**

**Section 276**

> Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors.

N.Y. DEBT. & CRED. LAW § 276

Once again Kramer forgot to mention her source or factual statement that which would form a basis for such an assertion, "the transfer of the Sale Proceeds was made with actual intent to hinder, delay, or defraud either present or future creditors of the Debtor."   Chapter 7 trustee's complaint to avoid transfers as actually fraudulent to creditors, which required finding of actual intent by debtor-transferor to defraud, had to satisfy heightened specificity requirements of Federal Rule of Civil Procedure governing allegations of fraud.   *In re Agape World, Inc.*, 2012, 467 B.R. 556. Conveyance is "actually fraudulent" under New York law if it is made with

113

actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud present or future creditors. *In re Corcoran*, 2000, 246 B.R. 152. However there is nothing the complaint suggestive of the "actual intent."

The reasoning of Judge Feller so properly applies as the facts are same, pleadings are same, words used by Kramer are same as used in *Chin*.

> "To prove actual fraud under § 276, a creditor must show intent to [hinder, delay, or] defraud on the part of the transferor." *Sharp Int'l Corp.*, 403 F.3d at 56 (internal quotation marks and alterations omitted). "The existence of actual intent ... is never presumed, and intent to defraud cannot be found based merely on suspicion, conjecture, or doubtful inference." *Lippe*, 249 F.Supp.2d at 375 (internal quotation marks omitted).

*Kramer v. Chin, In re Chin*, 492 B.R. 117 (Judge Feller 2013)

In this case, there is no insolvency at the time of transfer, there is also no assertion or evidence that the Debtor retained control of the property. There is no evidence of that type, rather the evidence is that the debtor is totally dependent on the son for everything. How can an element of control be brought in here. See Chin citing *Danstan Props. v. Merex Corp.*, 2011 WL 135843, at *5 (S.D.N.Y. Jan. 7, 2011) (granting defendant's motion for summary judgment based on failure to provide evidence of retention of control, and noting this factor is often dispositive) (citing *Lippe*, 249 F.Supp.2d at 384; *MFS/Sun Life*, 910 F.Supp. at 935–36). Also, the trustee fails to establish that the transfers were conducted in secrecy. Trustee attaches Acris papers to show badges of fraud, however, "[a]lthough the

closing and ransfer documentation record certain transactions, they are not sufficient to create a genuine dispute of material fact." None of the paper work attached by the trustee corroborates badges of fraud and thus, this cannot a matter of summary decision.

**33. Kramer's Eighth Cause of Action is not tenable under law** as explained before--property alleged to have been fraudulently conveyed does not become property of the estate. Also section 542 (a) does not create a cause of action, it is a procedural device to bring property of the estate back to the estate.

**34. Trustee pleads unjust enrichment as her Seventh and Fourteenth Cause of Actions.**

Kramer throws in her compelling aspect of pleading, a claim of for unjust enrichment. This is a default presence of all Kramer's complaint of asserting fraudulent conveyance claims. The complaint fails to make a case of unjust enrichment. In New York, "unjust enrichment applies in situations where no legal contract exists, but where the person sought to be charged is in possession of money or property which in good conscience and justice he should not retain, but should deliver to another." *In re Pharmaceutical Industry Average Wholesale Price Litigation, R.I.C.O. Bus. Disp.* Guide

(CCH) P 11263, 2007 WL 1051642 at *9 (D. Mass. 2007) (citing *Indyk v. Habib Bank Ltd.*, 694 F.2d 54, 57, 35 U.C.C. Rep. Serv. 158 (2d Cir. 1982)).

We understand Kramer overpowering compassion for credit card companies, however, however intense might be the sanctifying feeling for protecting the credit card companies' claims it cannot rise to the level of implicating, "good conscience," in the present set of circumstance where credit card companies do not have special relationship with the defendants.

More particularly with respect to establishing a claim for unjust enrichment, the essential inquiry "is whether it is against equity and good conscience to permit the Defendant to retain what is sought to be recovered." *Anesthesia Associates of Mount Kisco, LLP v. Northern Westchester Hosp. Center*, 59 A.D.3d 473, 481, 873 N.Y.S.2d 679, 686 (2d Dep't 2009); *County of Erie v. Abbott Laboratories, Inc.*, Memorandum Decision, Index No. 2005-2439 (Sup 2006). There is nothing in the pleadings to show as to how it was inequitable and not of "good conscience. Rather the debtor and her son continues to have an interest in the property, living under the same roof. Further, unjust enrichment claim requires proof of damages. Actual injury is element of Unjust Enrichment. unjust enrichment, *Siradas v. Chase Lincoln First Bank, N.A.*, 1999 WL 787658 at *3 (S.D.N.Y. Sept. 30, 1999). Nothing here show how and who suffered actual injury.

Unjust enrichment claims must be dismissed as it does not contain a basis for recovery beyond what is alleged in the breach of New York fraudulent conveyance laws to wit: Sections, 273, 274, 275, 276, & 276a. *Maimonides Med. Ctr. v. First United Am. Life Ins.,* 35 Misc.3d 570, 941 N.Y.S.2d 447 (Kings Co. 2012) (Demarest, J.) (alternative pleading of breach of contract and unjust enrichment claims impermissible where plaintiff pleaded an alternative basis for recovery for unjust enrichment). Where there are statutory means, unjust enrichment cannot be brought in or for alternative pleadings. *Beth Isr. Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.* , 448 F.3d 573, 587 (2d Cir. 2006) (Plaintiff could "not recover under a theory of unjust enrichment, in as much as the valid and enforceable written [contracts] governed the particular subject matter of this case."): see also *Spread Enterprises v. First Data Merchant Serv. Corp.*, 11-cv-4743 (EDNY, Aug. 22, 2012) citing Clark–Fitzpatrick, 70 N.Y.2d 382, 389, 521 N.Y.S.2d 653, 516 N.E.2d 190 (1987) ("It is impermissible . . . to seek damages in an action sounding in quasi contract where the suing party has fully performed on a valid written agreement, the existence of which is undisputed, and the scope of which clearly covers the dispute between the parties."); *McGee,* 2011 WL 5409393, at *9 ("An unjust enrichment claim is duplicative of a breach of contract claim where the cause of action stems from the

contractual relationship") (internal citations omitted).  Kramer has not stated

any circumstances warranting an inference:

> "(1) that the defendant was enriched; (2) that the
> enrichment was at the plaintiff's expense; and (3) that the
> circumstances are such that in equity and good conscience
> the defendant should return the money or property to the
> plaintiff."

*Golden Pac. Bancorp v. FDIC*, 273 F.3d 509, 519 (2d Cir. 2001).

**A Prototype Sampling**

In, *Debra Kramer, as Trustee of the estate of Louise Chin aka Louise*

*Reddington*v. *Lawrence Chin* [minority defendant], Adv. Pro.No. 1–12–

01231–jf ,Judge Jerome Feller (retd.), summarily dismissed Ms. Kramer

contentions including that of "unjust enrichment."

> Rather, the issue is whether a trier of fact could find for the Trustee
> on her claim for unjustenrichment based on the evidence submitted.
> As one court explains:

>> [T]o prove an unjust enrichment claim more is required
>> than simply showing that one party received a benefit
>> (*see,*Restatement [Second] of Restitution § 1, comment c),
>> that the enrichment must be such that in equity and good
>> conscience its retention would be unjust (*see,*
>> *ParamountFilm Distr. Corp. v. State of NewYork,* 30
>> N.Y.2d 415, 421, 334 N.Y.S.2d 388, 285 N.E.2d 695, *mod.*
>> *on other grounds* 31 N.Y.2d 678, 336 N.Y.S.2d 911, 288
>> N.E.2d 811, *cert. denied*414 U.S. 829, 94 S.Ct. 57, 38
>> L.Ed.2d 64), and to determine whether there has indeed
>> been unjust enrichment the inquiry must focus on the
>> "human setting involved" (*McGrath v. Hilding,* 41 N.Y.2d
>> 625, 629, 394 N.Y.S.2d 603, 363 N.E.2d 328), not merely
>> upon the transaction in isolation (*id.*).

>> *Mayer v. Bishop,* 158 A.D.2d 878, 880, 551 N.Y.S.2d
>> 673,675 (3d Dep't), *appeal denied,*76 N.Y.2d 704, 559
>> N.Y.S.2d 983, 559 N.E.2d 677 (1990); *see Songbird Jet*

*Ltd.,* 581 F.Supp. at 926 ("An indispensable ingredient" of a claim for unjust enrichment "is that as between the two parties involved there must be an injustice"). As noted, Louise avers that the Property was destined for Lawrence, had no value to her, and the Transfer was made at her parents' request. She may or may not be right, as a matter of law, about "ownership," but there is no dispute as to her belief or the context of the Transfer. The Trustee's evidence consists of documentation of the purchase and transfers of the Property and the 2007 tax assessment. This evidence says absolutely nothing about the "human setting involved" or other factors going to the equities of the Transfer. But these issues relate directly to the essential element of whether the Transfer was at the Debtor's expense. Based on this evidence, no reasonable trier of fact could find in favor of the Trustee on her claim for unjust enrichment. Accordingly, Defendant's motion is granted as to Claim Nine.

**In re Chin, 492 B.R. 117 (2013) (Judge Feller Decision)**

Further, the credit card companies and or their collections agents spread all over United States and absolutely not privy to the intra-family transactions are too remote from the complained of transaction. Also unjust enrichment is neither an alternative or surrogate basis for remedies that are statutorily provided. Here for instance, the presence of NY fraudulent conveyances laws. *Sperray v. Crompton Corp* __ N.E.2d__, 2007 WL 527726 (N.Y.) (Feb. 22, 2007) (also the claim does not lie under the circumstances of this casebecause the connection between the[parties] . . . is simply too attenuated to support such a claim).   Unjust enrichment claim could be dismissed as a matter of law at an early pleading stage. *Georgia Malone & Co. v. Ralph Rieder* 19 N.Y.3d 511, 973 N.E.2d 743, 950

N.Y.S.2d 333 (2012). New York State Court of Appeals creates a mandatory pleading rule requiring a connection between the plaintiff and the defendant. Id at 19 N.Y.3d at 519. Here Kramer is not bringing an action on behalf of the debtor, but on behalf the unqualified creditors [at least not recongized in the pleading]. This is the law of New York State about "unjust enrichment." The complaint does not allege anything about unsecured creditor and defendant relationship to each other or any other business confidentiality between them. Pursuant to *Sperry* and *Mandarin Trading Ltd. v. Wildenstein* 16 N.Y.3d 173, 944 N.E.2d 1104, 919 N.Y.S.2d 465 (2011) standards laid out for alleging or basing an unjust enrichment cause of action, Kramer's complaint must be dismissed. The bankruptcy court is bound by these state court decision expounding on its laws. *Fidelity Union Trust Co. v. Field*, 311 U.S. 169 (1940) (federal court in a state bound to follow state court decision on state laws).

35.   **Addressing Specific Issues raised by Kramer Motion Standard for Granting Summary Judgment.**

Kramer, the movant, starts with a proper note on that summary jdugenent is proper "when there are no genuine issues with regarding to material facts in dispute." Here everything is disputed, Defendant disputed that he ever received $150,000 from the  mortgaging of the property.

Similarly, Defendant disputed that he ever received $106,671.00 as alleged.

Further, whatever money that he received from the sale of the old house,

$38,000 he used the same as follows:

> From 38000 we bought home improvement, furniture for my
> parents, family. I did not use anything that money. My sister took
> money for her family she lives with us. I took only 4000 to buy a
> car so that I could work. It is all to help my mother and father.

See Affidavit of Defendant Line 13 (f). He similarly states about the

alleged down payment for the new house:

> The truth is we got a new house and we got a check of $38000.00
> from sealing the house. We dont knew whatever the broker did was
> not fair or not but none of that was our concern. The broker told us
> that we will get the house. Our main concern was that we needed a
> new house where we all can live together. Ed. Ahmed refinanced
> the old home to put the down payment for the new house. Anjon
> Sarkar broker sold the old house. we got 38000 from the old home
> sale. We don't know for new house who paid what. Ed Ahmed
> broker did the lawyer. He did everything. We don't know what
> happened. We were told to sign the papers. We sign.

Affidavit of Defendant Line 13 (g).

Also an important fact missing here is that the debtor was paid more

than $100,000 from the refinancing of the house. That money was kept in

her bank account from which she retired her credit card debts.    That fact

has been conveniently suppressed by this trustee counsel, known for

advancing only arguments and facts that assist him and not others. See

Affidavit of the Defendant, Paragraph # 13 (a).

Mr. Rosen cherry picks the statement and misses the whole picture. Rosen states that the discovery was not provided, for instance about $100,000. However the discovery could have been provided if only if the paperwork was available. Whenever the bank was requested to give the old account papers of the debtor, however the bank declined as they stated they did not have that old records. However we have now found a bank check book showing payments made to various creditors of debtor.

Summary Judgment Rule--the "principal purpose of the . . . rule is to isolate and dispose of factually unsupported claims or defenses. Celotex Corp Catrett 477 U.S 317, 323-24 (1986). In resolving motions for summary judgment district judges pierce the pleadings and .. assess the proof in order to see whether there is genuine need for trial. Matsushita Elec. Indus. Co. v. Zenith Radio Corp 475 U.S 574 587 1986 The question is whether there are any genuine factual issues that properly can be resolved only by finder of fact because they may reasonably be resolved in favor of either party. *Anderson v. Liberty Lobby Inc.,* 477 U.S 242, 250 (1986).

Under Rule 56, a "party claiming relief" as well as party against whom relief is sought may move "with or without supporting affidavits for summary judgment on all or part of the claim." Fed. R. Civ. P. 56(a),(b). "A supporting or opposing affidavit must be made on personal knowledge set

122

out facts that would be admissible in evidence and show that the affiant is competent to testify on the matters stated... The court may permit an affidavit to be supplemented or opposed by depositions, answers to interrogatories or additional affidavits." Fed. R. Civ. P. 56 (e)(1).

However genuine dispute are not apt for summary judgment. A dispute over a material fact is genuine if the "caliber" and "quantity" of evidence would allow rational finder of fact," to "return verdict for the nonmoving party." *Liberty v. Lobby* 477 U.S at 247-48.

Also, to avoid usurping the role of the fact-finder court deciding summary judgment issue must accept as true the opposing party's evidence and assume all justifiable inferences that can be drawn there from. *See id.* at 255. see also *Beck v. Prupis,* 529 U.S 494, 497 n.3 2000. The court may not weigh the evidence to determine the truth of the matter as fact finder would and it may not make credibility determinations See *Liberty Lobby* 477 U.s at 249, 255.

The affidavits of the debtor and her son the defendant clearly shows the reality of the situation. One the debtor was never a property owner, more than a bare legal title holder and the son never in fact received the alleged monies. See e.g *Lauren W. ex rel Jean v. Deflaminis,* 480 F.3d 259. 271-72, 3d Cir. (2007) court should believe un-contradicted testimony [of someone

opposing the motion] unless it is inherently implausible even if the testimony is that of an interested witness. Also, *Med. Care Am. Inc. Natl. Union Fire Ins. Co* 341 F.3d 415,  420-22 n.18 (5th. Cir 2003) (in resolving motion for judgment as matter of law un-contradicted and un-impeached testimony supporting the moving party could not be considered because the moving party was one of the testifying witness's  principal clients).

## Shortcomings with the motions.

1.    The movant's motion papers does not identify the claims, rather claim that entire complaint with all causes of actions be granted. Kramer's motion papers fails to state the grounds justifying summary judgment with particularity and has not been able to support the motion with legal argument showing the movant's entitlement to judgment as a matter of law. The undisputed facts statement is wrong and misleading and factual assertions are not properly substantiated.

### Point 1: The trustee fails to show that the debtor had existing creditors at the time of the transfer and that the transfer rendered her insolvent.

Kramer very start is flawed. Section 101 (32)(A) of the Bankruptcy Code does not apply here.  We are dealing with the state fraudulent causes of action. None of the causes of actions here in the complained are premised in section 548 of the bankruptcy code rather they are linked to New York State

Creditor and Debtor laws.   We are not dealing with federally defined insolvency but state. Section 544 of the Code has not preempted the insolvency test. "[I]t is the source of the right sued upon, and not on the ground on which the federal jurisdiction is founded, that determines the governing law. * * * Thus, the Erie doctrine applies, whatever the ground for federal jurisdiction, to any issue or claim which has its source in state law." *Maternally Yours v. Your Maternity Shop*, 234 F.3d 538, 540-41 n. 1 (2nd Cir. 1956). See also *Butner v. U.S.*, 440 U.S. 48 (1979) (state property laws applies); *Guarantee Trust Co. v. York* 326 U.S. 99 (1945) ( dealing with a State created right, "since a federal court adjudicating a state-created right . . . in effect, [is] only another court of the State, it cannot afford recovery if the right to recover is made unavailable by the State nor can it substantially affect the enforcement of the right as given by the State); *Bernhardt v. Polygraphic Co.*, 350 U.S. 198 (1956) (change of venue/tribunal cannot result in change of cause of action).   Insolvency provides a basis for rights and defenses hence it is not merely a procedural idea, which could be supplanted by a federal one.   Also there is no preemption of the test of insolvency to be applied to state law, for that there has to be field preemption of this concept which is ridiculous. There is a presumption against preemption--the "starting presumption that Congress

does not intend to preempt stat law." *New York State Conf. of Blue Cross and Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 654 (1995). As properly opined: "[B]ecause the State are independent sovereigns in our federal system, w have long presumed that Congress does not cavalierly pre-empt state law cause of action. In all pr-emption cases, and particularly in those in which Congress has legislated in a field which the State have traditionally occupied, we 'start with the assumption that the historic police powers of the State were not to be superseded by the Federal Act unless that was the clear and manifest purpose of Congress." *Medtronic, Inc. V. Lohr*, 518 U.S. 470, 485 (1996), quoting *Hillsborough County v. Automated Medical Laboratories, Inc*. 471 U.s. 707, 7156 (1985) and *Rice v. Santa Fe Elevator Corp.*, 331 U.S. 218, 230 (1947).

Thus it is still the New York State insolvency test that would apply to all the causes of action as alleged in the complaint.

### § 271. Insolvency States:

> A person is insolvent when the **present fair salable value** of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured.

Under section 2(1) of the UFCA [what applies to New York], "[a] person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured." "Present fair salable

126

value" means the value that can be obtained if the assets are sold with reasonable promptness in an existing (not theoretical) market. *United States v. Gleneagles Inv. Co.*, 565 F. Supp. 556, 578 (M.D. Pa. 1983), aff'd sub nom. *United States v. Tabor Court Realty Corp.*, 803 F.2d 1288 (3d Cir. 1986), cert. denied, 483 U.S. 1005 (1987). The trustee fails to show that the debtor had creditors at the point of the presence of creditors. Creditors through their representative, the trustee here fail to show that during the first complained of transaction that the debtor did not have any salable value. Rather, the pleadings shows , as the trustee asserts that the Debtor sold her property with a gain. Trustee says in her complaint that "on January 5, 2007, the Debtor, along with the Defendant and a third party, Shamsum N. Rimi, owned the Richmond Property and took out a mortgage (the "Mortgage") on the Richmond Hill Property in approximate amount of $150,000.00 (the "Mortgage Proceeds."). See Paragraph 12 of Complaint. And the "Debtor, along with the Defendant and Shamsum N. Rimi (collectively, the "Sellers"), conveyed their interest in the Richmond Hill Property, via deed dated April 5, 2007, to Jany Sikder." Complaint Paragraph # 16. Further, the trustee alleges in next paragraph that "Sellers [debtor, defendant and Rimi] realized net proceeds in the amount of $106,761.00 (the "Sale Proceeds."). It shows that during the first transaction as evidenced by the subsequent sale the "the

**present fair salable value** of debtor assets was more than the amount that will be required to pay her probable liability on her existing debts as they had any become absolute and matured.    Then where is the insolvency? Debtor had already received more than $100,000 from a prior finaning in 2004 and it was used to pay her entire debts exceeding 40,000.    She did not have debts during that time in January or April 2007 which she could not have paid or when her salable value of her assets was less than the amount necessary to retire debt. Trustee bears the burden of insolvency which he has to meet and which he cannot.    Also important it is to mention that her creditors that came afterward is not counted towards the insolvency test. *Lippe v. Bairnco Corp.*, 99 Fed. Appx. 274, 282 (2d Cir. 2004) (rejecting argument that under New York's version of the UFCA, "future claims" must be included when calculating solvency; "[T]he hypothetical existence of an unaccrued tort claim does not give rise to a debtor-creditor relationship. There is no existing debt."). Thus If the claim of constructive fraudulent conveyance is based on the insolvency of the debtor, it is a fraud only against existing creditors,which has not been identified and nor their debts been proven by the trustee who is representing their [unsecured creditor ] position. In essence, the trustee fails to identify a "present" unsecured creditor whose claim existed at the time of the transfer and whose claim is

also in existence and allowable at the time of the bankruptcy filing. Thus, creditors who have been fully paid for all debts incurred prior to a transfer lack standing to avoid the transfer based on the debtor"s insolvency.

Trustee talks about the only evidence of her transfer of her share in the property, but does not identify which creditor was owed what at that time so that he could show that the debtor's assets were not fetching fair salable value. And how can she be lacking that capacity when the entire family was under her command as the mother of the family where each member owes a religious duty to help her.    All would have been sold to save her from a predicament at that time and now too. Defendant kept taking care of her all through out, it was only when his father suffered with cancer and could not work that family could not afford to pay her credit cards, which is a recent accumulation and not of the year 2007.

How can insolvency be decided with scant pleadings of Mr. Rosen, with improper legal applications and standards. It is a wonder why this motion was brought.  The trustee attaches schedule F to show a list of creditors. But none of the entry shows what creditors were present at the time of the aforesaid complained of transaction.  The dates are empty on the schedule. It conveys nothing material.  Then Exhibit 11 of the Trustee is equally unproductive. Exhibit 11 is a list of Proofs of Claim, however none

of them have been verrified by the creditor for finding the truth of assignment or validity. This trustee never does it, for it goes against intended goal--she needs any creditor to make her commision and indulge in lawsuits against parties--irrespective of her duty to examine these POCs under section 704 of the Code.

Now let us examine these POCs

a.    Chase Bank USA It has three POC, however none of them tells the date of debt as of the alleged fraudulent conveyances of 2007.

b.    Capital One Bank says a balance of $2,286.88 as of filing date, however speaks nothing about what it was in 2007.

c.    NCO Portfolio Management in its POC show a a balance of $201.46 as of December 19, 2006  and that too is after charged off after being sent to collection.

d.    Discover POC filed by the assigned entity DFS Service LLC without any paperwork has filed its POC of $13253.40 (balance as of bankruptcy filing), however it does not show the amount owed at the time of the complained transaction. Also tellingly it shows that the debtor was making payments even after the said transactions i.e. date of last payment is June 16, 2009.  Rosen had demanded Discover credit cards statement. Discover cannot be creditor of any transaction under UFCA, NY state laws

to be triggering creditor. Its balance in January was ZERO (O). See discover statement. There was a balance transfer that took place from third party on February 16, 2007. The balance transfer is of $5000. So in April of 2007, with the sale of the house, [since Rosen is using this creditor as a triggering creditor, deliberately picking it as it has biggest POC], trustee has to prove that she did not have that much assets. She did, which will be proved at the trial.

### Trustee fails to make a case of actual intent and or constructive fraudulent conveyance.

Trustee for reasons unclear feels that familial relationship eviscerates defenses or it overrides religious duties or practices is utterly senseless. Trustee intercalates the insiders of section 101(31) (A) however that relates for the purposes of business insiders. This definition of insider in the bankruptcy code does not wither away any defense available under the New York state insolvency laws of regarding consumer transactions.

### POINT II: The Transfer to the defendant cannot and could not be fraudulent.

Once again the defendant and or the debtor are not from a business venture, they are mother and son, with mother completely dependent on her son for everything shelter to food to clothing. She was a plain bare legal title

holder on the property of the defendant as a matter of respect and religious practice of the defendant. Trustee takes to a liturgy of case laws dealing with commercial transactions and fraudulent conveyances impugnable under section 548. Trustee very improperly is suggesting that since the debtor transferred away her interest in the Premises to her BROTHER LAWRENCE but continued to live in the Premises whenever she wanted to and still lives there today." See Movant's Motion Page 11 of First Paragraph. I do not know how to address this. Debtor does not have any brother whose name is Lawrence. Debtor did not transfer any interest in real property. Here the trustee cites a plethora of cases and no proper information to substantiate his claim, but do say that, "[t]his is a fact-intensive process." Movant motion page 12. Then how does that become a basis for a summary judgment. *CELS Enters., Inc. v. Rock & Roll Religion, Inc.*, 2012 WL 3157150 (9th Cir. Aug. 6, 2012) ("Summary judgment is generally disfavored in . . . litigation, because the nature of ... case analysis is fact intensive")

Finally, the trustee finds the badges of fraud, for she makes allegations that: In essence, by failing to receive her distributive share of the sale proceeds, the Debtor gave away her interest in the Premise, a sizeable asset, to the Defendant for absolutely no consideration at all. However,

132

debtor was paid for all earnings that came to the family from the sale proceeds. Everything belonged to the mother through the family as one unit, with the defendant taking care of her for every needs. Trustee makes a wrong assumptions that she was not paid. Witnesses would tell how comfortably has the defendant kept his mother and take care of her needs even paying her creditors. The property was refinanced in 2004 and $100,000 went to her bank account. She had never paid for the mortgage, no downpayment for the purchase. What did she leave if she did not have any interest from a western perspective, but from a Islamic thought, the mother had and still owns everything as a mother of the family and not as an individual.

Mother was paid in cash for anything that was written by check to Miah, the defendant or to her was sister. Miah never received the entire monies as trustee is trying to impute.

Trustee makes bald statement that "she was indebted to many creditors and remained indebted to the same creditors at a time when she indebted at the time of filing of her bankruptcy cases." But trustee does not recognize even a single one in the pleadings or now this motion, other than attaching one creditor, who might not even qualify to be triggering creditor for New York Creditors Debtor law.

What badges of fraud is this if the debtor status was never more than a bare legal title holder. On a *quantum meriut* basis, she had no contribution to purchase of the house or any mortgage payment. Debtor continues to stay in the house to not to hide her assets or ownership, but there is no where she could go and it is son's religious duty to take care of his mother. None of the badges of fraud apply here, where family wanted to move to a bigger house with more 9 family members. Even if there are badges of fraud, which there is none, it would still be an issue for the jury fact finder to go into with evidence etc. it cannot be given on a summary judgment. *Shelley v. Doe*, 671 N.Y.S.2d 803, 806 (App. Div. 3d Dept 1998) (finding that enough indicia of fraud exist to warrant hearing on factual issues when the record shows "hurried, nonbusiness transfer between brothers, which must be scrutinized carefully, at a time when [the transferor brother] was under an indictment which would clearly expose him to criminal liability."). This is not a case that could be decided on imputed badges of fraud, based on subjective impression.

**Point III:    The trustee fails to make a constructive fraudulent Conveyance.**

Trustee feels that the  burden is on the grantee to demonstrate fair consider for the transfer citing *U.S. v. McCombs*, 30 F.3d at 324.  Contrary to the trustee contention, *McCombs* actually stated:

134

> As an initial matter, we disagree with the magistrate judge's decision to deviate from the general rule that the party asserting the claim of fraudulent conveyance bears the burden of establishing the element of unfair consideration. *See American Inv. Bank v. Marine Midland Bank,* 191 A.D.2d 690, 691–92, 595 N.Y.S.2d 537, 538 (2d Dep't 1993); *Marine Midland Bank v. Murkoff,* 120 A.D.2d 122, 126, 508 N.Y.S.2d 17, 20 (2d Dep't 1986), *appeal dismissed,* 69 N.Y.2d 875, 514 N.Y.S.2d 1029, 507 N.E.2d 322 (1987).

*U.S. v. McCombs,* 30 F.3d at 324 (Second Circuit 1994) (whether the consideration given constituted "fair" consideration *relative to the fair market value of the Property,* as opposed to disputes over the specific nature or value of the consideration itself, would be to leave the burden for establishing unfair consideration under section 273 with the party asserting the fraudulent conveyance claim). Here in the given case, exception to this burden would only be if the grantee was in total control of everything. However in reality the debtor controls the house and she is the religious symbol of the house. Defendant does whatever his mother says. There is no control issue here in this family of debtor where all owe duty to each other and are under religious obligation to support transcending petty issues of ownership. Further, the issue of who disbursed what money was actually done by the brokers, one fugitive and another one just entered guilty plea

with Hon Judge Irizarry of the District Court. As the defendant stated in his affidavit

> Ed. Ahmed refinanced the old home to put the down payment for the new house. Anjon Sarkar broker sold the old house. we got 38000 from the old home sale. We don't know for new house who paid what. Ed Ahmed broker did the lawyer. He did everything. We don't know what happened. We were told to sign the papers. We sign.

Defendant Miah's affidavit # 13 (g).

The trustee blames the defendant for not producing any legal evidence for support of one "unit" under their culture." Further, trustee rails, "[h]e fails to do so for good reason--none exists." There cannot be any evidence of religious belief of the family. What legal evidence there is show that *shabath* is more spiritual than other working days..None. What legal evidence there was to prove that Amish children would have better education with their families instead of school--None. See *Wisconsin v. Yoder* 406 U.S. 205 (1972). What avail would the legal evidence be, if the court cannot define what religion is? Neither the Trustee nor the court can ask for the validity of the religion, the only enquiry is if the family sincerely subscribe to those Islamic values that parents and children are one unit and that irrespective of petty titles of ownership, the entire family owns. "It is not for [secular courts] to say that the line [the claimant] drew was an unreasonable one." *Thomas v. Review Bd.*450 U.S. 707 (*1981*). As one

cannot transfer ones own asset to one self, same is the case with a religious family.

Trustee talks about India's insolvency where I am an advocate. However, Miah the defendant is not from India, he is from Bangladesh which is a separate country. Bangladesh is not a secular country, in 1980 it adopted Islam as its State religion.

The trustee claiming that the "only fraud in this case is allegedly putting the Debtor in title," how does that qualify as a fraud is unclear. Defendant did qualify on his own for the mortgage, however the mortgage broker asked that her name be put. As far as the name on the deed is concerned the family wanted to put her as a matter of respect borne of religious obligation. Trustee perhaps is arguing that the defendant must show his mother in bad light and show that his mother was inequitable and fraudulent before the defendant could avail "equitable line or constructive trust." However, the defendant would not commit to such ill respect for his mother and thus commit sacrilege. Defendant does not have to show any bad conduct on his mother part to show that she was just a bare legal title holder. There are all indices of bare legal title holdership. She did not make downpayment of the purchase price of the house, did not service the mortgage, did  not take mortgage interest deductions, never held herself as

137

owner.  There is no evidence or reasoning or any logic in what the trustee is saying when he mutters: The Debtor's creditor was necessary in order for the parties to obtain financing." See Movant motion page 20.   Further, what and how the presence of debtor's name on the property impacted the credit application or extension is a matter for trial and not summary judgment. The trustee cannot say or speculate about what the creditors really saw.  In and around 2007, the credit lending was at peak, anyone would have gotten loans, credit card etc., especially tied to no-docs loan.

The trustee somehow makes this as a case of defendant wanting to be in a position of claiming constructive trust on the properties. However, it is different from what has happened here.  It is not what the defendant got, it is if the debtor got what she was entitled. She got way more than what she could have gotten on mathematics as she is a mother of a very dutiful son, who owes his life to her.  Defendant is not saying that future support is a consideration, a fair equivalent of property transferred, it is what the trustee is imputing.

Trustee quotes *In re Young*, 152 B.R. 939, 936, 948 (D. Minn. 1993) for the proposition that the "debtor cannot receive reasonably equivalent value for payments that are made out of a sense of moral obligation rather than legal obligation."  However this has been overruled and the court

upheld the application of RFRA and found it exempts people from secular laws like bankruptcy applications. In re Young, 141 F.3d 854, 857 (8th Cir. 1998).

The trustee cannot say that any transfer to the defendant was an immediate benefit to him only and not to the debtor.  Mother has always been the prime beneficiary of the defendants hard work and his religious obligation.  Defendant has been financially supporting the mother for several years since the age of 18.   What  and his support is valid and necessary is for the jury to decide according to the law and not a subject of summary judgment.  The debtor did not have any debts during the transactions that the trustee is disputing. Debtor is grieved that the "outcome of the transfer was that the debtor was unemployed and owned no real proeprty but remained encumbered with substantial debt."  However the mother debtor never really worked, at best her income was 75 dollars a week and the movant's counsel here charges more than 500 dollars an hour from such immigrant families. This is the irony. What was the substantial debt at the time of transactions. At best it did not exceed five to six thousand as per the filing of the Proofs of Claims.

Trustee talks about the presence of a debt, however that particular creditor must be a creditor at the time of the filing of bankruptcy. The

creditor whose debt was transferred cannot be a creditor to trigger section 544 as that debt is not present for bankruptcy.

The motion ends with a demand for inquest. I have yet to see summary motion of such summary arguments with gaunt facts and flakey case laws with relevance to anything. As their complaint, the motion has disparate strands running wildly across the pages, there is no coherent argument or thesis which could or shall support a motion for summary judgment. There are not more than three or four sentences of facts, rest is cut and paste of case laws once again delineating no thinking. This is waste of judicial resources to throw in papers like this, however it looks like that trustee just filed this motion as he has taken it for granted. I doubt if the trustee could or would have made this motion if the comment regarding summary judgment motion was not made.

Wherefore, the entire case must be dismissed for several reasons as enumerated above. The undersigned is willing to brief more deeply each and every issues raised herein, should the court so desire.

Dated: New York New York
        March 24, 2014

Karamvir Dahiya for Defendant

140