UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
In re:                                                          Chapter 7

SHAHARA KHAN,                                                   Case No. 10-46901-ess

                                    Debtor.
-------------------------------------------------------------------x
DEBRA KRAMER, *as Trustee of the*                              Adv. Pro. No. 11-01520-ess
*Estate of Shahara Khan*,

                                    Plaintiff,

        -against-

TOZAMMEL H. MAHIA,

                                    Defendant.
-------------------------------------------------------------------x

### MEMORANDUM DECISION AND PROPOSED FINDINGS OF FACT AND CONCLUSIONS OF LAW ON CHAPTER 7 TRUSTEE'S MOTION FOR SUMMARY JUDGMENT

*Appearances:*

Avrum J. Rosen, Esq.                          Karamvir Dahiya, Esq.
The Law Offices of Avrum J. Rosen, PLLC       Dahiya Law Offices, LLC
38 New Street                                 75 Maiden Lane, Suite 506
Huntington, NY 11743                          New York, NY 10038
*Attorneys for Debra Kramer,*                 *Attorneys for Tozammel H. Mahia*
*as Trustee of the Estate of Shahara Khan*

HONORABLE ELIZABETH S. STONG
UNITED STATES BANKRUPTCY JUDGE

## Introduction

Before the Court is the motion of Debra Kramer, as Trustee of the estate of Shahara

Khan, the Plaintiff in this adversary proceeding, for summary judgment against the Defendant,

Tozammel H. Mahia.  The Trustee brings this adversary proceeding pursuant to New York's

Debtor and Creditor Law ("NY DCL") Sections 273, 274, 275, 276, 276-a, and 278, and

Bankruptcy Code Sections 542, 544, 550, and 551, to avoid and recover certain alleged

fraudulent transfers made by the Debtor to the Defendant.  She also seeks to recover the alleged

fraudulent transfers based on common law principles of unjust enrichment.  By this motion, the

Trustee seeks summary judgment on the First through Sixteenth Causes of Action asserted in her

amended complaint.

## Procedural History

This adversary proceeding has a lengthy procedural history in this Court, the District

Court, and the Second Circuit Court of Appeals.  In order to provide some context, the Court

summarizes certain of these proceedings, which include termination and reinstatement of Dahiya

as counsel for the Defendant, motions to withdraw the reference, a motion for sanctions, a

request for recusal, two appeals, and now, this motion for summary judgment.

The Debtor filed a Chapter 7 bankruptcy petition on July 22, 2010.  On December 3,

2011, the Trustee commenced this adversary proceeding by filing a complaint against Mr.

Mahia, the Debtor's son.  In the Complaint, the Trustee seeks to avoid and recover an alleged

fraudulent conveyance of funds by the Debtor to the Defendant arising from the sale of certain

real property located at 87-27 110th Street, Richmond Hill, NY 11418 (the "Richmond Hill

Property") that was owned jointly by the Debtor, the Defendant, and Shamsum N. Rimi, a

relative of the Debtor and the Defendant. The Complaint asserts eight Causes of Action, and seeks to recover the Debtor's share of the sale proceeds, or $35,587, under various theories of statutory and common law.

At first, the Defendant was not represented by counsel and did not respond to the Complaint. At the initial pre-trial conference on January 24, 2012, attorney Karamvir Dahiya, Esq. and the Dahiya Law Offices, LLC (together, "Dahiya") appeared for the Defendant. The Court directed Dahiya to file a notice of appearance and extended the Defendant's time to respond to the Complaint to January 31, 2012. On February 7, 2012, the Defendant answered the Complaint, demanded a jury trial, and asserted counterclaims against the Trustee for "constitutional torts" and abuse of process.

The Trustee's time to respond to the Counterclaims was extended by stipulation to May 4, 2012. On March 24, 2012, the Trustee filed a motion for sanctions against Dahiya (the "Sanctions Motion"). One month after the Trustee made the Sanctions Motion, the Defendant terminated Dahiya and hired new counsel, Christine T. Castiglia-Rubinstein, Esq. On April 23, 2012, Dahiya filed an affirmation in opposition to the Sanctions Motion. That same day, Ms. Castiglia-Rubinstein, on behalf of the Defendant, filed a Letter Terminating Prior Counsel, and the next day, on April 24, 2012, Ms. Castiglia-Rubinstein withdrew the Counterclaims on behalf of the Defendant. On December 3, 2012, the Defendant discharged Ms. Castiglia-Rubinstein as his counsel, and two days after that, Dahiya filed a notice of appearance as counsel for the Defendant.

The Court held a series of conferences and hearings on the Sanctions Motion over a period of several months, and on September 10, 2012, Dahiya filed a second affirmation in

2

opposition to the Sanctions Motion.  On September 11, 2012, the Trustee filed a reply to

Dahiya's opposition to the Sanctions Motion.

On November 19, 2012, Dahiya filed a motion to withdraw the reference to the

bankruptcy court of the Sanctions Motion on grounds that the bankruptcy court lacked the

constitutional authority to adjudicate the issued raised therein.  On December 5, 2012, the

Defendant filed a motion to withdraw the reference to the bankruptcy court of the Adversary

Proceeding, again on grounds that the bankruptcy court lacked authority to adjudicate those

claims.  On January 4, 2013, the Trustee filed a response to the Motion to Withdraw the

Reference of the Sanctions Motion.  On March 11, 2013, Dahiya filed a letter seeking this

Court's recusal in the Adversary Proceeding and in all cases in which Dahiya appears as counsel.

Later that same day, the Court granted the Sanctions Motion and entered a memorandum

decision and order (the "Sanctions Order").  On March 13, 2013, the Court entered an order

denying the Letter Request for Recusal, without prejudice, to the extent the Letter could be

construed as a motion.  On March 20, 2013, Dahiya filed a notice of appeal of the Sanctions

Order to the District Court.

On March 25, 2013, the Trustee filed an amended complaint.  In the Amended

Complaint, the Trustee seeks to avoid and recover the Debtor's share of the proceeds of the sale

(the "Sale Proceeds Transfer") of the Richmond Hill Property in the reduced amount of

$26,690.75.  The Trustee also seeks to recover another allegedly fraudulent transfer made on

January 5, 2007, by the Debtor to the Defendant of funds secured by a mortgage (the "Mortgage

Proceeds Transfer") on the Richmond Hill Property.  The Trustee alleges that the Debtor's share

of the Mortgage Proceeds was $37,500.  The Amended Complaint asserts fifteen Causes of

Action pursuant to various sections of NY DCL and the Bankruptcy Code, and a Sixteenth Cause of Action based on a theory of unjust enrichment. All in, the Trustee seeks to recover from the Defendant the sum of $64,190.25.

On May 21, 2013, the Honorable Dora L. Irizarry of the U.S. District Court for the Eastern District of New York entered a Memorandum Decision and Order denying the Defendant's Motion to Withdraw the Reference of the Adversary Proceeding. That same day, the Defendant appealed Judge Irizarry's Order to the Second Circuit Court of Appeals. The Defendant did not seek a stay pending appeal, and the Second Circuit dismissed the appeal for lack of jurisdiction on May 27, 2014.

On May 31, 2013, the Defendant filed a motion to reopen discovery with respect to the Amended Complaint. On June 26, 2013, the Trustee filed an objection to the Motion to Reopen Discovery. On July 1, 2013, the Defendant filed a reply to the Trustee's Objection to the Motion to Reopen Discovery, and on July 9, 2013, the Court entered an order denying the Defendant's Motion to Reopen Discovery without prejudice to renewal to seek discovery with respect to matters that are disputed and alleged in the Amended Complaint but not in the original Complaint.

On July 8, 2013, the Court entered a pre-trial order directing the Trustee and the Defendant to prepare, execute, and file separate pre-hearing statements. On November 12, 2013, the Trustee filed her Pre-Trial Statement, and on December 5, 2014, the Defendant filed his Pre-Trial Statement. The Court held a pre-trial conference on December 10, 2013 and set a January 31, 2014 deadline for the filing of dispositive motions.

On January 31, 2014, the Trustee filed this Motion for Summary Judgment. The

Defendant filed several documents in opposition to the Motion over a period of several days from March 24 to March 28, 2014. These include affidavits of the Defendant and the Debtor, an unsigned affirmation of Dahiya on behalf of the Defendant, a response to the Trustee's Rule 56 Statement and exhibit in support of the opposition, and finally, further exhibits in support of the opposition.

On April 1, 2014, the Court held a hearing on the Motion for Summary Judgment and set an April 8, 2014 deadline for the Trustee to reply to the Opposition. On April 8, 2014, the Trustee filed a reply to the Opposition. On April 25, 2014, the Court held a continued hearing on the Motion for Summary Judgment, heard argument from the Trustee and the Defendant, by counsel, and reserved decision.

## Background

### *This Adversary Proceeding*

By this adversary proceeding, the Trustee seeks to recover two transfers made by the Debtor to her son in 2007, some three years before filing her Chapter 7 bankruptcy case. The first transfer at issue occurred in connection with a home equity loan in the amount of $150,000 (the "Mortgage Proceeds") secured by a mortgage on the Richmond Hill Property in favor of Countrywide Bank, N.A., and dated January 5, 2007. The Trustee alleges that the Debtor conveyed her share of the Mortgage Proceeds, or $37,500, for no consideration to the Defendant. The second transfer at issue occurred in connection with the sale of the Richmond Hill Property on April 5, 2007, which yielded $106,761 (the "Sale Proceeds"). The Trustee alleges that the Debtor again transferred her share of those proceeds, or $26,690.25, for no consideration to the Defendant.

The record shows that the Debtor, the Defendant, and Shamsum N. Rimi held title to the Richmond Hill Property as tenants in common by a deed recorded in the Office of the City Register of the City of New York, Queens County, on November 1, 2002. Since September 23, 2002, the Debtor held a twenty-five percent interest, the Defendant held a fifty percent interest, and Shamsum N. Rimi held a twenty-five percent interest in the Richmond Hill Property.

The record also establishes that the Debtor and the Defendant resided at the Richmond Hill Property as their principal residence. The Defendant used $100,000 of the Mortgage Proceeds towards the purchase of a new home located at 101-14 102nd Street, Ozone Park, NY 11416 (the "Ozone Park Property"). He deposited the balance of the Mortgage Proceeds, or $50,000, in a Citibank checking account, held solely in his name, to use for renovations to the Richmond Hill and Ozone Park Properties. The home equity loan was secured by a mortgage on the Richmond Hill Property, and the Debtor signed the loan documents. But the Debtor did not receive her share of the Mortgage Proceeds when they were disbursed.

The Trustee alleges that the Debtor made a second conveyance of her property to the Defendant in connection with the sale of the Richmond Hill Property to Jany Sikder on April 5, 2007. The closing of that property yielded net proceeds in the amount of $106,761. After making payments to certain parties in connection with the closing, the Defendant received the balance, or $38,000, of the Sale Proceeds. The Defendant used those funds to pay for home improvements to the Ozone Park Property, to purchase furniture, and to purchase a vehicle for his personal use. Again, the Debtor did not receive her share of the Sale Proceeds at the closing or thereafter.

_The Motion for Summary Judgment_

6

By this motion, the Trustee seeks summary judgment against the Defendant on all of the causes of action in the Amended Complaint.  She seeks to recover the Mortgage Proceeds and the Sale Proceeds as fraudulent conveyances made by the Debtor to the Defendant under NY DCL Sections 273, 274, 275, 276, 276-a, and 278, and Bankruptcy Code Sections 542, 544, 550, and 551.  She also seeks to recover the Mortgage Proceeds and the Sale Proceeds under common law principles of unjust enrichment.  And she seeks an award of attorneys' fees under NY DCL Section 276-a to compensate for her costs and expenses in connection with bringing the Seventh and Fourteenth Causes of Action under NY DCL Section 276, which allege actual fraud in connection with the Mortgage Proceeds Transfer and the Sale Proceeds Transfer.

In response, the Defendant filed an Affidavit in Opposition.  The Defendant responds, in substance, among other things, that the Debtor never had an interest in the Richmond Hill Property, and that their extended family lives as one collective unit that supports each other.  He states that in 2007, when the growing family needed a larger house, they entered into two transactions with real estate brokers to sell the Richmond Hill Property and purchase the Ozone Park Property.  And he asserts that the "trustee [is] punish[ing] me for my religion" by seeking an accounting between family members, which is impermissible in the law and tradition of Islam.  Adv. Pro. 11-1520, Dkt. 144, Affidavit of Tozammel H. Mahia ("Mahia Aff.") ¶ 16.

The Defendant also filed, by counsel, an Affirmation in Opposition, along with voluminous exhibits, and asserts defenses not previously raised in his Answer.  These include, among other things, that the Mortgage Proceeds Transfer was a transfer of exempt property of the Debtor, that the Trustee's claims are time-barred, that the Trustee does not name a necessary party, and that this Court lacks jurisdiction to hear this matter.  In addition, the Defendant objects

to, among other things, the Trustee's conduct of the Debtor's Bankruptcy Code Section 341 meeting, and asserts that in commencing this adversary proceeding, the Trustee interferes with the Debtor's and the Defendant's religious rights in violation of the Religious Freedom Restoration Act of 1993.

In reply, the Trustee states, among other things, that the Defendant's opposition does not respond to the Motion for Summary Judgment by setting forth rebuttal evidence, that the Defendant's Affidavit contradicts his previous testimony and sworn statements, and that the Defendant raises defenses and arguments outside the scope of his Answer and not responsive to the Motion for Summary Judgment.

### Jurisdiction and Authorization To Enter a Final Judgment

"Congress has divided bankruptcy proceedings into three categories: those that 'aris[e] under title 11'; those that 'aris[e] in' a Title 11 case; and those that are 'related to a case under title 11.'" *Stern v. Marshall*, 131 S. Ct. 2594, 2603 (2011) (citing 28 U.S.C. § 157(a)) (alterations in original).

The district courts have original, but not exclusive, jurisdiction in all cases "arising under" the Bankruptcy Code or "arising in or related to" cases under the Bankruptcy Code.  28 U.S.C. § 1334(b).  "[A] proceeding is related to a case under the Bankruptcy Code 'if the outcome of the litigation might have any conceivable effect on the bankruptcy estate, or has any significant connection with the bankrupt estate.'"  *Silverman v. A-Z Rx LLC (In re Allou Distribs., Inc.)*, 2012 WL 6012149, at *6 (Bankr. E.D.N.Y. Dec. 3, 2012) (quoting *Lead I JV, LP v. North Fork Bank*, 401 B.R. 571, 581 (E.D.N.Y. 2009)).

This Court may hear each of the Trustee's claims as a "related to" matter.  The Trustee

8

seeks to avoid and recover the Mortgage Proceeds Transfer and the Sale Proceeds Transfer and

an award of attorneys' fees under New York Debtor and Creditor Law, the Bankruptcy Code,

and common law theories of unjust enrichment, among other relief. The outcome of the

Trustee's claims will have an effect on this bankruptcy estate because if she succeeds, then she

will recover assets for the benefit of the bankruptcy estate and the creditors. For these reasons,

this Court has jurisdiction to consider these claims under 28 U.S.C. § 1334(b) and the Standing

Order of Reference dated August 28, 1986, as amended by Order dated December 5, 2012, of the

United States District Court for the Eastern District of New York.

       While it is clear that the bankruptcy court has jurisdiction over these claims, that is not

the end of the inquiry. This Court is constrained by both statutory and constitutional limits to its

authority to enter a final judgment. Judiciary Code Section 157 "permits a bankruptcy court to

adjudicate a claim to final judgment in two circumstances – in core proceedings, see § 157(b),

and in non-core proceedings 'with the consent of all the parties,' § 157(c)(2)." *Executive*

*Benefits Ins. Agency v. Arkison*, 134 S. Ct. 2165, 2174 (2014). In addition, in order to enter a

final judgment in a core proceeding, a bankruptcy court must have constitutional authority to do

so pursuant to the Supreme Court's decisions in *Northern Pipeline Const. Co. v. Marathon*

*Pipeline Co.*, 458 U.S. 50 (1982), *Stern*, and *Executive Benefits*. As the Supreme Court

observed, "Congress may not bypass Article III simply because a proceeding may have some

bearing on a bankruptcy case; the question is whether the action at issue stems from the

bankruptcy itself or would necessarily be resolved in the claims allowance process." *Stern*, 131

S. Ct. at 2618. For non-core proceedings and for core proceedings for which the bankruptcy

court does not have constitutional authority to enter a final judgment, the bankruptcy court may

"'hear [the] proceeding,' and then 'submit proposed findings of fact and conclusions of law to the district court.'" *Executive Benefits*, 134 S. Ct. at 2172 (quoting 28 U.S.C. § 157(c)(1)) (alterations in original).

Consistent with these determinations, the Standing Order of Reference in this District provides that if a bankruptcy judge determines that the bankruptcy court cannot enter a final order or judgment consistent with Article III of the United States Constitution, the bankruptcy court "shall hear the proceeding and submit proposed findings of fact and conclusions of law to the district court . . . ."  December 5, 2012 Standing Order, *In the Matter of the Referral of Matters to the Bankruptcy Judges* issued in the Eastern District of New York.  The Standing Order further provides:

> The district court may treat an order or judgment of the bankruptcy court as proposed findings of fact and conclusions of law in the event that the district court concludes that a bankruptcy judge could not enter that order or judgment consistent with Article III of the United States Constitution . . . .

The Trustee's claims to avoid and recover the Mortgage Proceeds Transfer and the Sale Proceeds Transfer arise under New York Debtor and Creditor Law, not the Bankruptcy Code, and could be asserted independently of the Debtor's bankruptcy case.  The same is true with respect to the Trustee's claims under the common law theory of unjust enrichment.  Accordingly, these are non-core matters, and for these matters, to the extent that they are finally adjudicated, the bankruptcy court may propose findings of fact and conclusions of law to the district court. *See* 28 U.S.C. § 157(c)(1).

But the Trustee's claims for turnover and an accounting of the Mortgage Proceeds Transfer and Sale Proceeds Transfer arise under Bankruptcy Code Section 542(a), and these are core matters.  28 U.S.C. § 157(b)(2)(B).  *See In re Manville Forest Prods. Corp.*, 896 F.2d 1384,

1390 (2d Cir. 1990).  And these turnover claims are core matters as to which this Court has constitutional authority to enter a final judgment, because the Trustee's claims for turnover stem "from the bankruptcy itself."  *Stern*, 131 S. Ct. at 2618.

Accordingly, this decision shall serve as proposed findings of fact and conclusions of law pursuant to 28 U.S.C. § 157(c) as to the Trustee's Motion for Summary Judgment with respect to those claims that arise under New York Debtor and Creditor Law and unjust enrichment, and are finally determined.  And this decision and the accompanying order shall serve as this Court's decision with respect to the Trustee's New York Debtor and Creditor Law claims that are not finally determined, and with respect to the Trustee's turnover claims under Bankruptcy Code Section 542(a).

## Discussion

### *The Summary Judgment Standard*

Federal Rule of Civil Procedure 56(c), made applicable to this Adversary Proceeding by Bankruptcy Rule 7056, provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it "might affect the outcome of the suit under the governing law."  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  A dispute is "'genuine' . . . if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  *Anderson*, 477 U.S. at 248.

The moving party has the burden of demonstrating the absence of a genuine dispute as to any material fact, and all of the inferences to be drawn from the underlying facts must be viewed by the court in the light most favorable to the party opposing the motion.  *See Anderson*, 477

U.S. at 249, 255; *Hayut v. State Univ. of N.Y.*, 352 F.3d 733, 743 (2d Cir. 2003).  Accordingly, the moving party must first demonstrate that there is no genuine dispute as to a material fact as to each element of its claim.  If it does not, then summary judgment will be denied.  *See Smith v. Goord*, 2008 WL 902184, at *4 (N.D.N.Y. Mar. 31, 2008) (citing *Anderson*, 477 U.S. at 250 n.4.), *aff'd*, 375 F. App'x 73 (2d Cir. 2010).

If the moving party meets this initial burden, "the burden then shifts to the nonmoving party to come forward with evidence sufficient to create a genuine dispute as to a material fact for trial."  *Silverman v. United Talmudical Academy Torah Vyirah, Inc. (In re Allou Distribs., Inc.)*, 446 B.R. 32, 49 (Bankr. E.D.N.Y. 2011).  The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts."  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).  "Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine'" dispute as to a material fact for trial and summary judgment is appropriate.  *Matsushita*, 475 U.S. at 587 (citation omitted).  *See McClellan v. Smith*, 439 F.3d 137, 144 (2d Cir. 2006) (citing *Matsushita*).

Statements in the pleadings alone are not sufficient to meet this burden.  *UTA*, 446 B.R. at 49.  Rather, "[e]stablishing such facts requires going beyond the allegations of the pleadings, as the moment has arrived 'to put up or shut up.'"  *In re Eugenia VI Venture Holdings, Ltd. Litig.*, 649 F. Supp. 2d 105, 117 (S.D.N.Y. 2008) (quoting *Weinstock v. Columbia Univ.*, 224 F.3d 33, 41 (2d Cir. 2000)), *aff'd*, 370 F. App'x 197 (2d Cir. 2010), *cert. denied*, 540 U.S. 811 (2003).  "Unsupported allegations in the pleadings thus cannot create a material issue of fact."  *Eugenia*, 649 F. Supp. 2d at 117 (citing *Weinstock*, 224 F.3d at 41).

12

Claims that sound in fraud raise additional considerations. "While the issue of fraudulent intent ordinarily cannot be resolved on summary judgment, it is also well-recognized that the summary judgment rule would be rendered sterile if the mere incantation of intent would operate as a talisman to defeat an otherwise valid motion." *UTA*, 446 B.R. at 50 (citations and internal quotation marks omitted). *See Dister v. Cont'l Grp.*, 859 F.2d 1108, 1114 (2d Cir. 1988) (commenting that when intent is at issue, "summary judgment should be used sparingly").

And finally, the denial of summary judgment in the face of a genuine dispute as to a material fact does not amount to the court's endorsement of the defendant's position. *UTA*, 446 B.R. at 50 (citing *Huff v. UARCO, Inc.*, 122 F.3d 374, 385-86 (7th Cir. 1997)). Rather, denial of summary judgment means only that the case should be heard by the trier of fact, and cannot be resolved as a matter of law.

### *Recovery of a Fraudulent Transfer Under New York's Debtor and Creditor Law*

Bankruptcy Code Section 544(b)(1) authorizes the Trustee to "avoid any transfer of an interest of the debtor in property or any obligation incurred by the debtor that is voidable under applicable law by a creditor holding an unsecured claim[.]" The "applicable law" upon which the Trustee relies is set forth in NY DCL Sections 273, 274, 275, 276, 276-a, and 278.

### Fraudulent Transfer Under NY DCL Sections 273, 274, and 275 - Constructive Fraud

NY DCL Sections 273, 274, and 275 set forth three paths to recover a constructively fraudulent transfer. As the Second Circuit has noted:

> [A] conveyance by a debtor is deemed constructively fraudulent if it is made without 'fair consideration,' and . . . one of the following conditions is met: (i) the transferor is insolvent or will be rendered insolvent by the transfer in question, DCL § 273; (ii) the transferor is engaged in or is about to engage in a business transaction for which its remaining property constitutes unreasonably small capital, DCL § 274; or (iii) the transferor believes that it will incur debt beyond

its ability to pay, DCL § 275.

*Sharp Int'l Corp. v. State Street Bank & Trust Co. (In re Sharp Int'l Corp.)*, 403 F.3d 43, 53 (2d

Cir. 2005).

To establish a claim for constructive fraud, a plaintiff must establish that the conveyance

was not made for fair consideration.  Under New York law, fair consideration is given for

property:

> (a)    When in exchange for such property . . . as a fair equivalent therefor, and
>        in good faith, property is conveyed or an antecedent debt is satisfied, or

> (b)    When such property . . . is received in good faith to secure a present
>        advance or antecedent debt in amount not disproportionately small as
>        compared with the value of the property.

NY DCL § 272 (McKinney 2014).

It is well settled that for purposes of NY DCL Section 272, "fair consideration has two

components – the exchange of fair value and good faith – and both are required."  *SEC v.*

*Universal Express, Inc.*, 2008 WL 1944803, at *5 (S.D.N.Y. Apr. 30, 2008) (quoting *Lippe v.*

*Bairnco Corp.*, 249 F. Supp. 2d 357, 376-77 (S.D.N.Y. 2003)), *aff'd*, 99 Fed. App'x. 274 (2d

Cir. 2004); *Silverman v. Sound Around, Inc. (In re Allou Distribs., Inc.)*, 404 B.R. 710, 716

(Bankr. E.D.N.Y. 2009) (same).  *See Silverman v. Actrade Capital Inc. (In re Actrade Financial*

*Techs., LTD)*, 337 B.R. 791, 806 (Bankr. S.D.N.Y. 2005) (stating that under New York law,

good faith is an "integral part" of establishing fair consideration).

"[T]he recipient of the debtor's property provides fair consideration by either conveying

property or discharging an antecedent debt, provided that such exchange is a 'fair equivalent' of

the property received or discharged."  *Actrade*, 337 B.R. at 803 (quoting *Sharp*, 403 F.3d at 53

n.3).  As courts have noted, "fair consideration" under the NY DCL and "reasonably equivalent

value" under Bankruptcy Code Sections 548(a)(1)(B) and (C) "have the same fundamental meaning . . . and are interpreted similarly by the courts." *Balaber-Strauss v. Sixty-Five Brokers (In re Churchill Mortgage Inv. Corp.)*, 256 B.R. 664, 677 (Bankr. S.D.N.Y. 2000) (citing cases), *aff'd sub nom. Balaber-Strauss v. Lawrence*, 264 B.R. 303 (S.D.N.Y. 2001). *See Picard v. Madoff (In re Bernard L. Madoff Inv. Secs., LLC)*, 458 B.R. 87, 110 (Bankr. S.D.N.Y. 2011) (noting that fair consideration and reasonably equivalent value have essentially the same meaning).

Where "a transferee has given equivalent value in exchange for the debtor's property," the Second Circuit has concluded that "the statutory requirement of 'good faith' is satisfied if the transferee acted without either actual or constructive knowledge of any fraudulent scheme." *HBE Leasing Corp. v. Frank*, 48 F.3d 623, 636 (2d Cir. 1995). *See* NY DCL § 278(1) (McKinney 2014) (providing that "[w]here a conveyance . . . is fraudulent as to a creditor, such creditor" may set aside or disregard that conveyance against anyone "except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase").

New York Debtor and Creditor Law Section 271 provides that "[a] person is insolvent when the present fair salable value of his assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured." And "[t]o establish that a person is or will be thereby rendered insolvent, a plaintiff does not need to adduce formal evidence such as testimony from bankruptcy proceedings or balance sheets to demonstrate a defendant's financial distress." *Ostashko v. Ostashko*, 2002 WL 32068357, at *25 (E.D.N.Y. Dec. 12, 2002) (quotation omitted), *aff'd*, 79 F. App'x 492 (2d Cir. 2003).

In addition, "[u]nder [NY] DCL § 273, there is a long-recognized presumption of

15

insolvency where the debtor makes a conveyance without fair consideration." *Geron v. Schulman (In re Manshul Constr. Corp.)*, 2000 WL 1228866, at *53 (S.D.N.Y. Aug. 30, 2000). As the Second Circuit notes:

> [T]here is a rule of long standing in the New York courts that a voluntary conveyance made when the grantor is indebted is presumptively fraudulent. We think this means that, if one indebted makes such a transfer, it is presumed, in the absence of some proof to the contrary, that he was then insolvent.

*Feist v. Druckerman*, 70 F.2d 333, 334 (2d Cir. 1934). When this presumption arises, the burden shifts to the transferee to come forward with proof of the transferor's solvency. *See Ackerman v. Ventimiglia (In re Ventimiglia)*, 362 B.R. 71, 83 (Bankr. E.D.N.Y. 2007). When "the trustee meets his burden as to lack of fair consideration . . . it is presumed that the transfer made the debtor insolvent." *Geltzer v. Borriello (In re Borriello)*, 329 B.R. 367, 373 (Bankr. E.D.N.Y. 2005).

As several courts have found, transfers among family members raise special concerns, and receive different and heightened scrutiny. As one court observed, "courts view intrafamily transfers without any signs of tangible consideration as presumptively fraudulent." *United States v. Mazzeo*, 306 F. Supp. 2d 294, 311 (E.D.N.Y. 2004) (quoting *United States v. Alfano*, 34 F. Supp. 2d 827, 845 (E.D.N.Y. 1999)). And in such circumstances, the burden shifts to the defendant to come forward with evidence sufficient to demonstrate the adequacy of consideration given. As another court noted, "[i]n cases of intra-family transfers where facts concerning the nature of the consideration are within the exclusive control of the transferee . . . the defendant has the burden of proving the adequacy of consideration." *United States v. Hansel*, 999 F. Supp. 694, 699 (N.D.N.Y. 1998) (citing *United States v. McCombs*, 30 F.3d 310, 323 (2d Cir. 1994)).

Fraudulent Transfer Under NY DCL Section 276 - Actual Fraud

NY DCL Section 276 provides that "[e]very conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." "[I]t is well accepted that intent to hinder or delay creditors is sufficient, and intent to defraud need not be proven." *In re MarketXT Holdings Corp.*, 376 B.R. 390, 403 (Bankr. S.D.N.Y. 2007) (citing *Shapiro v. Wilgus*, 287 U.S. 348, 354 (1932)).

NY DCL Section 276 "focuses on the 'actual intent' of the transacting parties . . . [and] . . . where actual intent to defraud creditors is proven, the conveyance will be set aside regardless of the adequacy of consideration given." *McCombs*, 30 F.3d at 328. *See MFS/Sun Lift Trust-High Yield Series v. Van Dusen Airport Servs. Co.*, 910 F. Supp. 913, 934 (S.D.N.Y. 1995) (stating that "[t]he burden of proving actual intent is on the party seeking to set aside the conveyance" and that "[s]uch intent must be demonstrated by clear and convincing evidence"). And "[i]t is the intent of the transferor and not that of the transferee that is dispositive." *Secs. Inv. Prot. Corp. v. Stratton Oakmont, Inc.*, 234 B.R. 293, 318 (Bankr. S.D.N.Y. 1999) (citing *HBE Leasing Corp.*, 61 F.3d at 1059 n.5). *See Nisselson v. Ford Motor Co. (In re Monahan Ford Corp. of Flushing)*, 340 B.R. 1, 38 (Bankr. E.D.N.Y. 2006) (same). As the court in *Stratton Oakmont* noted, "[t]he intent of the transferee only becomes relevant as an affirmative defense if the defendant is not the initial transferee." *Stratton Oakmont*, 234 B.R. at 318 (citing *Golden Budha Corp. v. Canadian Land Co. of Am., N.V.*, 931 F.2d 196, 201 (2d Cir. 1991)).

Actual fraudulent intent is rarely shown by direct evidence. As a consequence, courts look to the circumstances surrounding the transaction. As the Second Circuit has explained:

> Due to the difficulty of proving actual intent to hinder, delay, or defraud creditors, the pleader is allowed to rely on 'badges of fraud' to support his case, i.e., circumstances so commonly associated with fraudulent transfers that their presence gives rise to an inference of intent.

*Sharp*, 403 F.3d at 56 (quoting *Wall St. Assocs. v. Brodsky*, 684 N.Y.S.2d 244, 247 (1st Dep't 1999)). *See In re MarketXT Holdings Corp.*, 376 B.R. at 405 (stating that the presence of multiple badges of fraud supports the inference of an intent to defraud creditors). These badges of fraud include:

(1)   the lack or inadequacy of consideration;

(2)   the family, friendship or close associate relationship between the parties;

(3)   the retention of possession, benefit or use of the property in question;

(4)   the financial condition of the party sought to be charged both before and after the transaction in question;

(5)   the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and

(6)   the general chronology of the events and transactions under inquiry.

*Salomon v. Kaiser (In re Kaiser)*, 722 F.2d 1574, 1582-83 (2d Cir. 1983). As one court has recently observed, "the existence of a badge of fraud should be considered in the context of the case and any probative evidence of innocent intent." *Kramer v. Chin (In re Chin)*, 492 B.R. 117, 131 (Bankr. E.D.N.Y. 2013).

## The Motion for Summary Judgment

By this motion, the Trustee seeks summary judgment on the First through Sixteenth Causes of Action asserted in the Amended Complaint. Those causes of action seek to avoid and recover the Mortgage Proceeds Transfer and the Sale Proceeds Transfer made by the Debtor to her son under NY DCL Sections 273, 274, 275, 276 and 278, an award of attorneys' fees under NY DCL Section 276-a, turnover and an accounting of the Mortgage Proceeds Transfer and the Sale Proceeds Transfer pursuant to Bankruptcy Code Sections 542, 544, 550, and 551, and

recovery of those transfers based on common law principles of unjust enrichment.

*The Mortgage Proceeds Transfer - Constructive Fraud*

The Trustee asserts five causes of action seeking to avoid and recover the Mortgage

Proceeds Transfer as a constructively fraudulent conveyance pursuant to NY DCL Sections 273,

274, 275, and 278, and Bankruptcy Code Sections 544 and 550.[1]

By her Ninth Cause of Action, asserted pursuant to Bankruptcy Code Section 544(b) and

NY DCL Section 273, the Trustee seeks a declaratory judgment setting aside the Mortgage

Proceeds Transfer as a fraudulent conveyance.  She states that when the Debtor transferred her

---

[1]  Bankruptcy Code Section 544 vests a trustee with:

the rights and powers (including the power to avoid any transfer of the debtor's property or of any obligation incurred by the debtor) that could have been exercised by (1) a hypothetical creditor (a) that advanced credit to the debtor at the instant that the title 11 case was commenced and obtained, at exactly the same time and with respect to such credit, a judicial lien on all property of the debtor that could have been obtained by a creditor on a simple contract; or (b) that advanced credit to the debtor at the instant that the title 11 case was commenced and obtained, at exactly the same time and with respect to such credit, an execution against the debtor that is returned unsatisfied; or (2) a hypothetical bona fide purchaser of real property (other than fixtures) from the debtor against whom applicable nonbankruptcy law permits such transfer to be perfected and that has, as of the commencement of the title 11 case, perfected such transfer.

Subsection (b)(1), on the other hand, arms the trustee with the powers of an actual creditor with an allowable unsecured claim that could have avoided a transfer of the debtor's property or any obligation of the debtor under applicable (generally nonbankruptcy) law.

5 *Collier on Bankruptcy*, ¶ 544.01 (Alan N. Resnick & Henry J. Sommer eds. 16th ed.).

Bankruptcy Code Section 550 addresses the liability of the transferee of an avoided transfer, and "permits a trustee (or debtor in possession), after avoidance of a transfer under the trustee's avoiding powers, to recover the property transferred or the value of the property transferred."  5 *Collier on Bankruptcy*, ¶ 550.01 *(*Alan N. Resnick & Henry J. Sommer eds. 16th ed.).

interest in the Mortgage Proceeds to the Defendant, amounting to $37,500, she was insolvent or was rendered insolvent by the transfer, and did not receive fair consideration for the transfer from the Defendant.

By her Tenth Cause of Action, asserted pursuant to Bankruptcy Code Section 550(a) and NY DCL Sections 273 and 278, the Trustee seeks a judgment against the Defendant in the amount of $37,500.  She asserts that the Defendant benefitted in the amount of $37,500, from the Mortgage Proceeds Transfer by the Debtor.  The Trustee further alleges that pursuant to those statutory sections, she may recover the Mortgage Proceeds Transfer or the value of that transfer from the Defendant.

By her Eleventh Cause of Action, asserted pursuant to Bankruptcy Code Section 544(b) and NY DCL Section 274, the Trustee seeks a declaratory judgment setting aside the Mortgage Proceeds Transfer as a fraudulent conveyance.  She asserts the rights of a creditor with an unsecured claim allowable in the bankruptcy case, and she states that the Mortgage Proceeds Transfer was made without fair consideration and the property remaining with the Debtor after the transfer was an unreasonably small capital.

By her Twelfth Cause of Action, asserted pursuant to Bankruptcy Code Section 550(a) and NY DCL Section 278, the Trustee seeks to set aside the Mortgage Proceeds Transfer and recover from the Defendant the value of that transfer, or $37,500, and a judgment in that amount against the Defendant.

By her Thirteenth Cause of Action, asserted pursuant to Bankruptcy Code Section 544(b) and NY DCL Section 275, the Trustee seeks a judgment setting aside the Mortgage Proceeds Transfer as a fraudulent conveyance under NY DCL Section 275 and Bankruptcy Code Section

544(b).  The Trustee states that the Mortgage Proceeds Transfer was made without fair consideration when the Debtor intended and believed that she would incur debts beyond her ability to pay as they became due.

To prevail on these claims and avoid the Mortgage Proceeds Transfer as constructively fraudulent under NY DCL Sections 273, 274, or 275, the Trustee must show that the Debtor's property was transferred, that the transfer was made without fair consideration, and that either:

> the transferor [was] insolvent or [would] be rendered insolvent by the transfer in question, NY DCL § 273 . . . the transferor [was] engaged in or [was] about to engage in a business transaction for which its remaining property constitute[d] unreasonably small capital, NY DCL § 274; or . . . the transferor believe[d] that it [would] incur debt beyond its ability to pay, NY DCL § 275.

*Sharp*, 403 F.3d at 53.  And to prevail on summary judgment, the Trustee must establish that there is no genuine dispute as to a material fact with respect to each element of her claims.

## Whether the Trustee Has Established that the Mortgage Proceeds Transfer Was a Transfer of the Debtor's Property

The first element that the Trustee must establish is that the Mortgage Proceeds Transfer was a transfer of the Debtor's property.  The Trustee argues that inasmuch as the Debtor was a twenty-five percent title owner of the Richmond Hill Property and was obligated on the Countrywide Mortgage, twenty-five percent of the Mortgage Proceeds, or $37,500, is her property.

The Defendant responds that the Mortgage Proceeds Transfer was not a transfer of the Debtor's property because she never held equitable title to the Richmond Hill Property, and rather held "bare legal title."  Adv. Pro. 11-1520, Dkt. 145, Defendant's Affirmation in Opposition ("Def's Opp'n") 123.  The Defendant states that the Debtor "never had any interest

[in] the house," and notes that, for example, she never made a mortgage payment or claimed a

tax deduction for those payments.  Mahia Aff. ¶ 12.  For these reasons, the Defendant argues that

the Trustee cannot establish that the Debtor transferred her property to the Defendant because the

Debtor did not have an equitable interest in the Richmond Hill Property in the first place.

The commencement of a bankruptcy case creates an estate pursuant to Bankruptcy Code

Section 541(a), and the definition of property of the estate is broad.  As Bankruptcy Code

Section 541(a) sets forth, the estate includes "all legal or equitable interests of the debtor in

property as of the commencement of the case."

But the Bankruptcy Code also recognizes that a distinction may exist between legal and

equitable title.  Section 541(d) states:

> Property in which the debtor holds, as of the commencement of the case, only
> legal title and not an equitable interest . . . becomes property of the estate only to
> the extent of the debtor's legal title to such property, but not to the extent of any
> equitable interest in such property that the debtor does not hold.

11 U.S.C. § 541(d).  "[T]he bankruptcy estate does not include property of others in which the

debtor has some minor interest such as a lien or bare legal title."  *Geltzer v. Balgobin (In re*

*Balgobin)*, 490 B.R. 13, 20 (Bankr. E.D.N.Y. 2013) (quoting *Sanyo Elec., Inc. v. Howard's*

*Appliance Corp. (In re Howard's Appliance Corp.)*, 874 F.2d 88, 93 (2d Cir. 1989)).

Here, the record shows that the Debtor is named on the deed to the Richmond Hill

Property as a twenty-five percent owner and that she executed the deed conveying the Richmond

Hill Property from the previous owners to the Debtor, the Defendant, and Shamsum N. Rimi.  It

also shows that the Debtor, the Defendant, and Shamsum N. Rimi were the mortgagors in

connection with the Countrywide Mortgage.  The Defendant executed the deed conveying the

Richmond Hill Property to Mr. Sikder.  That is, the record shows that as of the commencement

of this case, the Debtor exercised sufficient legal and equitable control over the Richmond Hill

Property, and held sufficient legal and equitable interests in that property, to cause the Debtor's

interest in the Richmond Hill Property to become property of the estate upon the filing of her

bankruptcy case.  As a consequence, the Trustee has shown that there is no genuine dispute as to

a material fact that the Mortgage Proceeds Transfer was a transfer of the Debtor's property, and

the burden shifts to the Defendant "to come forward with evidence sufficient to create a genuine

dispute as to a material fact for trial" as to this element.  *UTA*, 446 B.R. at 49.

The Defendant presented evidence that the Debtor did not make mortgage payments with

respect to the Richmond Hill Property, or claim a tax deduction for those payments.  This shows

that the Defendant did not personally perform all of the obligations attendant to a mortgage, such

as making mortgage payments, or claim all of the benefits associated with a mortgage, such as

claiming a tax deduction for those payments.  But this is not sufficient to show that there is a

genuine dispute as to a material fact that the Mortgage Proceeds Transfer was a transfer of the

Debtor's property.

Whether the Trustee Has Established that the Mortgage Proceeds Transfer Was Made for Less
than Fair Consideration or Reasonably Equivalent Value

The second element that the Trustee must establish is that the Mortgage Proceeds

Transfer was made for less than fair consideration or reasonably equivalent value.  The Trustee

argues that when the Debtor did not receive her share of the Mortgage Proceeds, she "gave away

her interest in the Premises . . . for absolutely no consideration at all" to her son.  Adv. Pro. 11-

1520, Dkt. 137-1, Memorandum of Law in Support of Plaintiff's Motion for Summary Judgment

("Pl's Mem.") 12-13.  The Trustee also argues that the Mortgage Proceeds Transfer was an

intrafamily transfer, and, as noted above, such transfers are viewed with special scrutiny and

23

may be presumed fraudulent.  The Trustee acknowledges that the burden of establishing lack of

fair consideration is usually on the party challenging the conveyance.  In addition, she notes that

where, as here, a transfer is made for no consideration from one family member to another, "a

heavier burden is placed upon the grantee to demonstrate fair consideration for the transfer."

Pl's Mem. 14 (citing *McCombs,* 30 F.3d at 324 (quotations omitted)).  And the Trustee argues

that the Mortgage Proceeds Transfer was made for less than fair consideration or reasonably

equivalent value because "intangible psychological benefits" do not constitute reasonably

equivalent value, past support provided on the basis of a family, moral, and cultural duty does

not give rise to an antecedent debt, and promises of future support are not adequate

consideration.  Pl's Mem. 20 (quoting *Dietz v. St. Edward's Catholic Church (In re Bargfrede)*,

117 F.3d 1078, 1080 (8th Cir. 1997)).

The Defendant responds, in substance, that he provided equivalent value or fair

consideration for the Mortgage Proceeds Transfer because he "support[ed] the [D]ebtor for

everything [from] medicine to food to shelter."  Def's Opp'n 109.  The Defendant states that

"[the Debtor] got way more than what she could have gotten on mathematics as she is a mother

of a very dutiful son" and that the "Defendant has been financially supporting the [Debtor] for

several years."  Def's Opp'n 138-139.  The Defendant testified that the Debtor has been ill and

has not been employed since 2002, and that he has been taking care of her.  And he notes that in

those few months before 2002 that the Debtor worked, she earned $75-$100 per week.  The

Defendant states that in 2004, he refinanced the mortgage on the Richmond Hill Property and

used $45,000 to pay his mother's and father's credit card debt.  The Defendant also states that

"[e]verything belonged to the [Debtor] through the family as one unit."  Def's Opp'n 133.  More

24

generally, the Defendant notes that his family's "[c]ulture does not believe in business between mother and son." Mahia Aff. ¶ 3. For these reasons, the Defendant argues that the Trustee has not shown that there is no genuine dispute as to a material fact that the Mortgage Proceeds Transfer was made for less than fair consideration or reasonably equivalent value.

New York courts have concluded that bonds of love and affection do not amount to consideration for transfers among family members. As one court noted, "family affection which the defendants claim formed the consideration for the intrafamily conveyances does not constitute 'fair consideration' for purposes of [NY DCL]." *St. Teresa's Nursing Home v. Vuksanovich*, 268 A.D.2d 421, 422, 702 N.Y.S.2d 92, 92 (2d Dep't 2000) (citations omitted).

Bankruptcy courts have similarly determined that bonds of love and affection do not amount to consideration for transfers among family members. For example, one bankruptcy court found that "a promise for love and affection . . . does not constitute consideration." *In re 375 Park Ave. Assocs.*, 182 B.R. 690, 694 (Bankr. S.D.N.Y. 1995) (quoting *Harris v. Burrell (In re Burrell)*, 159 B.R. 365, 370 (Bankr. M.D. Ga. 1993) (observing that "love and affection is not reasonably equivalent value").

Here, the record shows that the Defendant received the full net proceeds from the mortgage of the Richmond Hill Property. These funds included the Mortgage Proceeds Transfer. In addition, the record shows that the Mortgage Proceeds Transfer was made between two family members, the Debtor and her son. The record further shows that the Defendant has contributed significantly to the support of the Debtor since at least 2002, many years before the Debtor and her son entered into the Countrywide Mortgage and the Debtor made the Mortgage Proceeds Transfer to him in early 2007. And the record also shows that the Defendant undertook to

support his mother from a sense of family, moral, and cultural duty, and not to satisfy a legal obligation. Viewed another way, the record establishes that the Debtor, the Defendant, and Shamsum N. Rimi functioned as an economic unit in the nature of an extended family. This does not amount to conveying property or value in exchange for the Mortgage Proceeds Transfer, nor does it create an "antecedent debt." As a consequence, the Trustee has shown that there is no genuine dispute as to a material fact that the Mortgage Proceeds Transfer was made for less than fair consideration or reasonably equivalent value, and the burden shifts to the Defendant "to come forward with evidence sufficient to create a genuine dispute as to a material fact for trial" as to this element. *UTA*, 446 B.R. at 49.

The Defendant presented evidence that he supported the Debtor for many years, based on their close family relationship of mother and son. The Defendant also presented evidence that he named his mother as a twenty-five percent owner of the Richmond Hill Property for those same reasons. And the Defendant stated that in 2004, he refinanced the mortgage on the Richmond Hill Property, and used $45,000 to pay his mother's and father's credit card debt. But the Defendant has not come forward with evidence sufficient to show that there is a genuine dispute as to a material fact that the Mortgage Proceeds Transfer was made in exchange for fair consideration or reasonably equivalent value, or that the Mortgage Proceeds Transfer discharged an antecedent debt that the Debtor owed to the Defendant. *See Actrade*, 337 B.R. at 803 (finding that "[under New York law,] the recipient of the debtor's property provides fair consideration by either conveying property or discharging an antecedent debt, provided that such exchange is a 'fair equivalent' of the property received or discharged").

The support provided by the Defendant to the Debtor as a matter of family, moral, and

26

cultural duty is not considered in law to be fair consideration or reasonably equivalent value.

Nor does this support amount to payment on account of an antecedent debt for an intrafamily

transfer or give rise to an antecedent debt, in the context of a bankruptcy case.  As one court

observed in an action governed by NY DCL, love and affection as consideration for a transfer "is

insufficient as a matter of law."  *Marine Midland Bank v. Stein*, 105 Misc. 2d 768, 770, 433

N.Y.S.2d 235, 327 (Sup. Ct. N.Y. Co. 1980).  This is not sufficient to show that there is a

genuine dispute as to a material fact that the Mortgage Proceeds transfer was made for less than

fair consideration or reasonably equivalent value, or on account of an antecedent debt that the

Debtor owed the Defendant.

Whether the Trustee Has Established that (i) the Debtor Was Insolvent when the Mortgage
Proceeds Transfer Was Made or Was Rendered Insolvent by the Transfer, or (ii) the Debtor Was
Engaged in or Was About To Engage in Business for Which her Remaining Property Constituted
An Unreasonably Small Capital, or (iii) the Debtor Intended or Believed that She Would Incur
Debts Beyond her Ability To Pay As They Matured

The third element that the Trustee must show is that either (i) the Debtor was insolvent

when the Mortgage Proceeds Transfer was made or was rendered insolvent thereby, NY DCL

Section 273, or (ii) the Debtor was engaged in or was about to engage in business for which her

remaining property constituted an unreasonably small capital, NY DCL Section 274, or (iii) the

Debtor intended or believed that she would incur debts beyond her ability to pay as they

matured, NY DCL Section 275.  *See Manshul*, 2000 WL 1228866, at *51 (citing NY DCL

§§ 273-275).

> *Whether the Trustee Has Established that the Debtor Was Insolvent when the Mortgage*
> *Proceeds Transfer Was Made or Was Rendered Insolvent by the Transfer*

The third element that the Trustee must establish for her NY DCL Section 273 claim is

that the Debtor was insolvent when she made the Mortgage Proceeds Transfer or that she was

rendered insolvent by that transfer.  By her Ninth Cause of Action, the Trustee alleges that the

Debtor was insolvent when she transferred her interest in the Mortgage Proceeds or that she was

rendered insolvent by that transfer.  She asserts that the transfer is avoidable under NY DCL

Section 273, and that she is entitled to a judgment setting aside the Debtor's transfer of the

Mortgage Proceeds and determining that the transfer is a fraudulent conveyance under NY DCL

Section 273.

The Defendant responds, in substance, that the Debtor was not insolvent when she

transferred her interest in the Mortgage Proceeds to the Defendant because the Debtor "did not

have debts during that time in January . . . 2007" which she was unable to pay.  Def's Opp'n 128.

For these reasons, the Defendant argues that the Trustee has not shown that there is no genuine

dispute as to a material fact that the Debtor was insolvent when she transferred her interest in the

Mortgage Proceeds Transfer to him or was rendered insolvent by that transfer.

Both the New York DCL and the Bankruptcy Code define insolvency.  For purposes of

NY DCL Section 273, "insolvency" is defined as "when the present fair salable value of [a

person's] assets is less than the amount that will be required to pay his probable liability on his

existing debts as they become absolute and matured."  NY DCL § 271(1).  And the Bankruptcy

Code defines insolvency as the "financial condition such that the sum of such entity's debts is

greater than all of such entity's property, at a fair valuation."  11 U.S.C. § 101(32).

"[I]nsolvency is determined by the 'balance sheet test,' in other words whether the debtor's

assets were exceeded by her liabilities at the time of the transfer."  *Universal Church v. Geltzer*,

463 F.3d 218, 226 (2d Cir. 2006), *cert. denied*, 549 U.S. 1113 (2007).  Under New York law,

giving a mortgage secured by real property does not constitute a transfer of that property.  *See*

28

*Armstrong v. Trustco Bank (In re Armstrong)*, 434 B.R. 120, 130-31 (Bankr. S.D.N.Y. 2010) (stating that under New York law, "[i]t is well settled that a mortgage is a security instrument only, and does not convey title upon the mortgagee") (citing *Witschger v. J.K. Marvin & Co.*, 255 A.D. 70, 5 N.Y.S.2d 910 (2d Dep't 1938)).

Insolvency may also be established by presumption. New York law provides that there is a presumption of insolvency where a debtor makes a transfer without fair consideration. As the Second Circuit observed some eighty years ago:

> [T]here is a rule of long standing in the New York courts that a voluntary conveyance made when the grantor is indebted is presumptively fraudulent. We think this means that, if one indebted makes such a transfer, it is presumed, in the absence of some proof to the contrary, that he was then insolvent.

*Feist*, 70 F.2d at 334-35. *See Manshul*, 2000 WL 1228866, at *53 (collecting cases). If the party seeking to avoid a transfer that was made without fair consideration demonstrates that a debtor was indebted at the time of the transfer, the debtor is presumed to have been insolvent at that time, and the burden of persuasion then shifts to the transferee to come forward with proof of the transferor's solvency. *Ventimiglia* , 362 B.R. at 83.

Here, the record shows that the Debtor transferred her share of the Mortgage Proceeds to the Defendant. It also shows that she made the Mortgage Proceeds Transfer for less than fair consideration or reasonably equivalent value, and that she did not make it on account of an antecedent debt. And it shows that the transfer was an intrafamily one, from the Debtor to her son. For these reasons, the Debtor is presumed to have been insolvent when she made the Mortgage Proceeds Transfer. As a consequence, the Trustee has shown that there is no genuine dispute as to a material fact that the Debtor was insolvent at the time of the Mortgage Proceeds Transfer, and the burden shifts to the Defendant "to come forward with evidence sufficient to

29

create a genuine dispute of a material fact for trial" as to this element.  *UTA*, 446 B.R. at 49.

The Defendant did not present evidence sufficient to show the Debtor's solvency, and argues, in substance, that the Debtor was not insolvent when she made the Mortgage Proceeds Transfer.  The Defendant also argues that the Debtor's solvency at the time of the Mortgage Proceeds Transfer will be shown at trial.  This is not sufficient to show that there is a genuine dispute as to a material fact that the Debtor was insolvent at the time of the Mortgage Proceeds Transfer or was rendered insolvent by that transfer.

> *Whether the Trustee Has Established that when the Debtor Made the Mortgage Proceeds Transfer, She Was Engaged in or Was About To Engage in Business for Which her Remaining Property Constituted An Unreasonably Small Capital*

The third element that the Trustee must establish for her New York DCL Section 274 claim is that when she made the Mortgage Proceeds Transfer, the Debtor was engaged in or was about to engage in business for which her remaining property constituted an unreasonably small capital.  By her Eleventh Cause of Action, pursuant to NY DCL Section 274 and Bankruptcy Code Section 544(b), the Trustee asserts the rights of a creditor with an unsecured claim allowable in the bankruptcy case.  She alleges that the Mortgage Proceeds Transfer was made without fair consideration and left the Debtor with an unreasonably small capital.

The Defendant responds that the Debtor "worked . . . before 2002 for maybe a couple of months as a part-time kitchen helper, but that's about it" and earned, at most, modest wages.  Adv. Pro. 11-1520, Dkt. 144, Affidavit of Shahara Khan ("Khan Aff.") ¶ 6.  The Debtor also testified that she was ill and unable to work.  Khan Aff. ¶¶ 3, 6.  For these reasons, the Defendant argues, in substance, that the Trustee has not established that the Debtor was engaged in business at the time of the Mortgage Proceeds Transfer for which that transfer left her with an

unreasonably small capital.

New York DCL Section 274 permits a trustee to avoid a transfer where, among other things, the movant shows that the transfer left the transferor with "an unreasonably small capital." *See Manshul*, 2000 WL 122886, at *54 (noting that an unreasonably small capital is "a financial condition short of equitable insolvency") (citing *Moody v. Sec. Pac. Bus. Credit, Inc.*, 971 F.2d 1056, 1070 (3d Cir. 1992)). The test is aimed at transfers that leave the transferor, such as a corporate or other entity, technically solvent but doomed to fail. *See Moody*, 971 F.2d at 1070, n.22 (same).

As one court noted, "[a] claim under [NY] DCL § 274 requires proof that at the time of the transfer the debtor was engaged or about to be engaged 'in a business or transaction' . . . ." *Chin* , 492 B.R. at 129. This provision "appl[ies] to individual and corporate debtors alike." *Laco X-Ray Sys., Inc. v. Fingerhut*, 88 A.D.2d 425, 432, 453 N.Y.S.2d 757, 762 (N.Y. App. Div. 2d Dep't 1982). But where a debtor, whether an individual or an entity, is not engaged "in business" at the time of the transfer in question, courts have held that NY DCL Section 274 is inapplicable. *Chin*, 492 B.R. at 129 (noting that the language of NY DCL Section 274 refers to transfers made by a debtor "engaged in a business").

Here, the record shows that the Debtor was not employed at the time of the Mortgage Proceeds Transfer, and that her prior employment was intermittent, for a brief period, and temporary. That is, the record does not show that at the time of the Mortgage Proceeds Transfer, the Debtor was engaged in or was about to engage in business within the scope of NY DCL Section 274 for which her remaining property constituted "an unreasonably small capital." As a consequence, the Trustee has not shown that there is no genuine dispute as to a material fact that

31

the Debtor was engaged in or was about to engage in business for which the Mortgage Proceeds

Transfer left her with an unreasonably small capital.

> *Whether the Trustee Has Established that the Debtor Intended or Believed that*
> *She Would Incur Debts Beyond her Ability To Pay as they Matured*

The third element that the Trustee must establish for her NY DCL Section 275 claim is

that when she made the Mortgage Proceeds Transfer, the Debtor intended or believed that she

would incur debts beyond her ability to pay as they matured.  By her Thirteenth Cause of Action,

under NY DCL Section 275, the Trustee alleges that when the Debtor made the Mortgage

Proceeds Transfer, she intended or believed that she would incur debts beyond her ability to pay

as they matured, and that the transfer was made without fair consideration at a time when there

were creditors with claims against the Debtor which were still unpaid as of the petition date.

The Defendant responds that the Trustee has not shown that the Debtor intended to incur

or believed that she would incur debts beyond her ability to pay as they matured.  Def's Opp'n

105.  The Defendant asserts that "the transfer would not be avoidable by any creditors whose

claims arose after the date of the [Mortgage Proceeds Transfer]."  For these reasons, the

Defendant argues that the Trustee cannot establish that the Debtor intended to incur or believed

that she would incur debts beyond her ability to pay as they matured.

New York DCL Section 275 permits a trustee to avoid a transfer where, among other

things, the movant establishes "that the property remaining after the conveyance is insufficient to

pay [the transferor's] liabilities on existing debts as they become mature."  *Fromer v. Yogel*, 50

F. Supp. 2d 227, 246 (S.D.N.Y. 1999).  Alternatively, New York Debtor and Creditor Law

Section 275 allows proof of the transferor's subjective belief that she will "incur debts beyond

[her] ability to pay as they mature."  *In re Best Prods. Co.*, 168 B.R. 35, 52 (Bankr. S.D.N.Y.

1994), *aff'd*, 68 F.3d 26 (2d Cir. 1995).

Here, the record shows that Proof of Claim 1-1 was filed in this bankruptcy case by Discover Card in the amount of $13,253.40. The record also shows that on February 16, 2007, the Debtor transferred a $5,000 balance to her Discover Card. Further, the record shows that on March 19, 2007, the Debtor took a $1,000 cash advance on her Discover Card. In addition, the record shows that Proof of Claim 6-1 filed by NCO Portfolio Management reflects a debt of $201.46 that the claimant purchased on December 19, 2006. That is, the record shows that a creditor existed at the time of the Mortgage Proceeds Transfer that also existed at the time this bankruptcy case was filed.

But the record does not show that the Debtor held the subjective belief that she would incur debts beyond her ability to pay at the time of the Mortgage Proceeds Transfer. The record shows that the Debtor incurred almost $6,000 of debt on her Discover Card between February 2007 and April 2007, and that she made modest regular payments on that balance. While this evidence may be consistent with the Debtor's holding the subjective belief that she would be unable to pay her debts as they came due, it is also consistent with the Debtor holding the view that she would be able to pay her debts in small increments, by making minimum monthly payments over a permissible extended period of time. This is not sufficient to show that there is no genuine dispute as to a material fact that the Debtor held the subjective belief, at the time of the Mortgage Proceeds Transfer, that she would incur debts beyond her ability to pay as they matured.

In summary, for these reasons, and based on the entire record, the Court finds that the Trustee has shown that there is no genuine dispute as to a material fact as each element of the

33

claim set forth in the Ninth Cause of Action under NY DCL Section 273 and Bankruptcy Code Section 544(b), and that she is entitled to summary judgment on that claim.  And also for these reasons, and based on the entire record, the Court finds that the Trustee has not shown that there is no genuine dispute as to a material fact as to each element of the claims set forth in the Eleventh and Thirteenth Causes of Action under NY DCL Sections 274 and 275 and Bankruptcy Code Section 544(b), and she is not entitled to summary judgment on those claims.

<u>Whether the Trustee Has Established a Right To Recover the Mortgage Proceeds Transfer Under NY DCL Section 278</u>

The Trustee's Tenth and Twelfth Causes of Action assert claims under NY DCL Sections 273, 274, and 278 and Bankruptcy Code Section 550(a).  By these causes of action, the Trustee seeks to set aside the Mortgage Proceeds Transfer under different theories of constructively fraudulent transfer, and to obtain a money judgment in the amount of $37,500, representing the amount of the Debtor's share of the Mortgage Proceeds Transfer.  As with her other claims to recover the Mortgage Proceeds Transfer, the Trustee argues, in substance, that she is entitled to recover the Mortgage Proceeds under NY DCL Section 278.

The Defendant responds in substance that the Trustee alleges "the bare minimum facts," and that the Trustee "cannot maintain a claim against the defendants on section 278 as there is no allegation that the defendant was unaware of the fraudulent conveyance."  Def's Opp'n 108-09.

NY DCL Section 278 addresses the rights of creditors whose claims have matured, and provides:

> Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or mediately from such a purchaser,

      a.        Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim, or

      b.        Disregard the conveyance and attach or levy execution upon the property conveyed.

NY DCL § 278 (McKinney 2014).  For these purposes, a "'[c]onveyance' includes every payment of money [or] . . . transfer."  NY DCL § 270 (McKinney 2014).  It has been noted that, among other things, "[t]he purpose of the Debtor and Creditor Law (§ 278) is to permit the plaintiff to 'establish his debt, whether matured or unmatured, and challenge the conveyance in the compass of a single suit.'"  *Goldstein v. Wagner*, 228 A.D. 847, 847, 240 N.Y.S. 636, 637 (2d Dep't 1930) (citation omitted).

      Similar to NY DCL Section 278, Bankruptcy Code Section 550 addresses the liability of a transferee of an avoided transfer, and provides:

    (a)       Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544 . . . of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from–

        (1)       the initial transferee of such transfer or the entity for whose benefit such transfer was made; or

        (2)       any immediate or mediate transferee of such initial transferee.

11 U.S.C. § 550(a).

      Here, as described above, the record shows that the Defendant received the Mortgage Proceeds Transfer, and that he did not provide fair consideration or reasonably equivalent value in return.  As also described above, the record shows that the Debtor was insolvent or was rendered insolvent when the Mortgage Proceeds Transfer was made.  For these reasons, the Trustee has shown that there is no genuine dispute as to a material fact that she may set aside the

Mortgage Proceeds Transfer and recover the value of that transfer under NY DCL Sections 273 and 278 and Bankruptcy Code Sections 544(b) and 550(a).  As a consequence, the burden shifts to the Defendant "to come forward with evidence sufficient to create a genuine dispute as to a material fact for trial" as to this element.  *UTA*, 446 B.R. at 49.

The Defendant did not present evidence sufficient to create a genuine dispute as to a material fact that he received the Mortgage Proceeds Transfer, or whether that transfer was made for fair consideration or reasonably equivalent value or on account of an antecedent debt.  Nor has he presented evidence sufficient to create a genuine dispute as to a material fact that the Debtor was not insolvent when she made the Mortgage Proceeds Transfer or was rendered insolvent by that transfer.

In summary, for these reasons, and based on the entire record, the Court finds that the Trustee has shown that there is no genuine dispute as to a material fact as to each element of the claim set forth in the Tenth Cause of Action under NY DCL Sections 273 and 278 and Bankruptcy Code Sections 544(b) and 550(a), and that she is entitled to summary judgment on that claim.  And also for these reasons, and based on the entire record, the Court finds that the Trustee has not shown that there is no genuine dispute as to a material fact as to each element of the claim set forth in the Twelfth Cause of Action under NY DCL Sections 274 and 278 and Bankruptcy Code Section 550(a), and that she is not entitled to summary judgment on that claim.

*The Mortgage Proceeds Transfer - Actual Fraud*

The Trustee asserts one cause of action seeking to avoid and recover the Mortgage Proceeds Transfer as an actually or intentionally fraudulent transfer.  By her Fourteenth Cause of Action, asserted pursuant to Bankruptcy Code Section 544(b) and NY DCL Section 276, the

36

Trustee seeks to avoid and recover the Mortgage Proceeds Transfer as a fraudulent conveyance made by the Debtor with the actual intent to hinder, delay, or defraud her creditors.

NY DCL Section 276 provides that "every conveyance made and every obligation incurred with actual intent . . . to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors." This Section authorizes a trustee, among others, "to avoid transactions which have the purpose or effect of removing property from a debtor's estate which should properly be used to repay creditors." *Churchill Mortg.*, 256 B.R. at 675.

The Trustee must establish three elements to succeed on her NY DCL Section 276 claim. One court has described these elements as follows:

> To prevail on a claim under section 276 of the New York Debtor and Creditor law, the Trustee must establish that (1) the thing transferred has value out of which the creditor could have realized a portion of its claim; (2) that this thing was transferred or disposed of by debtor; and (3) that the transfer was done with actual intent to defraud.

*Kittay v. Flutie New York Corp. (In re Flutie New York Corp.)*, 310 B.R. 31, 56 (Bankr. S.D.N.Y. 2004) (citing *Gentry v. Kovler (In re Kovler)*, 249 B.R. 238, 243 (Bankr. S.D.N.Y. 2000)). That is, as distinguished from her claims grounded in constructive fraud under NY DCL Sections 273, 274, and 275, this claim requires the Trustee to show that the Debtor had the actual intent to defraud.

As noted above, because actual fraudulent intent is often difficult to prove, courts may rely on badges or indica of fraud to "give[] rise to an inference of intent." *Sharp*, 403 F.3d at 56 (citation omitted). To prevail on this claim and avoid the Mortgage Proceeds Transfer as an actually fraudulent transfer pursuant to NY DCL Section 276, the Trustee must show that when

37

the Debtor made the Mortgage Proceeds Transfer, she actually intended to hinder, delay, or defraud either present or future creditors.  And to prevail on summary judgment, the Trustee must establish that there is no genuine dispute as to a material fact with respect to each element of her claim.

<u>Whether the Trustee Has Established that the Mortgage Proceeds Transfer Has Value from</u>
<u>Which a Creditor Could Have Realized a Portion of its Claim</u>

The first element that the Trustee must establish is that the Mortgage Proceeds Transfer has value from which a creditor could have realized a portion of its claim.  The Trustee alleges that the Debtor's share of the Mortgage Proceeds consisted of funds in the amount of $37,500, and that those funds amount to an asset from which a creditor could realize a portion of its claim.

The Defendant responds, among other things, that "[the p]roperty alleged to have been fraudulently transferred [is] not property of the estate."  Adv. Pro. 11-1520, Dkt. 146, Def's Resp. ¶ 50.  The Defendant also responds, in substance, that the Debtor held only legal title to the Richmond Hill Property, not equitable title, and therefore the Mortgage Proceeds do not have value from which a creditor could have realized a portion of its claim because the Debtor did not have an equitable interest in these sums.  For these reasons, among others, the Defendant argues that the Trustee cannot establish that the Mortgage Proceeds Transfer has value from which a creditor could have realized a portion of its claim.

Like "property of the estate" under the Bankruptcy Code, "value" under NY DCL Section 276 is broadly construed.  While Bankruptcy Code Section 548 defines "value" for purposes of that section, New York Debtor and Creditor Law and the Bankruptcy Code do not define the term "value" for purposes of the relief sought here.  Courts addressing transfers under Section 276 view "value" in the context of an exchange of property conveyed or an antecedent

38

debt being satisfied as part of the transfer.  As the Second Circuit has explained, "the fact-finder must first attempt to measure the economic benefit that the debtor indirectly received from the entire transaction, and then compare that benefit to the value of the property the debtor transferred." *HBE Leasing Corp*., 48 F.3d at 638-39.

Here, as noted above, the record shows that the Debtor exercised legal and equitable control over the Richmond Hill Property.  Also, as noted above, the record shows that the Debtor's share of the Mortgage Proceeds, or $37,000, is property of the estate.  As a consequence, the Trustee has shown that there is no genuine dispute as to a material fact that the Mortgage Proceeds Transfer was a transfer of the Debtor's property or that the transfer has value from which a creditor could have realized a portion of its claim, and the burden shifts to the Defendant "to come forward with evidence sufficient to create a genuine dispute as to a material fact for trial" as to this element.  *UTA*, 446 B.R. at 49.

The Defendant, as noted above, presented evidence indicating, among other things, that the Debtor did not personally perform all of the obligations or claim all of the benefits associated with a mortgage.  This is not sufficient to show that there is a genuine dispute as to a material fact that the Mortgage Proceeds Transfer was a transfer of the Debtor's property, and likewise, the entire record is not sufficient to create a genuine dispute as to a material fact that the Mortgage Proceeds Transfer has value from which a creditor could have realized a portion of its claim.

Whether the Trustee Has Established that the Mortgage Proceeds Transfer Was Made by the Debtor

The second element that the Trustee must establish is that the Mortgage Proceeds Transfer was made by the Debtor.  The Trustee argues that as a result of the Mortgage Proceeds

39

Transfer, "the Debtor gave away her interest in the [Richmond Hill Property], a sizeable asset, to the Defendant."  Pl's Mem. 12-13.

The Defendant responds that the "Debtor did not transfer any interest in real property," and reasons that because the family is one unit, any benefit conferred on one family member inures to all.  Def's Opp'n 132.  For these reasons, the Defendant argues, in substance, the Trustee cannot establish that the Mortgage Proceeds Transfer was made by the Debtor.

Bankruptcy Code Section 541(a) defines "property of the estate," and that definition is broad.  As one court has explained, "[u]nder § 541(a), the commencement of a bankruptcy case creates an estate, which includes, subject to certain exceptions, 'all legal or equitable interests of the debtor in property as of the commencement of the case,' regardless of where the property is located or who holds it."  *Balgobin*, 490 B.R. at 20.

Here, the record shows that the Debtor executed the deed to the Richmond Hill Property as a twenty-five percent owner and executed the deed conveying the Richmond Hill Property from the previous owners to the Debtor, the Defendant, and Shamsum N. Rimi.  The record also shows that on January 5, 2007, the Debtor, the Defendant, and Shamsum N. Rimi granted a mortgage to Countrywide Mortgage, to secure a home equity loan in the amount of $150,000.

And the record shows that the Defendant used $100,000 of the Mortgage Proceeds for a down payment on the Ozone Park Property, and that he received and deposited the balance of the Mortgage Proceeds, or $50,000, in his Citibank account.  The record does not show that the Debtor received her share of the Mortgage Proceeds.  As a consequence, the Trustee has shown that there is no genuine dispute as to a material fact that the Mortgage Proceeds Transfer was made by the Debtor, and the burden shifts to the Defendant "to come forward with evidence

40

sufficient to create a genuine dispute as to a material fact for trial" as to this element.  *UTA*, 446 B.R. at 49.

In response, the Defendant argues, in substance, that the Mortgage Proceeds Transfer was not a transfer of the Debtor's property because those funds were not the Debtor's property, and presented evidence of the Defendant's belief, based on his family, moral, and cultural duty, that the Mortgage Proceeds belonged to the family as a unit.  But that is not sufficient to show that there is a genuine dispute as to a material fact that the Mortgage Proceeds Transfer was made by the Debtor.

<u>Whether the Trustee Has Established that the Mortgage Proceeds Transfer Was Made with Actual Intent To Hinder, Delay, or Defraud the Debtor's Creditors</u>

The third element that the Trustee must establish is that the Mortgage Proceeds Transfer was made with actual intent to hinder, delay, or defraud the Debtor's creditors.  The Trustee argues that this element may be established by circumstantial evidence, including by reference to certain "badges of fraud."

The Defendant responds that the Amended Complaint fails to plead actual fraud sufficient "to satisfy [the] heightened specificity requirements of Federal Rule of Civil Procedure governing allegations of fraud."  Def's Opp'n 113.  The Defendant states that "there is nothing [in] the complaint suggestive of the 'actual intent.'"  Def's Opp'n 114.  The Defendant asserts, among other things, that the Debtor was not insolvent at the time of the Mortgage Proceeds Transfer, and that the Trustee did not provide evidence that the Debtor retained control of the "property."  Rather, the Defendant argues that "the evidence is that the debtor is totally dependent on the son for everything."  Def's Opp'n 114.  For these reasons, the Defendant argues that the Trustee cannot establish that the Debtor made the Mortgage Proceeds Transfer

41

with actual intent to hinder, delay, or defraud creditors.

Claims under NY DCL Section 276 are grounded in actual fraud and must be "sufficiently pled to satisfy the requirements of Rule 9(b)." *Picard v. Merkin (In re Bernard L. Madoff Inv. Secs., LLC)*, 440 B.R. 243, 257 (Bankr. S.D.N.Y. 2010). New York Debtor and Creditor Law Section 276 allows the avoidance of any "conveyance made . . . with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors." One court noted that under this Section, "courts differ as to whether a trustee must also plead a *transferee's* fraudulent intent." *Merkin*, 440 B.R. at 257 (emphasis in original, citation omitted). And "[t]o adequately plead intent, the Trustee must allege 'facts that give rise to a strong inference of fraudulent intent.' . . . Such facts may either (1) demonstrate that defendants had both the motive and the opportunity to commit fraud; or (2) constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Merkin*, 440 B.R. at 258 (citations omitted).

As noted above, actual fraudulent intent is rarely demonstrated by direct evidence and "may be inferred from the facts and circumstances surrounding the transfer." *Flutie*, 310 B.R. at 56. As the Second Circuit has explained:

> Due to the difficulty of proving actual intent to hinder, delay, or defraud creditors, the pleader is allowed to rely on 'badges of fraud' to support his case, i.e., circumstances so commonly associated with fraudulent transfers that their presence gives rise to an inference of intent.

*Sharp*, 403 F.3d at 56 (quoting *Brodsky*, 257 A.D.2d at 529). Payment of consideration by a transferee "is immaterial where the transferor has the actual intent to hinder, delay, and defraud creditors." *In re Baxter*, 27 F. Supp. 54, 56 (S.D.N.Y. 1939) (citing NY DCL § 276). And as the Second Circuit also noted, "[f]raudulent acts are as varied as the fish in the sea." *Kaiser*, 722

42

F.2d at 1583.

At the same time, a "badge of fraud" is not the same as a finding of fraud. "Because they are only evidence of the likelihood of fraud, badges of fraud are not given equal weight; and sometimes the circumstances indicate they should be given no weight at all." *In re Stanton*, 457 B.R. 80, 94 (Bankr. D. Nev. 2011).

Here, the record shows that there is some evidence of certain "badges of fraud" associated with the Mortgage Proceeds Transfer. This includes evidence that the Mortgage Proceeds Transfer was made for no consideration, because any support the Defendant provided to the Debtor was made out of a sense of family, moral, and cultural duty rather than a legal obligation, as well as evidence that the Mortgage Proceeds Transfer was made between parties who share a close relationship, that of mother and son. And this also includes evidence that the Debtor retained the use and enjoyment of the Richmond Hill Property after the Mortgage Proceeds Transfer occurred.

But this evidence, viewed in the context of the entire record, does not amount to strong circumstantial evidence of the Defendant's or the Debtor's "motive and . . . opportunity to commit fraud" or "conscious misbehavior or recklessness." *Pereira v. Grecogas Ltd. (In re Saba Enters., Inc.)*, 421 B.R. 626, 642 (Bankr. S.D.N.Y. 2009). And this is not sufficient to show that there is no genuine dispute as to a material fact that the Debtor made the Mortgage Proceeds Transfer with actual intent to hinder, delay, or defraud creditors.

In summary, for these reasons, and based on the entire record, the Court finds that the Trustee has not shown that there is no genuine dispute as to a material fact as to each element of the claim set forth in the Fourteenth Cause of Action under NY DCL Section 276 and

43

Bankruptcy Code Section 544(b), and she is not entitled to summary judgment on that claim.

_The Mortgage Proceeds Transfer - Turnover and Accounting_

By her Eighth Cause of Action, asserted under Bankruptcy Code Section 542(a), the Trustee seeks a judgment directing the Defendant to account for and turnover $37,500, representing the Debtor's share of the Mortgage Proceeds. Here, too, the Trustee alleges that the Defendant is in possession, custody, or control of the Debtor's share of these funds, that the proceeds are property of the estate that the Trustee may use, and that the Mortgage Proceeds are not of inconsequential value or benefit to estate. And to prevail on summary judgment, the Trustee must show that there is no genuine dispute as to a material fact with respect to each element of her claim.

The Defendant responds, in substance, that the Mortgage Proceeds are not property of the estate, and for that reason, are "not amenable to recovery under Section 542." Def's Opp'n 102.

The Bankruptcy Code provides tools for trustees to marshal the assets of an estate, and a turnover claim under Section 542 is one of those tools. "Congress envisioned the turnover provision of § 542 . . . to apply to tangible property and money due to the debtor without dispute which are fully matured and payable on demand." _Charter Co. v. Exxon Co., U.S.A. (In re Charter Co.)_, 913 F.2d 1575, 1579 (11th Cir. 1990) (citing _United States v. Whiting Pools, Inc._, 462 U.S. 198, 202-03 (1983)). But not every tool is useful at every stage in a bankruptcy case. As one bankruptcy court has noted, "in order to state a claim for turnover of property under § 542, a plaintiff must allege that transfer of the property has already been avoided or that the property is otherwise the undisputed property of the bankruptcy estate." _Stanziale v. Pepper Hamilton LLP (In re Student Fin. Corp.)_, 335 B.R. 539, 554 (D. Del. 2005).

44

Stated another way, relief under Section 542 is not available where the transfer is the subject of a trustee's pending claim of fraudulent conveyance, and that claim is disputed and has not been resolved by the court.  As that court found, "where the transfer of the interests in question . . . has not yet been avoided, and the interests are very much in dispute . . . [t]urnover actions cannot be used to demand assets." *Student Fin. Corp.*, 335 B.R. at 554.  Where "title to the property is in dispute, a claim for turnover cannot arise at this stage." *Miller v. Greenwich Cap. Fin. Prods., Inc. (In re Amer. Bus. Fin. Svcs., Inc.)*, 361 B.R. 747, 761 (Bankr. D. Del. 2007).  Otherwise, a genuine risk of a double recovery could be present.

Bankruptcy Code Section 542(a) requires a non-custodian third-party to turnover property if it can be used by the trustee under Bankruptcy Code Section 363 or exempted by the debtor under Bankruptcy Code Section 522.  Accordingly, to recover on her claims under Section 542(a), the Trustee must establish three elements:  "(1) the property is in the possession, custody or control of another entity; (2) the property can be used in accordance with the provisions of section 363; and (3) the property has more than inconsequential value to the debtor's estate." *Zazzali v. Minert (In re DBSI, Inc.)*, 468 B.R. 663, 669 (Bankr. D. Del. 2011) (citing statute).  In an action under Section 542(a), "it is the Trustee's burden to establish every element of the cause of action." *Newman v. Tyberg (In re Steel Wheels Transport, LLC)*, 2011 WL 5900S958, at *5 (Bankr. D.N.J. Oct. 28, 2011).  But the Trustee is only entitled to one recovery.  As one bankruptcy court observed:

> Although the Trustee here seeks entry of a judgment . . . for the alleged cash surrender value of the Policies . . .and entry of a judgment requiring and directing [the transferee] to transfer and turn over the Policies to the Trustee as property of the estate, he cannot be entitled to both, which would represent a double recovery.

*Hirsch v. Gersten (In re Centennial Textiles, Inc.)*, 220 B.R. 165, 176 (Bankr. S.D.N.Y. 1998).

45

<u>Whether the Trustee Has Established that the Mortgage Proceeds Are in the Defendant's</u>
<u>Possession, Custody, or Control</u>

The first element that the Trustee must establish is that the Mortgage Proceeds are in the

Defendant's possession, custody, or control.  The Trustee alleges that the Defendant "is in

possession, custody[,] or control, during the case," of the Debtor's share of the Mortgage

Proceeds, in the amount of $37,500.  Adv. Pro. 11-1520, Dkt. 90, Amended Complaint ("Am.

Compl.") ¶ 23.  For these reasons, the Trustee asserts, the Defendant is required under Section

542(a) to deliver and account to her for the Mortgage Proceeds.

The Defendant responds that the Mortgage Proceeds are not property of the estate, and

for that reason, are "not amenable to recovery under Section 542."  Def's Opp'n 102.  The

Defendant also argues that Bankruptcy Code Section 542(a) "does not create a cause of action, it

is a procedural device to bring property of the estate back to the estate."  Def's Opp'n 115.  For

these reasons, the Defendant argues, in substance, that the Trustee cannot establish that the

Mortgage Proceeds are in the possession, custody, or control of the Defendant.

Bankruptcy Code Section 542(a) refers to property that is in a third party's possession,

custody, or control during the case.  In applying Section 542, some courts have concluded that

possession when the claim is asserted is a necessary element of a turnover claim.  For example,

in *Brown v. Pyatt (In re Pyatt)*, 486 F.3d 423, 429 (8th Cir. 2007), the court concluded that funds

in a debtor's checking account on the petition date were no longer in the debtor's control when

checks were honored post-petition, and held that possession at the time of turnover is required.

Other courts have concluded that while possession at some point during the debtor's

bankruptcy case is required, possession is not necessary at the time that a turnover claim is

asserted.  For example, in *In re Shearin*, 224 F.3d 353, 356 (4th Cir. 2000), the court determined

46

that Section 542(a) applied to any entity that had possession, custody, or control of estate property during the entire bankruptcy case, and that possession of the funds at the time turnover is sought is not required.  And similarly, in *Boyer v. Carlton, Fields, Ward, Emmanuel, Smith & Cutler, P.A. (In re USA Diversified Prods., Inc.)*, 100 F.3d 53, 56 (7th Cir. 1996), the court found that Section 542(a) applied to any entity that had possession, custody or control of estate property during the entire bankruptcy case, and concluded that possession of the debtor's money market funds at the time of the turnover demand was not required.  *See Jacobs v. Jacobowitz (In re Jacobs)*, 394 B.R. 646, 674 (Bankr. E.D.N.Y. 2008) (concluding that where the trustee established that property of the debtor was transferred to an account held solely in the defendant's name, the funds came into her possession, custody, or control for purposes of Section 542(a)).  *See also Tese-Milner v. Moon (In re Moon)*, 385 B.R. 541, 556 n.42 (Bankr. S.D.N.Y. 2008) (noting that courts have reached different conclusions as to the applicability of Section 542(a) to "entities who do not have possession of the property at the time turnover is sought").

Here, the record shows that the Mortgage Proceeds Transfer occurred on January 5, 2007, the date when the loan was disbursed.  The record also shows that the Defendant received the net loan proceeds at the closing of the sale of the Richmond Hill Property, on April 5, 2007.  And the record shows that the Defendant used $100,000 of those proceeds as a down payment for the Ozone Park Property, deposited the $50,000 balance into his Citibank account, and used those funds for renovations at the Richmond Hill Property and the Ozone Park Property.  The record also shows that the Debtor did not receive her share of those proceeds at the closing.  As a consequence, the Trustee has shown that there is no genuine dispute as to a material fact that the

47

Mortgage Proceeds are in the Defendant's possession, custody, or control, and the burden shifts to the Defendant "to come forward with evidence sufficient to create a genuine dispute as to a material fact" for trial as to this element.  *UTA*, 446 B.R. at 49.

The Defendant argues that the Mortgage Proceeds Transfer was not a transfer of the Debtor's property because those funds were not the Debtor's property, and presented evidence of the Defendant's belief, based on his family, moral, and cultural duty, that the Mortgage Proceeds belonged to the family as a unit.  But that evidence is not sufficient to show that there is a genuine dispute as to a material fact that the Mortgage Proceeds are in the Defendant's possession, custody, or control.

<u>Whether the Trustee Has Established that the Mortgage Proceeds Are Estate Property that the Trustee May Use, Sell, or Lease</u>

The second element that the Trustee must establish is that the Mortgage Proceeds are property of the estate that the Trustee may use, sell, or lease.  The Trustee alleges in her Eighth Cause of Action that she may use the Mortgage Proceeds "to pay creditors of this estate."  Am. Compl. ¶ 26.  For these reasons, the Trustee alleges that the Defendant is required under Section 542(a) to deliver and account to her for the Mortgage Proceeds.

The Defendant responds that the Mortgage Proceeds are not property of the estate, and for that reason, are "not amenable to recovery under Section 542."  Def's Opp'n 102.  And the Defendant also responds that "the Debtor might have had exemptions" with regard to the Mortgage Proceeds Transfer.  Def's Opp'n 64.  For these reasons, the Defendant argues, in substance, that the Trustee cannot establish that the Mortgage Proceeds are property of the estate that the Trustee may use.

Bankruptcy Code Section 541(a)(3) provides that property of the estate includes "any

interest in property that the trustee recovers under section . . . 550 . . . of this title." As noted above, the definition of property of the estate is broad. One court notes that "[i]n this regard, property that has been fraudulently or preferentially transferred does not become property of the estate until it has been recovered." *Savage & Assocs., P.C. v. Mandl (In re Telegent, Inc.)*, 325 B.R. 134, 137 (Bankr. S.D.N.Y. 2005) (citations omitted).

Here, the record shows that the Trustee identified the Mortgage Proceeds as property of the estate that is subject to turnover. As noted above, this Court has found that the Mortgage Proceeds are property of the estate based on the Debtor's twenty-five percent ownership of the Richmond Hill Property. Also as noted above, this Court found that the Trustee is entitled to avoid the Mortgage Proceeds Transfer under NY DCL Section 273 and Bankruptcy Code Section 544(b), and recover the Mortgage Proceeds under Bankruptcy Code Section 550. As a consequence, the Trustee has shown that there is no genuine dispute as to a material fact that the Mortgage Proceeds are property of the estate that the Trustee may use, sell, or lease, and the burden shifts to the Defendant "to come forward with evidence sufficient to create a genuine dispute as to a material fact" for trial as to this element. *UTA*, 446 B.R. at 49.

Here, too, the Defendant argues that the Mortgage Proceeds Transfer was not a transfer of the Debtor's property because those funds were not the Debtor's property, and presented evidence of the Defendant's belief, based on his family, moral, and cultural duty, that the Mortgage Proceeds belonged to the family as a unit. But that evidence is not sufficient to show that there is a genuine dispute as to a material fact that the Mortgage Proceeds are property of the estate that the Trustee may use, sell, or lease.

Whether the Trustee Has Established that the Property Has More than Inconsequential Value to the Debtor's Estate.

The third element that the Trustee must establish is that the Mortgage Proceeds have more than inconsequential value to the Debtor's estate. The Trustee alleges in her Eighth Cause of Action that the Mortgage Proceeds are "not of inconsequential value to the estate." Am. Compl. ¶ 27. For these reasons, the Trustee alleges that the Defendant is required under Section 542(a) to deliver and account to her for the Mortgage Proceeds.

The Defendant responds that the Mortgage Proceeds are not property of the estate, and for that reason, are "not amenable to recovery under Section 542." Def's Opp'n 102. For these reasons, the Defendant argues, in substance, that the Trustee cannot establish that the Mortgage Proceeds are not of inconsequential value to the estate.

One measure of determining if property is of inconsequential value to the estate is to compare the amount of claims filed in a debtor's bankruptcy case to the value of the property that the trustee seeks to recover. *Calvin v. Wells Fargo Bank, N.A. (In re Calvin)*, 329 B.R. 589, 598 (Bankr. S.D. Tex. 2005) (concluding that where the value of the property sought to be turned over represented seven percent of all claims, that was "not an insignificant portion" and the property was not of inconsequential value to the estate).

Here, the record, including the claims register, shows that a total of $42,326.37 in unsecured claims have been filed. There are no secured or priority claims, and the bar date has passed. The Mortgage Proceeds, in the amount of $37,500, is a significant fraction of that amount, and under any appropriate measure, these funds are not of inconsequential value to the estate. As a consequence, the Trustee has shown that there is no genuine dispute as to a material fact that the Mortgage Proceeds are not of inconsequential value to the estate, and the burden

50

shifts to the Defendant "to come forward with evidence sufficient to create a genuine dispute as to a material fact" for trial as to this element.  *UTA*, 446 B.R. at 49.

The Defendant argues that the Mortgage Proceeds Transfer was not a transfer of the Debtor's property because those funds were not the Debtor's property, and presented evidence of the Defendant's belief, based on his family, moral, and cultural duty, that the Mortgage Proceeds belonged to the family as a unit.  But that evidence is not sufficient to show that there is a genuine dispute as to a material fact that the Mortgage Proceeds are not of inconsequential value to the estate.

In summary, for these reasons, and based on the entire record, the Court finds that the Trustee has established that there is no genuine dispute as to a material fact as to each element of the claim set forth in the Eighth Cause of Action under Bankruptcy Code Section 542(a), and she is entitled to summary judgment on that claim.

## The Sale Proceeds Transfer - Constructive Fraud

The Trustee asserts five causes of action seeking to avoid and recover the Sale Proceeds Transfer as a constructively fraudulent conveyance pursuant to NY DCL Sections 273, 274, 275, and 278, and Bankruptcy Code Sections 544 and 550.

By her Second Cause of Action, asserted under Bankruptcy Code Section 544(b) and NY DCL Section 273, the Trustee seeks a declaratory judgment setting aside the Sale Proceeds Transfer as a fraudulent conveyance.  She asserts that when the Debtor transferred her interest in the Sale Proceeds to the Defendant, amounting to $26,690.25, she was insolvent or was rendered insolvent by the transfer, and did not receive fair consideration for the transfer from the Defendant.

51

By her Third Cause of Action, asserted under Bankruptcy Code Section 550(a) and NY DCL Sections 273 and 278, the Trustee seeks a judgment against the Defendant in the amount of $26,690.25.  She asserts that the Defendant benefitted in the amount of $26,690.25, from the Sale Proceeds Transfer by the Debtor.  The Trustee further alleges that pursuant to those statutory sections, she may recover the Sale Proceeds Transfer or the value of that transfer from the Defendant.

By her Fourth Cause of Action, asserted under Bankruptcy Code Section 544(b) and NY DCL Section 274, the Trustee seeks a declaratory judgment setting aside the Sale Proceeds Transfer as a fraudulent conveyance.  She asserts the rights of a creditor with an unsecured claim allowable in the bankruptcy case, and she states that the Sale Proceeds Transfer was made without fair consideration and the property remaining with the Debtor after the transfer was an unreasonably small capital.

By her Fifth Cause of Action, asserted under Bankruptcy Code Section 550(a) and NY DCL Section 278, the Trustee seeks to set aside the Sale Proceeds Transfer and recover from the Defendant the value of that transfer, or $26,690.25, as well as a judgment in that amount against the Defendant.

By her Sixth Cause of Action, asserted under Bankruptcy Code Section 544(b) and NY DCL Section 275, the Trustee seeks a judgment setting aside the Sale Proceeds Transfer as a fraudulent conveyance under NY DCL Section 275 and Bankruptcy Code Section 544(b).  The Trustee states that the Sale Proceeds Transfer was made without fair consideration when the Debtor intended and believed that she would incur debts beyond her ability to pay as they became due.

52

As with the Mortgage Proceeds Transfer, to prevail on these claims and avoid the Sale

Proceeds Transfer as constructively fraudulent under NY DCL Sections 273, 274, or 275, the

Trustee must show that the Debtor's property was transferred, that the transfer was made without

fair consideration, and that either:

> (i) the transferor [was] insolvent or [would] be rendered insolvent by the transfer
> in question, [NY] DCL § 273; (ii) the transferor [was] engaged in or [was] about
> to engage in a business transaction for which its remaining property constitute[d]
> unreasonably small capital, [NY] DCL § 274; or (iii) the transferor believe[d] that
> it [would] incur debt beyond its ability to pay, NY DCL § 275.

*Sharp*, 403 F.3d at 53.  And to prevail on summary judgment, the Trustee must establish that

there is no genuine dispute as to a material fact with respect to each element of her claims.

<u>Whether the Trustee Has Established that the Sale Proceeds Transfer Was a Transfer of the
Debtor's Property</u>

The first element that the Trustee must establish is that the Sale Proceeds Transfer was a

transfer of the Debtor's property.  The Trustee alleges that the net proceeds from the sale of the

Richmond Hill Property amounted to $106,761.  The Trustee argues that inasmuch as the Debtor

was a twenty-five percent title owner of the Richmond Hill Property, twenty-five percent of the

Sale Proceeds, or $26,690.25, is her property.

The Defendant responds that out of the $106,761 net sale proceeds, he received only

$38,000.  The Defendant argues that the Debtor did not transfer the Sale Proceeds, but instead,

that the brokers involved with the closing of the sale of the Richmond Hill Property disbursed

the Sale Proceeds and directed the Defendant how to endorse the checks.  As noted above in

connection with the Mortgage Proceeds Transfer, here too, the Defendant responds that the Sale

Proceeds Transfer was not a transfer of the Debtor's property because she never held equitable

title to the Richmond Hill Property, and rather held "bare legal title." Def's Opp'n 123. For these reasons, the Defendant argues that the Sale Proceeds Transfer was not a transfer of the Debtor's property. And also for these reasons, the Defendant argues that the Trustee cannot establish that the Debtor transferred her property to the Defendant because the Debtor did not have an equitable interest in the Richmond Hill Property in the first place.

The commencement of a bankruptcy case creates an estate pursuant to Bankruptcy Code Section 541(a), and the definition of property of the estate is broad. As Bankruptcy Code Section 541(a) sets forth, the estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case."

But the Bankruptcy Code also recognizes that a distinction may exist between legal and equitable title. Section 541(d) states:

> Property in which the debtor holds, as of the commencement of the case, only legal title and not an equitable interest . . . becomes property of the estate only to the extent of the debtor's legal title to such property, but not to the extent of any equitable interest in such property that the debtor does not hold.

11 U.S.C. § 541(d). "[T]he bankruptcy estate does not include property of others in which the debtor has some minor interest such as a lien or bare legal title." *Balgobin*, 490 B.R. at 20 (quoting *Sanyo Elec.*, 874 F.2d at 93).

Here, the record shows that the Debtor is named on the deed to the Richmond Hill Property as a twenty-five percent owner, and that she signed the deed conveying the Richmond Hill Property to Mr. Sikder. The record shows that the Defendant transferred $38,000 of the Sale Proceeds into his Citibank account. And the record shows that the balance of the Sale Proceeds was paid to third parties other than the Debtor, by or with the knowledge of the Defendant. That is, the record shows that the Debtor exercised sufficient control over the

54

Richmond Hill Property and held sufficient legal and equitable interests in that property to cause her interest in the Richmond Hill Property to become property of the estate upon the filing of her bankruptcy case.  As a consequence, the Trustee has shown that there is no genuine dispute as to a material fact that the Sale Proceeds Transfer was a transfer of the Debtor's property, and the burden shifts to the Defendant "to come forward with evidence sufficient to create a genuine dispute as to a material fact for trial" as to this element.  *UTA*, 446 B.R. at 49.

The Defendant presented evidence that he views his property as his family's property, and his family's property as his property.  He also presented evidence that the Debtor indirectly received her share of the Sale Proceeds because the Defendant cared for her needs and supported her economically.  The Defendant does not dispute that the Debtor did not directly receive her share of the Sale Proceeds Transfer.  But the Defendant responds that the Sale Proceeds Transfer was not a transfer of the Debtor's property because she never held equitable title to the Richmond Hill Property, and rather held "bare legal title."  This is not sufficient to create a genuine dispute as to a material fact that the Sale Proceeds Transfer was a transfer of the Debtor's property.

### Whether the Trustee Has Established that the Sale Proceeds Transfer Was Made for Less than Fair Consideration or Reasonably Equivalent Value

The second element that the Trustee must establish is that the Sale Proceeds Transfer was made for less than fair consideration or reasonably equivalent value.  The Trustee argues that when the Debtor did not receive her share of the Sale Proceeds, she "gave away her interest in the Premises . . . for absolutely no consideration at all" to her son.  Pl's Mem. 12-13.  The Trustee also argues that the Sale Proceeds Transfer was an intrafamily transfer, and, as noted above, such transfers are viewed with special scrutiny and may be presumed fraudulent.  The

55

Trustee acknowledges that the burden of establishing lack of fair consideration is usually on the party challenging the conveyance.  In addition, she notes that where, as here, a transfer is made for no consideration from one family member to another, "a heavier burden is placed upon the grantee to demonstrate fair consideration for the transfer."  Pl's Mem. 14 (citing *McCombs,* 30 F.3d at 324 (quotations omitted)).  And the Trustee argues that the Sale Proceeds Transfer was made for less than fair consideration or reasonably equivalent value because "intangible psychological benefits" do not constitute reasonably equivalent value, past support provided on the basis of family, moral, and cultural duty does not give rise to an antecedent debt, and promises of future support are not adequate consideration.  Pl's Mem. 20 (quoting *Dietz*, 117 F.3d at 1080).

The Defendant responds, in substance, that he provided equivalent value or fair consideration for the Sale Proceeds Transfer because he "support[ed] the [D]ebtor for everything [from] medicine to food to shelter."  Def's Opp'n 109.  The Defendant states that "[the Debtor] got way more than what she could have gotten on mathematics as she is a mother of a very dutiful son" and that the "Defendant has been financially supporting the [Debtor] for several years."  Def's Opp'n 138, 139.  The Defendant testified that the Debtor has been ill and has not been employed since 2002, and that he has been taking care of her.  And he notes that in those few months before 2002 that the Debtor worked, she made $75-$100 per week.  The Defendant states that in 2004, he refinanced the mortgage on the Richmond Hill Property and used $45,000 to pay his mother's and father's credit card debt.  The Defendant also states that "[e]verything belonged to the [Debtor] through the family as one unit."  Def's Opp'n 133.  More generally, the Defendant notes that his family's "culture does not believe in business between mother and son."

56

Mahia Aff. ¶ 3.  For these reasons, among others, the Defendant argues that the Trustee has not shown that there is no genuine dispute as to a material fact that the Sale Proceeds Transfer was made for less than fair consideration or reasonably equivalent value.

New York courts have concluded that bonds of love and affection do not amount to consideration for transfers among family members.  As one court noted, "family affection which the defendants claim formed the consideration for the intrafamily conveyances does not constitute 'fair consideration' for purposes of [NY DCL]."  *St. Teresa's Nursing Home*, 268 A.D.2d at 422, 702 N.Y.S.2d at 92 (citations omitted).  *See Marine Midland Bank*, 105 Misc. 2d at 770, 433 N.Y.S.2d at 328 (stating that under the NY DCL, "love and affection is insufficient [consideration] as a matter of law").

Bankruptcy courts have similarly determined that bonds of love and affection do not amount to consideration for transfers among family members.  *See In re 375 Park Ave. Assocs.*, 182 B.R. at 694 (finding that "'a promise for love and affection' . . . does not constitute consideration") (quoting *Burrell*, 159 B.R. at 370).

Here, the record shows that the Defendant received the full net proceeds from the sale of the Richmond Hill Property, and disbursed some of those proceeds to third parties, but not the Debtor.  The Debtor's share of the Sale Proceeds, or $26,690.25, constituted the Sale Proceeds Transfer.  In addition, the record shows that the Sale Proceeds Transfer was made between two family members, the Debtor and her son.  The record further shows that the Defendant has contributed significantly to the support of the Debtor since at least 2002, many years before the Debtor made the Sale Proceeds Transfer to him in 2007.  And the record also shows that the Defendant undertook to support his mother from a sense of family, moral, and cultural duty, and

not to satisfy a legal obligation.  Viewed another way, the record establishes that the Debtor, the

Defendant, and Shamsum N. Rimi functioned as an economic unit in the nature of an extended

family.  This does not amount to conveying property or value in exchange for the Sale Proceeds

Transfer, nor does it create an "antecedent debt."  As a consequence, the Trustee has shown that

there is no genuine dispute as to a material fact that the Sale Proceeds Transfer was made for less

than fair consideration or reasonably equivalent value, and the burden shifts to the Defendant "to

come forward with evidence sufficient to create a genuine dispute as to a material fact for trial"

as to this element.  *UTA*, 446 B.R. at 49.

The Defendant presented evidence that he supported the Debtor for many years, based on

their close family relationship of mother and son.  The Defendant also presented evidence that he

named his mother as a twenty-five percent owner of the Richmond Hill Property for those same

reasons.  And the Defendant presented evidence that the Debtor has been ill and never worked,

except for a few months before 2002, and that he cared for her.  Also, the Defendant stated that

in 2004, he refinanced the mortgage on the Richmond Hill Property, and used $45,000 to pay his

mother's and father's credit card debt.  Mahia Aff.

But the Defendant has not come forward with evidence sufficient to show that there is a

genuine dispute as to a material fact that the Sale Proceeds Transfer was made in exchange for

fair consideration or reasonably equivalent value, or that the Sale Proceeds Transfer discharged

an antecedent debt that the Debtor owed to the Defendant.  *See Actrade*, 337 B.R. at 803 (finding

that "the recipient of the debtor's property provides fair consideration by either conveying

property or discharging an antecedent debt, provided that such exchange is a 'fair equivalent' of

the property received or discharged").  The support provided by the Defendant to the Debtor as a

matter of family, moral, and cultural duty is not considered in law to be fair consideration or reasonably equivalent value.  Nor does this support amount to payment on account of an antecedent debt for an intrafamily transfer or give rise to an antecedent debt, in the context of a bankruptcy case.  This is not sufficient to show that there is a genuine dispute as to a material fact that the Sale Proceeds Transfer was made for less than fair consideration or reasonably equivalent value.

Whether the Trustee Has Established that (i) the Debtor Was Insolvent when the Sale Proceeds Transfer Was Made or Was Rendered Insolvent by the Transfer, or (ii) the Debtor Was Engaged in or Was About To Engage in Business for Which her Remaining Property Constituted an Unreasonably Small Capital, or (iii) the Debtor Intended or Believed that She Would Incur Debts Beyond her Ability To Pay as they Matured

The third element that the Trustee must show is that either (i) the Debtor was insolvent when the Sale Proceeds Transfer was made or was rendered insolvent thereby, NY DCL Section 273, or (ii) the Debtor was engaged in or was about to engage in business for which her remaining property constituted an unreasonably small capital, NY DCL Section 274, or (iii) the Debtor intended or believed that she would incur debts beyond her ability to pay as they matured, NY DCL Section 275.  *See Manshul*, 2000 WL 1228866, at *51 (citing NY DCL §§ 273-275).

> *Whether the Trustee Has Established that the Debtor Was Insolvent when the Sale Proceeds Transfer Was Made or Was Rendered Insolvent by the Transfer*

The third element that the Trustee must establish for her NY DCL Section 273 claim is that the Debtor was insolvent when she made the Sale Proceeds Transfer or that she was rendered insolvent by that transfer.  By her Second Cause of Action, the Trustee argues that the Debtor was insolvent when she transferred her interest in the Sale Proceeds or that she was rendered insolvent by that transfer.  She asserts that the Debtor was indebted to various creditors

at the time of the Sale Proceeds Transfer, and was indebted to those creditors when she filed her bankruptcy case. She also asserts that the transfer is avoidable under NY DCL Section 273, and that she is entitled to a judgment setting aside the Debtor's transfer of the Sale Proceeds and determining that the transfer is a fraudulent conveyance under NY DCL Section 273.

The Defendant responds, in substance, that the Debtor was not insolvent when she transferred her interest in the Sale Proceeds to the Defendant because the Debtor "did not have debts during that time in . . . April 2007" which she was unable to pay. Def's Opp'n 128. The Defendant further argues that because there were net proceeds of $106,761, from the sale of the Richmond Hill Property, the Debtor had equity in the form of sale proceeds at the time of the Sale Proceeds Transfer. For these reasons, the Defendant argues that the Trustee has not shown that there is no genuine dispute as to a material fact that the Debtor was insolvent when she transferred her interest in the Sale Proceeds Transfer or was rendered insolvent by that transfer.

Both the New York DCL and the Bankruptcy Code define insolvency. For purposes of NY DCL 273, "insolvency" is defined as "when the present fair salable value of [a person's] assets is less than the amount that will be required to pay his probable liability on his existing debts as they become absolute and matured." NY DCL § 271(1) (McKinney 2014). And the Bankruptcy Code defines being insolvent as the "financial condition such that the sum of such entity's debts is greater than all of such entity's property, at a fair valuation . . . ." 11 U.S.C. § 101(32). "[I]nsolvency is determined by the 'balance sheet test,' in other words whether the debtor's assets were exceeded by her liabilities at the time of the transfer." *Universal Church*, 463 F.3d at 226. And under New York law, giving a mortgage secured by real property does not constitute a transfer of that property. *See Armstrong*, 434 B.R. at 130-31 (stating that under New

60

York law, "[i]t is well settled that a mortgage is a security instrument only, and does not convey title upon the mortgagee") (citing *Witschger*, 255 A.D. 70).

As noted above, insolvency may also be established by presumption. New York law provides that there is a presumption of insolvency where a debtor makes a transfer without fair consideration. As the Second Circuit observed some eighty years ago:

> [T]here is a rule of long standing in the New York courts that a voluntary conveyance made when the grantor is indebted is presumptively fraudulent. We think this means that, if one indebted makes such a transfer, it is presumed, in the absence of some proof to the contrary, that he was then insolvent.

*Feist*, 70 F.2d at 334-35. *See Manshul*, 2000 WL 1228866, at *53 (collecting cases). If the party seeking to avoid a transfer that was made without fair consideration shows that a debtor was indebted at the time of the transfer, the debtor is presumed to have been insolvent at that time, and the burden of persuasion then shifts to the transferee to come forward with proof of the transferor's solvency. *Ventimiglia*, 362 B.R. at 83.

Here, the record shows that the Debtor transferred her share of the Sale Proceeds to the Defendant. It also shows that she made the Sale Proceeds Transfer for less than fair consideration or reasonably equivalent value, and that she did not make it on account of an antecedent debt. And it shows that the transfer was an intrafamily one, from the Debtor to her son. For these reasons, the Debtor is presumed to have been insolvent when she made the Sale Proceeds Transfer. As a consequence, the Trustee has shown that there is no genuine dispute as to a material fact that the Debtor was insolvent at the time of the Sale Proceeds Transfer or was rendered insolvent by the Sale Proceeds Transfer, and the burden shifts to the Defendant "to come forward with evidence sufficient to create a genuine dispute of a material fact for trial" as to this element. *UTA*, 446 B.R. at 49.

The Defendant did not present evidence sufficient to show the Debtor's solvency, and asserts that the Debtor was not insolvent when she made the Sale Proceeds Transfer. The Defendant also argues that the Debtor's solvency at the time of the Sale Proceeds Transfer will be shown at trial. This is not sufficient to show that there is a genuine dispute as to a material fact that the Debtor was insolvent at the time of the Sale Proceeds Transfer or was rendered insolvent by that transfer.

> *Whether the Trustee Has Established that when the Debtor Made the Sale Proceeds Transfer, She Was Engaged in or Was About to Engage in Business for Which her Remaining Property Constituted An Unreasonably Small Capital*

The third element that the Trustee must establish for her NY DCL Section 274 claim is that when she made the Sale Proceeds Transfer, the Debtor was engaged in or was about to engage in business for which her remaining property constituted an unreasonably small capital. By her Fourth Cause of Action, under NY DCL Section 274 and Bankruptcy Code Section 544(b), the Trustee asserts the rights of a creditor with an unsecured claim allowable in the bankruptcy case. She alleges, in substance, that the Sale Proceeds Transfer was made without fair consideration and left the Debtor with an unreasonably small capital.

The Defendant responds that the Debtor "worked . . . before 2002 for maybe a couple of months as a part-time kitchen helper, but that's about it," and earned , at most, modest wages. Pl's Mem., Ex. 13, at 39. He also testified that the Debtor was ill and unable to work. For these reasons, the Defendant argues, in substance, that the Trustee has not established that the Debtor was engaged in business at the time of the Sale Proceeds Transfer for which that transfer left her with an unreasonably small capital.

New York DCL Section 274 permits a trustee to avoid a transfer where, among other

things, the movant shows that the transfer left the transferor in "a financial condition short of equitable insolvency." *Manshul*, 2000 WL 122886, at *54 (citing *Moody*, 971 F.2d at 1070). The test is aimed at transfers that leave the transferor, such as a corporate or other entity, technically solvent but doomed to fail. *See Moody*, 971 F.2d at 1070, n.22 (same).

As one court noted, "[a] claim under [NY] DCL § 274 requires proof that at the time of the transfer the debtor was engaged or about to be engaged 'in a business or transaction' . . . ." *Chin*, 492 B.R. at 129. This provision "appl[ies] to individual and corporate debtors alike." *Laco X-Ray Sys.*, 88 A.D.2d at 432. However, where the debtor, whether an individual or an entity, is not engaged in business at the time of the transfer in question, courts have held that NY DCL Section 274 is inapplicable. *Chin*, 492 B.R. at 129 (noting that the language of NY DCL Section 274 refers to transfers made by a debtor engaged in a business).

Here, the record shows that the Debtor was not employed at the time of the Sale Proceeds Transfer, and that her prior employment was intermittent, for a brief period, and temporary. That is, the record does not show that at the time of the Sale Proceeds Transfer, the Debtor was engaged in or was about to engage in business within the scope of NY DCL Section 274 for which her remaining property constituted "an unreasonably small capital." As a consequence, the Trustee has not shown that there is no genuine dispute as to a material fact that the Debtor was engaged in or was about to engage in business for which the Sale Proceeds Transfer left her with an unreasonably small capital.

> *Whether the Trustee Has Established that the Debtor Intended or Believed that She Would Incur Debts Beyond her Ability to Pay as they Matured*

The third element that the Trustee must establish for her NY DCL Section 275 claim is that when she made the Sale Proceeds Transfer, the Debtor intended or believed that she would

incur debts beyond her ability to pay as they matured.  By her Sixth Cause of Action, under NY

DCL Section 275, the Trustee argues that when the Debtor made the Sale Proceeds Transfer, she

"intended or believed that she would incur debts beyond her ability to pay as they matured," and

that the transfer was made without fair consideration at a time when there were creditors with

claims against the Debtor which were still unpaid as of the petition date.  Pl's Mem. 21.

The Defendant responds that the Trustee has not shown that the Debtor intended to incur

or believed that she would incur debts beyond her ability to pay as they matured.  Def's Opp'n

105.  The Defendant asserts that "the transfer would not be avoidable by any creditors whose

claims arose after the date of the [Sale Proceeds Transfer]."  For these reasons, the Defendant

argues that the Trustee cannot establish that the Debtor intended to incur or believed that she

would incur debts beyond her ability to pay as they matured.

New York DCL Section 275 permits a trustee to avoid a transfer where, among other

things, the movant establishes "that the property remaining after the conveyance is insufficient to

pay [the transferor's] liabilities on existing debts as they become mature."  *Yogel*, 50 F. Supp. 2d

at 246.  Alternatively, New York Debtor and Creditor Law Section 275 allows proof of the

transferor's subjective belief that she will "incur debts beyond [her] ability to pay as they

mature."  *Best Prods.*, 168 B.R. at 52.

Here, the record shows that Proof of Claim 1-1 was filed in this bankruptcy case by

Discover Card in the amount of $13,253.40.  The record also shows that on February 16, 2007,

the Debtor transferred a $5,000 balance to her Discover Card.  Further, the record shows that on

March 19, 2007, the Debtor obtained a $1,000 cash advance on her Discover Card.  In addition,

the record shows that Proof of Claim 6-1 filed by NCO Portfolio Management reflects a debt of

$201.46 that the claimant purchased on December 19, 2006.  That is, the record shows that a creditor existed at the time of the Sale Proceeds Transfer that also existed at the time this bankruptcy case was filed.

But the record does not show that the Debtor held the subjective belief that she would incur debts beyond her ability to pay at the time of the Sale Proceeds Transfer.  The record shows that the Debtor incurred almost $6,000 of debt on her Discover Card between February 2007 and April 2007, and that she made modest regular payments on that balance.  While this evidence may be consistent with the Debtor's holding the subjective belief that she would be unable to pay her debts as they came due, it is also consistent with the Debtor holding the view that she would be able to pay her debts in small increments over an extended period of time.  That is, this evidence, and the other evidence in the record, is not sufficient to show that there is no genuine dispute as to a material fact that the Debtor held the subjective belief, at the time of the Sale Proceeds Transfer, that she would incur debts beyond her ability to pay as they matured.

In summary, for these reasons, and based on the entire record, the Court finds that the Trustee has shown that there is no genuine dispute as to a material fact as to each element of the claim set forth in the Second Cause of Action under NY DCL Section 273 and Bankruptcy Code Section 544(b), and she is entitled to summary judgment on that claim.  And also for these reasons, and based on the entire record, the Court finds that the Trustee has not shown that there is no genuine dispute as to a material fact as to each element of the claims set forth in the Fourth and Sixth Causes of Action under NY DCL Sections 274 and 275 and Bankruptcy Code Section 544(b), and she is not entitled to summary judgment on those claims.

<u>Whether the Trustee Has Established a Right To Recover the Sale Proceeds Transfer Under NY DCL Section 278</u>

The Trustee's Third and Fifth Causes of Action assert claims under NY DCL Sections 273, 274, and 278 and Bankruptcy Code Section 550.  By these causes of action, the Trustee seeks to set aside the Sale Proceeds Transfer under different theories of constructively fraudulent transfer, and to obtain a money judgment in the amount of $26,690.25, representing the amount of the Debtor's share of the Sale Proceeds Transfer.  As with her other claims to recover the Sale Proceeds Transfer, the Trustee argues, in substance, that she is entitled to recover the Sale Proceeds under NY DCL Section 278.

The Defendant responds in substance that the Trustee alleges "the bare minimum facts," and that the Trustee "cannot maintain a claim against the defendants on section 278 as there is no allegation that the defendant was unaware of the fraudulent conveyance."  Def's Opp'n 108-09.

New York DCL Section 278 addresses the rights of creditors whose claims have matured, and provides:

> Where a conveyance or obligation is fraudulent as to a creditor, such creditor, when his claim has matured, may, as against any person except a purchaser for fair consideration without knowledge of the fraud at the time of the purchase, or one who has derived title immediately or mediately from such a purchaser,
>
> a.  Have the conveyance set aside or obligation annulled to the extent necessary to satisfy his claim, or
>
> b.  Disregard the conveyance and attach or levy execution upon the property conveyed.

NY DCL § 278 (McKinney 2014).  For these purposes, a "'[c]onveyance' includes every payment of money [or] . . . transfer."  NY DCL § 270 (McKinney 2014).

Like NY DCL Section 278, Bankruptcy Code Section 550 addresses the liability of a

transferee of an avoided transfer, and provides that:

> (a)    Except as otherwise provided in this section, to the extent that a transfer is avoided under section 544 . . . of this title, the trustee may recover, for the benefit of the estate, the property transferred, or, if the court so orders, the value of such property, from–
>
> > (1)    the initial transferee of such transfer or the entity for whose benefit such transfer was made; or
> >
> > (2)    any immediate or mediate transferee of such initial transferee.

11 U.S.C. § 550(a).

As discussed above, the record shows that the Defendant received the Sale Proceeds Transfer, and that he did not provide fair consideration or reasonably equivalent value in return. As also described above, the record shows that the Debtor was insolvent or was rendered insolvent when she made the Sale Proceeds Transfer. For these reasons, the Trustee has shown that there is no genuine dispute as to a material fact that she may set aside the Sale Proceeds Transfer and recover the value of that transfer under NY DCL Sections 273 and 278 and Bankruptcy Code Sections 544(b) and 550(a). As a consequence, the burden shifts to the Defendant "to come forward with evidence sufficient to create a genuine dispute as to a material fact for trial" as to this element. *UTA*, 446 B.R. at 49.

The Defendant did not present evidence sufficient to create a genuine dispute as to a material fact that the transfer was made for fair consideration or reasonably equivalent value or on account of an antecedent debt, and that the Debtor was not insolvent when she made the Sale Proceeds Transfer or was rendered insolvent by that transfer.

In summary, for these reasons, and based on the entire record, the Court finds that the Trustee has shown that there is no genuine dispute as to a material fact as to each element of the

claim set forth in the Third Cause of Action under NY DCL Sections 273 and 278 and

Bankruptcy Code Sections 544(b) and 550(a), and she is entitled to summary judgment on that

claim. And also for these reasons, and based on the entire record, the Court finds that the

Trustee has not shown that there is no genuine dispute as to a material fact as to each element of

the claim set forth in the Fifth Cause of Action under NY DCL Sections 274 and 278 and

Bankruptcy Code Section 550(a), and she is not entitled to summary judgment on that claim.

_The Sale Proceeds Transfer - Actual Fraud_

The Trustee asserts one cause of action seeking to avoid and recover the Sale Proceeds

Transfer as an actually or intentionally fraudulent transfer. By her Seventh Cause of Action,

asserted under Bankruptcy Code Section 544(b) and NY DCL Section 276, the Trustee seeks to

avoid and recover the Sale Proceeds Transfer as a fraudulent conveyance made with actual intent

to hinder, delay, or defraud the Debtor's creditors.

New York DCL Section 276 provides that "every conveyance made and every obligation

incurred with actual intent . . . to hinder, delay, or defraud either present or future creditors, is

fraudulent as to both present and future creditors." This Section authorizes a trustee, among

others, "to avoid transactions which have the purpose or effect of removing property from a

debtor's estate which should properly be used to repay creditors." _Churchill Mortg._, 256 B.R. at

675.

The Trustee must establish three elements to succeed on her NY DCL Section 276 claim.

As one court noted, these are as follows:

> To prevail on a claim under section 276 of the New York Debtor and Creditor
> law, the Trustee must establish that (1) the thing transferred has value out of
> which the creditor could have realized a portion of its claim; (2) that this thing
> was transferred or disposed of by debtor; and (3) that the transfer was done with

actual intent to defraud.

*Flutie*, 310 B.R. at 56 (citing *Gentry*, 249 B.R. at 243). That is, as distinguished from her claims grounded in constructive fraud under NY DCL Sections 273, 274, and 275, this claim requires the Trustee to show that the Debtor had the actual intent to defraud her creditors.

As noted above, because actual fraudulent intent is often difficult to prove, courts may rely on badges or indica of fraud to "give[] rise to an inference of intent." *Sharp*, 403 F.3d at 56 (citation omitted). To prevail on this claim and avoid the Sale Proceeds Transfer as an actually fraudulent transfer under NY DCL Section 276, the Trustee must show that when the Debtor made the Sale Proceeds Transfer, she actually intended to hinder, delay, or defraud either present or future creditors. And to prevail on summary judgment, the Trustee must establish that there is no genuine dispute as to a material fact with respect to each element of her claim.

Whether the Trustee Has Established that the Sale Proceeds Transfer Has Value from Which a Creditor Could Have Realized a Portion of its Claim

The first element that the Trustee must establish is that the Sale Proceeds Transfer has value from which a creditor could have realized a portion of its claim. The Trustee argues that the Debtor's share of the Sale Proceeds consisted of funds in the amount of $26,690.25, and that those funds amount to an asset from which a creditor could realize a portion of its claim.

The Defendant responds, among other things, that "[the p]roperty alleged to have been fraudulently transferred [is] not property of the estate." Def's Resp. ¶ 50. The Defendant also responds, in substance, that the Debtor held only legal title to the Richmond Hill Property, not equitable title, and therefore the Sale Proceeds do not have value from which a creditor could have realized a portion of its claim because the Debtor did not have an equitable interest in these sums. For these reasons, among others, the Defendant argues that the Trustee cannot establish

69

that the Sale Proceeds Transfer has value from which a creditor could have realized a portion of its claim.

Like "property of the estate" under the Bankruptcy Code, "value" under NY DCL Section 276 is broadly construed.  While Bankruptcy Code Section 548 defines "value" for purposes of that section, the NY DCL and the Bankruptcy Code do not define the term "value" for purposes of the relief sought here.  Many courts addressing transfers under NY DCL Section 276 view "value" in the context of an exchange of property conveyed or an antecedent debt being satisfied as part of the transfer.  As the Second Circuit has explained, "the fact-finder must first attempt to measure the economic benefit that the debtor indirectly received from the entire transaction, and then compare that benefit to the value of the property the debtor transferred." *HBE Leasing Corp.*, 48 F.3d at 638-39.

Here, as noted above, the record shows that the Debtor exercised legal and equitable control over the Richmond Hill Property.  Also, as noted above, the record shows that the Debtor's share of the Sale Proceeds, or $26,690.25, is property of the estate.  As a consequence, the Trustee has shown that there is no genuine dispute as to a material fact that the Sale Proceeds Transfer was a transfer of the Debtor's property or whether the transfer has value from which a creditor could have realized a portion of its claim, and the burden shifts to the Defendant "to come forward with evidence sufficient  to create a genuine dispute as to a material fact for trial" as to this element.  *UTA*, 446 B.R. at 49.

The Defendant, as noted above, presented evidence indicating, among other things, that the Debtor did not have an equitable interest in the Richmond Hill Property, so she could not have an interest in the Sale Proceeds.  This is not sufficient to create a genuine dispute as to a

70

material fact that the Sale Proceeds Transfer was a transfer of the Debtor's property, and likewise, the entire record is not sufficient to create a genuine dispute that the Sale Proceeds Transfer has value from which a creditor could have realized a portion of its claim.

<u>Whether the Trustee Has Established that the Sale Proceeds Transfer Was Made by the Debtor</u>

The second element that the Trustee must establish is that the Sale Proceeds Transfer was made by the Debtor.  The Trustee argues that because the Debtor was a twenty-five percent owner of the Richmond Hill Property, twenty-five percent of the Sale Proceeds, of $26,690.25, is her property.  And she asserts that as a result of the Sale Proceeds Transfer, "the Debtor gave away her interest in the [Richmond Hill Property], a sizeable asset, to the Defendant."  Pl's Mem. 12-13.

The Defendant responds that the "Debtor did not transfer any interest in real property," and reasons that because the family is one unit, and any benefit conferred on one family member inures to all.  Def's Opp'n 132.  For these reasons, the Defendant argues, in substance, that the Trustee cannot establish that the Sale Proceeds Transfer was made by the Debtor.

Bankruptcy Code Section 541(a) defines "property of the estate," and that definition is broad.  As one court has explained, "[u]nder § 541(a), the commencement of a bankruptcy case creates an estate, which includes, subject to certain exceptions, 'all legal or equitable interests of the debtor in property as of the commencement of the case,' regardless of where the property is located or who holds it." *Balgobin*, 490 B.R. at 20.

Here, the record shows that the Debtor executed the deed to the Richmond Hill Property as a twenty-five percent owner and executed the deed conveying the Richmond Hill Property from the previous owners to the Debtor, the Defendant, and Shamsum N. Rimi.  The record also

71

shows that on January 5, 2007, the Debtor, the Defendant, and Shamsum N. Rimi gave a mortgage to Countrywide Mortgage, to secure a home equity loan in the amount of $150,000.

And the record shows that the Defendant received Sale Proceeds in the amount of $38,000, and distributed the remainder of the Sale Proceeds to third parties. The record does not show that the Debtor received her share of the Sale Proceeds. As a consequence, the Trustee has shown that there is no genuine dispute as to a material fact that the Sale Proceeds Transfer was made by the Debtor, and the burden shifts to the Defendant "to come forward with evidence sufficient to create a genuine dispute as to a material fact" for trial as to this element. *UTA*, 446 B.R. at 49.

The Defendant argues that the Sale Proceeds Transfer was not a transfer of the Debtor's property because those funds were not the Debtor's property, and presented evidence of the Defendant's belief, based on his family, moral, and cultural duty, that the Sale Proceeds belonged to the family as a unit. But that evidence is not sufficient to show that there is a genuine dispute as to a material fact that the Sale Proceeds Transfer was made by the Debtor.

Whether the Trustee Has Established that the Sale Proceeds Transfer Was Made with Actual Intent To Hinder, Delay, or Defraud

The third element that the Trustee must establish is that the Sale Proceeds Transfer was made with actual intent to hinder, delay, or defraud the Debtor's creditors. The Trustee argues that this element may be established by circumstantial evidence, through the presence of "badges of fraud," including the Debtor not receiving her share of the Sale Proceeds, by which she "gave away her interest in the [Richmond Hill Property] . . . to the Defendant for absolutely no consideration . . . when she was indebted to many creditors." Pl's Mem. 12-13.

The Defendant responds that the Amended Complaint fails to plead actual fraud

72

sufficient "to satisfy [the] heightened specificity requirements of Federal Rule of Civil Procedure governing allegations of fraud."  Def's Opp'n 113.  The Defendant states that "there is nothing [in] the complaint suggestive of the 'actual intent.'"  Def's Opp'n 114.  The Defendant asserts, among other things, that the Debtor was not insolvent at the time of the Sale Proceeds Transfer, and that the Trustee did not provide evidence that the Debtor retained control of the "property."  Rather, the Defendant argues that "the evidence is that the debtor is totally dependent on the son for everything."  Def's Opp'n 114.  For these reasons, the Defendant argues that the Trustee cannot establish that the Debtor made the Sale Proceeds Transfer with actual intent to hinder, delay or defraud creditors.

Claims under NY DCL Section 276 are grounded in actual fraud and must be "sufficiently pled to satisfy the requirements of Rule 9(b)."  *Merkin*, 440 B.R. at 257.  New York Debtor and Creditor Law Section 276 allows the avoidance of any "conveyance made . . . with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors."  One court noted that under this Section, "courts differ as to whether a trustee must also plead a *transferee's* fraudulent intent.  *Merkin*, 440 B.R. at 257 (emphasis in original, citation omitted).  And "[t]o adequately plead intent, the Trustee must allege 'facts that give rise to a strong inference of fraudulent intent.' . . . Such facts may either (1) demonstrate that defendants had both the motive and the opportunity to commit fraud; or (2) constitute strong circumstantial evidence of conscious misbehavior or recklessness."  *Merkin*, 440 B.R. at 258 (citations omitted).

Actual fraudulent intent is rarely demonstrated by direct evidence and "may be inferred from the circumstances surrounding the transaction."  *Flutie*, 310 B.R. at 56.  As the Second

Circuit has explained:

> Due to the difficulty of proving actual intent to hinder, delay, or defraud creditors, the pleader is allowed to rely on 'badges of fraud' to support his case, i.e., circumstances so commonly associated with fraudulent transfers that their presence gives rise to an inference of intent.

*Sharp*, 403 F.3d at 56 (quoting *Brodsky*, 257 A.D.2d at 529).  Payment of consideration by a transferee "is immaterial where the transferor has the actual intent to hinder, delay, and defraud creditors." *Baxter*, 27 F. Supp. 54, 56 (S.D.N.Y. 1939) (citing NY DCL § 276).

At the same time, a "badge of fraud" is not the same as a finding of fraud.  "Because they are only evidence of the likelihood of fraud, badges of fraud are not given equal weight; and sometimes the circumstances indicate they should be given no weight at all." *Stanton*, 457 B.R. at 94.

Here, as with the Mortgage Proceeds Transfer, the record shows that there is some evidence of certain "badges of fraud" associated with the Sale Proceeds Transfer.  This includes evidence that the Sale Proceeds Transfer was made for no consideration, because any support the Defendant provided to the Debtor was made out of a sense of family, moral, and cultural duty rather than a legal obligation, as well as evidence that the Sale Proceeds Transfer was made between parties who share a close relationship, that of mother and son.  And this also includes evidence that the Debtor retained the use and enjoyment of the Ozone Park Property after the Sale Proceeds Transfer occurred.  But this evidence, viewed in the context of the entire record, does not amount to strong circumstantial evidence of the Defendant's or the Debtor's "motive and . . . opportunity to commit fraud" or "conscious misbehavior or recklessness." *Saba Enters.*, 421 B.R. at 642.  And it is not sufficient to show that there is no genuine dispute as to a material fact that the Debtor made the Sale Proceeds Transfer with actual intent to hinder, delay, or

74

defraud her creditors.

In summary, for these reasons, and based on the entire record, the Court finds that the Trustee has not shown that there is no genuine dispute as to a material fact as to each element of the claim set forth in the Seventh Cause of Action under NY DCL Section 276 and Bankruptcy Code Section 544(b), and she is not entitled to summary judgment on that claim.

_The Sale Proceeds Transfer - Turnover and Accounting_

By her First Cause of Action, asserted under Bankruptcy Code Section 542(a), the Trustee seeks a judgment directing the Defendant to account for and turnover $26,690.25, representing the Debtor's share of the Sale Proceeds. Here, too, the Trustee alleges that the Defendant is in possession, custody, or control of the Debtor's share of these funds, that the proceeds are property of the estate that the Trustee may use, and that the Sale Proceeds are not of inconsequential value or benefit to estate. And to prevail on summary judgment, the Trustee must show that there is no genuine dispute as to a material fact with respect to each element of her claim.

The Defendant responds, in substance, that the Sale Proceeds are not property of the estate, and for that reason, are "not amenable to recovery under Section 542." Def's Opp'n 102.

The Bankruptcy Code provides tools for trustees to marshal the assets of an estate, and a turnover claim under Section 542 is one of those tools. "Congress envisioned the turnover provision of § 542 . . . to apply to tangible property and money due to the debtor without dispute which are fully matured and payable on demand." *Charter Co.*, 913 F.2d at 1579 (citing *Whiting Pools, Inc.*, at 202-03). But not every tool is useful at every stage in a bankruptcy case. As one bankruptcy court has noted, "in order to state a claim for turnover of property under § 542, a

plaintiff must allege that transfer of the property has already been avoided or that the property is otherwise the undisputed property of the bankruptcy estate." *Student Fin. Corp.*, 335 B.R. at 554.

Stated another way, relief under Section 542 is not available where the transfer is the subject of a trustee's pending claim of fraudulent conveyance, and that claim is disputed and has not been resolved by the court. As that court found, "where the transfer of the interests in question . . . has not yet been avoided, and the interests are very much in dispute . . . [t]urnover actions cannot be used to demand assets." *Student Fin. Corp.*, 335 B.R. at 554. Where "title to the property is in dispute, a claim for turnover cannot arise at this stage." *Amer. Bus. Fin. Svcs., Inc.*, 361 B.R. at 761. Otherwise, a genuine risk of a double recovery could be present.

Bankruptcy Code Section 542(a) requires a non-custodian third-party to turnover property if it can be used by the trustee under Bankruptcy Code Section 363 or exempted by the debtor under Bankruptcy Code Section 522. Accordingly, to recover on her claims under Section 542(a), the Trustee must establish three elements: "(1) the property is in the possession, custody or control of another entity; (2) the property can be used in accordance with the provisions of section 363; and (3) the property has more than inconsequential value to the debtor's estate." *DBSI, Inc.*, 468 B.R. at 669 (citing statute). In an action under Section 542(a), "it is the Trustee's burden to establish every element of the cause of action." *Steel Wheels Transport, LLC*, 2011 WL 5900S958, at *5. But the Trustee is only entitled to one recovery. As one bankruptcy court observed:

> Although the Trustee here seeks entry of a judgment . . .for the alleged cash surrender value of the Policies . . .and entry of a judgment requiring and directing [the transferee] to transfer and turn over the Policies to the Trustee as property of the estate, he cannot be entitled to both, which would represent a double recovery.

*Centennial Textiles, Inc.*, 220 B.R. at 176.

<u>Whether the Trustee Has Established that the Sale Proceeds Are in the Defendant's Possession, Custody, or Control</u>

The first element that the Trustee must establish is that the Sale Proceeds are in the Defendant's possession, custody, or control.  The Trustee alleges in her First Cause of Action that the Defendant "is in possession, custody or control, during the case," of the Debtor's share of the Sale Proceeds, in the amount of $26,690.25.  Am. Compl. ¶ 23.  For these reasons, the Trustee asserts that the Defendant is required under Section 542(a) to deliver and account to her for the Sale Proceeds.

The Defendant responds that the Sale Proceeds are not property of the estate, and for that reason, are "not amenable to recovery under Section 542."  Def's Opp'n 102.  The Defendant argues that Bankruptcy Code Section 542(a) "does not create a cause of action, it is a procedural device to bring property of the estate back to the estate."  Def's Opp'n p. 115.  For these reasons, the Defendant argues, in substance, that the Trustee cannot establish that the Sale Proceeds are in the possession, custody or control of the Defendant.

Bankruptcy Code Section 542(a) refers to property that is in the third-party's possession, custody or control, during the case.  In applying Section 542, some courts have concluded that possession when the claim is asserted is a necessary element of a turnover claim.  For example, in *Pyatt*, the court concluded that funds in the Debtor's checking account on the petition date were no longer in the Debtor's control when checks were honored post-petition, and held that possession at the time of turnover is required.  *Pyatt*, 486 F.3d at 429.

Other courts have concluded that while possession at some point during the debtor's bankruptcy case is required, possession is not necessary at the time that a turnover claim is

77

asserted.  For example, in *Shearin*, the court determined that Section 542(a) to applied to any entity that had possession, custody or control of estate property during the entire bankruptcy case, and concluded that possession of the Debtor's money market funds at time of turnover demand was not required.  *Shearin*, 224 F.3d at 356.  And similarly, in *USA Diversified Products*, the court found that Section 542(a) applied to any entity that had possession, custody or control of estate property during the entire bankruptcy case, and concluded that possession of the debtor's money market funds at the time of the turnover demand was not required.  *USA Diversified Prods.*, 100 F.3d at 56.  *See Jacobs*, 394 B.R. at 674 (concluding that where the trustee established that property of the debtor was transferred to an account held solely in the defendant's name, the funds came into her possession, custody, or control for purposes of Section 542(a)).  *See also Moon*, 385 B.R. at 556 n.42 (noting that courts have reached different conclusions as to the applicability of Section 542(a) to "entities who do not have possession of the property at the time turnover is sought").

Here, the record shows that the Sale Proceeds Transfer occurred on April 5, 2007, the date when the sale of the Richmond Hill Property closed.  The record also shows that the Defendant received the net sale proceeds at the closing of the sale of the Richmond Hill Property on April 5, 2007.  And the record shows that the Debtor did not receive her share of those proceeds at the closing.  As a consequence, the Trustee has shown that there is no genuine dispute as to a material fact that the Sale Proceeds are in the Defendant's possession, custody, or control, and the burden shifts to the Defendant "to come forward with evidence sufficient to create a genuine dispute as to a material fact" for trial as to this element.  *UTA*, 446 B.R. at 49.

The Defendant argues that the Sale Proceeds Transfer was not a transfer of the Debtor's

property because those funds were not the Debtor's property, and presented evidence of the

Defendant's belief, based on his family, moral, and cultural duty, that the Sale Proceeds

belonged to the family as a unit.  But that evidence is not sufficient to show that there is a

genuine dispute as to a material fact that the Sale Proceeds are in the Defendant's possession,

custody, or control.

<u>Whether the Trustee Has Established that the Sale Proceeds Are Estate Property that the Trustee
May Use, Sell, or Lease</u>

The second element that the Trustee must establish is that the Sale Proceeds are property

of the estate that the Trustee may use, sell, or lease.  The Trustee alleges in her First Cause of

Action that she may use the Sale Proceeds "to pay creditors of this estate."  Am. Compl. ¶ 26.

For these reasons, the Trustee alleges that the Defendant is required under Section 542(a) to

deliver and account to her for the Sale Proceeds.

The Defendant responds that the Sale Proceeds are not property of the estate, and for that

reason, are "not amenable to recovery under Section 542."  Def's Opp'n p. 102.  And the

Defendant also responds that "the Debtor might have had exemptions" with regard to the Sale

Proceeds Transfer.  Def's Opp'n 64.  For these reasons, the Defendant argues, in substance, that

the Trustee cannot establish that the Sale Proceeds are property of the estate that the Trustee may

use.

Bankruptcy Code Section 541(a)(3) provides that property of the estate includes "any

interest in property that the trustee recovers under section . . . 550 . . . of this title."  As noted

above, the definition of property of the estate is broad.  One court notes that "[i]n this regard,

property that has been fraudulently or preferentially transferred does not become property of the

estate until it has been recovered."  *Telegent*, 325 B.R. at 137 (citations omitted).

Here, the record shows that the Trustee identified the Sale Proceeds as property of the estate that is subject to turnover.  As noted above, this Court has found that the Sale Proceeds are property of the estate based on the Debtor's twenty-five percent ownership of the Richmond Hill Property.  Also as noted above, this Court found that the Trustee is entitled to avoid the Sale Proceeds Transfer under NY DCL Section 273 and Bankruptcy Code Section 544(b), and recover the Sale Proceeds under Bankruptcy Code Section 550.  As a consequence, the Trustee has shown that there is no genuine dispute as to a material fact that the Sale Proceeds are property of the estate that the Trustee may use, sell, or lease, and the burden shifts to the Defendant "to come forward with evidence sufficient to create a genuine dispute as to a material fact" for trial as to this element.  *UTA*, 446 B.R. at 49.

The Defendant argues that the Sale Proceeds Transfer was not a transfer of the Debtor's property because those funds were not the Debtor's property, and presented evidence of the Defendant's belief, based on his family, moral, and cultural duty, that the Sale Proceeds belonged to the family as a unit.  But that evidence is not sufficient to show that there is a genuine dispute as to a material fact that the Sale Proceeds are property of the estate that the Trustee may use, sell, or lease.

Whether the Trustee Has Established that the Property Has More than Inconsequential Value to the Debtor's Estate

The third element that the Trustee must establish is that the Sale Proceeds have more than inconsequential value to the Debtor's estate.  The Trustee alleges in her First Cause of Action that the Sale Proceeds are "not of inconsequential value to the estate."  Am. Compl. ¶ 27.  For these reasons, the Trustee alleges that the Defendant is required under Section 542(a) to deliver and account to her for the Sale Proceeds.

The Defendant responds that the Sale Proceeds are not property of the estate, and for that reason, are "not amenable to recovery under Section 542." Def's Opp'n 102. For these reasons, the Defendant argues, in substance, that the Trustee cannot establish that the Sale Proceeds are not of inconsequential value to the estate.

One measure of determining if property is of inconsequential value to the estate is to compare the amount of claims filed in a debtor's bankruptcy case to the value of the property that the trustee seeks to recover. *Calvin*, 329 B.R. at 597 (concluding that where the value of the property sought to be turned over represented seven percent of all claims, that was "not an insignificant portion" and the property was not of inconsequential value to the estate).

Here, the record, including the claims register in the Debtor's bankruptcy case, shows that a total of $42,326.37 in unsecured claims have been filed. There are no secured or priority claims, and the bar date has passed. The Sale Proceeds, in the amount of $26,690.25, is a significant fraction of that amount, and under any appropriate measure, these funds are not of inconsequential value to the estate. As a consequence, the Trustee has shown that there is no genuine dispute as to a material fact that the Sale Proceeds are not of inconsequential value to the estate, and the burden shifts to the Defendant "to come forward with evidence sufficient to create a genuine dispute as to a material fact" for trial as to this element. *UTA*, 446 B.R. at 49.

Here, too, the Defendant argues that the Sale Proceeds Transfer was not a transfer of the Debtor's property because those funds were not the Debtor's property, and presented evidence of the Defendant's belief, based on his family, moral, and cultural duty, that the Sale Proceeds belonged to the family as a unit. But that evidence is not sufficient to show that there is a genuine dispute as to a material fact that the Sale Proceeds are not of inconsequential value to

81

the estate.

In summary, for these reasons, and based on the entire record, the Court finds that the Trustee has shown that there is no genuine dispute as to a material fact as to each element of the claim set forth in the First Cause of Action under Bankruptcy Code Section 542(a), and she is entitled to summary judgment on that claim.

### Attorneys' Fees Under NY DCL Section 276-a

By her Fifteenth Cause of Action, the Trustee seeks a judgment under NY DCL Section 276-a awarding attorneys' fees incurred in this action. New York Debtor and Creditor Law Section 276-a provides for the recovery of attorneys' fees in an action under NY DCL Section 276 "to set aside a conveyance by a debtor, where such conveyance is found to have been made by the debtor and received by the transferee with actual intent . . . to hinder, delay or defraud either present or future creditors." The Trustee argues that she is entitled to an award of attorneys' fees because she has shown that the Debtor and the Defendant both actually intended the Mortgage Proceeds Transfer to hinder, delay, or defraud creditors. The Defendant responds that he "lacks sufficient knowledge or expertise to respond to that legal conclusion adequately." Adv. Pro. 11-1520, Dkt. 96, Answer ¶¶ 94-95.

The Second Circuit has observed that an award of attorneys' fees under NY DCL 276-a must be based on a finding of actual fraudulent intent on the part of *both* the transferor *and* the transferee. The Second Circuit notes that before awarding attorneys' fees against a defendant, the court must make certain findings, including:

> [that] when a  the conveyance is found to have been made by the debtor and received by the transferee with actual intent, as distinguished from intent presumed in law, to hinder, delay or defraud either present or future creditors . . . the court must make an explicit finding of actual intent to defraud; imputed fraud

82

does not satisfy § 276-a.

*Carey v. Crescenzi*, 923 F.2d 18, 21 (2d Cir. 1991) (quotation and citation omitted).  *See*

*Ackerman v. Kovac (In re All Am. Petroleum Corp.)*, 259 B.R. 6, 20 (Bankr. E.D.N.Y. 2001)

(stating that "[p]ursuant to [NY DCL] § 276-a, a party that succeeds in avoiding a transfer on the

grounds of actual fraud under § 276 is entitled to recover its attorney's fees").

Here, the Court has already determined that the Trustee is not entitled to summary

judgment on her NY DCL Section 276 claim, because she has not shown that there is no genuine

dispute as to a material fact that the Mortgage Proceeds Transfer was made with actual intent to

hinder, delay, or defraud the Debtor's creditors.  For substantially the same reasons, the record

does not show that the Sale Proceeds Transfer was made by the Debtor and received by the

Defendant with actual intent to hinder, delay, or defraud the Debtor's creditors.  As a

consequence, the Trustee has not shown that there is no genuine dispute as to a material fact that

she is entitled to an award of attorneys' fees under NY DCL Section 276-a.

In summary, for these reasons, and based on the entire record, the Court finds that the

Trustee has not shown that there is no genuine dispute as to a material fact as to each element of

the claim set forth in the Fifteenth Cause of Action under NY DCL Section 276-a, and she is not

entitled to summary judgment on that claim.

<u>*Unjust Enrichment*</u>

By her Sixteenth Cause of Action, the Trustee alleges that the Defendant's actions caused

him to be unjustly enriched.  She seeks a judgment against the Defendant in the amount of

$64,190.25, which is the sum of the Mortgage Proceeds and the Sale Proceeds.

To prevail on her claim for unjust enrichment under New York law, the Trustee must

show that "(1) defendant was enriched, (2) at plaintiff's expense, and (3) equity and good

conscience militate against permitting defendant to retain what plaintiff is seeking to recover."

*Briarpatch Ltd. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004), *cert. denied*, 544

U.S. 949 (2005).  "Said another way, the plaintiff must prove (i) defendant was enriched and (ii)

such enrichment was unjust."  *Chin*, 492 B.R. at 125.  And to prevail on summary judgment, the

Trustee must establish that there is no genuine dispute as to a material fact with respect to each

element of her claim.

Whether the Defendant Was Enriched

      The first element that the Trustee must establish is that the Defendant was enriched by

the Sale Proceeds Transfer and the Mortgage Proceeds Transfer (together, the "Transfers").  The

Trustee alleges that the Defendant was unjustly enriched in the amount of $64,190.25, which

corresponds to the sum of the Transfers.

      The Defendant responds, in substance, that he could not have been enriched at the

Debtor's expense because the Debtor held only legal title to the Richmond Hill Property.  The

Defendant also responds, among other things, that the Trustee "fails to make a case of unjust

enrichment" because the Trustee does not plead actual injury, an "element of unjust enrichment."

Def's Opp'n 116.  And the Defendant responds that where there is a statutory basis for recovery,

here New York Debtor and Creditor Law, unjust enrichment is not available as an alternative

grounds for relief.  For these reasons, among others, the Defendant argues that the Trustee

cannot establish that the Defendant was enriched by the Transfers.

      Here, "the issue is whether a trier of fact could find for the Trustee on her claim for

unjust enrichment based on the evidence submitted."  *Chin*, 492 B.R. at 125.  As one court has

observed:

> Generally, courts will look to see if a benefit has been conferred on the defendant
> under mistake of fact or law, if the benefit still remains with the defendant, if
> there has been otherwise a change of position by the defendant, and whether the
> defendant's conduct was tortious or fraudulent  (Restatement, Restitution, §§ 1,
> 142, esp. Comment B; id., § 155, including Comment B).

*Paramount Film Distr. Corp. v. State of New York,* 30 N.Y.2d 415, 421, 334 N.Y.S.2d 388, 393

285 N.E.2d 695, 698 (N.Y. 1972), *mod. on other grounds,* 31 N.Y.2d 678, 336 N.Y.S.2d 911,

288 N.E.2d 811, *cert. denied*, 414 U.S. 829 (1973).  That is, at a minimum, the Trustee must

show that a benefit has been conferred on the Defendant, and that the benefit still remains with

the Defendant.

As described above, the record shows that the Debtor made the Transfers to the

Defendant, and that the Transfers were made for less than fair consideration or reasonably

equivalent value.  As a consequence, the Trustee has shown that there is no genuine dispute as to

a material fact that the Defendant was enriched by the Transfers, and the burden shifts to the

Defendant "to come forward with evidence sufficient to create a genuine dispute as to a material

fact for trial" as to this element.  *UTA*, 446 B.R. at 49.

The Defendant, as also described above, presented evidence that it is his family, moral,

and cultural duty to support the Debtor.  And the Defendant presented evidence of some benefit

to the Debtor, who continued to reside at the Richmond Hill Property before it was sold, but not

evidence of a benefit of the kind recognized in law as fair consideration.  This is not sufficient to

create a genuine dispute as to a material fact that the Defendant was enriched by the Transfers.

Whether the Defendant Was Enriched at the Trustee's Expense

The second element that the Trustee must establish is whether the Defendant was

enriched by the Transfers at her expense.  The Trustee alleges that the Defendant was unjustly

enriched, and the Debtor incurred an expense, in the amount of $64,190.25, which represents the

sum of the Transfers.

The Defendant responds, as noted above, that the Trustee "fails to make a case of unjust

enrichment" because the Trustee does not plead actual injury, an "element of unjust enrichment."

Def's Opp'n 116.  And the Defendant responds that where there is a statutory basis for recovery,

here New York Debtor and Creditor Law, unjust enrichment is not available as an alternative

grounds for relief.  For these reasons, among others, the Defendant argues, in substance, that the

Trustee cannot establish that the Defendant was enriched by the Transfers at the Trustee's

expense.

Here, similar to the first element, the Court must consider whether the Trustee has

incurred an expense, and whether that expense still remains with the Trustee.  And because this

is a cause of action grounded in equity, "the enrichment must be such that in equity and good

conscience its retention would be unjust."  *Mayer v. Bishop*, 158 A.D.2d 878, 880, 551 N.Y.S.2d

673, 675 (3d Dep't 1990), *appeal denied*, 76 N.Y.2d 704, 559 N.Y.S.2d 983, 559 N.E.2d 677

(N.Y. 1990).

The record shows, as noted above, that the Debtor made the Transfers to the Defendant

for no consideration.  As a consequence, the Defendant was enriched at the Debtor's expense,

those funds could have been used to satisfy her creditors, and that expense is now borne by the

Trustee and the Debtor's bankruptcy estate.  For these reasons, the Trustee has shown that there

is no genuine dispute as to a material fact that the Defendant was enriched by the Transfers at the

Trustee's expense, and the burden shifts to the Defendant "to come forward with evidence

sufficient to create a genuine dispute as to a material fact for trial" as to this element.  *UTA*, 446 B.R. at 49.

As noted above, the Defendant presented evidence indicating that the Debtor did not personally perform all of the obligations or claim all of the benefits associated with a mortgage. The Defendant also presented evidence of his belief that it is his family, moral, and cultural duty to support the Debtor.  And the Defendant presented evidence of some benefit to the Debtor, who continued to reside at the Richmond Hill Property before it was sold, but not evidence of a benefit of the kind recognized in law as fair consideration.  This is not sufficient to create a genuine dispute as to a material fact that the Defendant was enriched by the Transfers at the Trustee's expense.

<u>Whether Equity and Good Conscience Militate Against Permitting the Defendant To Retain the Transfers</u>

The third element that the Trustee must establish is whether equity and good conscience militate against the Defendant retaining the Transfers.  The Trustee alleges that the Defendant was unjustly enriched in the amount of $64,190.25, which represents the sum of the Transfers, and argues, in substance, that equity and good conscience do not weigh against the recovery of the Transfers under the facts and circumstances present here.

The Defendant responds, among other things, that the Trustee "fails to make a case of unjust enrichment" because the Trustee does not plead actual injury, an "element of unjust enrichment."  Def's Opp'n 117.  And the Defendant responds that where there is a statutory basis for recovery, here New York Debtor and Creditor Law, unjust enrichment is not available as an alternative grounds for relief.  For these reasons, among others, the Defendant argues that the Trustee cannot establish that equity and good conscience militate against permitting the

Defendant to retain the Transfers.

An unjust enrichment claim "is undoubtedly equitable and depends upon broad considerations of equity and justice." *Paramount Film Distr. Corp.,* 30 N.Y.2d at 421. As one court noted, "[a]n indispensable ingredient" of an unjust enrichment claim "is that as between the two parties involved there must be an injustice." *Songbird Jet Ltd. v. Amax, Inc.*, 581 F. Supp. 912, 926 (S.D.N.Y. 2012).

Courts have paid heed to many considerations in determining whether grounds exist for this relief, including considerations that go beyond the questions of whether one party gained at another party's expense. This may call for consideration of the particular facts and circumstances, including the context of the transactions at issue and the relationships among the parties. As another court observed:

> We are aware that to prove an unjust enrichment claim more is required than simply showing that one party received a benefit (see, *Restatement [Second] of Restitution § 1,* comment c), that the enrichment must be such that in equity and good conscience its retention would be unjust (*see, Paramount Film Distr. Corp. v. State of New York,* 30 N.Y.2d 415, 421, 334 N.Y.S.2d 388, 285 N.E.2d 695, *mod. on other grounds,* 31 N.Y.2d 678, 336 N.Y.S.2d 911, 288 N.E.2d 811, *cert. denied,* 414 U.S. 829, 94 S. Ct. 57, 38 L. Ed. 2d 64), and to determine whether there has indeed been unjust enrichment the inquiry must focus on the "human setting involved" (*McGrath v. Hilding,* 41 N.Y.2d 625, 629, 394 N.Y.S.2d 603, 363 N.E.2d 328), not merely upon the transaction in isolation (*supra*).

*Mayer*, 158 A.D.2d at 880.

Here, the record shows that the Debtor made the Transfers to the Defendant for no consideration, and the Defendant was enriched by those Transfers. But as noted above, the Defendant presented evidence that he supported the Debtor for many years, based on their close family relationship of mother and son. While the support provided by the Defendant to the Debtor as a matter of family, moral, and cultural duty is not considered in law to be fair

88

consideration or reasonably equivalent value, "broad considerations of equity and justice" permit the Court to consider these facts and circumstances in light of "the human setting involved." Viewed in this light, this evidence is sufficient to raise a genuine dispute as to a material fact as to whether equity and good conscience militate against permitting the Defendant to retain the Transfers.

In summary, for these reasons, and based on the entire record, the Court finds that the Trustee has not shown that there is no genuine dispute as to a material fact as to each element of the claim set forth in the Sixteenth Cause of Action for unjust enrichment, and she is not entitled to summary judgment on that claim.

_The Defendant's Constitutional and Other Objections_

The Defendant makes several additional arguments in opposition to the Trustee's Motion for Summary Judgment that merit consideration.  These arise under the United States Constitution, including Article I and Article III, concerning the subject matter jurisdiction and authority of this bankruptcy court to hear and determine the Trustee's claims.  They also arise under the Appointments Clause of Article II of the United States Constitution, concerning the status of a bankruptcy judge as an "Inferior Officer," not a "Officer of the United States" that is appointed by the President of the United States "by and with the Advice and Consent of the Senate."  And they arise under the Religious Freedom Restoration Act of 1993 ("RFRA").  In addition, the Defendant argues that the Trustee lacks standing under Article III to bring this action, that she failed to join necessary parties as required by Federal Rule of Civil Procedure 19, and that she conducted the Section 341 Meeting of Creditors improperly.  Finally, the Defendant argues that the Trustee's claims to recover the Mortgage Proceeds Transfer are barred by the

applicable statute of limitations.  The Court addresses these arguments below in turn.

<u>Whether this Court May Hear and Determine this Adversary Proceeding Consistent with Article III and the Appointments Clause of Article II of the United States Constitution</u>

The Defendant argues that this Court lacks the authority to preside over this adversary proceeding or to enter a final judgment on the Trustee's claims, on several grounds.  He argues, among other things, that this Court lacks subject matter jurisdiction over this adversary proceeding, that this Court lacks authority under Article III of the United States Constitution to preside over this adversary proceeding without the parties' consent, and that this Court may not preside over this adversary proceeding because the function of bankruptcy courts and judges violates the Appointments Clause of Article II of the United States Constitution.

In particular, as to Article III, the Defendant states that he seeks to have these claims heard by a judge appointed pursuant to Article III of the United States Constitution.  He argues, among other things, that he has a "right to be heard by an independent judiciary" and that "the bankruptcy court does not have any power under the constitution to hear [this] dispute."  Adv. Pro. 11-1520, Dkt. 66, Def's Emergency Mot. for Withdrawal of Reference ("Def's Emerg. Mot.") 5.  He states that the Trustee's claims implicate private rights, and that under the applicable Supreme Court authority, including *Northern Pipeline* and *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33 (1989), these claims must be heard and determined by an Article III federal judge.  He also argues that it is insufficient for this Court to limit its role to issuing proposed findings of fact and conclusions of law to be reviewed by a district court judge, because, among other reasons, "a mere availability of the Article III review cannot supplant or substitute for the right to be heard by a constitutional judge."  Def's Emerg. Mot. 7.

And as to Article II, the Defendant argues that "a bankruptcy judge is not a 'Principle

Officer' as contemplated under Article II of the Constitution, as her appointment is not by the President of the United States with the advice and consent of the Senate. As a result she is an 'Inferior Officer.'" Def's Emerg. Mot. 8. And reviewing the criteria applicable to "Inferior Officers," including that their work is directed and supervised by others who were appointed by Presidential nomination with the advice and consent of the Senate, he argues that the role of the bankruptcy judge does not satisfy those requirements. For these and other reasons, the Defendant concludes, absent consent of the parties, this bankruptcy court does not have the ability to hear the Trustee's claims.

The question of subject matter jurisdiction is fundamental. Where it is absent, a federal court may not proceed, whether or not the issue is raised by a party. But equally well, where it is present, the court should proceed in accordance with the applicable law to adjudicate the parties' dispute. As the Supreme Court has recently held, if subject matter jurisdiction is present but the claim is outside the scope of those claims in which bankruptcy courts may enter a final judgment, "a bankruptcy court [may] issue proposed findings of fact and conclusions of law to be reviewed *de novo* by the district court." *Executive Benefits*, 134 S. Ct. at 2168.

And the framework established by the United States Constitution for the appointment of "Officers of the United States" by the President, with the advice and consent of the Senate, and for the designation of "Inferior Officers," is likewise a fundamental component of the constitutional structure of our government.

As noted above, the Supreme Court has observed that "Congress has divided bankruptcy proceedings into three categories: those that 'aris[e] under title 11'; those that 'aris[e] in' a Title 11 case; and those that are 'related to a case under title 11.'" *Stern*, 131 S. Ct. at 2603 (citing 28

U.S.C. § 157(a)) (alterations in original).

The district courts have original, but not exclusive, jurisdiction over all cases "arising under" the Bankruptcy Code or "arising in or related to" cases under the Bankruptcy Code. 28 U.S.C. § 1334(b). "[A] proceeding is related to a case under the Bankruptcy Code 'if the outcome of the litigation might have any conceivable effect on the bankruptcy estate, or has any significant connection with the bankrupt estate.'" *A-Z Rx LLC*, 2012 WL 6012149, at *6 (quoting *Lead I JV, LP*, 401 B.R. at 581).

Here, as described above, this Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. § 1334(b), and the Standing Order of Reference dated August 28, 1986, as amended by Order dated December 5, 2012, of the United States District Court for the Eastern District of New York. As also described above, to the extent that the Trustee's claims for turnover and an accounting of the Mortgage Proceeds Transfer and Sale Proceeds Transfer arise under Bankruptcy Code Section 542(a), they are core matters as to which this Court has constitutional authority to enter an appropriate order and final judgment, because these claims stem "from the bankruptcy itself." *Stern*, 131 S. Ct. at 2618. To the extent that the Trustee's claims to avoid and recover the Mortgage Proceeds Transfer and Sale Proceeds Transfer arise under New York Debtor and Creditor Law and the common law of unjust enrichment, and not the Bankruptcy Code, and could be asserted independently of the Debtor's bankruptcy case, they are non-core matters as to which this Court may not enter a final judgment, but may enter proposed findings of fact and conclusions of law, to the extent they are finally determined.

And here, for substantially the same reasons, Article II and the Appointments Clause do not prevent this Court from proceeding in the absence of consent of the parties. It appears that at

least one legal scholar has questioned whether the bankruptcy judiciary is subject to challenge under Article II, on grounds that bankruptcy judges have certain qualities, such as safeguards against removal, expansive jurisdiction, and significant duties and responsibilities, that may be incompatible with "Inferior Officer" status under Article II.  *See* Tuan Samahon*, Are Bankruptcy Judges Unconstitutional?  An Appointments Clause Challenge*, 60 Hastings L. J. 233 (2008). But this Court is not persuaded that Article II acts as a bar to the functions and role of the bankruptcy judiciary, and this Court likewise is not aware of a controlling or persuasive decision of any federal court that reaches that conclusion.  Based on the entire record, the Court concludes that the Defendant has not shown that Article II and the Appointments Clause prevent this Court from hearing and determining this adversary proceeding.

<u>Whether the Defendant Has Established that the Religious Freedom Restoration Act Is a Defense to the Trustee's Claims</u>

The Religious Freedom Restoration Act of 1993 was adopted in order "to restore the compelling interest test as set forth in *Sherbert v. Verner*, 374 U.S. 398 (1963) and *Wisconsin v. Yoder*, 406 U.S. 205 (1972), and to guarantee its application in all cases where free exercise of religion is substantially burdened."  42 U.S.C. § 2000bb(b)(1).  It also provides "a claim or defense to persons whose religious exercise is substantially burdened by government."  42 U.S.C. § 2000bb(b)(2).  In so doing, Congress specifically found that "the framers of the Constitution, recognizing free exercise of religion as an unalienable right, secured its protection in the First Amendment to the Constitution."  42 U.S.C. § 2000bb(a)(1).  And Congress stated that "laws 'neutral' toward religion may burden religious exercise as surely as laws intended to interfere with religious exercise . . . [and] governments should not substantially burden religious exercise without compelling justification."  42 U.S.C. § 2000bb(a)(2), (3).

93

The Defendant argues, in substance, that the Trustee's claims amount to a violation of the RFRA because they would undo the transactions entered into between the Debtor and her son in furtherance of their personal religious, cultural, and familial obligations.  In particular, the Defendant argues that "[i]t is the religious belief and practice of the family that [the] family is one unit and transfer of an asset from [one family member] to the other does not transfer real ownership."  Def's Opp'n 55.  The Defendant also argues that requiring him to account for these transfers violates the basic tenets of his faith because "[i]t is against the religious practice of the family to place mother or son as creditor and debtor of each other."  Def's Opp'n 55.

The Trustee responds that the proscriptions of the RFRA, and the interests that it protects, are not implicated by this action.  In particular, the Trustee argues that, for example, the Defendant placed his mother's name on the deed and mortgage to the Richmond Hill Property because it was required by the lender, not because of any actions taken by the Trustee, or any application of bankruptcy law.  She also notes that this action seeks to recover the mortgage and sale proceeds for the benefit of the estate, and that "the funds are to be returned to the Trustee, not the Debtor."  Adv. Pro. 11-1520, Dkt. 152, Plaintiff's Reply to the Defendant's Opposition ("Pl's Reply") ¶ 18.  These claims, the Trustee notes, do not "pit a son against his mother" in violation of any religious practice or duty, but frame a dispute between the Trustee as plaintiff and the Defendant.  Pl's Reply ¶ 10.  And the Trustee observes that "the Debtor voluntarily filed Bankruptcy under the laws of this country to seek relief from her creditors.  Those same laws require the Trustee to exercise her fiduciary duties to recover funds for her creditors."  Pl's Reply ¶ 19.

At the outset, the Second Circuit has found that "the RFRA is constitutional as applied to

94

federal law under the Necessary and Proper Clause of the Constitution." *Hankins v. Lyght*, 441 F.3d 96, 106 (2d Cir. 2006). To the same effect, the Second Circuit has observed that the RFRA "has effectively amended the Bankruptcy Code, and has engrafted the additional clause to § 548(a)(2)(A) that a recovery that places a substantial burden on a debtor's exercise of religion will not be allowed unless it is the least restrictive means to satisfy a compelling governmental interest." *Hankins*, 441 F.3d at 106 (citing *In re Young*, 141 F.3d 854, 861 (8th Cir. 1998)).

Courts have found that an individual's free exercise of religion may be substantially burdened by a statute that requires the adherent to refrain from engaging in a practice important to his or her religion, or compels the adherent to choose between following the precepts of his or her religion or accepting the statute's benefits. *See Hobbie v. Unemployment Appeals Comm'n*, 480 U.S. 136, 140-41 (1987). The Second Circuit has found that a "substantial burden" means a "situation where the state puts substantial pressure on an adherent to modify his behavior and to violate his beliefs." *Jolly v. Coughlin*, 76 F.3d 468, 477 (2d Cir. 1996) (quoting *Thomas v. Review Bd. of the Indiana Employment Sec. Div.*, 450 U.S. 707, 718 (1981)).

Here, the record shows that the Defendant sincerely believes, as a matter of his religion and culture, that there can be no "business between mother and son." Mahia Aff. ¶ 1. The Defendant states that "with our religion and culture in mind, we show[ed] respect to our mother by putting her name in the house." Mahia Aff. ¶ 3. The Defendant and his sister "had a religious call to respect our mother and to show our respect we put our mother['s] name on our first house we ever bought here at the United States." Mahia Aff. ¶ 4. The Defendant "wanted [his] mother['s] name on the first house as it [is widely] used in our religio[us] practice and in our culture." Mahia Aff. ¶ 6. The Debtor states that "what is [hers] belongs to [her] family and

95

what . . . belongs to [her] family belongs to [her]."  Khan Aff. ¶ 10.  The Debtor further states

that "[i]t is [her] religious duty" that everything she owns belongs to her family.  Khan Aff. ¶ 11.

This Court respects and acknowledges the sincerity of the Defendant's religious beliefs.

But that does not mean that those beliefs, and the Defendant's free exercise of his religion, is

burdened by the relief sought by the Trustee.  The Defendant has not shown that the avoidance

of the Mortgage Proceeds Transfer and the Sale Proceeds Transfer, as sought by the Trustee

under New York Debtor and Creditor Law, the Bankruptcy Code, and common law,

substantially burdens the Defendant's right to practice his religion.  He has not shown that he

will be required to refrain from engaging in a practice important to his religion, or compelled to

choose between following the precepts of his religion or accepting a benefit under law.  Nor has

he demonstrated that he is under "substantial pressure . . . to modify his behavior" or "to violate

his beliefs."  *Jolly*, 76 F.3d at 477.  Based on the entire record, the Court concludes that the

Defendant has not shown that the RFRA Article II and the Appointments Clause prevent this

Court from hearing and determining this adversary proceeding.

<u>Whether the Trustee Has Established that She Has Standing Under Article III of the United
States Constitution To Bring this Action</u>

The Defendant acknowledges that a trustee's standing to bring an avoidance action

derives from Bankruptcy Code Section 544(b).  But he argues that "this right to prosecute" "does

not comport with [A]rticle III," and that this "Congress[ionally] provided . . . right . . . in itself is

not enough to provide the standing," which is a "constitutional question."  Def's Opp'n 4.

The Defendant also argues that "Congress may not bestow standing to sue except where

the courts would otherwise find that the basic requirements of 'injury in fact' are already met."

Def's Opp'n 6 (citation omitted).  And the Defendant argues that the Trustee lacks standing

because she has not shown that there is an "identifiable unsecured creditor" whose rights the

Trustee asserts under Bankruptcy Code Section 544, or an injury.  Def's Opp'n 6.

The doctrine of standing has its roots in Article III of the United States Constitution,

which limits the federal courts to deciding cases or controversies.  And as this Court observed

elsewhere, standing requires a party to have a "'personal stake in the outcome of the controversy

. . . [and] assert his own legal rights and interests.'" *Wright v. BankAmerica Corp.*, 219 F.3d 79,

86 (2d Cir. 2000) (quoting *Warth v. Seldin*, 422 U.S. 490, 498-99 (1975)).  As the Second Circuit

has found:

> [A bankruptcy trustee's standing] coincides with the scope of the powers the
> Bankruptcy Code gives a trustee, that is, if a trustee has no power to assert a claim
> because it is not one belonging to the bankrupt estate, then he also fails to meet
> the prudential limitation that the legal rights asserted must be his own.

*Shearson Lehman Hutton Inc. v. Wagoner*, 944 F.2d 114, 118 (2d Cir. 1991).  *See Silverman v.*

*Sound Around, Inc. (In re Allou Distribs., Inc.)*, 392 B.R. 24, 30 (Bankr. E.D.N.Y. 2008) (stating

that a Chapter 7 trustee must, like any other plaintiff, establish that he or she has standing to

bring a claim).

Once a Chapter 7 trustee's standing is established, the trustee's powers to act on behalf of

the bankruptcy estate are broad in scope, to facilitate the effective and efficient administration of

the estate.  *See Sound Around, Inc.*, 392 B.R. at 30 (stating that "[a] Chapter 7 trustee's rights

include the right to assert control over and administer property of the estate and the right to avoid

fraudulent transfers . . . ." (citations omitted)).  For these reasons, Article III accords the Chapter

7 trustee standing to assert claims to recover property of the estate.

And here, the record shows that the Debtor had at least one unsecured creditor when she

made the Mortgage Proceeds Transfer and the Sale Proceeds Transfer, whose claims could have

97

been satisfied from the Debtor's share of those transfers.  That is, the Trustee has shown that there is an "identifiable secured creditor" at the relevant period, and has satisfied her burden under Bankruptcy Code Section 544(b) to show both that there is an actual creditor as to whom the transfer is "voidable under applicable law," and that the creditor "hold[s] an unsecured claim that is allowable under section 502 of this title."  And the Defendant has not identified controlling or persuasive authority to the contrary.  Based on the entire record, the Court concludes that the Defendant has not shown that the Trustee does not have standing under Article III to bring this action.

<u>Whether the Defendant Has Established that the Trustee Did Not Join Necessary Parties Under Federal Rule of Civil Procedure 19</u>

The Defendant argues that the Amended Complaint must be dismissed pursuant to Federal Rule of Civil Procedure 19 because the Trustee has failed to join necessary parties.  He states that the Debtor and Abu Taher, a co-owner of the Ozone Park Property, are necessary parties to this action.  The Defendant asserts that Mr. Taher, "as transferor of 55% ownership of the [Richmond Hill Property] to Mahia," is a necessary party because "both the transferor and transferee are necessary parties to a fraudulent transfer action," and that the Debtor is a necessary party because "deciding the fraudulent conveyance [actions] is in essence deciding whether the [D]ebtor would have had an exemption" in the Mortgage Proceeds and Sale Proceeds.  Def's Opp'n 61-62, 63.

The Trustee responds that the Debtor and Mr. Taher are not necessary parties to this proceeding because she does not seek to recover from the Debtor or Mr. Taher, or any relief with respect to the Ozone Park Property.  Rather, she seeks to recover the Debtor's share of the proceeds from the mortgage and sale of Richmond Hill Property from the Defendant.

98

Federal Rule of Civil Procedure 19, made applicable to this adversary proceeding by Bankruptcy Rule 7019, governs the required joinder of parties. Where necessary, it modifies the traditional rule that a plaintiff has the option to determine whether and to what extent to join multiple defendants in a single action. As one commentator has noted, "It prescribes the circumstances in which plaintiff autonomy in party structure must yield to other considerations. In these circumstances, the rules reflect a policy decision that other interests – primarily the protection of other parties and absentees – outweigh the interest in plaintiff autonomy." 4 *Moore's Federal Practice*, § 19.02[1] (Matthew Bender 3d ed.). And as the Second Circuit has observed, "the court must determine whether an absent party belongs in the suit, i.e., whether the party qualifies as a 'necessary' party under Rule 19(a)." *Viacom Intern., Inc. v. Kearney*, 212 F.3d 721, 724 (2d Cir. 2000).

Compulsory and permissive joinder of parties reflects the notion that parties to an action may be considered proper, necessary, and indispensable. Proper parties may be included or omitted at a plaintiff's option. Necessary parties are those proper parties who are so closely related to the action that their absence may be damaging to them or to the defendant. And finally, indispensable parties are those "necessary parties who cannot be joined and whose absence creates such overwhelming potential for harm (either to the absentee or to existing parties, usually the defendant) that the court will dismiss the pending case rather than run the risk by proceeding." 4 *Moore's*, § 19.02[2][a].

As the Second Circuit has observed, "[p]ersons having an interest in the controversy, and who ought to be made parties . . . are commonly termed necessary parties." *Provident Tradesmens Bank & Trust Co. v. Patterson*, 390 U.S. 102, 124 (1968). And as the Second

Circuit similarly noted, "[a] party is necessary under Rule 19(a)(1) only if in that party's absence 'complete relief cannot be accorded *among those already parties*.'"  *MasterCard Int'l Inc. v. Visa Int'l Service Ass'n, Inc.*, 471 F.3d 377, 385 (2d Cir. 2006).  Rule 19(a)(1) also addresses the risk of prejudice to the absent party if the litigation proceeds in that party's absence.  "[I]f the outcome of the litigation will have no practical effect on the absentee's interest, the absentee is not a necessary party."  4 *Moore's*, § 19.03[3][b].

Rule 19 provides that the absent party should be joined, if feasible, where:

(A)    in that person's absence, the court cannot accord complete relief among existing parties; or

(B)    that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:

(i)    as a practical matter impair or impede the person's ability to protect the interest; or

(ii)    leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

Fed. R. Civ. P. 19(a)(1)(A)-(B).

Here, the record shows that the Trustee alleges that the Defendant received the Debtor's share of the Mortgage Proceeds and the Sale Proceeds, and if she succeeds on her claims to recover those sums, she may obtain complete relief from him.  That is, it is not necessary that the Debtor or Mr. Taher be named as defendants in this action for "complete relief [to be accorded] among existing parties."  Fed. R. Civ. P. 19(a)(1)(A).  Rather, the Trustee can obtain complete relief by recovering a money judgment against the Defendant without regard to the Debtor and Mr. Taher.  As a result, the Defendant has not shown that the Trustee has not joined a necessary party under Rule 19(a)(1)(A).

100

The record similarly shows that if this action proceeds in the absence of the Debtor and Mr. Taher as parties, and the Trustee succeeds on her claims to recover the Debtor's share of the Mortgage Proceeds and the Sale Proceeds from the Defendant, that will not leave the Debtor or Mr. Taher in a situation where they are, "as a practical matter," impaired or impeded in their ability to protect their interests.  Fed. R. Civ. P. 19(a)(1)(B)(i).  Nor does the record show that if this action proceeds only against the Defendant, he will be "subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations."  Fed. R. Civ. P. 19(a)(1)(B)(ii).  This aims to protect a defendant against inconsistent obligations, not inconsistent adjudications.  *See* 4 *Moore's*, § 19.03[4][b], [4][d].  And in all events, the Defendant has not identified a risk of inconsistent obligations that could arise if this action proceeds in the absence of the Debtor and Mr. Taher as defendants.  As a result, the Defendant has not established that the Trustee has not joined a necessary party under Rule 19(a)(1)(B)(ii).

Based on the entire record, the Court concludes that the Defendant has not shown that the Trustee did not join a necessary party under Federal Rule of Civil Procedure 19.

<u>Whether the Defendant Has Established that the Trustee's Conduct of the Section 341 Meeting of Creditors Is a Defense to the Trustee's Claims</u>

The Defendant argues that this adversary proceeding "is not maintainable" and should be dismissed because the Trustee denied the Debtor her right to due process at the Section 341 meeting of creditors by, among other things, not informing her of her right to file her case under other chapters of the Bankruptcy Code, including Chapters 11 and 13.  He states that the Trustee acted "deliberately" and "ambushed a poor, immigrant family to her control, so that she could seek extortionist payment."  Def's Opp'n 76.  He also notes that the Debtor has a limited command of English, and states in substance that she may not have understood fully the

proceedings.  The Defendant concludes that these and other infirmities in the Trustee's conduct of the Section 341 meeting denied the Debtor of her due process rights, and, in substance, taint all of the actions of the Trustee, including the commencement of this adversary proceeding as the product of a "schematic deprivation . . . [of] individual rights, access to courts and deprivation of property rights."  Def's Opp'n 89.

The Trustee responds that the Trustee does not have the affirmative duty to counsel debtors to convert their bankruptcy case to another chapter under the Bankruptcy Code.  She also notes that the Debtor did not request the services of an interpreter during the Section 341 meeting.  The Trustee states that as an individual without regular income, the Debtor would not have been able successfully to convert her case to one under Chapter 13, which provides for adjustment of debts of an individual with regular income, or Chapter 11, which provides for a debtor's reorganization.  And she notes that here, the Debtor has received a discharge.

The Section 341 meeting of creditors is a cornerstone of the Chapter 7 process.  It is an essential tool for the Trustee and any creditor or party in interest to develop an understanding of a debtor's bankruptcy case.  In most Chapter 7 cases, it may also be the principal – or only – way in which a debtor interacts personally with the bankruptcy process, because relatively few Chapter 7 cases present issues that require a hearing before a bankruptcy judge.  Effective communication and respect for all of the parties is of paramount importance, and for these reasons among others, debtors may request that interpretation in their native language be provided during the proceedings.  And as reflected in the New York State Standards of Civility adopted in this bankruptcy court by Administrative Order No. 568, "principles of civility and decorum" should be observed as well.

Here, the record shows that in connection with filing her bankruptcy case, the Debtor executed and filed the "Notice to Individual Consumer Under § 342(b) of the Bankruptcy Code," which provides basic information about the four chapters of the Bankruptcy Code that are available to individual consumer debtors, including Chapter 7, Chapter 13, Chapter 11, and Chapter 12.  That is, the Debtor received information about the different forms of bankruptcy that are available to individuals, and affirmed that she received and read that notice.  The record also shows that it is not likely that any chapter other than Chapter 7 would have been of assistance to the Debtor, because according to her bankruptcy petition, including Schedule I, she does not have regular income.  And finally, the record shows that the Debtor did not request that interpretation be made available during the Section 341 meeting.

But here, the record does not establish that there were any material infirmities in the conduct of the Debtor's Section 341 Meeting by the Chapter 7 Trustee.  The Defendant has not established that the Trustee conducted that meeting in a way that was inconsistent with this Court's Standards of Civility, or that violated the Bankruptcy Code or the Constitution's fundamental guarantee of due process.

And finally, the Defendant has not established that a flawed Section 341 Meeting would be a defense to the claims that the Trustee asserts here.  If any of the guidelines or standards applicable to these matters are violated by a Chapter 7 trustee, that may well establish grounds for a complaint directed to the United States Trustee or other similar process.  But the Defendant has not identified any controlling or persuasive authority that supports the conclusion that the problems that he identifies with the Section 341 Meeting would, if proven, be a defense to any of the Trustee's claims.  Based on the entire record, the Court concludes that the Defendant has not

shown that the Trustee's conduct of the Section 341 Meeting is a defense to the Trustee's claims.

Whether the Trustee's Claims To Recover the Mortgage Proceeds Transfer Are Barred by the Statute of Limitations

The Defendant argues that the Trustee's claims to recover the Mortgage Proceeds Transfer as asserted in the Amended Complaint, including her claims under New York Debtor and Creditor Law Sections 273, 274, 275, and 278, should be dismissed because they are barred by the applicable statute of limitations. In particular, the Defendant states that "[t]his suit complaining of this transaction was filed by [the Trustee] via an Amended Complaint on March 25, 2013," and that the Mortgage Proceeds Transfer occurred on January 5, 2007, or more than six years earlier. Def's Opp'n 95-96. As a result, the Defendant argues, these claims are barred by the six-year statute of limitations that applies to claims to recover a fraudulent transfer under New York Debtor and Creditor Law. The Defendant also argues that under the standards set forth in Federal Rule of Civil Procedure 15(c), these claims as asserted in the Amended Complaint do not relate back to the original complaint because, among other reasons, they are based on new factual allegations.

The Trustee responds that these claims are not time-barred because, among other reasons, the Mortgage Proceeds Transfer occurred on April 5, 2007, when the Debtor's share of the proceeds from the sale of the Richmond Hill Property was paid to the Defendant, not on January 5, 2007 when the mortgage lien was placed on that property. The Trustee also states that even if the relevant date is January 5, 2007, the claims are not time-barred because the applicable limitations period is the later of six years from the transfer or two years for the discovery of the transfer. Here, she argues that at the Defendant's deposition on February 27, 2013, she became aware of how the proceeds from the sale of the Richmond Hill Property were distributed, and

brought this action within a month of that discovery.

New York's Civil Practice Law and Rules provide that for an action based upon fraud:

> the time within which the action must be commenced shall be the greater of six years from the date the cause of action accrued or two years from the time the plaintiff or the person under whom the plaintiff claims discovered the fraud, or could with reasonable diligence have discovered it.

N.Y. C.P.L.R. § 213.  Bankruptcy courts have consistently held that these periods apply to claims to avoid and recover a constructively or actually fraudulent transfer under New York Debtor and Creditor Law.  *See, e.g.*, *In re Fischer*, 308 B.R. 631, 654 (Bankr. E.D.N.Y. 2004) (noting that causes of action for fraud are governed by two separate alternative limitations periods: six years from the commission of the fraud or two years from actual or imputed discovery of the fraud, whichever is longer), *Madoff*, 458 B.R. at 109 (stating that transfers predicated on actual fraud could be avoided within two years of the date the fraud was or should have been discovered with reasonable diligence).

In addition, Federal Rule of Civil Procedure 15(c) provides that "[a]n amendment to a pleading relates back to the date of the original pleading when . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading."  Fed. R. Civ. P. 15(c)(1)(B).  As one commentator has observed, "Rule [15] allows for liberal amendment in the interests of resolving cases on the merits."  3 *Moore's*, § 15.02[1].  In determining whether an amended complaint should be deemed to relate back, the court should ask "whether the facts provable under the amended complaint arose out of the conduct alleged in the original complaint."  3 *Moore's* § 15.19[2].

Here, the record shows that the deposition of the Defendant occurred on February 27, 2013, and the Trustee first asserted claims in the Amended Complaint to recover the Mortgage

Proceeds Transfer under New York Debtor and Creditor Law less than four weeks later, on March 25, 2013. That is, these claims were asserted well within two years from the time that they were discovered.

In addition, the record also shows that the Trustee's claims to recover the Mortgage Proceeds Transfer under New York Debtor and Creditor Law arise from substantially the same "conduct, transaction, or occurrence" set forth in the original complaint with respect to the Sale Proceeds Transfer. That is, both the Mortgage Proceeds Transfer and the Sale Proceeds Transfer concern transfers of the Debtor's property, from the Debtor to the Defendant, relating to the Richmond Hill Property, and occurring at the time of the sale of that property. This is sufficient to establish that the Mortgage Proceeds Transfer claims asserted in the Amended Complaint relate back to the original complaint.

Based on the entire record, the Court concludes that the Defendant has not shown that the Trustee's claims to recover the Mortgage Proceeds Transfer under New York Debtor and Creditor Law are barred by the statute of limitations.

*          *          *

The Court has considered all of the other arguments advanced by the Trustee and the Defendant in support of and in opposition to this Motion for Summary Judgment, including the arguments advanced in the extensive memoranda of law and supporting submissions and the oral arguments made by counsel, and has concluded that they are not persuasive.[2]

---

[2] In particular, the Court has carefully considered whether the Defendant's assertion that the Court "advised the Trustee to bring this motion" is correct, and whether "the court could be biased or the court is advising from the bench improperly." Def's Opp'n 100. Consistent with the direction set forth in Bankruptcy Rule 1001 to "secure the just, speedy, and inexpensive determination of every case and proceeding," this Court has regularly conducted pre-trial

**Conclusion**

For the reasons stated herein, and based on the entire record, the Trustee's Motion for Summary Judgment is granted in part and denied in part, as follows.

The Trustee's motion with respect to the First Cause of Action under Bankruptcy Code Section 542(a), directing the Defendant to account for and deliver the Sale Proceeds to the Trustee, is granted.

The Trustee's motion with respect to the Eighth Cause of Action under Bankruptcy Code Section 542(a), directing the Defendant to account for and deliver the Mortgage Proceeds to the Trustee, is granted.

The Trustee's motion with respect to the Fourth Cause of Action under Bankruptcy Code Section 544(b) and New York Debtor and Creditor Law Section 274, seeking a declaratory judgment to set aside the Sale Proceeds Transfer as a fraudulent conveyance, is denied.

The Trustee's motion with respect to the Fifth Cause of Action under Bankruptcy Code Section 550(a) and New York Debtor and Creditor Law Sections 274 and 278, seeking to set aside the Sale Proceeds Transfer and recover from the Defendant the value of that transfer, as well as a judgment against the Defendant in the amount of that transfer, is denied.

The Trustee's motion with respect to the Sixth Cause of Action under Bankruptcy Code Section 544(b) and New York Debtor and Creditor Law Section 275, seeking a judgment to set aside the Sale Proceeds Transfer as a fraudulent conveyance, is denied.

---

conferences and fixed case management deadlines for pre-trial proceedings that were applicable to both parties. After a careful review of the entire record, including the record of the pre-trial conferences in this adversary proceeding, the Court is satisfied that the Trustee was not advised to bring this motion, in substance or in appearance, and that the Court is not "biased or advising from bench improperly." *Id.*

The Trustee's motion with respect to the Seventh Cause of Action under Bankruptcy Code Section 544(b) and New York Debtor and Creditor Law Section 276, seeking a judgment to avoid and recover the Sale Proceeds Transfer as a fraudulent conveyance made with actual intent to hinder, delay, or defraud the Debtor's creditors, is denied.

The Trustee's motion with respect to the Eleventh Cause of Action under Bankruptcy Code Section 544(b) and New York Debtor and Creditor Law Section 274, seeking a declaratory judgment setting aside the Mortgage Proceeds Transfer as a fraudulent conveyance, is denied.

The Trustee's motion with respect to the Twelfth Cause of Action under Bankruptcy Code Section 550(a) and New York Debtor and Creditor Law Sections 274 and 278, seeking to set aside the Mortgage Proceeds Transfer and recover from the Defendant the value of that transfer, as well as a judgment against the Defendant in the amount of that transfer, is denied.

The Trustee's motion with respect to the Thirteenth Cause of Action under Bankruptcy Code Section 544(b) and New York Debtor and Creditor Law Section 275, seeking a judgment to set aside the Mortgage Proceeds Transfer as a fraudulent conveyance, is denied.

The Trustee's motion with respect to the Fourteenth Cause of Action under Bankruptcy Code Section 544(b) and New York Debtor and Creditor Law Section 276, seeking a judgment to avoid and recover the Mortgage Proceeds Transfer as a fraudulent conveyance made with actual intent to hinder, delay, or defraud the Debtor's creditors, is denied.

The Trustee's motion with respect to the Fifteenth Cause of Action under New York Debtor and Creditor Law Section 276-a, seeking an award of attorneys' fees incurred in this action, is denied.

The Trustee's motion with respect to the Sixteenth Cause of Action under New York law

108

for unjust enrichment, seeking a judgment against the Defendant in the amount of $64,190.25, is denied.

In addition, for the reasons stated herein, based on the entire record, and pursuant to 28 U.S.C. § 157(c) and the December 5, 2012 Standing Order, *In the Matter of the Referral of Matters to the Bankruptcy Judges* issued in the Eastern District of New York, the Memorandum Decision shall serve as proposed findings of fact and conclusions of law as to the Trustee's motion, as follows.

The Trustee's motion with respect to the Second Cause of Action under Bankruptcy Code Section 544(b) and New York Debtor and Creditor Law Section 273, seeking a declaratory judgment to set aside the Sale Proceeds Transfer as a fraudulent conveyance, is granted.

The Trustee's motion with respect to the Third Cause of Action under Bankruptcy Code Section 550(a) and New York Debtor and Creditor Law Sections 273 and 278, seeking a judgment against the Defendant in the amount of the Sale Proceeds Transfer, is granted.

The Trustee's motion with respect to the Ninth Cause of Action under Bankruptcy Code Section 544(b) and New York Debtor and Creditor Law Section 273, seeking a declaratory judgment to set aside the Mortgage Proceeds Transfer as a fraudulent conveyance, is granted.

The Trustee's motion with respect to the Tenth Cause of Action under Bankruptcy Code Section 550(a) and New York Debtor and Creditor Law Sections 273 and 278, seeking a judgment against the Defendant in the amount of the Mortgage Proceeds Transfer, is granted.

An order in conformity with this Memorandum Decision and Proposed Findings of Fact and Conclusions of Law shall be entered simultaneously herewith.



**Dated: Brooklyn, New York**
**September 30, 2014**

110

_____
**Elizabeth S. Stong**
**United States Bankruptcy Judge**